# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

**The County Commission of Fayette County, West Virginia**, a political subdivision of the State of West Virginia,

Case No. 2:21-cv-00307

- Plaintiff;

**Ex Rel. Anthony Ciliberti, Esq**, Fayette County Prosecuting Attorney,

- Relator;

v.

**National Grid NE Holdings 2 LLC**, a Massachusetts Limited Liability Company, [successor in interest to the remedial liabilities of: **Eastern Gas and Fuel Associates (l.k.a. Eastern Associates),** a Massachusetts Business Trust, **incurred as a result of its status, acts or omissions prior to January 1, 1966**, arising out of its mining operations and mining waste disposal practices conducted within Fayette County, WV];

- Defendant;

**Eastern Associated Coal, LLC**, a defunct West Virginia Limited Liability Company (**f.k.a. Eastern Associated Coal Corporation**), solely to the extent of its undistributed assets, non-exclusively including the available coverage and proceeds from its liability insurance policies, named herein as a Nominal Defendant Only, and not as a Real Party in Interest;

- Nominal Defendant;

**Pardee and Curtin Realty LLC**, a Delaware Limited Liability Company qualified to do business in West Virginia;

- Defendant;

**Quercus West Virginia, LLC,** a Delaware Limited Liability Company authorized to do

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* Case No. *2:21-cv-00307,* (S.D. WV)

**Verified Complaint**

Page **1** of **125** pages

business in West Virginia,

- **Defendant;**

**Continental Insurance Company**, a Pennsylvania corporation, solely to the extent of the remaining proceeds available pursuant to Continental Insurance Company Policy Number RDU 9433461 providing liability insurance coverage to **Eastern Consolidated Coal Corporation** for its liability to the Governmental Plaintiff for all property damages alleged herein arising out of occurrences during the policy period;

- **Defendant;**

**The Travelers Casualty and Surety Company,** a Connecticut corporation (successor in interest to **Aetna Casualty and Surety Co.**) and a member company of The Travelers Companies, Inc., a Minnesota corporation, solely to the extent of remaining proceeds available pursuant to Aetna Casualty and Surety liability insurance policy numbers 06AL013817SC, 06AL122094SCY 06AL1220SCY, 06AL125194SCY, 06AL127247SRAY, 06AL128702SRAY, 06AL131419SRAY, 06AL133503SRAY, 06AL133534SRA(Y), 06AL133562SRA(Y), 06AL133588SRA, 06AL230021SRA, and 06AL230063SCA providing coverage to **Eastern Consolidated Coal Corporation** for its liability to the Governmental Plaintiff for all property damages alleged herein arising out of occurrences during the policy periods;

- **Defendant;**

**Hanover Insurance Company;** a New Hampshire corporation, solely to the extent of coverage available pursuant to liability insurance policies issued by it expressly providing coverage to **Eastern Gas and Fuel Associates or any of its subsidiaries**, **Eastern Consolidated Coal Corporation**, or **Coal Properties Corporation** (the latter two (2) entities

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**

**Verified Complaint**

Page **2** of **125** pages

now both defunct corporations), during one or more years within the period of 1963 through 1987, non-exclusively including policy number CGL 60203;

**- Defendant.**

---

**COMPLAINT FOR: (1) "CITIZEN SUIT" PURSUANT TO RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), TO SECURE JUDICIAL ABATEMENT OF CONTINUING CONDITIONS THAT MAY PRESENT AN IMMINENT AND SUBSTATIAL ENDANGERMENT TO HEALTH OR THE ENVIRONMENT ARISING FROM THE PAST AND ONGOING HANDLING OR DISPOSAL OF A SOLID WASTE OR HAZADOUS WASTE; (2) "CITIZEN SUIT" PURSUANT TO CERCLA § 310(a)(1), 42 U.S.C. § 9659(a)(1) TO COMPEL COMPLIANCE WITH THE NOTIFICATION REQUIREMENT OF CERCLA § 311(g), 42 U.S.C § 9611(g), (3) JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC NUISANCE DECLARED BY THE WEST VIRGINIA SOLID WASTE MANAGEMENT ACT AND THE WEST VIRGINIA SOLID WASTE MANAGEMENT RULE; (4) JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC NUISANCES DECLARED BY SECTION V OF THE FAYETTE CO. COMPREHENSIVE PUBLIC NUISANCE ABATEMENT ORDINANCE, FAYETTE CO. ORDINANCE NO. 2018-001, PURSUANT TO SECTION XXII OF THAT ORDINANCE; (5) JUDICIAL ABATEMENT OF CONTINUING PUBLIC NUISANCE PURSUANT TO THE COMMON LAW OF WEST VIRGINIA; AND (6) RESITUTION FOR UNJUST ENRICHMENT.**

---

Plaintiff's Relator, Anthony Ciliberti, Esq., the duly-elected Fayette County Prosecuting Attorney, brings this civil action in the name of, and on behalf of, Plaintiff, THE COUNTY COMMISSION OF FAYETTE COUNTY, WEST VIRGINA (hereinafter:  "Governmental Plaintiff")[1] pursuant to the express authority conferred upon him by:  **(1)** W. Va. Code § 7-4-1 to attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceedings in which Fayette County is interested; and **(2)** Section **XXII** of the Fayette County

---

[1] W. Va. Code § 7-1-1 conveys to each County Commission within West Virginia the authority to sue and be sued in its own name.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **3** of **125** pages

Ordinance 2018-001[2], entitled "Fayette County Comprehensive Public Nuisance Abatement Ordinance" (hereinafter:  **"Public Nuisance Abatement Ordinance"),** a verified copy of which is attached as **Exhibit 1** and incorporated herein by reference**.**  The Governmental Plaintiff, by and through its Relator and undersigned counsel, makes the following allegations upon knowledge as to itself and upon information and belief as to all other matters:

## I.  <u>NATURE OF THIS CASE</u>:

1.    Beginning at least in the last decade of the 19th Century and continuing into the mid-20th Century, the real property located within the Johnson Fork-Loop Creek Watershed, all of which is situated within Fayette County, West Virginia, was the locus of **very extensive** underground coal mining and related mining operations and mining waste disposal on the surface of that real

---

[2]  Section **XXII** of Fayette Co. Ordinance 2018-002 provides, in relevant part:

With respect to an actual or imminently threatened **Public Nuisance,** or with respect to any act or condition which is detrimental to any beneficial uses within Fayette County of any **Natural Resource** owned by the State of West Virginia or Fayette County or held in trust by either for the benefit of present and future generations of the public, the Fayette County Prosecuting Attorney may, in addition to or in lieu of any other remedy available to Fayette County, bring a civil action in the name of the Fayette County Commission in any court of competent jurisdiction, and may seek in any such action any or all of the following forms of relief, and upon presentation to the court of the proof required by law on the required elements of it claims under applicable law, non-exclusively including this Ordinance, the court shall award the Fayette County Commission:

**(1)** an injunction in the form of a judicial public nuisance abatement order, requiring the liable party timely and competently to abate the **Public Nuisance** consistent with the applicable requirements of this Ordinance at their sole cost, under the supervision and oversight of the Fayette County Code Enforcement Agency;

    ***       ***       ***       ***       ***

**(3)** recovery of all **Abatement Action Costs** incurred by Fayette County with respect to such **Public Nuisance;**

    ***       ***       ***       ***       ***

**(6)** where appropriate, a declaratory judgment on liability for further **Abatement Action** Costs to be incurred by the County with respect to the **Public Nuisance** in accord with the provisions of Section **VI(g)** of this Ordinance; …

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **4** of **125** pages

property, virtually all of which was conducted in connection with the operations of the Powellton No. 6 and Island Coal mining Facilities within that watershed by Eastern Gas and Fuel Associates, a Massachusetts Business Trust (hereinafter:  "**EGFA**"), and **Remedial Defendant**[3] Eastern Associated Coal Corporation (hereinafter:  "**EACC**").

2.     Through their acts, omissions, violations of federal and state environmental and public health protection laws, and their creation, contributions to, maintenance of, and failure and refusals to abate conditions of Public Nuisance within the Johnson Fork-Loop Creek Watershed, and breaches of common law duties owed to Plaintiff and the public at large, **EGFA** and **Remedial Defendant EACC**, by **EGFA's** failure properly to seal the seams and portals resulting from its underground coal mining operations on the **Subject Property**, and by **EGFA's** and the Remedial Defendants' mining waste disposal operations on the **Subject Property** and uses of the land within that Watershed for improper purposes, caused and contributed to the **Release** of *Toxic*, noxious, harmful and hazardous contaminants into the subsurface soils, groundwater and surface waters of the **Subject Watershed**, which *Toxic* contaminants have become present and threaten to become further present at, on, under, and emanating from the **Subject Property** and throughout the **Subject Watershed** downgradient of the **Subject Property.**  These released, toxic contaminants contribute to the further degradation of Loop Creek, a "Section 303d" listed "impaired stream" of which Johnson Fork is a tributary.[4]

---

[3]  The term "**Remedial Defendants**" is defined in Section IV(u), *infra,* of this Complaint.

[4]   Under Section 303(d) of the federal Water Pollution Control Act, 33 U.S.C. § 1313 (hereinafter: "Clean Water Act" or "CWA"), states are required to evaluate all available water quality-related data and information to develop a list of waters that do not meet established Water Quality Standards ("WQS") (*i.e.,* impaired waters) and those that currently meet WQS, but that may fail to meet those standards in the next reporting cycle (*i.e.,* threatened waters).   States then must develop a Total

***The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.***
**v. *National Grid NE Holdings 2 LLC, et al.,* Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **5** of **125** pages

**3.**     By its illegal use of its surface estate appertaining to the real property comprising the **Site** within the Johnson Fork- Loop Creek Watershed during the time period of its ownership of that Surface Estate between June 7, 2003 until June 27, 2013, its maintenance of, and failure and refusals to abate, conditions of Public Nuisance on the surface of that real property within the Johnson Fork-Loop Creek Watershed, and its breaches of common law duties owed to Governmental Plaintiff and the public at large, **Remedial Defendant** Pardee and Curtin Realty, LLC contributed to and maintained:  **(1) Per Se** *Public Nuisances* within Fayette County; and **(2)** Public Nuisances under the common law of West Virginia within Fayette County.

**4.**     By its illegal use of its surface estate appertaining to the real property comprising the **Site** within the Johnson Fork- Loop Creek Watershed during the time period of its ownership of that Surface Estate at all times since June 27, 2013, through its past and ongoing acts, omissions, violations of federal and state environmental and public health protection laws, and its past and ongoing maintenance of, and failure and refusals to abate conditions of *Per Se* Public Nuisance within the Johnson Fork-Loop Creek Watershed, and breaches of common law duties owed to Plaintiff and the public at large, **Remedial Defendant** Quercus West Virginia, LLC contributed to and maintained and is continuing to contribute to and a maintain:  **(1)** Per Se Public Nuisances

---

Maximum Daily Load ("TMDL") for every pollutant/waterbody combination on the list.  An essential component of a TMDL is the calculation of the maximum amount of a pollutant that can occur in waterbody and still meet WQS.  Within the TMDL the state allocates this loading capacity among the various point sources and non-point sources.  Required permits for each point sources discharge are then issued through the federal and state implementation of the National Pollutant Discharge Elimination System ("NPDES") established pursuant to CWA §§ 301 and 402, 33 U.S.C. § 1311 and 1342.  Listing a waterbody-pollutant combination as "impaired" under the CWA has significant legal and environmental consequences.  It is interpreted by the public as justification to question whether it is safe to have any form of dermal contact with, or to fish within, the impaired waters, and it may hinder efforts to attract people or businesses to an area.  Businesses that discharge or seek to discharge effluent into impaired waters may also be subject to more stringent NPDES permit limits that either encourages relocation or discourages initially locating within an "impaired" watershed.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__**(S.D. WV)**
**Verified Complaint**
Page **6** of **125** pages

within Fayette County; and **(2)** Public Nuisances under the common law of West Virginia within Fayette County.

**5.**    For all the foregoing reasons and by each of their acts and omissions as set forth in detail in this Complaint, **EGFA**, and **Remedial Defendants EACC**, National Grid NE Holdings 2 LLC, Pardee and Curtin Realty LLC, and Quercus West Virginia, LLC are each a ***Person*** declared liable by Sections **VI(a)(1-9)(A)** and **(B)** of the **FCoWV Public Nuisance Abatement Ordinance** timely to:  **(1)** perform at each of their sole costs the **Abatement Actions** selected in compliance with Section **IX** of that Ordinance to secure appropriate protection of the Public Health, Safety, Welfare and the **Environment** with the respect to the endangerments presented by the ***Public Nuisance*** conditions to which each of them contributed; and **(2)** reimburse Fayette County for the **Abatement Action Costs** incurred and to be incurred in responding to the ***Public Nuisance*** conditions to which each of them contributed.

**6.**    The Governmental Plaintiff bring this civil action to:

**(a)**    obtain timely judicial abatement to be conducted at the sole cost of Remedial Defendants National Grid NE Holdings 2 LLC, **EACC**, **Hanover/CGL 60203**, **Continental/RDU 9433461**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC, jointly and severally, pursuant to this Court's Orders and with appropriate oversight and supervision by the Fayette Co. Code Enforcement Agency[5], the governmental agency charged with securing and overseeing appropriate abatement of ***Public Nuisance*** conditions within Fayette County, of conditions at and emanating from the **Subject Property** that present or may present an imminent and substantial endangerment to health or the environment within the **Subject Watershed** arising from the past handling of a solid waste or

---

[5]  The Fayette County Code Enforcement Agency was created by the County Commission of Fayette County, West Virginia by enactment of Section **VII** of the Fayette Co. Comprehensive Public Nuisance Abatement Ordinance, Fayette Co. Ordinance No. 2018-001, pursuant to the statutory mandate set forth in W. Va. Code § 7-1-3ff(c).

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_ **(S.D. WV)**
**Verified Complaint**
Page **7** of **125** pages

hazardous waste pursuant to Section 7002(a)(1)(b) of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as further amended, 42 U.S.C. § 6972(a)(1)(b) ("**RCRA**"); all in a manner consistent with the requirements of the **National Contingency Plan**[6];

(b)    to compel **Remedial Defendant** Quercus West Virginia, LLC to comply with the mandatory provision of Section 111(g) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("**CERCLA**"), 42 U.S.C. § 9611(g), requiring that it, as the current owner of the Surface Estate appertaining to the real property at the **Site** from which **Hazardous Substances** have been, and are continuing to be, released into the **Environment,** give appropriate newspaper notice to the potential injured parties.

(c)    secure timely judicial abatement of the on-going conditions within the **Subject Watershed** declared by the Fayette Co. Comprehensive Public Nuisance Abatement Ordinance, Fayette Co. Ordinance # 20180-001 (hereinafter: "**FCoWV Public Nuisance Abatement Ordinance**"), to be a *Public Nuisance*; all such judicial abatement binding and compelling **Remedial Defendants** National Grid NE Holdings 2 LLC, **EACC**, **Hanover/CGL 60203**, **C**ontinental/RDU **9433461**, **Travelers/Designated Policies**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC at their sole costs, jointly and severally, timely and competently to undertake under in full compliance with this Court's Orders and with appropriate oversight and supervision by the Fayette Co. Code Enforcement Agency (hereinafter:  **FCoWVCEA**"), all actions necessary to address and abate the continuing *Public Nuisance* conditions and imminent and substantial

---

[6]  Codified at 40 C.F.R., Part 300, the National Oil and Hazardous Substances Pollution Contingency Plan (hereinafter:  "**NCP**" or "**National Contingency Plan**"), was originally promulgated in 1968 and greatly expanded in 1972 by the Administrator of the U.S. Environmental Protection Agency pursuant to the Spill Response provisions of Section 311 of the federal Clean Water Act, 33 U.S.C. § 1321. Pursuant to the Congressional mandate in Section 105(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("**CERCLA**"), 42 U.S.C. § 9605(a), the **NCP** was substantially amended and re-promulgated in the 1980's and 1990's to address the **Responses** (*i.e.,* the precise scope and nature of the necessary and proper course of investigation and clean-up actions) appropriate to releases and threatened releases into the environment of hazardous substances that are the central focus of **CERCLA**.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__(**S.D. WV**)
**Verified Complaint**
Page **8** of **125** pages

endangerments to the public health, safety, welfare and the environment caused and contributed to by the past and ongoing acts and omissions for which remedial liability has been imposed upon them by Section **VI** of the **FCoWV Public Nuisance Abatement Ordinance**"), all in a manner consistent with the requirements of the **NCP** and Section **IX** of the **FCoWV Public Nuisance Abatement Ordinance**;

(d)   to secure timely judicial abatement of on-going conditions declared by the General Law of West Virginia to be a "public nuisance and clear and present danger to people"[7] as *Per Se* Public Nuisance conditions pursuant to the common law of West Virginia; all such judicial abatement binding and compelling **Remedial Defendants** National Grid NE Holdings 2 LLC, **EACC**, **Hanover/CGL 60203**, **Continental/RDU 9433461**, **Travelers/Designated Policies**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC at their sole costs, jointly and severally, to undertake, in full compliance with this Court's Orders and with appropriate oversight and supervision by the **FCoWVCEA**, all actions necessary to abate the **<u>continuing</u>** Public Nuisance conditions pursuant to the remedial liability imposed upon each **Remedial Defendant** by the common law of West Virginia;

(e)   to secure timely judicial abatement of on-going Public Nuisance conditions pursuant to the common law of West Virginia; all such judicial abatement binding and compelling **Remedial Defendants** National Grid NE Holdings 2 LLC, **EACC**, **Hanover/CGL 60203**, **Continental/RDU 9433461**, **Travelers/Designated Policies**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC at their sole costs, jointly and severally, to undertake, in full compliance with this Court's Order and with appropriate oversight and supervision by the Fayette Co. Code Enforcement Agency, all actions necessary to abate the **continuing** Public Nuisance conditions pursuant to the remedial liability imposed upon each such Defendant by the common law of West Virginia;

(f)   recover from **Remedial Defendants** National Grid NE Holdings 2 LLC, **EACC**, **Hanover/CGL 60203**, **Continental/RDU 9433461**, **Travelers/Designated Policies**,

---

[7]  W. Va. Code § 22-15-1(c)(1).

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  _2:21-cv-00307_ **(S.D. WV)**
**Verified Complaint**
Page **9** of **125** pages

Pardee and Curtin Realty LLC and Quercus West Virginia, LLC, jointly and severally, the ***Abatement Action Costs*** incurred and to be incurred by Fayette County in investigating and responding to the ***Public Nuisance*** conditions within and emanating from the **Subject Watershed** for which each such Defendant is, strictly[8] liable, jointly and severally[9], pursuant to Section **VI(a)(1-9)(B)** of the **FCoWV Public Nuisance Abatement Ordinance**;

(g) obtain a Declaratory Judgment that each **Insurer Defendant** is liable, subject only to the limitations of liability[10] within each liability insurance policy each such Defendant issued to **EACC** providing insurance coverage for any part of the time period of 1963 to March 31, 1987, jointly and severally to Fayette County for all liability imposed upon Defendant **EACC** by operation of law or assumed by it by contract or agreement as or for property damage, non-exclusively including the liability to pay for or perform required **Abatement Actions** and to reimburse Fayette County for all **Abatement Actions Costs** incurred and to be incurred in responding to the ***Public Nuisance*** conditions within the **Subject Watershed** pursuant to Sections **VI(a)(1-9)(A)** and **(B)**, **(g)** and **(j)** of the **FCoWV Public Nuisance Abatement Ordinance**;

(h) recover restitution under the law of Unjust Enrichment, for the benefits received by each **Remedial Defendant** resulting from the Governmental Plaintiff's incurrence of costs of responding to the harms to, loss of value of, and loss of water at the **Subject Property** that was caused by the acts and omissions of, and is the legal responsibility of, each of the **Remedial Defendants**;

---

[8]  Sections **VI(a)(1-9)(B)** and **(e)** of Fayette Co. Comprehensive Public Nuisance Abatement Ordinance, FCoWV Ordinance No. 2018-001.

[9]  Sections **VI(a)(1-9)(B)** and **(f)** of Fayette Co. Comprehensive Public Nuisance Abatement Ordinance, FCoWV Ordinance No. 2018-001.

[10]  As used herein by the Governmental Plaintiff, the term "limits of liability" refers not only to the "per occurrence" and aggregate limits of liability set forth in the declarations page of each insurance policy, as the same may be modified by endorsement, but also to:  **(1)** any deductible or self-insured retention that is an enforceable term or condition of the insurance policy; and **(2)** with respect to excess or umbrella liability insurance policies, the valid, applicable requirements of the insurance policy with respect to underlying insurance.

***The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.***
**v.** ***National Grid NE Holdings 2 LLC, et al.,*** **Case No.**  2:21-cv-00307, **(S.D. WV)**

**Verified Complaint**

Page **10** of **125** pages

(i)  recover from **Remedial Defendants** National Grid NE Holdings 2 LLC, **EACC,** **Hanover/CGL 60203, Continental/RDU 9433461, Travelers/Designated Policies,** Pardee and Curtin Realty LLC and Quercus West Virginia, LLC, jointly and severally, the Governmental Plaintiff's reasonable litigation costs, non-exclusively including its attorney fees and costs, expert witness fees and costs, and litigation costs incurred in obtaining such relief pursuant to **RCRA** § 7002(e), 42 U.S.C. § 6972(e) and Section **XXII(c)** of the **FCoWV Public Nuisance Abatement Ordinance**;

(j)  recover from **Remedial Defendants** National Grid NE Holdings 2 LLC, **EACC,** **Hanover/CGL 60203, Continental/RDU 9433461, Travelers/Designated Policies,** Pardee and Curtin Realty LLC and Quercus West Virginia, LLC, jointly and severally, appropriate prejudgment interest pursuant to West Virginia law and Sections **III(b)(6)** and **VI(a)(1-9)(B)** of the **Fayette Co. Public Nuisance Abatement Ordinance**; and

(k)  for such other relief as this Court may deem necessary and proper.

## II.  JURISDICTION AND VENUE:

7.    This Court has original jurisdiction over the subject matter of Count One herein [*i.e.,* Plaintiff's claim under **RCRA** § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B)] without regard to the amount in controversy or the citizenship of the parties pursuant to **RCRA** Section 7002(a), 42 U.S.C. § 6972(a), and 28 U.S.C. § 1331.

8.    This Court has **exclusive**, original jurisdiction over the subject matter of Count Two herein [*i.e.,* Plaintiff's "Citizen Suit" claim under **CERCLA** § 310(a)(1), 42 U.S.C. § 9659(a)(1)] without regard to the amount in controversy or the citizenship of the parties pursuant to **CERCLA** §§ 113(b) and 310(c), 42 U.S.C. §§ 9613(b) and 9659(c), and 28 U.S.C. § 1331.

9.    This Court has supplemental jurisdiction over the subject matter of Plaintiff's remaining causes of action herein under 28 U.S.C. § 1367 because those claims are so related to the causes

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **11** of **125** pages

of action asserted in Counts One and Two herein that they form the same case and controversy under Article III of the United States Constitution.

**10**.  Pursuant to **RCRA** § 7002(a), 42 U.S.C. § 6972(a), venue lies in this Judicial District, since a substantial part of the acts, omissions, and events which are described herein and the imminent and substantial endangerments to health and the environment asserted herein have occurred and are occurring within this federal judicial district, and those acts, omissions, events and endangerments which give rise to claims of the Governmental Plaintiff, including the **Discharges** and **Disposal** of **Solid Waste**, **Hazardous Wastes** and **Pollutants and Contaminants** into the *Environment* within the **Subject Watershed**, have occurred and are occurring in this federal judicial district, causing harmful impacts and endangerments within this federal judicial district.

**11.**  Pursuant to **CERCLA** § 310(b)(1), 42 U.S.C. § 9659(b)(1) venue also lies in this Judicial District since the violation of **CERCLA** § 111(g), 42 U.S.C. § 9611(g), alleged herein occurred and is continuing to occur in this Judicial District.

### III.   THE GOVERNMENTAL PLAINTIFF HAS FULFILLED ALL REQUIRED STATUTORY PREREQUISITES FOR THE COMMENCEMENT OF THIS CIVIL ACTION:

**12.**  In compliance with the requirements of **RCRA** § 7002(b)(2), 42 U.S.C. § 6972(b)(2), on October 8, 2019 the Governmental Plaintiff sent its "notice of endangerment," a copy of which is attached hereto as **Exhibit 2** and incorporated herein, to Defendants National Grid NE Holdings 2 LLC, and Quercus West Virginia, LLC, and to all required federal and West Virginia governmental officers and entities.

**13.**  In compliance with the requirements of **CERCLA** § 310(d), 42 U.S.C.§ 9659(d), on

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **12** of **125** pages

September 22, 2020 the Governmental Plaintiff sent its "notice of violation" of **CERCLA** § 111(g), a copy of which is attached hereto as **Exhibit 3** and incorporated herein, to Defendant Quercus West Virginia, LLC, and to all required federal and West Virginia governmental officers and entities.

**14.** More than 90 days have elapsed since the Governmental Plaintiff sent its Notice of Endangerment and its Notice of Violations regarding the claims at issue herein.

**15.** Neither the United States, the U.S. Environmental Protection Agency ("USEPA"), the State of West Virginia, nor the West Virginia Department of Environmental Protection ("**WVDEP**") have, as of the date of this Complaint: taken, commenced, or is diligently prosecuting any of the actions, incurred any of the costs, issued any of the Orders or entered into any of the Consent Decrees described in **RCRA** § 7002(b)(2)(B) or (C), 42 U.S.C. § 6972(b)(2)(B) or (C), or **CERCLA** § 310(d)(2), 42 U.S.C. § 9659(d)(2), with respect to any of the violations or endangerments at issue herein.

## IV.  **DEFINITIONS:**

**16.** Words used in this Complaint are intended to be taken and understood in their natural and ordinary sense unless this Complaint clearly indicates that a different meaning was intended. Unless otherwise provided herein, terms used in this Complaint that are defined in the **FCoWV Public Nuisance Abatement Ordinance** (indicated herein by both bolding and italics emphasis) shall have the meaning assigned to them in that Ordinance.  Whenever terms listed below are used in this Complaint, the following definitions shall apply:

    **a.**  The term "**CERCLA**" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 - 9675.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **13** of **125** pages

b. the term "**Discharge**" means the accidental or intentional spilling, leaking, pumping, pouring, emitting, emptying, or dumping of a **Hazardous Waste**, **Solid Waste**, or **Hazardous Substance** into or on any land or water;

c. Consistent with its definition in **CERCLA** § 101(29), 42 U.S.C. § 9601(29), and in **RCRA** § 1004(3), 42 U.S.C. § 6903(3), the term "**Disposal**" means the **Discharge**, deposit, injection, dumping, spilling, leaking, or placing of any **Solid Waste** or **Hazardous Waste** into or on any land or water so that such **Solid Waste** or **Hazardous Waste** or any constituent thereof, may enter the **Environment** or be emitted into the air or discharged into any waters, including ground waters;

d. The term "**Environment**" means any surface water, groundwater, soil water, drinking water supply, soil, land surface, subsurface strata, or ambient air within Fayette County;

e. Consistent with its definition in **CERCLA** § 101(9), 42 U.S.C. § 9601(9), the term "**Facility**" means:  **(A)** any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft; or **(B)** any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel;

f. Consistent with its definition in the **NCP**, 40 C.F.R. § 300.5, the terms "**Feasibility Study**" and "**FS**" shall each mean a study undertaken by, under order of, or under the oversight and supervision of, the **FCoWVCEA** to develop and evaluate options for an *Abatement Action* or *Remedial Action*, or both.  The **FS** emphasizes data analysis and is generally performed concurrently and in an interactive fashion with the **Remedial Investigation,** using data gathered during the **RI**.  The **RI** data are used to define the objectives of the *Abatement Action, Response Action,* or both, to develop *Abatement Action* or *Remedial Action* alternatives, and to undertake an initial screening and detailed analysis of the alternatives.  Each of these terms also refers to a report that describes the results of the study.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **14** of **125** pages

g.  The term "**Future Abatement Action Costs**" shall mean: **(1)** all *Abatement Action Costs,* non-exclusively including direct and indirect costs, that the **FCoWVCEA**, the Office of the Fayette County Prosecuting Attorney, or Fayette County, West Virginia incur in reviewing, commenting on, responding to, or developing plans, reports, technical memoranda and other items appropriate to the response to conditions at this **Site**, conducting community relations and implementing the Community Involvement Plan, providing technical assistance to community groups (if any), monitoring and overseeing the planning and performance of any part of the **Work,** or otherwise implementing, overseeing, or enforcing the **FCoWV Public Nuisance Abatement Ordinance** with respect to this **Site,** non-exclusively including payroll costs, contractor costs (including fees), travel costs, and laboratory costs; **(2)** *Response* costs incurred by the Fayette County Board of Health; and **(3)** Costs of *Response* and *Abatement Action Costs* incurred by Fayette County to:  **(i)** enforce **Institutional Controls**, if any, determined to be applicable to this Site, **(ii)** to secure access to property(ies) necessary and proper to accomplishment of appropriate abatement of the *Public Nuisance* conditions at and emanating from this **Site**, non-exclusively including costs and attorneys' fees and any monies paid to secure access (including the amount of just compensation paid).

h.  Consistent with its definition in **CERCLA** § 101(14), 42 U.S.C. § 9601(14), the term "**Hazardous Substance**" means:  **(A)** any substance designated pursuant to section 311(b)(2)(A) of the Federal Water Pollution Control Act; **(B)** any element, compound, mixture, solution, or substance designated pursuant to section 102 of this Act [*i.e.,* **CERCLA**]; **(C)** any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act (but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress); **(D)** any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act; **(E)** any hazardous air pollutant listed under section 112 of the Clean Air Act; and **(F)** any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 7 of the Toxic Substances Control Act.  The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **15** of **125** pages

substance under subparagraphs **(A)** through **(F)** of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas);

**i.**   Consistent with its definition in **RCRA** § 1004(5), 42 U.S.C. § 6903(5), and in Section **III(u)** of the **FCoWV Public Nuisance Abatement Ordinance**, the term "**Hazardous Waste**" means a **Solid Waste**, or combination of **Solid Wastes**, which because of its quantity, concentration, or physical, chemical, or infectious characteristics **may-**

   **(A)**   cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

   **(B)**   pose a substantial present or **potential** hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed;

**j.**   The term "**Institutional Controls**" means non-engineered instruments, such as legislative, administrative, or judicial legal controls, that help to minimize the potential for human or adverse ecological exposure to contamination or protect the integrity and effectiveness of an *Abatement Action* by limiting land or resource use.   Examples of **Institutional Controls** include easements and restrictive covenants, zoning restrictions, special building permit requirements, and well drilling restrictions or prohibitions.

**k.**   The term "**Insurance Policy**" means any policy of insurance, or part thereof, hold harmless agreement, or any contract to indemnify or to provide any guarantee of any kind with respect to the liability of any **Person,** that does or may provide any insurance coverage, including the provision of any legal defense of, or indemnification to, any *Person,* including but not limited to any and all insurance *Records,* whether or not **related to** insurance policies, whether those policies were placed, issued, quoted, canceled, or terminated,  and that has or may have a provision that provides or may provide defense or indemnity coverage for any actual or potential liability of any *Person* to any third party arising from any action, omission or condition on, at or under any real property within or comprising the **Site** which might have or might cause damage or injury to any

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
*v. National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__,**(S.D. WV)**
**Verified Complaint**
Page **16** of **125** pages

*Person* or the property of any *Person,* regardless of:  **(a)** how such coverage may be limited, excepted or conditioned, **(b)** whether such liability is for property damage, personal injury or otherwise, **(e)** whether such coverage is primary, excess, or umbrella in nature, **(d)** whether the policy follows form, (e) who issued the policy, and **(f)** whether or not the policy(ies), contract(s) or agreement(s) is or was terminated, canceled, bound, placed, or not renewed.  The term "**Insurance Policy**" also includes all rating agreements, renewal agreements, separately issued endorsements, and other *Records* that change, modify, add to, delete or supplement the terms of any **Insurance Policy** or demonstrate the existence or possible existence of any prior or additional **Insurance Policy(ies).**

l.   Consistent with its definition in federal **RCRA** Subtitle D regulations, 40 C.F.R. § 257.2, and in the West Virginia Solid Waste Management Rule, W. Va. C.S.R. § 33-1-2.66, the term "**Leachate**" means any liquid that has come into contact with, passed through or emerged from **Solid Waste** and contains soluble, suspended, or miscible materials removed from such waste;

m.   The terms "**National Contingency Plan**" and "**NCP**" each means the National Oil and Hazardous Substances Pollution Contingency Plan formally promulgated by the U.S. Environmental Protection Agency and codified at 40 C.F.R., Part 300, in accordance with Section 105 of **CERCLA,** 42 U.S.C. § 9605, as the same may be amended or repromulgated from time to time**.**

n.   The term "**Open Dump**" means:

(1)   consistent with its definition in **RCRA** § 1004(14), 42 U.S.C. § 9603(14) any *Facility* or site where **Solid Waste** is disposed of which is not a sanitary landfill which meets the criteria codified at 40 C.F.R, Part 257, and which is not a facility required to have a permit for disposal of hazardous waste;

(2)   consistent with its definition in W. Va. Code § 22-15-2, any *Facility* or site where **Solid Waste** is disposed in a manner that does not protect the *Environment;* or

(3)   consistent with its definition in the West Virginia Solid Waste Management Rule, W. Va. C.S.R. §§ 33-1-1 - 33-1-7, promulgated by **WVDEP** pursuant to its authority under W. Va. Code § 22-15-5, any site or location at which *Solid Waste* is disposed

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
*v. National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **17** of **125** pages

of which is declared to be an **Open Dump** by the following provisions of the West Virginia Solid Waste Management Rule:  W. Va. C.S.R. §§ 33-1-1.6 (solid waste disposed of at other than a permitted site); 33-1-7.2.a.1 (solid waste disposal location at which measure have not been taken to prevent the discharge of pollutants from the accumulated waste into the *Waters of the State*); 33-1-7.2.a (solid waste disposed of at other than a permitted site); and 33-1-7.2.a.1 (solid waste disposal location at which measure have not been taken to limit public access to the accumulated waste).

o.  Consistent with its definition in the federal **SMCRA** regulations, 30 C.F.R. § 701.5, the term "**Overburden**" shall mean material of any nature, consolidated or unconsolidated, that overlies a coal deposit, excluding topsoil and mining waste containing ore or minerals resulting from the extraction, beneficiation, or processing of coal.

p.  Consistent with its definition in **CERCLA** § 101(33), 42 U.S.C. § 9601(33), the term "**Pollutant or Contaminant**" shall include, but not be limited to, any element, substance, compound, or mixture, including disease-causing agents, which after release into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly from the environment or indirectly by ingestion through food chains, will or may reasonably be anticipated to cause death, disease, behavioral abnormalities, cancer, genetic mutation, physiological malfunctions (including malfunctions in reproduction) or physical deformations, in such organisms or their offspring; except that the term "pollutant or contaminant" shall not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of paragraph (14) [of **CERCLA** § 101(14)] and shall not include natural gas, liquefied natural gas, or synthetic gas of pipeline quality (or mixtures of natural gas and such synthetic gas);

q.  The term "**RCRA**" shall mean the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as further amended, 42 U.S.C. §§ 6901 - 6991m, as the same may be amended or re-enacted from time to time.

r.  Consistent with the relevant provisions of its definition in **CERCLA** § 101(22), 42 U.S.C. § 9601(22), the term "**Release**" means any spilling, leaking, pumping, pouring,

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **,(S.D. WV)**
**Verified Complaint**
Page **18** of **125** pages

emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant), but excludes:   **(A)** any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons; and **(B)** emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine . . . .;

**s.**   The terms "**relates to**" and "**related to**" shall each mean in any way, directly or indirectly, evidencing, demonstrating, describing, explaining, supporting, mentioning, discussing, commenting on, constituting, concerning, comprising, containing, reflecting upon, identifying, stating, depicting, illustrating, recording, or referring to the given subject.

**t.**   The term "**Remedial Defendants**" shall mean: **(1)** National Grid NE Holdings 2 LLC (as successor to the remedial liabilities imposed upon **EGFA** with respect to its acts, omissions alleged herein, and status as **Owner** or **Operator** of mining and mining waste *Disposal* **Facilities** within the **Subject Watershed** that existed or occurred on or before January 1, 1966); **(2)** Pardee and Curtin Realty LLC; **(3)** Quercus West Virginia, LLC; **(4)** Eastern Associated Coal Corporation, as a nominal party and not a real party in interest, solely to the extent of its undistributed assets, non-exclusively including the available proceeds from each of its liability insurance policies; **(5)** Hanover Insurance Company, solely to the extent of the available limits of liability under Hanover Insurance Company Commercial General Liability Insurance Policy Number CGL 60203 with respect to indemnification and other insurance coverage afforded to Eastern Associated Coal Corporation for all sums it shall be obligated to pay by reason of liability imposed upon it by law or assumed by it under contract or agreement for property damages, non-exclusively including the costs of performing any *Abatement Actions* and reimbursing Fayette Co. for *Abatement Action Costs* incurred and to be incurred in responding to the *Public Nuisance* conditions for which **EACC** is liable pursuant to applicable law, non-exclusively including the **FCoWV Public Nuisance Abatement Ordinance** caused by or arising out of each covered occurrence on or after 1963 (hereinafter sometimes referred

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**   2:21-cv-00307 **(S.D. WV)**

**Verified Complaint**
Page **19** of **125** pages

to as: "**Hanover/CGL 60203**"); and **(6)** Continental Insurance Company, solely to the extent of the available limits of liability under Continental Insurance Company Umbrella Excess Third Party Liability Insurance Policy Number RDU 9433461 with respect to indemnification and other insurance coverage afforded to Eastern Associated Coal Corporation for all sums it shall be obligated to pay by reason of liability imposed upon it by law or assumed by it under contract or agreement as defined by the term "ultimate net loss" within such policy on account of property damage, non-exclusively including the costs of performing any *Abatement Actions* and reimbursing Fayette Co. for *Abatement Action Costs* incurred and to be incurred in responding to the *Public Nuisance* conditions for which Eastern Associated Coal Corporation is liable pursuant to the applicable law, non-exclusively including **FCoWV Public Nuisance Abatement Ordinance**, caused by or arising out of each covered occurrence on or after 1963 (hereinafter sometimes referred to as: "**Continental/RDU 9433461**"); and **(7)** The Travelers Casualty and Surety Company (as successor in interest to Aetna Casualty and Surety Company), solely to the extent of the available limits of liability under Aetna Casualty and Surety Company Third Party Liability Insurance Policy Numbers 06AL013817SC, 06AL122094SCY 06AL1220SCY, 06AL125194SCY, 06AL127247SRAY, 06AL128702SRAY, 06AL131419SRAY, 06AL133503SRAY, 06AL133534SRA(Y), 06AL133562SRA(Y), 06AL133588SRA, 06AL230021SRA, and 06AL230063SCA with respect to indemnification and other insurance coverage afforded to Eastern Associated Coal Corporation for all sums it shall be obligated to pay by reason of liability imposed upon it by law or assumed by it under contract or agreement as defined by the terms and conditions within each such policy on account of property damage, non-exclusively including the costs of performing any *Abatement Actions* and reimbursing Fayette Co. for *Abatement Action Costs* incurred and to be incurred in responding to the *Public Nuisance* conditions for which Eastern Associated Coal Corporation is liable pursuant to the applicable law, non-exclusively including **FCoWV Public Nuisance Abatement Ordinance**, caused by or arising out of each covered occurrence during the policy period of each such policy (hereinafter sometimes referred to as: "**Travelers/Designated Policies**");

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.* **v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** ___2:21-cv-00307___, **(S.D. WV)**

**Verified Complaint**

Page **20** of **125** pages

**u.**   Consistent with its definition in the **NCP**, 40 C.F.R. § 300.5, the terms "**Remedial Investigation**" or "**RI**" each means the process undertaken by, under order of, or under the oversight and supervision of the **FCoWVCEA** or a court of competent jurisdiction to determine the nature and extent of the problem(s) presented by a *Release.*   The **RI** emphasizes data collection and site characterization and is generally performed concurrently and in an interactive fashion with the **Feasibility Study.**   The **RI** includes sampling and monitoring, as necessary, and includes the gathering of sufficient information to determine the necessity for *Remedial Action* or *Abatement Action* and properly and fully to support the evaluation of remedial alternatives.

**v.**   Consistent with its definition in **CERCLA** § 101(25), 42 U.S.C. § 9601(25), the terms "**Respond**" or "**Response**" each means remove, removal, remedy, and remedial action, as those terms are defined in **CERCLA** § 101, 42 U.S.C. § 9601;

**w.**   Consistent with its definition in **RCRA** § 1004(27), 42 U.S.C. § 6903(27), in the applicable provisions of W. Va. Code § 22-15-2(31), and in the applicable provisions of Section **III(ww)** of **FCoWV Ordinance 2018-001,** the term "**Solid Waste**" shall mean any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant or air pollution control facility, and other discarded material including solid, liquid, semisolid or contained gaseous material resulting from industrial, commercial, mining, agricultural operations, or from community activities, but does not include:

   **(1)**   solid or dissolved material in domestic sewage;

   **(2)**   any mixture of domestic sewage and other wastes that passes through a sewer system to a publicly-owned treatment works for treatment;

   **(3)**   industrial discharges which are point sources subject to permits under Section 402 of the federal Water Pollution Control Act, as amended; and

   **(4)**   materials subjected to in-situ mining techniques which are not removed from the ground as part of the extraction process.

**x.**   Consistent with relevant parts of its definition in the West Virginia Solid Waste Management Rule, W. Va. C.S.R. § 33-1-2.123, the term "**Solid Waste Facility**" means any system, facility, land, contiguous land, improvements on the land, structures or other

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**   2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **21** of **125** pages

appurtenances or methods used for processing, recycling or disposing of solid waste, including landfills, and solid waste disposal surface impoundments, and other facilities not herein specified.

**y.**   Consistent with its definition in the West Virginia Solid Waste Management Rule, W. Va. C.S.R. § 33-1-2.106, the term "**Runoff**" means any rainwater, **Leachate,** or other liquid that drains over land from any part of a **Solid Waste** *Facility.*

**z.**   The term "**Site**" means: **(1)** all geographical areas, sites, facilities and locations, both above ground and underground, that are within the Johnson Fork-Loop Creek watershed where the Public Health, Safety, Welfare or the **Environment** are or maybe adversely impacted by any condition of *Public Nuisance* existing within the Johnson Fork-Loop Creek watershed; and (2) any adjacent area within Fayette County where the Public Health, Safety, Welfare or the **Environment** are or maybe adversely impacted by any condition of *Public Nuisance* existing within or emanating from the Johnson Fork-Loop Creek watershed within Fayette County, West Virginia.

**aa.**   The terms "**Surface Mining Control & Reclamation Act**" and "**SMCRA**" shall each mean the Surface Mining Control and Reclamation Act, 33 U.S.C. §§ 1201 - 1328, as it may be amended from time to time.

**bb.**   The term "**Waste Materials**" shall mean: **(1)** any **Hazardous Substance***;* **(2)** any **Pollutant or Contaminant***;* or **(3)** any **Solid Waste**;

**cc.**   The term "**WVDEP**" shall mean the West Virginia Department of Environmental Protection and any successor departments or agencies of the State of West Virginia**.**

## V.   THE SITE, THE PARTIES & THEIR RELATIONSHIPS TO THE SUBJECT PROPERTY:

**a.**   The Site:

**17.**   The Johnson Fork of Loop Creek Watershed, which is a part of the Watershed of the greater Loop Creek, which is a tributary of the Kanawha River, is located entirely within Fayette County, WV.  The Johnson Fork Watershed, as used herein, is from the confluence with Loop

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **22** of **125** pages

Creek, at the community of Kincaid, WV (38° 2'17.35"N, 81°16'14.83"W), up-stream on Johnson

Fork in a southerly direction to the headwaters of Johnson Fork and includes all tributaries of

Johnson Fork, to the top of the watershed at Kingston Mountain (38° 0'5.72"N, 81°16'21.11"W)

(collectively, the "**Subject Watershed**").

**18.**   The Johnson Fork is a "navigable water" as that term is used in Section 502 of the Federal

Water Pollution Control Act (commonly known as the federal "Clean Water Act"),

33 U.S.C. § 1362, because it is "waters of the United States" as that term is defined in

40 C.F.R. § 122.2.   It is also "waters of West Virginia" as that term is defined in

W. Va. Code § 22-11-3.

**b.**   **The Governmental Plaintiff:**

**20.**   The Governmental Plaintiff herein is the County Commission of Fayette County, West

Virginia, which, pursuant to W. Va. Code § 7-1-1, is a public corporation that may sue and be sued

in its own name, and a political subdivision of the State of West Virginia.

**21.**   Pursuant to W. Va. Code § 7-1-3, the Governmental Plaintiff herein is vested "under rules

prescribed by law" with superintendence of the internal "police" (*i.e.,* public protection) and fiscal

affairs of Fayette County, a political subdivision of the State of West Virginia.

**22.**   Pursuant to W. Va. Code § 7-1-3kk, the Governmental Plaintiff herein is vested with the

following "Police Powers" of the State of West Virginia:

> In addition to all other powers and duties now conferred by law upon
> county commissions, **commissions are hereby authorized to enact
> ordinances, issue orders and take other appropriate and necessary
> actions for the elimination of hazards to public health and safety and
> to abate or cause to be abated anything which the commission
> determines to be a public nuisance.**  The ordinances may provide for a
> misdemeanor penalty for its violation.  The ordinances may further be
> applicable to the county in its entirety or to any portion of the county as

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**   2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **23** of **125** pages

considered appropriate by the county commission.

**Id.** [Bolding and underscoring emphasis added].

23.  In exercise of the Sovereign's "Police Powers" conveyed to it by W. Va. Code §§ 7-1-3, 7-1-3-ff and 7-1-3kk, on August 17, 2018 the Governmental Plaintiff herein, following its conduct of several public hearings on the proposed ordinance, duly enacted Fayette County Ordinance No. 2018-001, entitled "The Fayette County Comprehensive Public Nuisance Abatement Ordinance" (hereinafter:  "**FCoWV Public Nuisance Abatement Ordinance**").

**c.   National Grid NE Holdings 2 LLC [legal successor to the remedial liabilities imposed by RCRA § 7002(a)(1)(B) and the FCoWV Public Nuisance Abatement Ordinance on Eastern Gas and Fuel Associates (l.k.a. Eastern Associates) as a result of its acts or omissions on or before January 1, 1966]:**

24.  **Eastern Gas and Fuel Associates,** (Secretary of the Commonwealth of Massachusetts, Corporations Division File# T00299956), was a Voluntary Business Trust organized and declared under the law of the Commonwealth of Massachusetts on July 18, 1929 when the Massachusetts Gas Company and some units of Koppers Company of Pittsburgh formed a voluntary association under the name **Eastern Gas and Fuel Associates** (hereinafter sometimes referred to as **"EGFA").**

25.  Although it had conducted business in West Virginia for well over a decade, when changes in West Virginia corporations law first required it, **EGFA** applied to the West Virginia Secretary of State for authority to conduct business in the State of West Virginia, which authorization was granted by the West Virginia Secretary of State, effective April 28, 1947, and remained in effect until its application for qualified status in West Virginia was withdrawn effective May 23, 1968.

26.  At and after the time of its formation, **EGFA** consolidated and conducted the coal mining operations of the Massachusetts Gas Co. and the Koppers Company, specifically including coal

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**

**Verified Complaint**

Page **24** of **125** pages

mining operations in **Subject Watershed.**

27.  Beginning no later than the late 1920s, **EGFA** continuously conducted, until at least the mid-1950s, extensive underground coal mining operations throughout the **Subject Watershed,** which operations included very extensive underground coal mining, associated surface processing and transportation of extracted coal and **Overburden** from its Powellton No. 6 mine, and the creation, operation and maintenance of at least five (5) separate, associated piles of coal mining waste, each of which was constructed and maintained without a **Liner** and without any associated **Leachate** collection, control or monitoring system, on the surface of separate locations within the **Subject Watershed.**

28.  By Deed dated October 15, 1941 and recorded in the Office of the Fayette County Clerk of the County Commission, Koppers Company conveyed to **EGFA** fee simple title to all of the real property owned by Koppers Company in Fayette and Kanawha Counties, West Virginia, consisting of tens of thousands of acres, and specifically included all of the real property within the **JF-LC Watershed** upon or under which all of the **EGFA** coal mining facilities and surface piles of coal mining waste at issue herein are located (hereinafter:  "**Subject Property**").

29.  By the early 1950s, the underground mine works of the Powellton No. 6 coal mining facility spanned the entire east-west width of the **Subject Watershed** and entered well into the Armstrong Creek watershed, both wholly within Fayette County, WV, with miners entering those mine works daily from both the mining facilities on Johnson Fork and from a mine portal in McDunn, WV, more than two (2) miles to the East.

30.  The management of the operation of the Powellton No. 6 mine by **Eastern Gas and Fuel Associates** later expanded to include all operations of the underground coal mining facilities and mining waste management practices of the Island Coal Mine, also located within the

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307**, (S.D. WV)**

**Verified Complaint**

Page **25** of **125** pages

**Subject Watershed,** which was opened in approximately March 1944 to recover a long ridge of Powellton seam coal located on the opposite mountain of the Johnson Fork-Loop Creek watershed, and which was continuously operated until the early 1950s.

31.  At the height of the productivity of its Powellton No. 6 coal mine in approximately 1933, **Eastern Gas and Fuel Associates** employed approximately Thirteen hundred (1,300) workers at its mining facilities within the **Subject Watershed** producing approximately Thirty-five hundred (3,500) tons of coal **daily**.

32.  During the final days of its operation of its Powellton No. 6 mine (in approximately 1952) and its Island Coal mining facilities, **EGFA** produced from those facilities approximately Twelve hundred seventy-nine (1,279) tons of coal **daily**.

33.  **EGFA** ceased most of its coal mining operations at the Powellton No. 6 and Island coal mining sites in approximately 1952, but continuously maintained until at least 1963 a staff of managers and employees at its mining sites within the **Subject Watershed** to maintain the facilities and equipment remaining at those sites.

34.  By Special Warranty deed dated January 1, 1966 recorded in the Office of the Fayette County, West Virginia Clerk of the County Commission, **EGFA** conveyed fee simple title to all of its real property within Fayette County, West Virginia to **EACC**, a wholly owned subsidiary of **EGFA.**

35.  **EGFA** continued to operate several smaller coal mining and mining waste management operations within the Johnson Fork-Loop Creek watershed until the early 1960s.  On information and belief, all its mining operations in Fayette County ceased by 1965.

36.  Between the time of the commencement of its coal mining operations in the **Subject Watershed** and January 1, 1966, **EGFA** was the *Owner* and *Operator* of the Powellton # 6 coal

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**

**Verified Complaint**

Page **26** of **125** pages

mining *Facilities* within the **JF-LC Watershed** and of each of the five (5) surface piles of coal mining waste created by **EGFA** within the **Subject Watershed.**

**37.** Beginning at by 1929 and continuing until January 1, 1966, **EGFA** was the *Operator* of the Powellton # 6 coal mining *Facilities* within the **JF-LC Watershed** and of each of the five (5) surface piles of coal mining waste therein created by **EGFA.**

**38.** Beginning on or about October 15, 1941 and continuing until January 1, 1966, **EGFA** was the *Owner* of the Powellton # 6 coal mining *Facilities* within the **JF-LC Watershed** and of each of the five (5) surface piles of coal mining waste therein created by **EGFA.**

**39.** Continuously since their original creation, each of the five (5) surface piles of coal mining waste created by **EGFA** in the **Subject Watershed** have **Discharged** and **Released Hazardous Substances, Hazardous Wastes**, **Solid Waste**, **Pollutants and Contaminants,** and **Leachate** into the **Environment.**

**40.** The **Hazardous Substances, Hazardous Wastes, Solid Waste, Pollutants and Contaminants**, and **Leachate** continuously **Released** from each of the five (5) surface piles of coal mining waste created and maintained by **EGFA** within the **JF-LC Watershed** from the date of their creation until January 1, 1966 have commingled within the soils and groundwaters of the **Subject Watershed** with like *Hazardous Substances* and *Wastes Released* after January 1, 1966 from the coal mining *Facilities* and five (5) surface piles of coal mining waste piles created by **EGFA** within the **JF-LC** to form a single, indivisible harm to the Public Health, Safety, Welfare and the *Environment* at, within and emanating from the **Subject Watershed** for which no reasonable basis of apportioning such harm among the separate time-periods or sources of the *Released Hazardous Substances* and *Wastes* exists.

**41.** Effective April 28, 1989, **EGFA** formally changed its name as a Massachusetts Business Trust on file with the Massachusetts Commonwealth Secretary to **Eastern Enterprises**.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**

**Verified Complaint**

Page **27** of **125** pages

**42.** In 1990, **Eastern Enterprises** sold all of its stock holdings in Peabody Holding Company, Inc. and **MCBL** to HM Holdings, Inc. (hereinafter sometimes referred to as **"Hanson"**), an affiliate of Hanson PLC, among other parties.

**43.** In 1997 **MCBL** was merged into Peabody Holding Company, Inc. As a result of this merger, **MCBL** ceased to exist.

**44.** In 2000, KeySpan Corporation, a New York Domestic Business Corporation, (hereinafter sometimes referred to as **"KeySpan"**) acquired **Eastern Enterprises** by way of a stock purchase agreement.

**45.** Effective May 31, 2002, KeySpan merged **Eastern Enterprises,** including its assets and liabilities, into a wholly owned subsidiary of one of its subsidiaries, KeySpan New England, LLC, a Massachusetts Limited Liability Company (Massachusetts Commonwealth Secretary Business Number 041270730).

**46.** In 2007, **KeySpan,** including KeySpan New England, LLC, merged with, and into, National Grid US 8 Inc., a wholly owned subsidiary of National Grid plc.

**47.** Effective April 14, 2008, KeySpan New England, LLC formally changed its name to **National Grid NE Holdings 2 LLC.**

**48.** At no time during its period of ownership of the land upon which all five (5) surface piles of coal mining waste created by **EGFA** within the **JF-LC Watershed** are located was **EGFA** under any compliance schedule imposed by any responsible officer of the State of West Virginia or of Fayette County with respect to any of the five (5) surface piles of coal mining waste created by **EGFA** with the **JF-LC Watershed.**

**d.** **Eastern Associated Coal, LLC (f.k.a. Eastern Associated Coal Corporation) (hereinafter sometime referred to as "EACC"), now a defunct and dissolved West Virginia limited**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**

**Verified Complaint**

Page **28** of **125** pages

**liability company, solely to the extent of its undistributed assets, non-exclusively including the available coverage and proceeds from its liability insurance policies, named herein only as nominal Respondent and not as a Real Party in Interest:**

49.  Following the conclusion of its coal mining operation in Fayette County, **EGFA** created under West Virginia law a wholly owned subsidiary named **Eastern Associated Coal Corporation** (West Virginia Secretary of State Organization Number 8825) which received its corporate charter from the West Virginia Secretary of State effective March 27, 1963.

50.  During the period beginning in 1963 and concluding by January 1, 1966, **EGFA** transferred to **EACC** all its coal properties, coal mining operations, coal marketing, and mining related assets, specifically including its fee simple title to the real property in Fayette County, West Virginia, specifically including the real property within the **Subject Watershed**.

51.  As part of the corporate transfer of its mining properties and its mining-related assets from **EGFA** to **EACC**, **National Grid NE Holdings 2 LLC** asserts that: **(i) EACC** assumed all of the liabilities of **EGFA** arising out of the coal mining and coal marketing operations of **EGFA**; and **(ii) EACC** repeatedly thereafter represented to the U.S. Supreme Court, U.S. Internal Revenue Service, and U.S. Securities and Exchange Commission that it was formed to be the successor to the **EGFA** Coal Division.

52.  Sometime after creating **EACC**, **EGFA** created another wholly owned subsidiary, Coal Properties Corporation (hereinafter sometimes referred to as "**CPC**"), a Delaware corporation, and subsequently transferred all of its **EACC** stock to **CPC**.

53.  In 1987, **EGFA** entered into a Stock Exchange Agreement with Peabody Holding Company, Inc., a New York corporation authorized to conduct business in the State of West Virginia by the West Virginia Secretary of State effective July 24, 1989 (WV Secretary of State

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 29 of 125 pages

Organization Number 127183) pursuant to which **EGFA** exchanged 100% of the common stock of **CPC** for 15.01% of the common stock of Peabody Holding Company, Inc.  Simultaneously, **EGFA** entered into a separate stock exchange agreement with Mid-Continent Barge Lines, Inc. (hereinafter sometimes referred to as "**MCBL**"), an entity affiliated with Peabody Holding Company, Inc., pursuant to which **EGFA** exchanged 100% of the preferred stock of **CPC** for 15.01% of the common stock of **MCBL**.  Upon consummation of these stock exchanges, **EGFA** no longer owned any interest in **CPC** directly.

54.  By a Stock Purchase Agreement dated March 31, 1987, **EACC** was purchased by Peabody Holdings Company, Inc.

55.  By Special Warranty Deed dated June 27, 2003, recorded in the Office of the Fayette County Clerk of the County Commission (DB 596/102) on that same date, **EACC** sold the surface estate, including timber rights, pertaining to its real property in Fayette County, WV, specifically including the surface estate of its real property in the **Subject Watershed**, to Pardee and Curtin Realty LLC, a Delaware Limited Liability Company.

56.  Also in 2003, **EACC** conveyed the coal, oil, and gas underlying its real property within Fayette County, West Virginia, and the residue to Pardee Minerals, LLC, a Delaware Limited Liability Company.

57.  Effective August 1, 2005, **EACC** elected to convert from a corporation into a West Virginia Limited Liability Company and was qualified by the West Virginia Secretary of State to do business in West Virginia under the name **Eastern Associated Coal, LLC** (hereinafter sometimes referred to as "**EACLLC**").

58.  In 2007 Peabody transfered 13 percent (13%) of its coal reserves, specifically including all of its ownership of its subsidiary **EACLLC**, into a new company, Patriot Coal Corporation, a

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **30** of **125** pages

Delaware Corporation that was qualified to do business in West Virginia (WV Secretary of State Business Organization Number 259884) effective August 7, 2007.

59.   As part of the Liquidation Plan approved by U.S. Bankruptcy Court for the Eastern District of Virginia in *In RE Patriot Coal Corporation, Debtor,* Case No. 15-32450 (KLP) (Bankr. E.D. VA 2015) (*i.e.,* Patriot Coal Corporation's second and final case brought under Chapter 11 of the U.S. Bankruptcy Code), the remaining assets of **EACLLC** were distributed and **EACLLC** was dissolved and its legal existence terminated by the West Virginia Secretary of State effective June 10, 2016.

60.   Beginning sometime in 1963 until June 27, 2003, **EACC** was the ***Operator*** of the Powellton # 6 coal mining ***Facilities*** within the **JF-LC Watershed** and of each of the five (5) surface piles of coal mining waste therein created by **EGFA**.

61.   Between no later than January 1, 1966 until June 27, 2003, **EACC** was the ***Owner*** of the Powellton # 6 coal mining ***Facilities*** within the **JF-LC Watershed** and of each of the five (5) surface piles of coal mining waste therein created by **EGFA.**

62.   During its periods of ownership or operation of the five (5) surface piles of coal mining waste created by **EGFA** within the **JF-LC Watershed** and the real property upon which they are located, **EACC** did not take any action to abate any of the adverse impacts on the health or the ***Environment*** within the **JF-LC Watershed** that had resulted and were continuing to result during and after its period of ownership or operation of those **Facilities** from the past and on-going **Releases** of **Hazardous Substances**, **Hazardous Wastes**, **Solid Wastes**, ***Toxic* Wastes** and **Leachate** from each of those surface piles of mining waste.

63.   At no time during its period of ownership of the land upon which all five (5) surface piles of coal mining waste created by **EGFA** within the **JF-LC Watershed** are located was **EACC**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **31** of **125** pages

under any compliance schedule imposed by any responsible officer of the State of West Virginia

or of Fayette County with respect to any of the five (5) surface piles of coal mining waste.

**e.**   **Pardee and Curtin Realty LLC:**

**64.**   From June 7, 2003 until June 27, 2013 Pardee and Curtin Realty LLC, a Delaware Limited

Liability Company qualified to do business in West Virginia (effective October 3, 2001) and a

subsidiary of Pardee and Curtin Holding Company LLC, a Delaware Limited Liability Company,

owned and managed the surface estate appertaining to the real property in Fayette County, West

Virginia that specifically includes the real property upon the surface of which all five (5) of the

coal mining waste piles created by **EGFA** are located.

**65.**   By Special Warranty Deed dated June 27, 2013 and filed in the Office of the Fayette

County Clerk of the County Commission, Pardee and Curtin Realty, LLC conveyed its interest in

the Surface Estate appertaining to the real property in Fayette County, West Virginia that

specifically includes the real property within the **Subject Watershed** that specifically includes the

real property upon the surface of which all five (5) of the coal mining waste piles created by **EGFA**

are located, to Quercus West Virginia, LLC.

**66.**   Between June 7, 2003 until June 27, 2013, Pardee and Curtin Realty LLC was the ***Owner***

of the Surface Estate appertaining to the real property upon which each of the five (5) surface piles

of coal mining waste created by **EGFA** is located within the **JF-LC Watershed.**

**67.**   During its period of ownership of the Surface Estate appertaining to the land upon which

each **EGFA** created each of the five (5) surface piles of coal mining waste, Pardee and Curtin

Realty LLC did not take any action to abate any of the adverse impacts on the health or the

***Environment*** within the **JF-LC Watershed** that had resulted and were continuing to result from

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **32** of **125** pages

the past and on-going **Releases** of **Hazardous Substances**, **Hazardous Wastes**, **Solid Wastes**, **Pollutants and Contaminants**, *Toxic* **Wastes**, and **Leachate** from each of the five (5) surface piles of coal mining waste.

68.  At no time during its period of ownership of the Surface Estate  appertaining to the real property upon which each of the five (5) surface piles of coal mining waste created by **EGFA** within the **JF-LC Watershed** are located was Pardee and Curtin Realty LLC under any compliance schedule imposed by any responsible officer of the State of West Virginia or of Fayette County with respect to any of those five (5) surface piles of coal mining waste.

**f.    Quercus West Virginia, LLC:**

69.  Quercus West Virginia, LLC, a Delaware Limited Liability Company qualified to do business in West Virginia continuously since June 10, 2013 (West Virginia Secretary of State Business Organization Control Number 9A0TQ), has owned the Surface Estate appertaining to the real property in Fayette County, West Virginia that specifically includes the real property at issue in the **Subject Watershed**, and continues to own that Surface Estate as of the date of this Complaint.

70.  During its period of its ownership of the Surface Estate appertaining to the real property upon which the five (5) surface piles of coal mining waste created by **EGFA** within the **Subject Watershed** are located, Quercus West Virginia, LLC took no action to abate or require the abatement of any of the adverse impacts on the health or the **Environment** within the **Subject Watershed** that had resulted and is continuing to result from the past and on-going **Releases** of **Hazardous Substances**, **Hazardous Wastes**, **Solid Wastes**, **Pollutants and Contaminants**, *Toxic* **Wastes**, and **Leachate** from each of the five (5) surface piles of coal mining waste within

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **33** of **125** pages

the **Subject Watershed**.

71.   At no time during its period of ownership of the Surface Estate appertaining to the real property upon which the five (5) surface piles of coal mining waste created by **EGFA** within the **Subject Watershed** are located was Quercus West Virginia, LLC under any compliance schedule imposed by any responsible officer of the State of West Virginia or of Fayette County with respect to any of those five (5) surface piles of coal mining **Wastes**.

**(g)    Hanover Insurance Company, solely to the extent of the available limits of liability under Hanover Insurance Company Commercial General Liability Insurance Policy Number CGL 60203 with respect to indemnification and other insurance coverage afforded to EACC for all sums it shall be obligated to pay by reason of its liability imposed upon it by law or assumed by it under contract or agreement for all damages and expenses as defined by the term "property damage" within such policy arising out of each occurrence on or after January 1, 1966 (hereinafter:  "Hanover/CGL 60203"):**

72.   Hanover Insurance Company issued Commercial General Liability Insurance Policy Number CGL 60203 to **EGFA** providing, subject to the terms and conditions of the policy, insurance coverage to **EACC** for all sums it shall be obligated to pay by reason of liability imposed upon it by law or assumed by it under contract or agreement for damages and expenses as defined by the policy's term on account of property damage caused by or arising out of each occurrence during the period of the policy, June 24, 1964 to June 24, 1967.

73.   Hanover Insurance Company Policy Number CGL 60203 provides liability insurance coverage, subject to the terms and conditions of the policy, to **EGFA** and each of its subsidiary companies.

74.   At all times during the coverage period afforded by Hanover Insurance Company Policy Number CGL 60203, Eastern Associated Coal Corporation was a wholly-owned subsidiary of Eastern Gas and Fuel Associates.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 34 of 125 pages

75. By January 1, 1966, **EACC** had become both *Owner* and *Operator* of all former **EGFA** mining **Facilities** and real estate within the **Subject Watershed** and had assumed all of the liability of **EGFA** arising out of its prior mining operations within the **Subject Watershed.**

76. **Notwithstanding any other provision of this Complaint, the remedial liability asserted against Hanover/CGL 60203 herein is subject the provisions of Section VI(i) of the Fayette County Comprehensive Public Nuisance Abatement Ordinance, Fayette Co. Ordinance No. 2018-001, and is expressly limited to the available proceeds of the liability insurance coverage afforded by Hanover Insurance Company Comprehensive General Liability Insurance Policy Number CGL 60203 issued respectively to Eastern Associated Coal Corporation and providing coverage for: (i) the liability imposed upon EACC by operation of law for all property damage resulting from occurrences during the policy period; and (ii) the liability for property damage resulting from occurrences during the policy period imposed upon Eastern Gas and Fuel Associates by operation of law, which liability was assumed by EACC.**

**(h)** **Continental Insurance Company, solely to the extent of the available limits of liability under Continental Insurance Company Umbrella Excess Third Party Liability Insurance Policy Number RDU 9433461 with respect to indemnification and other insurance coverage afforded to Eastern Associated Coal Corporation for all sums it shall be obligated to pay by reason of liability imposed upon it by law or assumed by it under contract or agreement for damages and expenses as defined by the term "ultimate net loss" within such policy on account of property damage caused by or arising out of each occurrence on or after January 1, 1966 (hereinafter sometimes referred to as: "Continental/ RDU 9433461")**

77. Continental Insurance Company issued Umbrella Excess Third Party Liability Insurance Policy Number RDU 9433461, a copy of which is attached hereto as **Exhibit 4** and incorporated herein, to **EGFA** and to each of its subsidiary companies providing, subject to the terms and conditions of the policy, umbrella excess liability insurance coverage to **EACC** for all sums it shall

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307*, (S.D. WV)*
**Verified Complaint**
Page 35 of 125 pages

be obligated to pay by reason of liability imposed upon it by law or assumed by it under contract or agreement for damages and expenses as defined by the policy's term "ultimate net loss" on account of property damage caused by or arising out of each covered occurrence during the period of the policy, June 24, 1964 to June 24, 1967.

78. At all times during the coverage period afforded by Continental Insurance Company issued Umbrella Excess Third Party Liability Insurance Policy Number RDU 9433461, Eastern Associated Coal Corporation was a wholly-owned subsidiary of Eastern Gas and Fuel Associates.

79. By January 1, 1966, **EACC** had become both *Owner* and *Operator* of all former **EGFA** mining **Facilities** and real estate within the **Subject Watershed** and had assumed all of the liability of **EGFA** arising out of its prior mining and mining waste disposal operations within the **Subject Watershed.**

80. **Notwithstanding any other provision of this Complaint, the liability asserted against Continental/RDU9433461 herein is subject to the provisions of Section VI(i) of the Fayette County Comprehensive Public Nuisance Abatement Ordinance, Fayette Co. Ordinance No. 2018-001, and is limited to the available proceeds of the respective insurance coverage afforded by Continental Insurance Company Umbrella Excess Third Party Liability Insurance Policy Number RDU 9433461 issued to Eastern Associated Coal Corporation on account of: (i) the liability imposed upon EACC by operation of law for all property damage arising out of occurrences during the policy period; and (ii) the liability for property damage resulting from occurrences during the policy period imposed upon Eastern Gas and Fuel Associates by operation of law, which liability was assumed by EACC.**

**(h)   The Travelers Casualty and Surety Company (successor in interest to Aetna Casualty and Surety Company), solely to the extent of the available limits of liability under Aetna**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__, **(S.D. WV)**
**Verified Complaint**
Page 36 of 125 pages

**Casualty and Surety Company Third Party Liability Insurance Policy Numbers 06AL013817SC, 06AL122094SCY 06AL1220SCY, 06AL125194SCY, 06AL127247SRAY, 06AL128702SRAY, 06AL131419SRAY, 06AL133503SRAY, 06AL133534SRA(Y), 06AL133562SRA(Y), 06AL133588SRA, 06AL230021SRA, and 06AL230063SCA with respect to indemnification and other insurance coverage afforded to Eastern Associated Coal Corporation for all sums it shall be obligated to pay by reason of liability imposed upon it by law or assumed by it under contract or agreement for damages and expenses as defined by the term "ultimate net loss" within such policy on account of all property damage arising out of each occurrence during the policy period of any of those policies (hereinafter sometimes referred to as:  "Travelers/Designated Policies")**

**81.**   Upon information and belief, Aetna Casualty and Surety Company issued Third Party Liability Insurance Policy Numbers 06AL013817SC, 06AL122094SCY 06AL1220SCY, 06AL125194SCY, 06AL127247SRAY, 06AL128702SRAY, 06AL131419SRAY, 06AL133503SRAY, 06AL133534SRA(Y), 06AL133562SRA(Y), 06AL133588SRA, 06AL230021SRA, and 06AL230063SCA to **EGFA** and to each of its subsidiary companies providing, subject to the terms and conditions of the policy, liability insurance coverage to **EACC** for all sums it shall be obligated to pay by reason of liability imposed upon it by law or assumed by it under contract or agreement for damages and expenses as defined by the terms of each of those policies on account of property damage caused by or arising out of each covered occurrence during the policy periods of any of those liability insurance policies; all of which policies incepted after January 1, 1966.

**82.**   At all times during the coverage periods afforded by each of the aforementioned Aetna Casualty and Surety Company liability insurance policies, Eastern Associated Coal Corporation was a wholly-owned subsidiary of Eastern Gas and Fuel Associates.

**83.**   By January 1, 1966, **EACC** had become both *Owner* and *Operator* of all former **EGFA** mining **Facilities** and real estate within the **Subject Watershed** and had assumed all of the liability of **EGFA** arising out of its prior mining and mining waste disposal operations within the **Subject**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** ___2:21-cv-00307___, **(S.D. WV)**
**Verified Complaint**
Page **37** of **125** pages

Watershed.

84.  Notwithstanding any other provision of this Complaint, the liability asserted against Travelers/Designated Policies herein is subject to the provisions of Section VI(i) of the Fayette County Comprehensive Public Nuisance Abatement Ordinance, Fayette Co. Ordinance No. 2018-001, and is limited to the available proceeds of the insurance coverage afforded by Travelers/Designated Policies issued to Eastern Associated Coal Corporation with respect to:  (i) the liability imposed upon EACC for property damage resulting from occurrences during the policy period by operation of law; and (ii) the liability for property damage resulting from occurrences during the policy period imposed upon Eastern Gas and Fuel Associates by operation of law, which liability was assumed by EACC

## VI.  FACTUAL ALLEGATIONS COMMON TO ALL COUNTS:

a.  The Surface Waters and Groundwaters within the Johnson Fork Watershed in Fayette County, WV Are *Waters of the State* Held in Trust by the State of West Virginia for the Beneficial Use of Present and Future Generations of the Public:

85.  W. Va. Code § 22-11-3 defines the terms "Water Resources," "Water" and "Waters" of West Virginia for the purposes of the West Virginia Water Pollution Control Act, W. Va. Code, Chapter 22, Article 11 as:

> [A]ny and all water on or beneath the surface of the ground, whether percolating, standing, diffused or flowing, wholly or partially within this state, or bordering this state and within its jurisdiction, and includes, without limiting the generality of the foregoing, natural or artificial lakes, rivers, streams, creeks, branches, brooks, ponds (except farm ponds, industrial settling basins and ponds and water treatment facilities), impounding reservoirs, springs, wells, watercourses and wetlands

86.  Consequently, the surface waters and groundwaters within the **Subject Watershed** in Fayette County, West Virginia are "Waters of West Virginia."

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_ **(S.D. WV)**
**Verified Complaint**
Page 38 of 125 pages

87. With respect to its waters, the State of West Virginia has clearly stated its public policy to protect the beneficial uses of those waters for present and future generations of the public:

> **(a)** It is declared to be the public policy of the State of West Virginia to maintain reasonable standards of purity and quality of the water of the State consistent with **(1)** public health and public enjoyment thereof; **(2)** the propagation and protection of animal, bird, fish, aquatic and plant life; and **(3)** the expansion of employment opportunities, maintenance and expansion of agriculture and the provision of a permanent foundation for **healthy** industrial development.

> **(b)** It is also the public policy of the State of West Virginia that the water resources of this State with respect to the quantity thereof be available for reasonable use by all of the citizens of this State.

WV Water Pollution Control Act, W. Va. Code § 22-11-2 [Bolding emphasis added]. Further, West Virginia law provides:

> The West Virginia Legislature further finds that it is the public policy of the State that the water resources of the State be available for the benefit of the citizens of West Virginia, **consistent with and preserving all other existing rights and remedies recognized in common law or by statute**, **while also preserving the resources within its sovereign powers for the common good.**

WV Water Resources Protection and Management Act, W. Va. Code § 22-26-1(b)(2) [Bolding emphasis added].

88. West Virginia has been equally clear in declaring its public policy to protect the beneficial uses of its groundwaters for present and future generations of the public:

> [**T**]**he Legislature establishes that it is the public policy of the State of West Virginia to maintain and protect the State's groundwater so as to support the present and future beneficial uses and further to maintain and protect groundwater at existing quality where the existing quality is better than that required to maintain and protect the present and future beneficial uses.** Such existing quality shall be maintained and protected unless it is established that (1) the measures necessary to preserve existing quality are not technically feasible or economically practical and (2) a change in groundwater quality is justified based upon economic or societal objectives. **Such a change shall maintain and protect groundwater quality so as to support the present and future beneficial uses of such groundwater.**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **39** of **125** pages

West Virginia Groundwater Protection Act, W. Va. Code § 22-12-2 (b) [Bolding emphasis added].

b. **The Mining Facilities and Their Mining and Mining Waste Management Practices within the Subject Watershed:**

89. **EGFA** created and operated within the **Subject Watershed** underground coal mines, including the Powellton Number 6 Mine and the Island Mine, loadout facilities, material handling operations, and coal mining waste disposal areas within the Johnson Fork-Loop Creek Watershed from the early 20th century into the 1950's in the Powellton seam of coal.

90. Additionally, the West Virginia Geologic and Economic Survey ("WVGES") identifies Peabody Coal as operating an underground mine in the Powellton seam of coal on Johnson Fork within the Johnson Fork-Loop Creek Watershed.

91. On information and belief, the underground mine operated for some time by Peabody Coal within the **Subject Watershed** is the Powellton #6 mine originally operated by **EGFA**.

92. In 1966 **EGFA** created **EACC** as a wholly owned subsidiary and transferred all of its mining assets and mining liabilities, specifically including its mine land holdings and mining operation within the **JF-LC Watershed**, to **EACC**. On March 31, 1987, **EACC** was purchased by Peabody Coal, which thereafter conducted its mining operations within the **JF-LC Watershed** through its **EACC** subsidiary.

93. Although the Powellton No.6 was a very large coal mine that extended into other watersheds, on information and belief all coal from it and from the Island Mine was extracted to, processed in, and transported from within the **Subject Watershed**.

94. The following maps, created by the West Virginia Geologic and Economic Survey with labeling added by the Governmental Plaintiff, present a true and accurate portrayal of the geographic relationship of the mining operations within the **Subject Watershed** with relations to

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307_ **(S.D. WV)**
**Verified Complaint**
Page 40 of 125 pages

the other principal geographic features of that watershed:





**95.** Continuously during their operations within the **JF-LC Watershed, EGFA** and

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_**(S.D. WV)**
**Verified Complaint**
Page **41** of **125** pages

Defendant **EACC** managed, handled, stored, treated, **Disposed** of and **Released** into the **Environment** at least the following **Hazardous Substances**, **Hazardous Wastes**, hazardous waste constituents, **Solid Waste**, and **Leachate** at and from each of the five (5) the coal mining waste dumps and other locations within its mining *Facility*:

A.  **Sulfate**, which is an indicator of adverse environmental impacts to surface waters from mining.  The USGS reports background concentrations in WV streams to be less than 25 mg/L.  The concentration of Sulfate in streams within the **JF-LC Watershed** are much higher, and data indicates sulfate concentrations exceed the level **WVDEP** considers a likely stressor to aquatic life;

B.  **Arsenic** is a **Hazardous Substance**, a **RCRA** statutory **Hazardous Waste**, a **Pollutant and Contaminant**, a federal CWA Priority Pollutant and CWA Toxic Pollutant under CWA § 307, 33 U.S.C. § 1317, and a **RCRA** toxicity characteristic contaminant (D004) under 40 C.F.R. § 261.24.  Arsenic has been found in the groundwater in the Page-Kincaid PSD wellhead protection area within the **JF-LC Watershed**.  Inorganic arsenic has been recognized as a human poison since ancient times and is a carcinogen.  Arsenic is a well-documented human carcinogen affecting numerous organs.  The cancers that have been associated with Arsenic include cancer of the bladder, lungs, skin, kidney, nasal passages, liver, and prostate.  USEPA set the arsenic standard for drinking water at 10 ppb (or 0.010 parts per million). Arsenic exerts its toxicity by inactivating up to 200 enzymes, especially those involved in cellular energy pathways and DNA synthesis and repair.  Acute arsenic poisoning is associated initially with nausea, vomiting, abdominal pain, and severe diarrhea.  Encephalopathy and peripheral neuropathy are reported as effects of arsenic poisoning.  Arsenic compounds cause short-term and long-term adverse effects in individual plants and animals and in populations and communities of organisms. water at 10 ppb (or 0.010 parts per million).  Arsenic is a teratogen and carcinogen that can traverse placental barriers and produce fetal death and malformations in many species of mammals.  Many species of freshwater biota are adversely affected by high concentrations of arsenic or various organ arsenicals.  Adverse effects of Arsenic include death and

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 42 of 125 pages

malformations of toad embryos, growth inhibition of algae, mortality of amphipods and gastropods, and behavioral impairment of goldfish.

C. **Cadmium** is a **CWA** Priority Pollutant and a CWA Toxic Pollutant under **CWA** § 307, 33 U.S.C. § 1317, and a **RCRA** toxicity characteristic contaminant (D006) under 40 C.F.R. § 261.24.   Cadmium concentrations in groundwater within the **JF-LC Watershed** exceed the federal Safe Drinking Water Act Maximum Contaminant Level ("MCL").  Cadmium is a non-essential metal with no biological function in aquatic animals.  In addition to acute effects such as mortality, chronic exposure to cadmium can lead to adverse effects on growth, reproduction, immune and endocrine systems, development, and behavior dysfunction in aquatic organisms.  Kidney damage has long since been described to be the main problem for humans chronically exposed to cadmium, and cadmium exposure is associated with bone damage.  There is some proof that cadmium exposure can cause cancer.

D. **Iron**:   Exceedances of federal Safe Drinking Water Act standards for iron are documented within the Page-Kincaid PSD groundwater source area on Johnson Fork, and iron precipitates have been observed associated with coal-waste dumps within the watershed.  Precipitation of ferric hydroxide may result in a complete blanketing of the stream bottom, adversely affecting both macroinvertebrates and fish.  Because the gill surface of the fish tends to be alkaline, soluble ferrous iron can be oxidized to insoluble ferric compounds which then cover the gill lamellae and inhibit respiration. At a low water temperature and in the presence of iron, iron-depositing bacteria will multiply rapidly on the gills and further contribute to the oxidation of ferrous iron compounds. Their filamentous colonies cover the gills.  The precipitated iron compounds and tufts of the iron bacteria reduce the gill area available for respiration, damage the respiratory epithelium and may thus suffocate the fish.  In a similar toxic action, iron compounds can precipitate on the surface of fish eggs which then die due to a lack of oxygen.

E. **Manganese** is another metal that is widely distributed in **AMD** mine drainage, including within the **AMD** drainage within the **JF-LC Watershed**.  Manganese can be present in a variety of forms and compounds and complexes with organic compounds. Manganese is persistent and can be carried for long distances downstream of a source

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
*v. National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page 43 of 125 pages

of mine drainage. Manganese precipitates along with siltation significantly lower macroinvertebrate species diversity and change stream community structure. Manganese is an essential trace element in humans that can elicit a variety of serious toxic responses upon prolonged exposure to elevated concentrations either orally or by inhalation. The central nervous system is the primary target. Because of the greater bioavailability of manganese from water, USEPA has set a chronic and sub-chronic RID for drinking water of 0. 005 mg/kg/day.

**F. Selenium** has been found in discharges associated with the coal mining waste piles within the **JF-LC Watershed**. Selenium is a **CWA** Toxic Pollutant under **CWA** § 307, 33 U.S.C. § 1317, and **CWA** Priority Pollutant. Selenium bioaccumulates in the aquatic food chain and chronic exposure in fish and aquatic invertebrates can cause reproductive impairments (*e.g.*, larval deformity or mortality). Selenium can also adversely affect juvenile growth and mortality. Selenium is also toxic to waterfowl and other birds that consume aquatic organisms containing excessive levels of selenium. Selenium is toxic to humans at high concentrations, with symptoms of selenium poisoning including gastrointestinal disturbances, discoloration of the skin and decayed teeth.

96.   Once *Released* into the *Environment*, these **Waste Materials**, together with increased pH of **AMD Releases**, continue to exist in a manner in which they enter into and migrate through either or both groundwater or surface water, contaminating those publicly-owned natural resources and *Waters of the State*.

97.   The groundwater underlying the coal mining waste piles on the surface of the **Subject Property** with the **JF-LC Watershed** in Fayette County is hydraulically connected to areas of known surface water and groundwater contamination both within and downgradient of the **JF-LC Watershed**.

98.   Both the subsurface mining and the related mining and mining waste disposal operations conducted, maintained, or allowed to remain on the surface of the land within the **Subject**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **44** of **125** pages

**Watershed** by each of **EGFA**, and **Remedial Defendants EACC**, Pardee and Curtin Realty LLC, and Quercus West Virginia, LLC disturbed the hydrogeological environment within the **Subject Watershed** by changing hydraulic conductivity, secondary porosity, vertical connectivity, and geochemistry within the waters of that Watershed. Each such mining and mine waste disposal operations, or allowance of the continuing use of that land for purpose of maintaining the five (5) surface piles of mining waste, at, on and under the **Subject Property** caused and contributed to, and continue to cause and contribute to, the **Release** and **Discharge** of the mining waste **Pollutants and Contaminants** into the **Environment** which led to, and continues to lead to, the generation and **Release** of *Toxic* **Acid Mine Drainage ("AMD")** at and emanating from each of the Defendants' historical, current, and improperly abandoned and closed mining an mining waste disposal **Facilities** at, on and under the **Subject Property**. All such **Released AMD** contains increased acidity, iron, manganese, aluminum, iron hydroxide, sulfuric acid, and numerous other inorganic contaminants which seriously injure or destroy plant and animal life and endanger human health.

99.  Each of the mining and mine waste disposal operations by, or the allowance of the continuing use of that land for purpose of maintaining the five (5) surface piles of mining waste, at, on and under the **Subject Property** by, **EGFA**, and **Remedial Defendants EACC**, Pardee and Curtin Realty LLC, and Quercus West Virginia, LLC increased aeration within the layers in and around the mined seams on the **Subject Property**. This aeration in effect jump-started and accelerated the oxidation of iron and sulfur minerals through chemical and biological processes. While normally stable, sulfide and iron minerals are oxidized by microorganisms at reaction rates several orders of magnitude greater than non-biologically mediated processes. Thus, while many of the elements required for oxidation of these minerals have been present since these layers were

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__, **(S.D. WV)**
**Verified Complaint**
Page 45 of 125 pages

originally laid down, the introduction of air and more water into the subsurface through each of the such mining and mining waste disposal operations, and each such continued allowance of use of the land within the **Subject Watershed** for maintenance of the five (5) surface piles of mining waste within the **Subject Watershed**, greatly increased the rates at which these minerals are oxidized and are dissolved in groundwater by stimulating biological activity that continues to this day.  Also, each such mining waste disposal practices and each allowance of the continuing use of the land within the **Subject Watershed** to maintain those five (5) surface piles of mining waste at, on and under the **Subject Property** similarly has increased, and continues to increase, the rates at which these mining waste **Pollutants and Contaminants** are introduced into the **Environment**.

100.  Each of **EGFA's** and Defendant **EACC's** mining **Facilities** and mining and mining waste disposal operations at, on and under the **Subject Property** created or contributed to conditions that have not been adequately controlled or mitigated at, on and under the **Subject Property** and within the **Subject Watershed** by **Remedial Defendant's EACC**, Pardee and Curtin Realty LLC or Quercus West Virginia, LLC during or after such mining operations, non-exclusively including unsealed and improperly sealed voids, open and abandoned tunnels and shafts, and subsidence which are in and of themselves hazardous to public welfare and safety, and which have been and remain a significant source of **AMD** in the **Subject Watershed**.

101.  Additionally, each of **EGFA's** and Defendant **EACC's** mining **Facilities** and mining operations at, on and under the **Subject Property** created or contributed to fracture zones associated with heaving of mine floors and roof falls that, in turn, cause or contribute to vertical fracturing, thereby connecting strata vertically from below the lowest mine works to the surface and greatly increasing secondary porosity in the mined area.  From a water supply standpoint, this fracturing dramatically changed the natural hydrogeologic system (flow of water within the

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__, **(S.D. WV)**
**Verified Complaint**
Page **46** of **125** pages

environment) - from what was once a system dominated by shallow local aquifers defined by local topography to one in which vertical and horizontal connectivity is vastly increased.  This increase in fracturing and vertical and horizontal preferential pathways also has contributed, and continues to contribute, to significant adverse changes in local geochemistry, increased porosity, changes in groundwater flows and volumes, and increased contact area between solutes and solvents (*i.e.,* water).  Accordingly, each of **EGFA's** and **Remedial Defendant EACC's** mining **Facilities** and operations at, on and under the **Subject Property** has increased, and continues to increase, the connectivity of water contaminated by each of their mining activities to the surrounding groundwater and surface water environment within the **Subject Watershed**.

102.  Each of **EGFA's** and **Remedial Defendant EACC's** mining activities in the **Subject Watershed** were conducted above drainage (*i.e.*, up-gradient of Johnson Fork) in the Powellton seam of coal; mining of which is notorious for contaminating groundwater and surface waters with *Toxic* **Pollutants and Contaminants** if either or both appropriate controls are not utilized throughout, during and after the coal mining process, or mining wastes are disposed above drainage in a manner that does not afford adequate protection of the **Environment**.  Neither **EGFA** or any of the **Remedial Defendants** properly utilized such controls, and **EGFA** and **Remedial Defendants EACC,** Pardee and Curtin Realty LLC, and Quercus West Virginia, LLC either **Disposed** of mining waste in unlined **Facilities** and without use of any **Leachate** control or collection system, including within the mine works and in unlined waste "gob piles", on the **Subject Property**, or allowed the continuing use of the surface of the land within the **Subject Watershed** for the purpose of maintaining such mining waste disposal **Facilities**; all of which are above drainage.

103.  **EGFA's** and Defendant **EACC's** past mining of the coal seams on the **Subject Property**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page 47 of 125 pages

and within the **Subject Watershed** without implementation of adequate **AMD**-mitigation measures and controls to prevent and mitigate adverse impacts on the **Environment** continue to be a source of **Solid Waste**, **Hazardous Waste** and **Hazardous Substance** contamination in the **Subject Watershed.**  It is through creation of the unsealed or improperly sealed, mined coal seams and use of unlined mining waste disposal sites within the **Subject Watershed** by **EGFA** and Defendant **EACC** that mining waste has been further exposed to air and water at and emanating from the mining **Facilities**, which exposure generated **AMD Solid Waste** and **Hazardous Waste** that caused or contributed to the disruption in the geological and hydrologic balance within the **Subject Watershed**.  The allowance of the continued use of the land within the Subject Watershed to maintain each of the five (5) unlined surface piles of coal mining waste located with that Watershed by each of **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC during each of their respective periods of ownership contributed to that same generation and **Release** of **AMD Solid Waste** and **Hazardous Waste** that caused or contributed to that same disruption in the geological and hydrologic balance within the **Subject Watershed**. Without adequate and effective mitigation and control measures, these disruptions in the geological and hydrologic balance within the **Environment** within the **Subject Watershed** have caused or contributed to, and continue to cause or contributes to, the comingling of *Toxic* mine waste materials and oxidation of materials to create Acid Mine Drainage ("**AMD")** and its release into and **Disposal** at and within the Johnson Fork Watershed.

104.  **AMD** contaminated water originates in the altered environmental conditions in the mined coal seams and surface piles of mining waste and migrates through the seams and adjacent rock layers and into the groundwaters and surface waters of the Johnson Fork Watershed.  The **AMD** and mining waste materials **Released** from these altered pathways are freed to comingle with

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 48 of 125 pages

**AMD** contamination **Released** from the mining waste piles and unlined ditches on the **Subject Property** and to further cause and contribute to the environmental degradation of the **Subject Watershed**.  Johnson Fork is a tributary of Loop Creek, which is listed on the West Virginia Water Pollution Control Act, W. Va. Code, Chapter 22, Article 11, Section 303(d) List ("WV 303d") of "impaired waters" and has a completed Total Maximum Daily Load plan ("TMDL")[11] established by **WVDEP** for the Upper Kanawha River Watershed and approved by USEPA.

   c.   <u>The Surface Coal Waste Dumps within the JF-LC Watershed and Their Substantial, Adverse Impact on the that Surface and Groundwaters within that Watershed</u>:

   105.  **EGFA** created and each of Defendants **EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC maintained during their respective periods of ownership of the **Subject Property** (or the Surface Estate appertaining to the real property comprising the **Subject Property**) each of the five (5) coal mining waste dumps on the surface of the land within the **JF-LC Watershed**.  These mining waste dumps were not constructed, or maintained or operated, in a way in which the **Environment** is protected, including the protection of groundwater.

   106.  Each of the five (5) coal mining waste dumps on the surface of the land within the **JF-LC Watershed** received waste from mining and coal handling and processing activities.  These coal mining waste dumps are unlined and were constructed and have been maintained without any **Leachate** control or collection system; therefore, some of the **Wastes** flowing through them is *Discharged* into the surrounding groundwater system.  All *Discharges* from the coal mining waste dumps into the groundwater system are not now, and never have been, permitted by any authorized

---

[11]  A "TMDL" is the calculation of the maximum amount of a pollutant allowed to enter a waterbody so that the waterbody will meet and continue to meet legally applicable water quality standards for that particular pollutant.  A TMDL determines a pollutant reduction target and allocates load reductions necessary to achieve that target to each of the contributing source(s) of that pollutant.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page 49 of 125 pages

officer, agency or department of the United States or of the State of West Virginia.  These mining

waste disposal areas are above drainage, therefore groundwater in contact with or flowing through

these coal mining waste dumps is also connected to surface water within the **JF-LC Watershed**.

107.  Groundwater and surface water within the **JF-LC Watershed** associated with these coal

mining waste dumps is continuously and adversely impacted by mining-related **Pollutants and

Contaminants** and **Wastes**, which contribute to the impairment of the beneficial uses of the

groundwater and surface water within the **JF-LC watershed** from other operations.

108.  **WVDEP** describes the coal mining waste dumps within the **JF-LC Watershed** as "Coal

Refuse Piles".  The West Virginia Surface Mining Reclamation Rule, WV C.S.R. § 38-2-2.24

defines "Coal Refuse Site" as "a deposit of coal processing waste or underground development

waste."  Further, that Rule, at WV C.S.R. § 38-2-2.23, defines the term "Coal Processing Waste"

as "materials which are separated and wasted from the product coal during its physical or chemical

processing, cleaning or concentrating."

### d.  <u>Past Facility Investigations of the Coal Mining Waste Dumps within the JF-LC Watershed</u>**:**

109.  Based upon its investigation of the coal mining waste dumps within the **JF-LC

Watershed**, the **FCoWVCEA** has determined that there exists within the **JF-LC Watershed** five

(5) surface piles principally composed of coal processing wastes or underground development

waste resulting from coal mining, physical coal cleaning, and coal preparation operations (*e.g.*,

culm, gob, *etc.*), and each of those five (5) coal mining waste dumps contain discarded coal, matrix

material, clay, and other organic and inorganic material.

110.  The **Wastes** contained within and emanating from each of the surface coal mining waste

dumps within the **JF-LC Watershed** are discarded material, including solid, liquid, and

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_ **(S.D. WV)**
**Verified Complaint**
Page 50 of 125 pages

semisolids, resulting from the extraction, beneficiation or processing of coal mining. None of the surface coal mining waste dumps within the **JF-LC Watershed** are comprised either exclusively, primarily of **Overburden**. The following photographs of the coal mining waste pile on the surface of the land within the **Subject Watershed** identified by **WVDEP** as "PAD WV004926" were taken by D. Scott Simonton, Ph.D., P.E., a Special Investigator of the **FCoWVCEA**, on May 31, 2019. The first (1st) photograph below displays coal waste and "Red Dog" waste (*i.e.,* waste resulting from a earlier fire within the Gob Pile) on the Spruce Hollow (Fox) Coal Refuse Pile. The second photograph below displays coal waste on the surface of the eastern most Gob Pile identified by **WVDEP** as "PAD WV002374". Both of the photographs below are a fair and accurate representation of what each displays:

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **51** of **125** pages



*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__**(S.D. WV)**

**Verified Complaint**

Page **52** of **125** pages



*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307**, (S.D. WV)**

**Verified Complaint**

Page **53** of **125** pages

111. **FCoWVCEA** review of **WVDEP** records of mining waste dumps located within the **JF-LC Watershed** discloses that **WVDEP** determined that there are two (2) "Problem Area Descriptions" ("PADs") relating to mining waste dumps within that watershed. **WVDEP** records indicate these 2 areas of mine-waste dumping within the **Subject Watershed** contain five (5) separate mining waste "gob" piles. Those same **WVDEP** records indicate that **WVDEP** assigned Problem Area Description (PAD) numbers to the 2 areas: PAD WV004926 Spruce Hollow (Fox) Refuse Pile (1 gob pile) and WV002374 Johnson Fork Refuse Pile (4 gob piles). A purpose of the PAD is to score sites for potential reclamation under the WV Abandoned Mined Lands ("AML") program.

112. **WVDEP** evaluated the Johnson Hollow mining waste piles in 1987. While **WVDEP** shows 4 piles for PAD WV002374 in current on-line mapping, its reporting document appears to only evaluate one (1) of the piles on the western side of Johnson Fork. The pile is described as 1.4 acres approximately 10 feet thick, or about 22,000 cubic yards. The **WVDEP** reporting document indicates that the biggest threat from this pile is a slope stability issue.

113. The Spruce Hollow coal mining waste pile was evaluated by **WVDEP** in 1995. The site of this coal mining waste pile is described as a five (5) acre gob pile with an average thickness of eight (8) feet, or roughly 64,000 cubic yards. This **WVDEP** report states that this coal mining waste pile resulted from mining in the 1940's and 1950's. This **WVDEP** report raised a concern regarding slippage of the pile into the adjoining stream, creating a dam in the stream that could eventually fail, creating a hazard for those downstream. The **WVDEP** 1995 scoring matrix indicates a potential (a score of 5 out of 10) for water quality impacts.

114. In May 2019, a **FCoWVCEA** site inspection of the coal mining waste piles in the **JF-LC Watershed** was conducted by D. Scott Simonton, Ph.D., P.E., a senior and experienced

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__**(S.D. WV)**
**Verified Complaint**
Page 54 of 125 pages

Environmental Engineer and duly-appointed **FCoWVCEA** Special Investigator.   This site inspection was conducted on the PAD Spruce Hollow (Fox) Coal Refuse Pile (identified by **WVDEP** as PAD WV004926) and 2 of the 4 Johnson Fork Coal Refuse Piles(the southernmost and easternmost) (all 4 of which Piles are collectively identified by **WVDEP** as PAD WV002374). Consequently, the **FCoWVCEA** has determined that:

    **A.** There exists at each coal mining waste pile within the **JF-LC Watershed** one or more "point source," as that term is defined in the **CWA** § 502(14), 33 U.S.C. § 1362, discharges of **Leachate** and **Runoff** to *Waters of the State* and to "navigable waters," as that term is defined in **CWA** § 502(7), 33 U.S.C. § 1362(7).

    **B.** There is a very short, direct and certain hydraulic connection to **JF-LC Watershed** surface waters from the groundwater underlying each such coal mining waste pile.

    **C.** The coal mining waste dumps within the **JF-LC Watershed** are not lined, have no associated **Leachate** collection system or groundwater monitoring systems in place, and consist primarily of coal mining wastes and not **Overburden**;

    **D.** The Spruce Hollow (Fox) coal mining Refuse Pile (**WVDEP** PAD WV004926) within the **JF-LC Watershed** is partially located within the watercourse of a perennial stream;

    **E.** The *Discharge* of **Leachate** associated with each of these coal waste piles to both surface water and groundwaters in the **JF-LC Watershed** has had since the original creation of each of these coal waster piles, and is continuing to have, a substantial adverse impact on surface water and groundwater quality and on the beneficial uses of surface and groundwater within the **JF-LC Watershed**.

    **115.** In the case of PAD WV004926, the Spruce Hollow (Fox) Refuse Pile is immediately adjacent to and partially within the stream channel of a Perennial Stream.  In the case of the other four (4) coal waste piles within the **JF-LC Watershed**, each of these coal waste piles are very close to or immediately adjacent to the stream channel of a Perennial Stream.

    **116.** In all cases, the unlined sides and bottoms of each of the five (5) coal mining waste piles

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 55 of 125 pages

within the **JF-LC Watershed** are porous, and allow some of the **Solid Waste**, including **AMD** contaminated **Leachate** and some of the mining **Wastes** those wastewaters are holding, to seep through and enter into the groundwater at and emanating from each of those mining waste piles.

**117.** The **Leachate** and **Wastes** *Discharged* from each of the coal mining waste piles on the surface of the **Subject Property** within the **Subject Watershed** travel the very short distance from the unlined bottoms of the coal mining waste piles into the alluvial aquifer and then traverses within the aquifer the very short distances to the surface waters within the **JF-LC Watershed.** Often after precipitation events, the **AMD** contaminated **Leachate** emanating directly from these coal mining waste piles *Discharges* through ditches and gullies on the surface of the land directly to adjacent surface waters as **AMD** contaminated springs.  The photograph below, which displays both a "seep" on the surface of the easternmost mining waste pile on the **Subject Property** identified by **WVDEP** as "PAD WV004926" that is **Discharging Runoff** and **Leachate** into a gulley formed by that surface **Discharge** that conveys the **Runoff** and **Leachate** to surface waters within the **Subject Watershed**, was taken by D. Scott Simonton, Ph.D., P.E., a Special Investigator of the **FCoWVCEA**, on May 31, 2019.  The photograph below is a fair and accurate representation of what it displays:

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__**(S.D. WV)**
**Verified Complaint**
Page **56** of **125** pages



**118.** The valley aquifer system within the **JF-LC Watershed** is directly below and hydraulically connected to each of the unlined coal mine waste piles. Because each of these coal mining waste piles are unlined there is virtually no separation between the **AMD** contaminated **Leachate** generated within and *Discharged* **from** them and the alluvial groundwater system within the **JF-LC Watershed**. This now-contaminated groundwater is directly hydraulically connected

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **57** of **125** pages

back to the surface water of the **JF-LC Watershed** in each case located very proximately downgradient of these coal mining waste piles.

119.  The Loop Creek watershed is "biologically impaired" based on the narrative water quality criterion set forth in the West Virginia Water Pollution Control Act regulations, 47 W. Va. C.S.R. § 2–3.2.i, which prohibits the presence of wastes in state waters that cause or contribute to significant adverse impacts on the chemical, physical, hydrologic, and biological components of aquatic ecosystems.  The streams suffering these adverse impacts from coal mining operations and from the existing coal mine waste dumps in the **JF-LC Watershed** are receiving waters of Johnson Fork.

120.  The **FCoWVCEA** has determined that elevated levels of various *Toxic* **Pollutants and Contaminants** in groundwater and surface water associated with the coal mining waste dumps within the **JF-LC Watershed** are similar to elevated contaminant levels in the Page-Kincade PSD source water monitoring reported within the last several years.  Sampling indicates that coal mining waste dumps in the **JF-LC Watershed** are adversely affecting surface water and groundwater, and render the groundwater within the **JF-LC Watershed** unfit for drinking and dermal contact purposes without significant and expensive treatment:

> **A.**  Laboratory analysis indicates the presence of contaminants associated with mine-waste in the waters influenced by these mine-waste dumps.
>
> **B.**  Sulfate was analyzed in water associated with the Spruce Hollow gob pile and the easterly Johnson Fork gob pile.  Sulfate concentrations indicate obvious, adverse coal mining impacts.
>
> **C.**  High iron concentrations (above 300 ug/L), high manganese (above 50 ug/L), and the presence of arsenic, beryllium and cadmium – especially *Toxic* metals – are particularly troublesome and indicative of generally poor water quality associated with the mine-waste dumps.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 58 of 125 pages

121. Within the last several years, Cadmium has been found in the groundwater from within the Well-head Protection Area of the Page-Kincade Public Service District ("PSD") (previously the public water system for a significant portion of the residents and businesses within the **JF-LC Watershed** whose source water is **JF-LC Watershed** groundwater) within the J**F-LC Watershed** above the Maximum Contaminant Level ("MCL") allowed by the federal and West Virginia Safe Drinking Water Acts.

122. The creation and the maintenance without any abatement of the significant, adverse environmental impacts resulting from the past and on-going *Discharges* of *Hazardous Substances* and **Solid Waste** from these coal mining waste dumps on the surface of the land within the **JF-LC Watershed** have resulted in, and is continuing to contribute to, substantial, adverse impacts to groundwater and surface water quality within that watershed, including increases of iron and manganese concentrations well above that which is naturally occurring.

e. <u>Environmental Conditions within the JF-LC Watershed</u>:

123. Barring other influences, the flow of **AMD** contaminated water within the **JF-LC Watershed** would be expected to follow natural gradients. The natural gradients for contaminated groundwater in the **JF-LC Watershed** would be into the surface water and valley floor groundwater systems and stream beds. At the hillside/valley floor interface, contaminants from individual mines and coal waste piles will commingle with contaminants introduced from upgradient mines and waste piles, creating a single indivisible plume of **AMD** contaminants in the valley floor sediments, groundwater and surface water system.

124. The unabated, unsealed and inadequately sealed coal mine portals and underground mine shafts themselves and the improperly *Disposed* of mining waste material on the surface of the

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **59** of **125** pages

**Subject Property** has been and continues to be the primary sources of *Toxic* AMD contaminants in the **JF-LC Watershed**.  It is through the mined coal seams and the surface coal mining waste dumps that air, water and disruptions in the hydrologic balance originate.  **AMD** contaminated groundwater originates in the unabated, unsealed and poorly sealed coal mine portals and underground mine shafts, and from **Leachate *Discharges*** from coal-waste dumps and migrates through the coal seams and adjacent rock layers and into the groundwaters and surface waters.

125.  The aquifer underlying each of the coal mining waste dumps within the **JF-LC Watershed** contains less than 10,000 mg/l total dissolved solids.

126.  Cadmium in the groundwater within the "solid waste boundary," as that term is defined in 40 C.F.R. § 257-3.4(c)(5), of each of the coal mining waste piles within the **JF-LC Watershed** exceeds the Maximum Concentration Limit ("MCL") for Cadmium set forth in Appendix I to 40 C.F.R., Part 257.

127.  Each of the coal mining waste **Disposal** sites within the **JF-LC Watershed** have since their creation introduced and are continuing to introduce Cadmium into the groundwater within the **JF-LC Watershed**.

128.  Each of the coal mining waste piles within the **JF-LC Watershed** are now being, and have been since their construction and first use, maintained and allowed to operate in a manner that causes and contributes to contamination of the groundwater within the **JF-LC Watershed** beyond "the solid waste boundary," as that term is defined in 40 C.F.R. § 257-3.4(c)(5), of each of the coal mining waste piles within the **JF-LC Watershed**.

129.  None of the coal mining waste dumps within the **JF-LC Watershed** are now or ever have been under a "Compliance Schedule" approved by the **WVDEP** Cabinet Secretary or any other responsible officer of the State of West Virginia or of Fayette County.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 60 of 125 pages

**130.** Neither the placement nor **Disposal** of any of the coal mining waste in any of the coal mining waste piles in the **JF-LC Watershed** has ever been authorized by or undertaken in conformance with a permit issued pursuant to W. Va. Code Chapters Twenty-two, Twenty-two-a, or Twenty-two-b.

**131.** From an environmental engineering standpoint, there exists not only a reasonable probability, but also complete certainty that each of the coal mining waste piles within the **JF-LC Watershed** is currently causing, and will, until properly abated, continue to cause significant adverse impact upon the quality and significantly and adversely impair the beneficial uses of the surface water therein.

**132.** There exists not only a reasonable probability, but also complete certainty that each of the coal mining waste piles within the **JF-LC Watershed** is currently causing, and will, until properly abated, continue to cause a significant, adverse impact upon groundwater quality within the **Subject Watershed**.

**133.** Each of the coal mining waste piles in the **JF-LC Watershed** is now and has been continuously since their creation *Discharging*, spilling, leaking, or otherwise placing *Hazardous Substances,* **Solid Waste** and **Leachate** into and on land and water within the **Subject Watershed** so that such **Solid Waste** or any constituent thereof may enter the *Environment* or be emitted into the air, or *Discharged* into any waters, including groundwaters, without any specific authorization by permit issued by any authorized officer, agency, or department of the United States or of the State of West Virginia.

**134.** Each of the coal mining waste piles within the **JF-LC Watershed** is located within three hundred (300) feet of a Perennial surface stream.

**135.** No protective measures are now in place or have ever been taken at any of the coal mining

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 61 of 125 pages

waste piles within the **JF-LC Watershed** to prevent the ***Discharge*** of pollutants from the accumulated **Wastes** into the ***Waters of the State*** (*e.g.*, measures to prevent **Runoff** into surface water bodies or the infiltration of **Leachates** into local aquifers).

136.  No protective measures are now in place or have ever been taken at any of the coal mining waste piles within the **JF-LC Watershed** to limit public access to the accumulated waste (*e.g.*, the erection of fencing to surround the accumulated waste).

f.  <u>Impact of the Coal Mining Waste Piles within the JF-LC Watershed on the Public Health, Safety, Welfare and the *Environment*</u>:

137.  Each of the five (5) coal mining waste piles within the **Subject Property** is a manmade accumulation of refuse or debris located on private lands within Fayette County, which is unsafe, unsanitary, dangerous or detrimental to the Public Health, Safety or Welfare.

138.  Each of the coal mining waste piles within the **JF-LC Watershed** has contributed and is contributing to the **Release** of **Hazardous Substances**, **Hazardous Wastes**, **Pollutants and Contaminants**, **Solid Wastes**, and **Leachate** containing constituents of those **Wastes** and **Pollutants and Contaminants** into the groundwater and surface waters within the **JF-LC Watershed**.  Additionally, this ***Toxic*** contamination has comingled within the **Environment** with other **AMD** contaminated wastewaters that have been and are continuing to be **Released** from unabated and unsealed coal mine portal and coal mine shafts and have contributed to degradation of surface waters and sediment within the **JF-LC Watershed** to the point that they can no longer meet their designated uses under the Clean Water Act, specifically the Loop Creek receiving watershed which appears on the WV "§ 303(d)"[12] list of Impaired Waters and are subject to

---

[12]  Under the federal Clean Water Act § 303(d), 33 U.S.C. § 1313(d), states are required to evaluate all

***The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.***
***v. National Grid NE Holdings 2 LLC, et al.,*** **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 62 of 125 pages

TMDLs.

**139.** The **Solid Wastes** within **Leachate** that has been emanating from and is continuing to be **Released** from each of the coal mining waste piles within the **JF-LC Watershed** pose a substantial present or potential hazard to human health and the **Environment** when they are, as they are now within each of such coal mining waste piles**,** improperly treated, **Disposed** of, and managed.

**140.  EGFA**, by its creation and maintenance of each of the five (5) coal mining waste dumps within the **JF-LC Watershed** during its period of ownership of the **Subject Property** and during the period of its operation of the coal mining **Facilities** within the **Subject Watershed** that resulted in mining wastes being **Disposed** of at any of the five (5) coal mining waste dumps within the **JF-LC Watershed**, all without undertaking any actions to abate the on-going, adverse impacts on the Public Health, Safety, Welfare or the ***Environment*** result from each of the coal mining waste dumps within the **JF-LC Watershed**, has caused and contributed to and is continuing to cause

---

available water quality related data and information to develop a list of waters *(i.e.,* stream segments) that do not meet established Water Quality Standards *(i.e.,* impaired waters) and those that currently meet WQS, but may exceed the applicable WQS's for any given pollutant or contaminant in the next reporting cycle *(i.e.,* threatened waters).   States then must develop a Total Maximum Daily Load ("TMDL") for every pollutant/waterbody combination on the list.  An essential component of a TMDL is the calculation of the maximum amount of a "pollutant or contaminant" that can occur in waterbody and still meet WQS.  Within the TMDL the state allocates this loading capacity among the various point sources and non-point sources discharging into that stream segment.  The required permits for discharges of pollutants and contaminants from point sources are then issued or modified through the federal and state administered National Pollutant Discharge Elimination System ("NPDES") mandated by Congress in CWA §§ 301 & 402, 33 U.S.C. § 1311 and 1342.  Listing a waterbody-pollutant combination as "impaired" has significant legal and environmental and public health protection consequences.  It is interpreted by the public to put into serious question:  **(1)** whether any dermal contact with, swimming in, or ingestion of the impaired waters is safe; and **(2)** whether the adversely impacting fish, macroinvertebrates, and vegetation that depend on the waters of the impaired stream segment.  In addition, such a listing as "impaired waters" may significantly hinder efforts to attract people or businesses to an area.  Businesses may also be faced with more stringent NPDES permit limits that have the practical effect of either encouraging relocation of existing businesses with NPDES permits or discouraging new business that will require an NPDES permit from locating within an impaired watershed.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** ___2:21-cv-00307___ **(S.D. WV)**
**Verified Complaint**
Page **63** of **125** pages

and contribute to significant adverse impacts to the quality of the groundwater and its beneficial uses within the **Subject Watershed**.  Most notably, because the unlined coal mining waste piles within the **JF-LC Watershed**, all of which were constructed and operated on the **Subject Property** to handle or **Dispose** of coal mining waste and mining waste discharges, are not now and never have been operated with any **Leachate** control or collection system; some of the **Hazardous Substances**, **Hazardous Wastes**, **Solid Wastes** and **Pollutants and Contaminants** in the coal mining wastes in each of those coal mining waste dumps has been and are continuing to be **Disposed** of into the surrounding groundwater system and ultimately into the receiving surface waters within the **Subject Watershed**.

141.  **Remedial Defendants EACC** and **Pardee and Curtin Realty LLC**, by each of their past handling of, failure to abate the adverse impacts on the Public Health, Safety, Welfare and the *Environment* resulting from, and by each allowing the use of the **Subject Property** for the continued existence of, each of the five (5) coal mining waste dumps within the **JF-LC Watershed** during the period of time of each of their respective ownership of the **Subject Property** (or the Surface Estate appertaining to the real property comprising the **Subject Property**), all without undertaking any actions to abate the on-going, adverse impacts on the Public Health, Safety, Welfare or the *Environment* result from each of the coal mining waste dumps on the surface of their real property within the **Subject Watershed**, have each caused and contributed to significant adverse impacts to the quality of the groundwater and its beneficial uses within the **Subject Watershed**.  Most notably, because the unlined coal mining waste piles within the **JF-LC Watershed**, all of which were constructed and operated on the **Subject Property** to handle and **Dispose** of, coal mining waste and mining waste **Discharges**, are not now and never have been operated with any **Leachate** control or collection system; some of the *Hazardous Substances*,

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **64** of **125** pages

**Hazardous Wastes**, **Solid Wastes**, **Pollutants and Contaminants**, and **Leachate** from the coal mining wastes in each of those coal mining waste dumps that was **Released** and **Discharged** into the **Environment** during each of their respective periods of ownership of real property on which those mining waste dumps are located have commingled in the soils, subsurface soils and groundwater with similar **AMD** wastes from other mining facilities at the **Subject Property** and with **Releases** from previous and subsequent periods of ownership of the mining waste dumps to present a single, indivisible harm to the health or the environment, which harm is not reasonably capable of apportionment to the various source of **Releases** and periods of ownership.

142. **Remedial Defendant** Quercus West Virginia, LLC, as the owner of the surface rights appertaining to the real property on which all of the mining waste dumps within the **Subject Watershed** are located, has had since acquiring those surface right and continues to have the authority and responsibility under federal and West Virginia law to:  **(i)** assure that no **Open Dump** is allowed to exist on the surface of the land to which its surface rights apply; and **(ii)** to abate or cause to abated the endangerments to health or the environment that may presented by its past and on-going handling of and failure to abate the adverse impacts on the Public Health, Safety, Welfare and the **Environment** resulting from each of the five (5) coal mining waste dumps within the **JF-LC Watershed** during the period of time of its ownership of the surface rights appertaining to the real property on which each of the mining waste dumps within the **Subject Property**  Most notably, because the unlined coal mining waste piles within the **JF-LC Watershed**, all of which were constructed and operated to handle and **Dispose** of, coal mining waste and mining waste discharges, are not now and never have been operated with any **Leachate** control or collection system; some of the **Hazardous Substances**, **Hazardous Wastes**, **Solid Wastes**, **Pollutants and Contaminants**, and **Leachate** from the coal mining wastes in each of

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
*v. National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 65 of 125 pages

those coal mining waste dumps that was **Released** and **Discharged** and is continuing to be **Released** and **Discharged** into the **Environment** during the period of its ownership of the surface rights to the real property on which those mining waste dumps are located have commingled in the soils, subsurface soils and groundwater with similar **AMD** wastes from other mining facilities at the **Subject Property** and with **Releases** from previous periods of ownership of the mining waste dumps to present a single, indivisible harm to the health or the environment, which harm is not reasonably capable of apportionment to the various source of **Releases** and periods of ownership.

143. **EGFA's** creation and maintenance of, and the maintenance during the period of ownership by each of the other **Remedial Respondents** of, each of the five (5) coal mining waste dumps within the **JF-LC Watershed**, all without undertaking any actions to abate the on-going, adverse impacts on the Public Health, Safety, Welfare or the **Environment** that has resulted and is continuing to result from each of the coal mining waste dumps within the **JF-LC Watershed,** are continuing to cause and contribute to significant adverse impacts to groundwater within the **Subject Watershed**.  Most notably, because the existing and currently operating, unlined coal mining waste piles within the **JF-LC Watershed**, all of which were constructed and operated on the **Subject Property** to handle, **Dispose** of, convey or partially treat coal mining waste and mining waste discharges, are not now and never have been operated with any **Leachate** control or collection system; some of the *Hazardous Substance*, *Hazardous Wastes*, **Solid Waste** and *Pollutants and Contaminants* in the coal mining wastes in each of those coal mining waste dumps has been and is continuing to be **Disposed** of into the surrounding groundwater system and ultimately into the receiving waters of Johnson Fork.

144. Unpermitted **AMD Discharges** resulting from past mining and mining waste disposal activities in the **Subject Watershed** have caused and continue to cause serious and substantial

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-0030__7__(S.D. WV)__
**Verified Complaint**
Page 66 of 125 pages

impairments to the healthfulness and beneficial uses of the waters of the **Subject Watershed**.  The following graphic accurately portrays the geographical area of the prevailing groundwater gradient within the **Subject Watershed**, and the locations of the waste piles that continue to contaminate surface water and groundwater and impact drinking water supplies:



*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_ **(S.D. WV)**
**Verified Complaint**
Page **67** of **125** pages



g. **AMD Released at and Emanating from the Surface Piles of Coal Mining Wastes on Subject Property is a Hazardous Substances under CERCLA:**

145. The federal Comprehensive Environmental Response, Compensation & Liability Act of 1980, as amended ("**CERCLA**" or "federal Superfund Act"), 42 U.S.C. §§ 9601-9675, provides a comprehensive mechanism and a statutory and a regulatory (*i.e.,* the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R., Part 300) framework to direct governmental entities and private parties responding to the **Release** of **Hazardous Substances** into the **Environment**, and provides guidance, procedures, and cleanup criteria for such remedial activities.

146. In **CERCLA** §102(a), 42 U.S.C. § 9602(a), Congress directed the Administrator of the U.S. Environmental Protection Agency to designate "as hazardous substances . . . such elements, compounds, mixtures, solutions, and substances which, when released into the environment may present substantial danger to the public health or welfare or the environment."

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **68** of **125** pages

42 U.S.C. § 9602(a).  The Administrator's resulting designations are set forth in duly promulgated "notice and comment" regulations codified at 40 C.F.R. § 302.4.

147.  Arsenic, beryllium, cadmium, antimony, manganese, and selenium are each a substance listed in 40 C.F.R. § 302.4.  Consequently, each such substance is a **Hazardous Substance** as the term is defined in **CERCLA** § 101(14), 42 U.S.C. § 9601(14).

148.  In interpreting and applying the provisions of **CERCLA** § 102(a) and 40 C.F.R. § 302.4, Federal Courts, in exercise of their exclusive, original jurisdiction[13] over all controversies arising under **CERCLA**, have consistently held that where a mixture contains a designated **Hazardous Substance**, like arsenic, beryllium, cadmium, antimony, manganese, or selenium, then the entirety of that mixture is itself a **Hazardous Substance** for the purposes of **CERCLA**.  *See, e.g., New York* v. *Exxon Corp.,* 766 F. Supp. 177, 180 (S.D.N.Y. 1991), *State of Arizona and the City of Phoenix* v. *Motorola, Inc.,* 774 F. Supp. 566 (D. AZ, 1991), *United States* v. *Carolawn,* 1984 U.S. Dist. LEXIS 15937, 21 Env't Rep. Cases 2124, 2126 (D.S.C. 1984).  Consequently, all of the untreated **AMD** that has been and is being **Released** into the **Environment** at and emanating from the surface piles of coal mining waste on the **Subject Watershed** is a **Hazardous Substance** as that term is defined herein and in **CERCLA** § 101(14), 42 U.S.C. § 9601(14).

h.  **AMD Released from the Surface Piles of Coal Mining Waste on the Subject Property is a Solid Waste and Hazardous Waste for Purposes of RCRA Subtitle G & the West Virginia Hazardous Waste Management Act:**

149.  The mining waste that has been **Disposed** of on the **Subject Property** and the **AMD** that has been and is continuing to be **Released** into the **Environment** from the unsealed fissures,

---

[13]  CERCLA § 113(b), 42 U.S.C. § 9613(b)

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__(S.D. WV)
**Verified Complaint**
Page 69 of 125 pages

unsealed and inadequately sealed mine portals and unlined waste piles within the **Subject Watershed**, all of which was caused or contributed to, in whole or in substantial part, by the Defendants' former mining operations of **EGFA** and Defendant **EACC**, is a **Discarded** solid or liquid, or both, material resulting from mining operations.  Consequently, all such mining waste and **AMD** is a **Solid Waste** as defined herein and in **RCRA** § 1004(27), 42 U.S.C. § 6903(27), and as the same term in used in **RCRA** Subtitle G, specifically including **RCRA** § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).  In addition, all such **AMD** is a "Waste" as that term is defined in the West Virginia Hazardous Waste Management Act, W. Va. Code § 22-18-3(16).[14]

150.  The untreated **AMD** that has been and is continuing to be released into the groundwater from the unlined coal mining waste piles on the **Subject Property** is:  **(a)** a discarded liquid material resulting from mining operations; and **(b)** is not "industrial discharges which are point sources subject to permits under section 402 of the Federal Water Pollution Control Act, as amended (86 Stat. 880)," within the meaning of that phrase as set forth in **RCRA** § 1004(27), 42 U.S.C. § 6903(27), a provision of **RCRA** Subtitle A, and in the West Virginia Hazardous Waste Management Act, W. Va. Code § 22-18-3(16).  Consequently, all such **AMD** is a **Solid Waste** as

---

[14]  As applies only to the federal Hazardous Waste regulatory program under **RCRA** Subtitle C, pursuant to **RCRA** § 3006(6), 42 U.S.C. § 6926(6), a state may develop its own hazardous waste management program (*i.e.*, by the enactment of appropriate statutes, creation and funding of necessary governmental infrastructure and promulgation of necessary implementing administrative regulations) and, upon U.S. EPA approval of the state hazardous waste management program, may operate that program "in lieu of the federal program within such state," subject to certain federal requirements, the most notable of which is that the state hazardous waste management program must be equivalent to and consistent with the federal **RCRA** Subtitle C hazardous waste management program. *See* 42 U.S.C. § 6926(b).  West Virginia's hazardous waste management program, set forth in the West Virginia Hazardous Waste Management Act ("WVHWMA"), Chapter 22, Article 18 of the West Virginia Code has been formally approved by the USEPA Administrator and, accordingly, operates within West Virginia "in lieu" of the federal **RCRA** program within West Virginia. *See* 51 Fed. Reg. 17739B (May 15, 1986); 65 Fed. Reg. 29973 (May 10, 2000); 78 Fed. Reg. 70225 (Nov. 25, 2013).

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
*v. National Grid NE Holdings 2 LLC, et al.,* Case No. 2:21-cv-00307 _____, (S.D. WV)
**Verified Complaint**
Page **70** of **125** pages

defined herein and in **RCRA** 1004(27), 42 U.S.C. § 6903(27), and as the same term in used in **RCRA** Subtitle G, specifically including **RCRA** § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B). In addition, all such **AMD** is a "Waste" as that term is defined and used in the West Virginia Hazardous Waste Management Act, W. Va. Code, Chapter 22, Article 18.

    **151.** Because of its quantity, concentration, physical and chemical characteristics, all of the mining waste that has been **Disposed** of on the **Subject Property** and all of the **AMD** that has been and is being **Discharged** into the **Environment** from the five (5) coal mining waste disposal **Facilities** on the surface of the **Subject Property** is a **Solid Waste** and a "Waste" (as that term is defined in the West Virginia Hazardous Waste Management Act) that "may pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed" within the meaning of that phrase as set forth in both **RCRA** § 1004(5), 42 U.S.C. § 6903(5), and in the West Virginia Hazardous Waste Management Act, W. Va. Code § § 22-18-3(6). Consequently, all such **AMD** is a **Hazardous Waste** as that term is defined in RCRA § 1004(5), 42 U.S.C. § 6903(5), and as the same term in used in **RCRA** Subtitle G, specifically including **RCRA** § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), and in the West Virginia Hazardous Waste Management Act, W. Va. Code § 22-18-3(6).

      **i.**     **The Past, Currently On-Going and Threatened Future Releases of AMD Contamination Into the Environment From Each of the Five (5) Surface Piles of Coal Mining Waste on the Subject Property Have Commingled or Will Commingle Within the Environment To Cause and Contribute to a Single, Indivisible Harm to the Public Health, Safety, Welfare and the Environment and an Actual and Potential Endangerment to Health and the Environment at, on and under the Subject Property and within the Subject Watershed, Which Harm Is Not Reasonably Capable of Being Reliably Apportioned to the Acts or Omissions of Any Individual Defendant.**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 71 of 125 pages

**152.** The **AMD** contaminant generation from the unlined mining waste **Disposal Facilities** within the **Subject Property (***i.e.,***  the unlined mining waste piles on the surface and within the mine works) has flowed and continues to flow into groundwaters and surface waters within the **Subject Watershed.**  These past and ongoing **Discharges** commingle within the **Environment** with similarly contaminated groundwater from prior Discharges of AMD contamination in the aquifer and surface streams, forming a single surface water and groundwater plume of toxic contamination and similar sediment plume.

**153.**  **AMD** and mining waste **Discharges** that have resulted and are continuing to result from: the surface coal mining waste piles within the **Subject Watershed** have caused or contributed to, and continue to cause and contribute to, impairments to the quality and beneficial uses of the waters of the **Subject Watershed**, and have commingled within the groundwater, surface water system, and sediments of Johnson Fork.  This commingled, single plume of toxic contaminants has caused or contributed to, and is causing and contributing to, the existing and imminently threatened future impairments of the quality and beneficial uses of the waters within the **Subject Watershed, a** "navigable waters," and a WV "§ 303d" listed or TMDL impaired stream.

**154.** The **Solid Wastes**, **Hazardous Wastes**, **Hazardous Substances**, and **Pollutants and Contaminants** that have been and are continuing to be **Released** into the **Environment** within the **Subject Watershed** as a result of the **AMD** and mine waste **Discharges** from each of the Defendants' mining operations are easily absorbed by fish and other aquatic organisms.  Even small concentrations of these **Solid Wastes**, **Hazardous Wastes** and **Hazardous Substances** can be toxic because some of those toxic contaminants bioconcentrate or bioaccumulate.  Toxicity of those **Solid Wastes**, **Hazardous Wastes** and **Hazardous Substances** also produces adverse biological effects on an organism's survival, activity, growth, metabolism, or reproduction.  These

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**   2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **72** of **125** pages

toxic contaminants can be lethal or harm the organism without killing it directly.  Cumulative, adverse effects on an organism's activity, growth, metabolism, and reproduction are examples of these sublethal effects.  Some of the contaminants of concern are also bioaccumulated within the plants and animals that are in direct or indirect contact with the food chain and adversely impact the health of these organisms and organisms that feed upon those organisms.

155. The cumulative adverse impacts on the **Environment** that have resulted and are continuing to result from the commingled, single plume of toxic contaminants that has and is continuing to be **Discharged** as a result of mining and mining waste disposal operations and subsequent maintenance of resulting Public Nuisance conditions and illegal uses of the **Subject Property** by the **Remedial Defendants** within the **Subject Watershed** include loss and continued degradation of biodiversity in the receiving stream, and bioaccumulation within the plants and animals within the **Subject Watershed** that are in direct or indirect contact with the food chain and adversely impact the health of these organisms and the organisms that feed upon those organisms.

156. Once a receiving water or organism has been harmed or is imminently threatened with harm by this commingled, single plume of toxic contaminants that has and is continuing to be **Discharged** as a result of combined mining operations of the Defendants within the **Subject Watershed,** there exists no reasonable or reliable basis in fact or science for apportioning that harm or threatened harm to health and the **Environment** to any of the Defendants.

157. As a consequence of the foregoing, **EGFA** and Defendants **EACC**, Pardee and Curtin Realty, LLC and Quercus West Virginia, LLC have, by each of their acts and omission with respect to maintaining and failing and refusing to abate or cause the abatement of the five (5) piles of coal mining waste on the surface of the **Subject Property** within the **Subject Watershed**, caused and

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **73** of **125** pages

contributed to a single, indivisible harm to health and the **Environment** at and emanating from the

**Subject Property** and within the **Subject Watershed**, which harm is not reasonably capable of

being reliably apportioned to the acts or omissions of any individual source or Defendant or subset

of Defendants.

## <u>COUNT ONE</u>:

**JUDICIAL ABATEMENT OF CONDITIONS RESULTING FROM THE PAST
AND PRESENT HANDLING AND DISPOSAL AT, ON AND UNDER THE
SUBJECT PROPERTY AND WITHIN THE SUBJECT WATERSHED OF
SOLID WASTES OR HAZARDOUS WASTES, OR BOTH, WHICH MAY
PRESENT AN IMMINENT & SUBSTANTIAL ENDANGERMENT TO
HEALTH OR THE ENVIRONMENT, PURSUANT TO RCRA § 7002(a)(1)(B)**

**(*Asserted by the Governmental Plaintiff Against Remedial Defendants EACC,
National Grid NE Holdings 2 LLC and Quercus West Virginia, LLC*)**

**158.** The Governmental Plaintiff incorporates and realleges in this Count the allegations

asserted in the foregoing paragraphs of this Complaint as if fully set forth herein.

**159. RCRA** § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) under which the Governmental

Plaintiff bring this count, is part of Subtitle G of **RCRA**, and **RCRA's** citizen enforcement

provisions.  Section 7002(a)(1)(B) authorizes "any person" (*i.e.,* a phrase uniformly interpreted by

the Federal Courts to be constitutionally restricted to, and to mean only, any person with standing

under Article III of the U.S. Constitution,[15] expressly including a "political subdivision of a state")

to seek redress in federal court in the form of judicial abatement of any potential imminent and

substantial endangerments that may be posed to public health or the **Environment** by, *inter alia,*

the past or present handling or **Disposal** of **Hazardous Waste**, **Solid Waste**, or both.  The

gravamen of a Section 7002(a)(1)(B) claim is the current existence of a potential imminent and

---

[15]  ***See*:** *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992)

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_, **(S.D. WV)**
**Verified Complaint**
Page **74** of **125** pages

substantial endangerment to health **or** the environment, rather than a violation of any statute or regulation.

**160.** Any "person"[16] may bring a lawsuit under RCRA § 7002(a)(1)(B) when:  **(a)** a "solid or hazardous waste;" **(b)** "may present an imminent and substantial endangerment to health or the environment;" and **(c)** the defendant falls within one of the categories of "persons" that Congress declared liable for taking abatement action or "such other action as [this Court determines] may be necessary."

**161.** The persons declared strictly liable by Congress for abatement of the potential endangerments to health or the environment addressed in **RCRA** § 7002(a)(1)(B) are "persons" that "contributed to the past or present handling, storage, treatment, transportation, or disposal" of the **Hazardous Wastes** or **Solid Wastes** that may present the imminent and substantial endangerment at issue.  Pursuant to the express terms of **RCRA** § 7002(a)(1)(B), this category of liable "persons" specifically include: "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility" whose past or present actions have contributed or are contributing to the imminent and substantial endangerment to health **or** the **Environment**.

**162.** The Governmental Plaintiff and **Remedial Defendants EACC**, National Grid NE Holdings 2 LLC and Quercus West Virginia, LLC are each a "person" within the meaning of

---

[16]  **RCRA** § 1004(15), 42 U.S.C. § 6903(15), provides:

> The term "person" means an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, **commission, political subdivision of a State**, or any interstate body and shall include each department, agency, and instrumentality of the United States.

**Id.** [Bolding emphasis added].

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 75 of 125 pages

RCRA § 1004(15), 42 U.S.C. § 6903(15).

163. **RCRA** § 7002(a)(1)(B), which was first added to **RCRA** by the 1984 Hazardous and Solid Wastes Amendments, Pub. L. 98-616, Title IV, § 401, 98 Stat. 3268, imposes federal remedial environmental and public health protection liability on a person by reason congressionally designated acts or omissions that occurred prior to the enactment of the statute. Perhaps because the vast majority of **RCRA** consists of prospective, regulatory requirements [as opposed to the retrospective, solely remedial purposes and requirements of **RCRA** § 7002(A)(1)(b)], **RCRA** is silent on the question of what effect, if any, private party indemnification or transfer of liability agreements can have on the federal, retroactive, remedial liability imposed by **RCRA** § 7002(a)(1)(B). Nonetheless, it is manifest that to properly give effect to the broad, Congressional remedial purposes embodied in **RCRA** § 7002(a)(1)(B), it is essential that federal common law govern the effect of private party "indemnification, hold harmless, or similar agreement or conveyances" (often made years or decades before the imposition of the retroactive federal remedial liability) on the federal, retroactive, remedial environmental and public health protection liability imposed by **RCRA** § 7002(a)(1)(B). A little more than three (3) years prior to the enactment of **RCRA** § 7002(a)(1)(B) in 1984, Congress articulated in its enactment of the liability provision of **CERCLA** § 107(e), 42 U.S.C. § 9607(e), the principals of federal law that govern the effect of private party "indemnification, hold harmless, or similar agreement or conveyances" on the federal, retroactive, remedial environmental and public health protection liability imposed by **CERCLA** § 107(a):

> **(e) Indemnification, hold harmless, etc., agreements or conveyances; subrogation rights.**
>
> **(1) No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** ___2:21-cv-00307___ **(S.D. WV)**
**Verified Complaint**
Page **76** of **125** pages

**any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section.** Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

**(2)** Nothing in this title, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

*Id.* [Bolding emphasis added].

164. Applying the legal principles set forth in **CERCLA** § 107(e) as the federal common law governing the effect of private party agreements to indemnify or convey liability on the retroactive, remedial environmental and public health protection provisions of **RCRA** § 7002(a)(1)(B), **EGFA's** conveyance of all of its liabilities relating to or arising out of it coal mining operations and coal mining waste disposal practices, *inter alia,* those that occurred within the **Subject Watershed**, to its wholly owned subsidiary, **EACC**, is **ineffective** to relieve **EGFA** of the retroactive, remedial liability imposed upon it by **RCRA** § 7002(a)(1)(B) for its acts and omission with respect to its mining operations and mining waste disposal practices within the **Subject Watershed** and its status as the Owner of the **Subject Property** prior to January 1, 1966.

165. Accordingly, **Remedial Defendant** National Grid NE Holdings 2 LLC, as the legal successor to the rights and liabilities of **EGFA**, is legally responsible for all remedial liability imposed by **RCRA** § 7002(a)(1)(B) on **EGFA** for its acts and omission with respect to its mining operations and mining waste disposal practices within the **Subject Watershed** prior to January 1, 1966.

166. Moreover, applying the legal principles set forth in **CERCLA** § 107(e) as the federal common law governing the effect of private party agreements to indemnify or convey liability on the retroactive, remedial environmental and public health protection provisions of

***The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.***
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **77** of **125** pages

RCRA § 7002(a)(1)(B), **Remedial Defendant EACC**, which assumed by contract all of the liabilities of **EGFA** relating to or arising out of it coal mining operations and coal mining waste disposal practices, *inter alia,* those that occurred within the **Subject Watershed** on or before January 1, 1966, is also legally responsible for all remedial liability imposed by RCRA § 7002(a)(1)(B) on **EGFA** for its acts and omission with respect to its mining operations and mining waste disposal practices within the **Subject Watershed** prior to January 1, 1966.

167. **Remedial Defendant** National Grid NE Holdings 2 LLC (as successor to the pre-1966 remedial liabilities of **EGFA**) is a "person" that by its (*i.e.,* **EGFA**'s) past operation of coal mining and coal mining waste disposal **Facilities** at the **Subject Property** has contributed to the past handling and **Disposal** of **Solid Wastes** and **Hazardous Wastes** at the **Subject Property** and within the **Subject Watershed**, which handling and **Disposal** has caused, contributed to, and is continuing to contribute to conditions at and emanating from the **Subject Property** that may present an imminent and substantial endangerment to health or the **Environment**.

168. Defendant Quercus West Virginia, LLC is a "person" that, as the Owner of the Surface Estate appertaining the real property within the **Subject Watershed** upon which each of the five (5) surface piles of coal mining waste exist, has, by both its past actions and **its continuing action** to allow the use of the surface of that real property for the purpose of maintaining an illegal use of that real property[17] that presents or may present an imminent and substantial endangerment to health or the environment without making any effort to abate or require the abatement of that

---

[17]  W. Va. Code § 22-15-10(a), a General Law of West Virginia and a provision of the West Virginia Solid Waste Management Plan approved by the U.S. EPA pursuant to the Solid Waste Management Provisions of **RCRA** Subtitle D, 42 U.S.C. § 6943, prohibits any landowner in West Virginia from "allowing an Open Dump to exist on the landowner's property."

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 78 of 125 pages

continuing endangerment, contributed to and is contributing to past and present handling of a **Solid Waste** and a **Hazardous Waste**.

169.   The Federal Courts, in analyzing and applying the phrase "the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment" within **RCRA** § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), have given the language of this remedial statute an expansive interpretation[18]:

(a)   *"may present"[19]:*   First, Federal Courts have consistently noted that the language of **RCRA** § 7002(a)(1)(B) includes the word "may" before the standard of liability.[20]   As held in a seminal decision of a United States District Court for the Eastern District of California:   "[t]his is expansive language, which is intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risk posed by toxic wastes."[21]   To the same effect, in the first major case interpreting **RCRA** § 7002(a)(1)(B) the Third Circuit emphasized that the statute "enhanced the courts' traditional equitable powers by authorizing the issuance of injunctions when there

---

[18]   *Liebhart* v. *SPX Corp.*, 917 F.3d 952 (7th Cir. WI 2019); *Goldfarb* v. *Mayor & City Council of Balt*., 791 F.3d 500 (4th Cir. MD 2015); *Me. People's All.* v. *Mallinckrodt, Inc.*, 471 F.3d 277 (1st Cir. ME 2006); *Interfaith Cmty. Org.* v. *Honeywell Int'l, Inc.*, 399 F.3d 248 (3d Cir. NJ 2005); *United States* v. *Waste Indus.*, *Inc.*, 734 F.2d 159, 165 (4th Cir. 1984) (rejecting the argument that "[§ 6972] was designed to control pollution only in emergency situations"); *Voggenthaler* v. *Md. Square, LLC*, 2010 U.S. Dist. LEXIS 74217 (D. Nev. 2010); *Lincoln Props. v. Higgins*, 1993 U.S. Dist. LEXIS 1251 (E.D. Cal. 1993) (Levi, J.).

[19]   Notably, Congress amended the language of **RCRA** § 7002(a)(1)(B) in 1980 by substituting the phrase "may present" for the original 1976 wording "is presenting."   *Me. People's All., supra* at 287 (citing *Solid Waste Disposal Act of 1980, Pub. L. 96-482, § 25, 94 Stat. 2334, 2348*).

[20]   *Lincoln Properties, supra,*1993 WL 217429 * 13.

[21]   **Id** (internal quotations [*37] and citations omitted).

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **79** of **125** pages

is but a risk of harm, a more lenient standard than the traditional requirement of threatened irreparable harm."[22]   Accordingly, a **RCRA** § 7002(a)(1)(B) plaintiff, like the Governmental Plaintiff herein, "need only demonstrate a potential risk of harm."[23]

(b) *"endangerment"*:   Second, the term "endangerment" has been consistently interpreted by the Federal Courts to mean "a threatened or potential harm and does not require proof of actual harm."[24].

(c) *"imminent"*:   Third, the vast majority of Federal Courts have endorsed the principle that "a finding of 'imminence' does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present."[25]   To the same effect: "An endangerment is 'imminent' if the factors giving rise to it are present, even though the harm may not be realized for years."[26]

(d) *"substantial"*:   Fourth and notably, the majority of Federal Courts have consistently held that "the word 'substantial' within **RCRA** § 7002(a)(1)(B) does not require quantification of the endangerment (*e.g.*, proof that a certain number of persons will be exposed, that 'excess deaths' will occur, or that a water supply will be contaminated to a specific

---

[22] *United States v. Price*, 688 F.2d 204, 211 (3d Cir. NJ 1982)

[23] *Liebhart, supra*; *Goldfarb, supra*; *Fairway Shoppes Joint Venture* v. *Dryclean U.S.A.*, 1996 U.S. Dist. LEXIS 22364, (S.D. Fla. 1996)

[24] *Lincoln Properties, supra,* 1993 U.S. Dist. LEXIS 1251, 1993 WL 217429 at *12 (a) ("When one is endangered, harm is threatened; no actual injury need ever occur." (quoting *Ethyl Corp.* v. *Envtl. Prot. Agency*, 541 F.2d 1, 13 (D.C. Cir. 1976)).

[25] **Id**; *see also, Liebhart, supra*; *Goldfarb, supra*; *United States v. Waste Indus., Inc., supra*; *Voggenthaler, supra*.

[26] *Lincoln Properties, supra.*

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **80** of **125** pages

degree.")[27].  Instead, the "decisional precedent demonstrates that an endangerment is substantial if there is some reasonable cause for concern that someone or something may be exposed to a risk of harm by release or a threatened release of a hazardous substance if remedial action is not taken."[28]

(e) **_"health or the environment"_**:  Every Federal Court that has addressed the meaning of this phrase in the statute[29] has held to the effect that **RCRA** § 7002(a)(1)(B):

> speaks of endangerment to health or the environment.  The term "environment" appears to include air, soil and water. *See:* [*Ethyl Corp.* v. *EPA*, 176 U.S. App. D.C. 373, 541 F.2d 1 (1976)]; see also 42 U.S.C. § 9601(8) (**CERCLA** definition of "environment" includes water, land and air).  **Neither the statute nor the caselaw interposes an additional requirement that humans or other life forms be threatened.**

*Lincoln Props.* v. *Higgins*, 1993 U.S. Dist. LEXIS 1251, *47 (E.D. Cal. 1993) (Levi, J.) [Bolding emphasis added].

170.  Although the vast majority of Federal Courts have held that in order to give effect to its remedial purposes, **RCRA** § 7002(a)(1)(B) should be given an expansive reading, when determining whether there is a risk of imminent and substantial endangerment in any given case, it is also well recognized by the Federal Courts that "injunctive relief should not be granted 'where

---

[27] **Id** at p. 13; *See also, Liebhart, supra* ("[T]here is no requirement in *RCRA* for a plaintiff to make "a particular quantitative showing as a *sine qua non* for liability." citing *Interfaith, 399 F.3d at 260* and *Dague, 935 F.2d at 1356)*; *Goldfarb, supra; United States v. Waste Indus., Inc.; Voggenthaler*, *supra*.

[28] *Lincoln Properties, supra; See also*: *Liebhart*, *supra*; *Goldfarb, supra; United States v. Waste Indus., Inc., supra; Voggenthaler*, *supra.*

[29] *Interfaith Cmty. Org.* v. *Honeywell Int'l, Inc.*, 399 F.3d 248 (3d Cir. NJ 2005), cert. denied, 545 U.S. 1129, (2005)

***The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.***
**v.** ***National Grid NE Holdings 2 LLC, et al.,*** **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 81 of 125 pages

the risk of harm is remote in time, completely speculative in nature, or *de minimis* in degree."[30]

171. The harms and the existing and threatened future endangerments to health and the **Environment** at the **Subject Property** and within the **Subject Watershed** caused or contributed to by Defendant's National Grid NE Holdings 2 LLC's past handling and **Disposal** of, and Quercus West Virginia's past and continuing handling and **Disposal** of, **Solid Waste** and **Hazardous Waste** at and from each of the five (5) coal mining waste piles on the surface of the **Subject Property** alleged herein are **not:  (a)** remote in time, as they have been occurring for decades and are continuing to occur within the **Subject Watershed** to date,  **(b)** speculative, in that they have already contributed to the surface waters within the **Loop Creek Watershed** being classified as "Impaired" for purposes of the federal and State water pollution control acts and are continuing to adversely impact the quality and beneficial uses of those same waters; and **(c)** *de minimis*, in either degree or threatened longevity in the absence of urgently required abatement as evidenced by the pernicious impact of the toxic contaminants at issue over the course of the last three (3) decades on the *Waters of the State* within the **Subject Watershed**; a serious adverse impact to the **Environment** that is continuing to this very day.

172. Defendant's National Grid NE Holdings 2 LLC's past handling and **Disposal** of, and Quercus West Virginia's past and continuing handling and **Disposal** of, **Solid Waste** and **Hazardous Waste** at and from each of the five (5) coal mining waste piles on the surface of the **Subject Property** alleged herein have caused or contributed to, and by the ongoing effects of their past handling and **Disposal** of both **Solid Wastes** and **Hazardous Wastes** at and emanating from the **Subject Property** continue to cause and contribute to, a condition within the **Subject**

---

[30] *Lincoln Properties, supra* (quoting *United States* v. *Reilly Tar & Chem. Corp.*, 546 F. Supp. 1100, 1109 (D. Minn. 1982)).

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **, (S.D. WV)**
**Verified Complaint**
Page 82 of 125 pages

**Watershed** that:  **(a)** has already produced actual harm to the **Environment** in the form of significant impairments to the quality and beneficial uses of surface and groundwaters within the **Subject Watershed**; **(b)** which may, and which the Governmental Plaintiff  asserts demonstrably does, present a serious, substantial and very imminent, in fact, ongoing, endangerment to health or the **Environment** within the **Subject Watershed**; and **(c)** which may present an imminent and substantial endangerment to health or the **Environment** within the already WV § 303 Listed "Impaired" Watershed of Johnson Fork within this judicial district.

**173.** Pursuant to **RCRA** § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), the Governmental Plaintiff is entitled to an Order of this Court requiring each of the **Remedial Defendants**, National Grid NE Holdings 2, LLC (as the legal successor to the pre-1966 remedial liabilities of **EGFA**) and Quercus West Virginia, LLC, jointly and severally, and subject to appropriate oversight and monitoring by the Fayette County Code Enforcement Agency ("**FCoWVCEA**"):

(a) to undertake at their sole cost a Remedial Investigation and Feasibility Study ("**RI/FS**") of the **Subject Watershed** in full compliance with the applicable requirements of the **NCP**,

(b) timely and competently to implement at their sole cost such immediate or interim removal or remedial actions as the Court may determine to be necessary and proper to appropriate abatement of any public nuisance condition(s) or imminent and substantial endangerments to health or the **Environment** within the **Subject Watershed**;

(c) following filing of the required final **RI/FS** report with this Court, and after conduct of such hearings as the Court determines to be appropriate, to timely and competently implement at their sole cost the Remedial Action Plan, if any, for the **Subject Watershed** selected and approved by the Court; and

(d) pursuant to Federal Rule of Civil Procedure 53 and in furtherance of the goals of timely and effective implementation of the complex and continuing mandatory injunctive relief required herein in accord with the principles articulated in this Court's holding in *Ohio*

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21__-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 83 of 125 pages

*Valley Envtl. Coal.* v. *Fola Coal Co., LLC*, Case No. 2:15-cv-01371 (S.D. WV) (Chamber, C.J.) (September 27, 2017 Order on Plaintiff's Motion for Appointment of a Special Master), to an Order of Reference to a Special Master appointed by this Court and authorized:

(i)   to see to the timely and effective implementation of this Court's Orders;

(ii)  to adjudicate in the first instance disputes between the parties regarding any of this Court's Orders and any requests for contempt sanctions, and

(iii) to make a Report to the Court reflecting the Special Master's Findings of Fact, Conclusions of Law and Recommended Order; and

(e) to an award of the Governmental Plaintiff**'s** costs of this litigation (including reasonable attorney and expert witness fees and expenses).

## COUNT TWO
### "CITIZEN SUIT" TO COMPEL COMPLIANCE WITH THE MANDATORY NOTIFICATION PROVISIONS OF CERCLA § 111(g), BROUGHT PURSUAN TO CERCLA § 310(a)(1), 42 U.S.C. § 9659(a)(1)
**(*Governmental Plaintiff against Defendant Quercus West Virginia, LLC*)**

**174.** The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint, set forth above, as if fully set forth herein.

**175. CERCLA** § 111(g), 42 U.S.C. § 9611(g), provides:

**(g)  Notice to potential injured parties by owner and operator of vessel or facility causing release of substance; rules and regulations.**  The President shall provide for the promulgation of rules and regulations with respect to the notice to be provided to potential injured parties by an owner and operator of any vessel, or facility from which a hazardous substance has been released.  Such rules and regulations shall consider the scope and form of the notice which would be appropriate to carry out the purposes of this title.  Upon promulgation of such rules and regulations, the owner and operator of any vessel or facility from which a hazardous substance has been released shall provide notice in accordance with such rules and regulations.  With respect to releases from public vessels, the President shall provide such notification as is appropriate to potential injured parties.  **Until the promulgation of such rules and regulations, the owner and operator of any vessel or facility from which a hazardous substance has been**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_ **(S.D. WV)**
**Verified Complaint**
Page **84** of **125** pages

> **released shall provide reasonable notice to potential injured parties by publication in local newspapers serving the affected area.**

**Id.** [Bolding emphasis added].

**176.** Defendant Quercus West Virginia, LLC, as the current **Owner** of the Surface Estate appertaining to all of the real property within the **Subject Watershed** upon the surface of which all five (5) the coal mining waste piles are located, has the legal authority and obligation[31] to abate or cause the abatement of those unlined surface piles of coal mining waste, each of which is a **Facility** and an **Open Dump**.

**177.** Defendant Quercus West Virginia, LLC is the "owner and operator," within the meaning of that term in **CERCLA** § 111(g), of each of the five (5) **Facilities** within the **Subject Property** comprised of surface piles of coal mining waste.

**178. Hazardous Substances** have been and continue to be **Released** from each of the five (5) **Facilities** within the **Subject Property** comprised of surface piles of coal mining waste.

**179.** On January 23, 1987 by Executive Order[32] expressly authorized by **CERLCA**[33], the President of the United States delegated his authority to promulgate the regulations required by the above-quoted provisions of **CERCLA** § 111(g) to the Administrator of the U.S. Environmental Protection Agency. As of the date of this Complaint, the Administrator of U.S. EPA has not promulgated any regulations implementing the provisions of **CERCLA** § 111(g). Accordingly, the provisions of the last sentence of **CERCLA** § 111(g) sets forth the current requirements of federal law under **CERCLA** § 111(g).

---

[31]  **RCRA** § 4005(a), 42 U.S.C. § 6945(a), and W. Va. Code § 22-15-10(a).

[32]  Sections 8(a) and (c) of Executive Order 12580, 52 Fed. Reg. 2923 (January 29, 1987)

[33]  **CERCLA** § 115, 52 U.S.C. § 9615

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page 85 of 125 pages

**180.**  Despite having received a formal "Notice of Violation" of **CERCLA** § 111(g), a copy of which is attached hereto as **Exhibit 3**, sent by the Governmental Plaintiff on September 22, 2020, As of date of this Complaint, Defendant Quercus West Virginia, LLC has failed or refused, and is continuing to fail or refuse, to publish the newspaper notification required by CERCLA § 111(g).

**181.**  Pursuant to **CERCLA** §§ 111(g) and 310(a)(1) and (c), 42 U.S.C. §§ 9611(g) and 9659(a)(1) and (c), the Governmental Plaintiff is entitled to:  **(i)** an Order of this Court requiring Defendant Quercus West Virginia, LLC forthwith to publish the notification required by **CERCLA** § 111(g) in compliance with the requirements of the last sentence of that section; and **(ii)** an award of its costs of litigation (including reasonable attorney and expert witness fees) incurred and to be incurred herein pursuant to **CERCLA** § 310(f), 42 U.S.C. § 9659(f).

<u>**COUNT THREE**</u>:

### JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC NUISANCE DECLARED BY THE WEST VIRGINIA SOLID WASTE MANAGEMENT ACT AND THE WEST VIRGINIA SOLID WASTE MANAGEMENT RULE

*(Asserted by the Governmental Plaintiff Against Defendants EACC,*
*National Grid NE Holdings 2 LLC, Pardee and Curtin Realty LLC,*
*Quercus West Virginia, LLC, Hanover/CGL 60203,*
*Continental/RDU 9433461, and Travelers/Designated Policies)*

**182.**  The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint, set forth above, as if fully set forth herein.

   **a.**   **The Public Nuisance Doctrine under West Virginia Law:  Per Se Public Nuisances:**

**183.**  Article II, Section 2 of the West Virginia Constitution provides that all of the powers of government are resident in the Citizens of the State of West Virginia "and can be rightfully exercised only in accordance with their will and appointment."

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page 86 of 125 pages

**184.**  Pursuant to Article III, Section 3 of the Constitution of the State of West Virginia, the government of the State of West Virginia is instituted by the Citizens of West Virginia and vested with all of their powers as Sovereigns "for the "common benefit, protection and security of the people, nation or community:"  Most prominent among those powers inherent in the Sovereignty of those citizens and vested by them in their State government are the "Police Powers" of the State, meaning the inherent power to protect the Public Health, Safety, Welfare and the Environment for the benefit of present and future generations of the Public:

> The police power of the state is the power of government inherent in every sovereignty to enact laws, within constitutional limits, to promote the general welfare of its citizens. *Farley v. Graney*, 146 W.Va. 22, pt. 5 syl., 119 S.E.2d 833; *Nulter v. State Road Commission*, pt. 2 syl., 119 W.Va. 312, 193 S.E. 549 (194 S.E. 270); *City of Huntington v. State Water Commission*, 137 W.Va. 786, pt. 3 syl., 73 S.E.2d 833.  The police power is difficult to define because it is so extensive, elastic and constantly evolving to meet the new and increasing demands for its exercise for the benefit of society.  It embraces the power of the state to preserve and promote the public welfare and it is concerned with whatever affects the peace, security, morals, health and general welfare of the community.  **'The exercise of the police power cannot be circumscribed within narrow limits nor can it be confined to precedents resting on conditions of the past. As civilization becomes more complex and advancements are made the police power of necessity must develop and expand to meet such conditions.'** *Farley v. Graney*, 146 W.Va. 22, 36, 119 S.E.2d 833, 842.

*State ex rel. Appalachian Power Co.* v. *Gainer*, 149 W. Va. 740, (1965), [Bolding emphasis added].

**185.**  The principles of law that form the **<u>remedial arm</u>** of the Sovereign's "Police Powers," which is to say the set of expansive legal authorities that govern the inherent power of the Sovereign State to **ABATE** <u>anything</u> that impermissibly and unreasonably endangers the Public Health, Safety, Welfare or the Environment, or impermissibly and unreasonably impairs the beneficial uses of any natural resource held in Public Trust for the benefit of present and future generations of the Public, is referred to as the "Public Nuisance Doctrine," and those acts or conditions that present or may present such impermissible and unreasonable endangerments or

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__, **(S.D. WV)**
**Verified Complaint**
Page 87 of 125 pages

impairments to the Public or any substantial number of persons are referred to by the common law and statutes of West Virginia as each being a "Public Nuisance". *State ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co*., 200 W. Va. 221, 245, 488 S.E.2d 901, 925 (1997) ("A public nuisance action usually seeks to have some harm which affects the public health and safety abated. Thus, until such harm is abated, the public nuisance is continuing, and the statute of limitations does not accrue.").

**186.**   The West Virginia Supreme Court of Appeals has recognized that inherent in the "police powers" of a sovereign state at common law is the power to declare by legislative action those acts, omissions and conditions that present unacceptable risks to the public health, safety, welfare or the **Environment** to be a Public Nuisance, and to prohibit and require appropriate abatement of the same.  *State ex rel. Dyer* v. *Sims*, 134 W Va. 278 (1950).

**187.**   The United States Supreme Court has recognized the fundamental and essential nature of the "police powers" of a state to afford adequate protection of the public health, safety and welfare:

> **Although the police power of a state cannot be arbitrarily exercised, it is to be remembered that it is one of the most essential powers of government, <u>one that is the least limitable</u>.**  It may, indeed, seem harsh in its exercise, and usually is harsh on some individual.  **But the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily.**

*Hadacheck* v. *Sebastian,* 239 U.S. 394, Syllabus # 1 (1915) (Emphasis added).

**188.**   Because of its origin and continuing primacy among the inherent "Police Powers" of the Sovereign State, it long has been and remains a fundamental principle of the common law of Public Nuisance in West Virginia that the power to bring and prosecute a Public Nuisance Abatement action lies only with public prosecutors authorized by law to bring the claims of the Sovereign State, and such other public officials as may be authorized by law. *Id.* at p. 241. ("Ordinarily, a

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_, **(S.D. WV)**
**Verified Complaint**
Page **88** of **125** pages

suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public.").

189.   Under West Virginia law, when an act, omission or condition is declared to be a danger to the public health, safety or welfare (*i.e.,* a Public Nuisance) by a provision of a General Law of the State or by a provision of local legislation (*i.e.,* a duly adopted county or municipal ordinance) authorized by a General Law of the State, unless a court determines that such legislation was enacted arbitrarily or in violation of an express constitutional provision, it is the responsibility of the court to:  (a) determine if the act, omission or condition at issue is, in fact, governed by the language of the duly enacted legislation before it; and, (b) if the act, omission or condition is within the ambit of what has been declared to be a Public Nuisance by such duly enacted legislation, to order the appropriate abatement of the Public Nuisance so as fully to effect the remedial purposes of such "police power" legislation.  *Sharron Steel Corp.* v *City of Fairmont*, 175 W. Va. 479 at 488-489 (1985); *State* v. *Wender,* 149 W. Va. 413 (1965), *overruled on other grounds, Hartsock-Flesher Candy Co.* v. *Wheeling Wholesale Grocery Co., 174 W. Va. 538* (1984).

    **b.   The Very Existence of Open Dumps within West Virginia Is Prohibited by the General Law of West Virginia and Expressly Declared to be a "Public Nuisance and a Clear and Present Danger to People":**

190.   W. Va. Code § 22-15-l0(a), a provision of the West Virginia Solid Waste Management Act, provides, in relevant part:

> **(a) Open dumps are prohibited and it is unlawful for any person to create, contribute to, or operate an open dump or for any landowner to allow an open dump to exist on the landowner's property** unless that open dump is under a compliance schedule approved by the director.  The compliance schedule shall contain an enforceable sequence of actions leading to compliance and shall not exceed two years. . . .

**Id**. (Bolding and underlining emphasis added).

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** _2:21-cv-00307_, **(S.D. WV)**
**Verified Complaint**
Page 89 of 125 pages

191.  By enactment of W. Va. Code § 22-15-1(c)(1), a part of the WV Solid Waste Management Act, the State of West Virginia joined with the United States[34] in emphatically condemning **Open Dumps** and other "improper solid waste disposal:

> **(c)**  The Legislature further finds that solid waste disposal has inherent risks and negative impact on local communities and specifically finds the following:  **(1) Uncontrolled, inadequately controlled and improper collection, transportation, processing and disposal of solid waste is a public nuisance and a clear and present danger to people**; . . .

W. Va. Code § 22-15-1(c) [Bolding emphasis added].

192.  Because creating, contributing to, or operating an **Open Dumps** in West Virginia is expressly prohibited by W. Va. Code § 22-15-10(a), which also prohibits every landowner in West Virginia from allowing an **Open Dump** to exist on its land within West Virginia, any **Open Dump** within West Virginia necessarily constitutes an instance of the "improper disposal of solid waste" within the meaning of W. Va. Code § 22-15-1(c)(1).  Accordingly, an **Open Dump** within West Virginia, pursuant to the General Law of West Virginia, is always and everywhere within West Virginia "a public nuisance and a clear and present danger to people," unless such **Open Dump** is under a compliance schedule approved pursuant to the WV Solid Waste Management Act, W. Va. Code Chapter 22, Article 15, and its implementing rules, the West Virginia Solid Waste Management Rule, W. Va. C.S.R., Chapter 33, Series 1.

193.  Each of the five (5) coal mining waste piles on the surface of the **Subject Property** was initially created by the **Disposal** of **Solid Waste**, as that term is defined in W. Va. Code § 22-15-2(31)[35] because the contents of each of those waste piles were and are "discarded

---

[34]  *See:*  **RCRA** §§ 1003(a)(3), 4003(a)(3) and 4005(a), 42 U.S.C. §§ 6902(a)(3), 6943(a)(3) and 6945(a)
[35]  See: Section IV(x) of this Complaint, *supra.*

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 90 of 125 pages

materials resulting from mining operations" and because the material discarded in each of those waste piles was not then and has never been "in compliance with a permit issued pursuant to W.Va. Code Chapters 22, 22A or 22b. *See:* W. Va. Code § 22-15-2(31).

**194.** Each of the five (5) surface piles of coal mining waste of the surface of the **Subject Property** are an instance of **Solid Waste Disposal "**in a manner that does not protect the environment," within the meaning of that term as used in W. Va. Code § 22-15-2(23). Accordingly, each of the five (5) surface pile of coal mining waste on the surface of the **Subject Property** is an **Open Dump** as defined by W. Va. Code § 22-15-2(23) and a "Public Nuisance and clear and present danger to people" as declared by W. Va. Code § 22-15-1(c)(1).

**195.** Each of the five (5) surface piles of coal mining waste of the surface of the **Subject Property** are not now, and never have been, a "permitted **Solid Waste Facility** in West Virginia, as that term in used in the West Virginia Solid Waste Management Act, W. Va. Code, Chapter 22, Article 15, and in the WV Solid Waste Management Rule, W. Va. C.S.R., Chapter 33, Series 1.

**196.** The West Virginia Solid Waste Management Act, W. Va. Code § 22-15-5(a), authorizes the Cabinet Secretary of the **WVDEP** to promulgate Legislative Rules to implement the WV Solid Waste Management Act. Those Legislative Rules have been promulgated in compliance with the WV Administrative Procedures Act and are codified as the West Virginia Solid Waste Management Rule at W. Va. C.S.R., Chapter 33, Series 1.

**197.** The WV Solid Waste Management Rule, W. Va. C.S.R. § 33-1-1.6 provides, in relevant part:

> **1.6.   Lawful Disposal of Solid Waste Required**. -- Solid waste must be disposed, processed, stored, transferred, or recycled only at permitted solid waste facilities as described in this rule, and in compliance with W. Va. Code §22C-4-10 [now codified at W. Va. Code § 22-15-10].
>
> **1.6.a.** The discharge, deposit, injection, dumping, **spilling**, **leaking**, burning, burying, or otherwise placing of any solid waste or **leachate** into or on any land or

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.* **v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**

**Verified Complaint**

Page 91 of 125 pages

water so that such solid waste or any constituent thereof may enter the environment or be emitted into the air, or discharged into any waters, including groundwaters, is prohibited unless specifically authorized by a permit or permits from the Department.

**1.6.b. Solid waste facilities or activities failing to satisfy this subsection are considered open dumps**, as defined in section 2, and will be subject to the actions and penalties outlined in W. Va. Code §22-15-15.

Id. [Bolding Emphasis added].  To the same effect, the West Virginia Solid Waste Management Rule, W. Va. C.S.R. § 33-1-7.2 provides, in relevant part:

**7.2. Protection of the Environment and the Public**.

**7.2.a. Any site at which the following protective measures have not been instituted will be classified as an open dump:**
**7.2.a.1. Measures must be taken to prevent the discharge of pollutants from the accumulated waste into the waters of the State (e.g., measures to prevent runoff into surface water bodies or the infiltration of leachates into local aquifers);**

Id. [Bolding emphasis added.]

198.  Each of the five (5) unlined surface pile of coal mining waste on the surface of the **Subject Property** have since each of their creation leaked, and continue to the present to leak, **Solid Waste** and **Leachate** into **and** on land at and adjoining each waste pile **and** into water at and downgradient of each waste pile water so that such **Solid Waste** from each such waste pile **and** the constituents thereof may be, and, in fact, are, discharged into **_Waters of the State_**, including groundwater.  Accordingly, each of the five (5) unlined surface pile of coal mining waste on the surface of the **Subject Property** is an **Open Dump** pursuant to the WV Solid Waste Management Rule, W. Va. C.S.R. §§ 33-1-1.6(b) and 33-1-7.2 and, therefore, each such waste pile is both an instance of the "improper disposal of solid waste" within the meaning of, and a "Public Nuisance and clear and present danger to people" pursuant to, W. Va. Code § 22-15-1(c)(1).

199.  The WV Solid Waste Management Act, W. Va. Code § 22-15-10(a) and the WV Solid Waste Management Rule, W. Va. C.S.R. § 33-1-1.6 provides, in relevant part:  "**no landowner may**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307**, (S.D. WV)**
**Verified Complaint**
Page 92 of 125 pages

**allow an open dump to exist on his or her property, unless such open dump is under a compliance schedule approved by the Secretary.**" [Bolding emphasis added].

200.  Under the common law of West Virginia, **EGFA** is strictly liable to the Governmental Plaintiff, jointly and severally, for the proper abatement of the *Per Se* Public Nuisances it created within Fayette County, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**.   As **EGFA** created those **Open Dumps** prior to 1966, Defendant National Grid NE Holdings 2 LLC, as the corporate successor to the pre-1966 remedial liabilities of **EGFA** imposed by applicable law, non-exclusively including the **FCoWV Public Nuisance Abatement Ordinance**, is strictly liable, jointly and severally, for the proper abatement of each of those five (5) **Open Dumps**.

201.  Under the common law of West Virginia, **Remedial Defendant EACC** is strictly liable to the Governmental Plaintiff, jointly and severally, for the proper abatement of the *Per Se* Public Nuisances that it contributed to, maintained, and failed or refused to abate during its period of fee simple ownership of the **Subject Property**, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**.

202.  Because **EACC** assumed the pre-1966 remedial liabilities of **EGFA** arising from its coal mining operations, including those liabilities resulting from **EGFA's** mining and mining waste disposal practice within the **Subject Watershed**, **Remedial Defendant EACC** is, pursuant to the common law of West Virginia, also strictly liable to the Governmental Plaintiff, jointly and severally for the proper abatement of the *Per Se* Public Nuisances **EGFA** created, maintained, and failed or refused to abate during **EGFA's** period of fee simple ownership of the **Subject Property**, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** ⎯2:21-cv-00307⎯ **(S.D. WV)**
**Verified Complaint**
Page **93** of **125** pages

203.  Because:  **(i) Remedial Defendants Hanover/CGL 60203, Continental/ RDU 9433461**, and **Travelers/Designated Policies** each provided liability insurance coverage to Defendant **EACC**, now a defunct corporation, that affords **EACC** indemnification and other insurance coverage for liability it incurs by operation of law or that it assumed by contract for property damage that resulted from occurrences during the coverage period of its policy (*i.e.,* the policy period of each such insurance policy extended beyond January 1, 1966) up to the remaining, available limits of liability coverage afforded by each policy; **(ii)** under West Virginia law, the costs of properly abating a Public Nuisance are, for purposes of liability insurance coverage, "property damage;" **(iii)** under West Virginia law[36] a defunct, dissolved corporation may properly be sued for its liability up to the amount of its undistributed assets, including the remaining, available limits of its liability insurance coverage; and **(iv)** under West Virginia law, in any civil action brought against a dissolved corporation solely to recover against its remaining, available limits of liability insurance coverage, the liability insurer of the dissolved corporation is the sole Real Party in Interest; Defendants **Hanover/CGL 60203, Continental/ RDU 9433461**, and **Travelers/Designated Policies** are each liable to the Governmental Plaintiff for the proper abatement of the *Per Se* Public Nuisances within Fayette County for which **EACC** is liable, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**, up to the remaining, available limits of liability insurance coverage it provided to **EACC**.

204.  Under the common law of West Virginia, Defendant Pardee and Curtin Realty LLC is strictly liable to the Governmental Plaintiff, jointly and severally, for the proper abatement of the *Per Se* Public Nuisances that it contributed to, maintained, and failed or refused to abate during its

---

[36]  W. Va. Code §§ 31D-14-1405(b)(5) and 31D-14-1407(d)(1)

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.**   2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **94** of **125** pages

period of ownership of the Surface Estate appertaining to the real property within the **Subject Watershed** upon the surface of which all of the five (5) **Open Dumps** of mining waste are located, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**.

**205.** Under the common law of West Virginia, **Remedial Defendant** Quercus West Virginia LLC, as the current owner of the Surface Estate appertaining to the real property within the **Subject Watershed** upon the surface of which all of the five (5) **Open Dumps** of mining waste are located, is strictly liable to the Governmental Plaintiff, jointly and severally, for the proper abatement of the *Per Se* Public Nuisances that it contributed to, maintained, and failed or refused, and is continuing to fail or refuse, to abate during its period of such ownership, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**.

## COUNT FOUR:

**JUDICIAL ABATEMENT OF A CONTINUING *PER SE* PUBLIC
NUISANCES DECLARED BY SECTION V OF THE FAYETTE CO.
COMPREHENSIVE PUBLIC NUISANCE ABATEMENT ORDINANCE,
FAYETTE CO. ORDINANCE NO. 2018-001, PURSUANT
TO SECTION XXII OF THAT ORDINANCE**

*(Asserted by the Governmental Plaintiff Against the Remedial Defendants
Separately Named in Each Subsection of this Count)*

**206.** The Governmental Plaintiff incorporates in this Count each of the foregoing paragraphs of this Complaint, set forth above, as if fully set forth herein.

**207.** The Governmental Plaintiff's Relator herein, the duly elected Prosecuting Attorney of Fayette County, West Virginia, brings this Count pursuant to the authority conveyed to him by W. Va. Code § 7-4-1 and Section **XXII** of the **FCoWV Public Nuisance Abatement Ordinance**, which provides in relevant part:

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307*, (S.D. WV)*
**Verified Complaint**
Page 95 of 125 pages

With respect to an actual or imminently threatened *Public Nuisance,* or with respect to any act or condition which is detrimental to any beneficial uses within Fayette County of any *Natural Resource* owned by the State of West Virginia or Fayette County or held in trust by either for the benefit of present and future generations of the public, the Fayette County Prosecuting Attorney may, in addition to or in lieu of any other remedy available to Fayette County, bring a civil action in the name of the Fayette County Commission in any court of competent jurisdiction, and may seek in any such action any or all of the following forms of relief, and upon presentation to the court of the proof required by law on the required elements of it claims under applicable law, non-exclusively including this Ordinance, the court shall award the Fayette County Commission:

**(1)** an injunction in the form of a judicial public nuisance abatement order, requiring the liable party timely and competently to abate the *Public Nuisance* consistent with the applicable requirements of this Ordinance at their sole cost, under the supervision and oversight of the Fayette County Code Enforcement Agency;

***    ***    ***    ***    ***

**(3)** recovery of all **Abatement Action Costs** incurred by Fayette County with respect to such **Public Nuisance;**

***    ***    ***    ***    ***

**(6)** where appropriate, a declaratory judgment on liability for further *Abatement Action Costs* to be incurred by the County with respect to the *Public Nuisance* in accord with the provisions of Section **VI(g)** of this Ordinance; …

208. Pursuant to W. Va. Code § 7-1-3, a General Law of West Virginia, the Governmental Plaintiff herein, the County Commission of Fayette County, West Virginia, is vested "under rules prescribed by law" with superintendence of the internal "police" (*i.e.,* public protection) and fiscal affairs of Fayette County, a political subdivision of the State of West Virginia.

209. Pursuant to W. Va. Code § 7-1-3kk, the County Commission of Fayette County is vested with the following "Police Powers" of the State of West Virginia:

> **In addition to all other powers and duties now conferred by law upon county commissions, commissions are hereby authorized to enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety <u>and</u> to abate or cause to be abated anything which the commission determines to be a public nuisance.** The ordinances may provide for a misdemeanor penalty for its violation. The ordinances may further be applicable to the county in its entirety or to any portion of the county as considered appropriate by the county commission.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 96 of 125 pages

*Id.* [Bolding and underscoring emphasis added].

210. Pursuant to W. Va. Code § 7-1-3ff, the County Commission of Fayette County, is also vested with the following "Police Powers" of the State of West Virginia:

> **§ 7-1-3ff.  Authority of county commission to regulate unsafe or unsanitary structures and refuse on private land; authority to establish an enforcement agency; . . .**
>
>     \*\*\*       \*\*\*       \*\*\*       \*\*\*       \*\*\*
>
> **(b) Plenary power and authority are hereby conferred upon every county commission to adopt ordinances regulating the removal and clean up of any accumulation of refuse or debris, overgrown vegetation or toxic spillage or toxic seepage located on private lands which is determined to be unsafe, unsanitary, dangerous, or detrimental to the public safety or welfare, whether the result of natural or manmade force or effect.**
>
> (c) The county commission, in formally adopting ordinances, shall designate an enforcement agency which shall consist of the county engineer (or other technically qualified county employee or consulting engineer), county health officer or his or her designee, a fire chief from a county fire company, the county litter control officer, if the commission chooses to hire one, and two members-at-large selected by the county commission to serve two-year terms.  The county sheriff shall serve as an ex officio member of the enforcement agency and the county officer charged with enforcing the orders of the county commission under this section.

*Id.* [Bolding emphasis added].

211. In exercise of the express authority to enact ordinances conveyed to it by W. Va. Code §§ 7-1-3, 7-1-3ff and 7-1-3kk, on August 17, 2018, Plaintiff, the County Commission of Fayette County, West Virginia, following its conduct of several public meetings regarding the proposed Ordinance, duly enacted Fayette County Ordinance 2018-001 entitled "The Fayette County Comprehensive Public Nuisance Abatement Ordinance" (hereinafter:  "**FCoWV Public Nuisance Abatement Ordinance**"), an official, verified copy of which is attached hereto as **Exhibit 1** and incorporated herein.  Notably, as it pertains to the present, continuing Public Nuisance conditions and endangerments to the **Environment** alleged herein, the **FCoWV Public**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **97** of **125** pages

**Nuisance Abatement Ordinance**, particularly Section **IX(b)** thereof, seeks to implement investigatory and remedial measures regarding ***Public Nuisances*** within Fayette County involving **Released Toxic Wastes** or **Hazardous Substances** which, to the greatest degree possible, are not inconsistent with the procedures and requirements of the National Oil and Hazardous Substance Contingency Plan, 40 C.F.R., Part 300, the national standard for the proper and appropriate investigation and abatement of environmental harms and risks to human health arising from such **Released** substances.

212. In Section **V** of the **FCoWV Public Nuisance Abatement Ordinance**, the County Commission of Fayette County exercised its authority to declare by Ordinance the acts, omissions and occurrences that are a ***Public Nuisance*** within Fayette County.   In Section **VI** of the Ordinance, the County Commission of Fayette County carefully defined the nature and extent of the ***Public Nuisance*** Abatement liability imposed by the **FCoWV Public Nuisance Abatement Ordinance**.

213. ***Standard of Liability under the FCoWV Public Nuisance Abatement Ordinance***: Section **VI(e)** of the **FCoWV Public Nuisance Abatement Ordinance** provides:   "Unless otherwise expressly indicated, the standard of civil liability imposed by this Ordinance is strict liability, without regard to any element of *mens rea,* fault, negligence, knowledge, or other wrongdoing."

214. ***Scope of Liability under the FCoWV Public Nuisance Abatement Ordinance***: Section **VI(f)** of the **FCoWV Public Nuisance Abatement Ordinance** provides:

> **Scope of civil liability**:  When two or more ***Persons*** liable for a ***Public Nuisance*** declared pursuant to this Ordinance or any other ordinance of Fayette County, which Public Nuisance presents or imminently threatens to present a single, indivisible harm to the Public Health, Safety, Welfare, or the ***Environment***, or to any beneficial use

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page 98 of 125 pages

within Fayette County of any **Natural Resource**, for which there is no reasonable and reliable basis for apportioning among those liable or potentially liable **Persons** the harm presented or imminently threatened by the Public Nuisance, each such Person shall be jointly and severally liable for appropriate abatement of the Public Nuisance, reimbursement to the County of all **Abatement Action Costs** incurred and to be incurred by Fayette County with respect to such **Public Nuisance**, and for all nuisance and natural resource damages to which the County may be entitled by law. Any potentially liable party seeking to apportion such harm must prove by a preponderance of the evidence that:

> **(1)** the component of the harm which is sought to be apportioned is scientifically and technologically susceptible to reasonable and reliable apportionment;
> **(2)** that there is a reasonable and practicable basis for apportioning the harm; and
> **(3)** that the separate abatement activity proposed for that harm or portion of the harm is at least as practicable, safe, efficient, reliable and cost-effective in providing the degree of protection of the Public Health, Safety, Welfare, and the Environment as the abatement activity or activities, if any, proposed by the County.

215. ___Effect of Indemnification, Hold Harmless, etc. Agreements; Subrogation Rights under the FCoWV Public Nuisance Abatement Ordinance___:   Section **VI(i)** of the **FCoWV Public Nuisance Abatement Ordinance** provides:

> **(i)   Effect of indemnification, hold harmless, etc., agreements; subrogation rights:**
> **(1)** No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the **Owner or Operator** of any **Facility** or from any **Person** who may be liable for a **Public Nuisance** under this Ordinance, to any other **Person** the liability imposed under this Ordinance. Nothing in this subsection (i) shall bar any agreement to insure, hold harmless, or indemnify a patty to such agreement for any liability under this Ordinance.
> **(2)** Nothing in this Ordinance, including the provisions of paragraph **(1)** of this subsection (i), shall bar a cause of action that an **Owner or Operator** or any other **Person** subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any **Person**.

Accordingly, Defendant National Grid NE Holdings 2 LLC, the corporate successor to the pre-1966 remedial liabilities of **EGFA** imposed on it by the **FCoWV Public Nuisance Abatement Ordinance**, is liable to the Governmental Plaintiff with respect to the remedial liability imposed

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **99** of **125** pages

by the **FCoWV Public Nuisance Abatement Ordinance** on **EGFA** for its acts, omissions at, and status with respect to, the **Subject Property** that occurred prior to January 1, 1966.

216.  The past and continuing **Releases** of **Hazardous Wastes**, **Hazardous Substances**. **Solid Wastes**, and **Toxic Pollutants and Contaminants** from the five (5) unlined **Open Dumps** of mining waste on the surface of the **Subject Property** into the groundwater and surface waters within the **Subject Watershed** has caused or contributed to, and is continuing to cause and contribute to, a condition in the groundwater and connected surface waters within the **Subject Watershed** that:  **(i)** impairs the quality and beneficial uses of natural resources held in public trust for the use and benefit of present and future generations of the Public; and **(ii)** has been declared in Sections **V(a)(6)**, **(8)**, **(10)** and **(17)** of the Fayette County Comprehensive Public Nuisance Abatement Ordinance duly adopted by the Fayette County Commission, exercising authority expressly granted to it by W. Va. Code §§ 7-1-3 and 7-1-3kk, declaring by Ordinance each of those conditions resulting from those **Open Dumps** to be a *Public Nuisance* in Fayette County, WV.

217.  Adverse impacts on the quality and beneficial uses of the groundwater and surface water resources within the **Subject Watershed** caused or contributed to by the past and on-going **Release(s)** into the groundwater environment of high levels of **Hazardous Substances**, **Hazardous Wastes**, **Solid Wastes**, and **Toxic Pollutants and Contaminants** from the illegal **Open Dumps** on the **Subject Property** during the entire course of the ownership of that real property (or the Surface Estate appertaining to the real property comprising the **Subject Property**) by **EGFA** and **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC have resulted, and are continuing to result, in the loss of beneficial uses of these surface water and groundwater resources, specifically including the ability to use those water resources as a public drinking water supply without incurring excessive treatment costs; a

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **100** of **125** pages

condition constituting a Public Nuisance under the common law of West Virginia and declared to be a **Public Nuisance** by Section **V(a)(5)** of the **FCoWV Public Nuisance Abatement Ordinance**.

218.  These past and ongoing **Releases** of **Hazardous Substances**, **Hazardous Wastes**, **Solid Wastes**, and **Toxic Pollutants and Contaminants** from the illegal **Open Dumps** on the **Subject Property** have contributed and are contributing to an **Imminent** and **Substantial Endangerment** to health and the **Environment** within the **Subject Watershed**.  This contamination has comingled within the **Subject Watershed** with like **Hazardous Substances**, **Hazardous Wastes**, **Solid Wastes**, and **Toxic Pollutants and Contaminants** from mining facilities owned or operated by other mining companies or resulting from previous **Release** from those **Open Dumps** during the time of their ownership or control by one the previous **Remedial Defendants**/**Owners** within the Subject Watershed to form a single, indivisible imminent and substantial endangerment of and harm to the Public Health, Safety, Welfare and the **Environment** within Fayette County for which there exists no reasonable and reliable basis for apportioning among those contributing **Persons** the harm presented or imminently threatened by the **Public Nuisance**, and which contamination has caused and is continuing to cause degradation of groundwater, surface waters, and sediment to the point that they can no longer meet their designated uses under the federal Clean Water Act.

219.  **EGFA** and **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC have by their act and omissions with respect to, and by their failure or refusal to abate or cause the abatement of, the past and continuing **Release** of **Hazardous Substances** and **Toxic Pollutants and Contaminants** from each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property** adversely impacted the healthfulness, chemical and biological integrity and beneficial uses of the **Natural Resources** within the **Subject Watershed** in Fayette

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** __2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **101** of **125** pages

County and waters within the Watershed appear on the WV § 303(d) list of "impaired waters." Governmental Plaintiff asserts that these past and on-going **Releases** of **Hazardous Substances** and ***Toxic Pollutants and Contaminants*** into the ***Environment*** from Mining ***Facilities*** and the five (5) **Open Dumps** of mining waste located on the surface of the **Subject Property** have caused or contributed to the "impaired waters' status of surface waters within the **Subject Watershed**.

    a. ***Public Nuisance*** **Pursuant to Section V(b) of FCoWV Public Nuisance Abatement Ordinance – The Five (5) Open Dumps on the Surface of Land within the Subject Watershed Are A** ***Per Se*** **Public Nuisance Pursuant to the West Virginia Solid Waste Management Act, W. Va. Code §§ 22-15-1(c)(1) and 22-15-10(a), and Are, Therefore, Each a** ***Public Nuisance*** **pursuant to Section V(b) of the FCoWV Public Nuisance Abatement Ordinance – Asserted against Each Remedial Defendant:**

220. Section **V(b)** of the **FCoWV Public Nuisance Abatement Ordinance** provides:

> **(b)** The nuisances described and declared in Section **V(a)** of this Ordinance are not intended to be, and shall not be construed as, exclusive, and any act of commission or omission, and any condition which constitutes a nuisance by statute or common law of the State of West Virginia, when committed, omitted or existing within Fayette County, is declared to constitute a ***Public Nuisance***.

221. Because each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property** is a "Public Nuisance and clear and present danger to people" pursuant to the West Virginia Solid Waste Management Act, W. Va. Code § 22-15-1(c)(1), each of those **Open Dumps** is also a ***Public Nuisance*** in Fayette County declared by Section **V(b)** of the **FCoWV Public Nuisance Abatement Ordinance**.

222. Because **EGFA** is a ***Person*** that created the ***Public Nuisances*** under Section **V(b)** described in the preceding paragraph of this Complaint by its pre-1966 acts in connection with its mining operations in the **Subject Watershed**, it is jointly and severally liable for the remedial relief imposed by the Ordinance required properly to abate that ***Public Nuisance*** pursuant to

***The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.***
**v.** ***National Grid NE Holdings 2 LLC, et al.,*** **Case No.** _2:21-cv-00307_ **(S.D. WV)**
**Verified Complaint**
Page **102** of **125** pages

Sections **VI(a)(1)(A) and (B)**[37] of the Ordinance.  Consequently, **Remedial Defendant** National Grid NE Holdings 2 LLC. as the corporate successor to the pre-1966 remedial liability imposed on **EGFA** and retained by **EGFA** pursuant to Section **VI(g)** of the **FCoWV Public Nuisance Abatement Ordinance**, is jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(b)** and **VI(a)(1)(A), (B)** and **(i)** of the **FCoWV Public Nuisance Abatement Ordinance** for:  **(i)** all *Abatement Action* required properly to abate that *Public Nuisance* in compliance with that Ordinance; and **(ii)** timely reimbursement of all *Abatement Action Costs* incurred and to be incurred to secure proper abatement of that *Public Nuisance* in compliance with the Ordinance.

223.  Defendants **EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia are each a **Person** that, during the existence of five (5) **Open Dumps** of coal mining waste on the surface of

---

[37]  Sections **VI(a)(1)** through **(9)** of the **FCoWV Public Nuisance Abatement Ordinance** define the *Persons* that are liable for the *Public Nuisances* declared in Section **V** of the Ordinance.  Sections **VI(a)(1-9)(A)** through **(F)** define the nature and extent of the remedial liability imposed by the Ordinance.  Section **VI(a)(1)(A)** and **(B)** provide:

> **(a) Civil Liability for Abatement of a Public Nuisance; recovery of Abatement Action Costs:** Notwithstanding any other provision of county or municipal law within Fayette County, and subject only to the affirmative defenses set forth in subsection **(b)** of this section **VI**, --
>> **(1)** Any **Person** that creates, has caused or created, or threatens imminently to cause or create a *Public Nuisance* [as defined in Section V of the Ordinance] within Fayette County;
>> 
>>       ***     ***     ***     ***     ***
> 
> is liable for:
>> **(A)** timely and effective performance at their cost of all **Abatement Actions** required by this Ordinance appropriately to address, or respond to, or abate the **Public Nuisance** within Fayette County that is, or may be, presented in whole or in part, directly or indirectly, by their act or omission;
>> 
>> **(B)** timely reimbursement to Fayette County of all **Abatement Action Costs** incurred or to be incurred by the County with respect to such Public Nuisance, non-exclusively including all **Abatement Action Costs** incurred by Fayette County to unde1take, or to cause or compel any **Responsible Party** or **Potentially Responsible Party** to undertake, any **Abatement Action** in compliance with the requirements of this Ordinance, regardless of whether those costs are incurred prior to, during or following enactment of this Ordinance;

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
*v. National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **, (S.D. WV)**
**Verified Complaint**
Page **103** of **125** pages

the **Subject Watershed,** each owned the **Subject Property** (or the Surface Estate appertaining to the real property comprising the **Subject Property**) at or on which a **Public Nuisance** was being maintained within Fayette County, and, who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the **Public Nuisance**. Because each of those five (5) *Public Nuisance* conditions continue to exist within Fayette County unabated as of the date of this Complaint, Defendants **EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia are each jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(b)** and **VI(a)(4)(A), (B)** and **(d)**[38] of the **FCoWV Public Nuisance Abatement Ordinance** for: **(i)** all *Abatement Action* required properly to abate that *Public Nuisance* in compliance with that Ordinance; and **(ii)** timely reimbursement of all *Abatement Action Costs* incurred and to be incurred to secure proper abatement of that *Public Nuisance* in compliance with the Ordinance.

224. Because: **(i)** Defendants **Hanover/CGL 60203**, **Continental/ RDU 9433461**, and **Travelers/Designated Policies** each provided liability insurance coverage to Defendant **EACC**, now a defunct and dissolved corporation, that affords **EACC** indemnification for liability it incurs by operation of law or that it assumed by contract for property damage that resulted from occurrences during the coverage period of its policy (*i.e.,* the policy period of each such insurance policy, both of which policy periods extended beyond January 1, 1966) up to the remaining,

---

[38] Section **VI(d)** of the **FCoWV Public Nuisance Abatement Ordinance** provides:

> **Liability of subsequent owner or operator**: A subsequent owner of, or *Person* controlling, any real or personal property or *Facility* described in subsection **VI(a)(4)** of shall be liable to the same extent as the *Person* who owned or controlled such *Facility* at the time when such *Public Nuisance* was created, contributed to, or maintained, so long as such *Public Nuisance* or any *Endangerment* of the Public Health, Safety, Welfare, or the *Environment* within Fayette County resulting, in whole or in part, from such *Public Nuisance* remains unabated.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** ___2:21-cv-00307__ **(S.D. WV)**
**Verified Complaint**
Page **104** of **125** pages

available limits of liability coverage afforded by each policy; and **(ii)** under West Virginia law, the costs of properly abating a Public Nuisance are, for purposes of liability insurance coverage, "property damage;" the Governmental Plaintiff is authorized by Section **VI(j)** of the **FCoWV Public Nuisance Abatement Ordinance** to bring, and hereby brings and asserts, pursuant to the authority of and subject to the provisions of Section **VI(j),** a Direct Action asserting the liability of **Remedial Defendant EACC** described in the preceding Paragraph of this Complaint directly against **Remedial Defendants Hanover/CGL 60203**, **Continental/ RDU 9433461**, and **Travelers/Designated Policies**, each of which is jointly and severally liable to the Governmental Plaintiff for the proper abatement of the *Per Se* Public Nuisances within Fayette County for which **EACC** is liable, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**, up to the remaining, available limits of liability insurance coverage it is providing to **EACC**.

   b. *Public Nuisance* **Pursuant to Section V(a)(17) of the FCoWV Public Nuisance Abatement Ordinance – Knowingly Permitting the Use of Property within Fayette County for an Illegal Act or Activity  -  Asserted Against Each Remedial Defendant except National Grid NE Holdings 2 LLC**

225.   Section **V(a)(17)** of the **FCoWV Public Nuisance Abatement Ordinance** provides:

   **(a)** Each of the following are hereby defined and declared to be a **Public Nuisance**, and each day any of the following acts, omissions are committed, or conditions maintained or allowed to exist within Fayette County shall constitute a separate offense:

   ***        ***        ***        ***        ***

   **(17)** knowingly allowing any illegal activity on, or knowingly permitting the use for any illegal activity, act, or omission of, any property within Fayette County.

226.   During some or all of the time period Defendants **EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC each owned the **Subject Property** (or the Surface Estate

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **105** of **125** pages

appertaining to the real property comprising the **Subject Property**) within Fayette County at or on the surface of which five (5) **Open Dumps** of mining waste were and are located, West Virginia law[39] prohibited any landowner in West Virginia from allowing an **Open Dump** (not subject to a compliance schedule approved by the Cabinet Secretary of the **WVDEP**) to exist on the landowner's property.

227.   Each of **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC knowingly, as that term is defined in Section **III(x)**[40] of the **FCoWV Public Nuisance Abatement Ordinance,** permitted **Open Dumps** to exist on the **Subject Property** during the time each of them owned the **Subject Property** (or the Surface Estate appertaining to the real property comprising the **Subject Property**) in violation of West Virginia law. Accordingly, Defendants **EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia, LLC are each jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(a)(17)** and **VI(a)(4)(A), (B)** and **(d)**[41] of the **FCoWV Public Nuisance Abatement Ordinance** for:  **(i)**

---

[39]  W. Va. Code § 22-15-10(a) and its prior codified versions, the effective dates of which date back to at least 1993.

[40]  Section **III(x)** of the **FCoWV Public Nuisance Abatement Ordinance defines the term "knowingly" as used in that Ordinance as follows:**

> **(x)** The term **"Knowingly"** imports only a knowledge that the facts exist which brings the act, omission, or condition within the any applicable provision of this Ordinance.  As used in this Ordinance, the term does not require any knowledge of the unlawfulness of such act or omission, nor does it require any knowledge of any requirement in law that a **Person** affirmatively conduct any inquiry or assessment; however, for purposes of this Ordinance, a **Person** acts knowingly if he proceeds without knowledge of any fact which the law, including this Ordinance, imposes an affirmative obligation to know or ascertain.

[41]  Section **VI(d)** of the **FCoWV Public Nuisance Abatement Ordinance** provides:

> **Liability of subsequent owner or operator**: A subsequent owner of, or *Person* controlling, any real or personal property or Facility described in subsection **VI(a)(4)** of shall be liable to the same extent as the *Person* who owned or controlled such Facility at the time when such

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **106** of **125** pages

all *Abatement Action* required properly to abate that *Public Nuisance* in compliance with that Ordinance; and **(ii)** timely reimbursement of all *Abatement Action Costs* incurred and to be incurred to secure proper abatement of that *Public Nuisance* in compliance with the Ordinance.

    **c.** *Public Nuisance* **Pursuant to Section V(a)(5) of the FCoWV Public Nuisance Abatement Ordinance – Release of a Hazardous Substance within Fayette County which Impairs within Fayette County the Beneficial Uses of Natural Resources, including** *Waters of the State* **– Asserted against all Remedial Defendants:**

**228.** Section **V(a)(5)** of the **FCoWV Public Nuisance Abatement Ordinance** provides:

> **(a)** Each of the following are hereby defined and declared to be a **Public Nuisance,** and each day any of the following acts, omissions are committed, or conditions maintained or allowed to exist within Fayette County shall constitute a separate offense:
>       \*\*\*        \*\*\*        \*\*\*        \*\*\*        \*\*\*
>
> **(5)** the *Release* into the *Environment* within Fayette County of any *Hazardous Substance*, which presents, or which may present, an **Imminent** and *Substantial Endangerment* to the Public Health, Safety, Welfare, or the *Environment,* or which is detrimental to or impairs any beneficial uses within Fayette County of any *Natural Resource.*

**229.** The existence, since the day of creation of each of the five (5) unlined **Open Dumps** without any **Leachate** control or collection system on the surface of land within the **Subject Watershed** has resulted, and is continuing to result in:  the **Release** into the **Environment** within Fayette County of **Hazardous Substances** which is detrimental to or impairs, and which, in fact, has impaired continuously since the creation of those **Open Dumps** the beneficial uses within Fayette County of *Natural Resource*; to wit, the surface waters and groundwater within the **Subject Watershed**; all within the meaning of Section **V(a)(5)** of the **FCoWV Public Nuisance Abatement Ordinance**.  Accordingly each of the five (5) unlined **Open Dumps** on the surface of

---

*Public Nuisance* was created, contributed to, or maintained, so long as such *Public Nuisance* or any *Endangerment* of the Public Health, Safety, Welfare, or the *Environment* within Fayette County resulting, in whole or in part, from such *Public Nuisance* remains unabated.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307**, (S.D. WV)**
**Verified Complaint**
Page **107** of **125** pages

land within the **Subject Watershed** is a *Public Nuisance* lawfully declared by Section **V(a)(5)** of the **FCoWV Public Nuisance Abatement Ordinance** and, therefore, a *Per Se* Public Nuisance under the common law of West Virginia.

230. Because:   **(a) EGFA** is a *Person* that first created the *Public Nuisance* under Section **V(a)(5)** described in the preceding paragraph of this Complaint by its pre-1966 acts in connection with its mining operations in the **Subject Watershed**; and **(b)** the continuing **Releases** of **Hazardous Substances** from each of the five (5) **Open Dumps** on the surface of the **Subject Property** prior to 1966 then impaired the beneficial uses of the *Waters of the State* within the **Subject Watershed** and are contributing the current impairment of the beneficial uses of those same Waters, **EGFA** is jointly and severally liable for the remedial relief imposed by the Ordinance required properly to abate that *Public Nuisance* pursuant to Sections **V(a)(5)** and **VI(a)(1)(A)** and **(B)** of the Ordinance.   Consequently, **Remedial Defendant** National Grid NE Holdings 2 LLC. as the corporate successor to the pre-1966 remedial liability imposed on **EGFA** arising out of its mining and mine waste disposal operations in the **Subject Watershed** and retained by **EGFA** pursuant to applicable law, non-exclusively including Section **VI(i)** of the **FCoWV Public Nuisance Abatement Ordinance**, is jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(a)(5)** and **VI(a)(1)(A), (B)** and **(i)** of the **FCoWV Public Nuisance Abatement Ordinance** for:   **(i)** all *Abatement Action* required properly to abate that *Public Nuisance* in compliance with that Ordinance; and **(ii)** timely reimbursement of all *Abatement Action Costs* incurred and to be incurred to secure proper abatement of that *Public Nuisance* in compliance with the Ordinance.

231.  **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia are each a **Person** that, during the existence of five (5) **Open Dumps** of coal mining waste on the

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **108** of **125** pages

surface of the **Subject Watershed,** owned the **Subject Property** (or the Surface Estate appertaining to the real property on the surface of which all of the five (5) **Open Dumps** are located) at or on which the **Releases** of **Hazardous Substances** was ongoing and the **Public Nuisance** declared in Section **V(a)(5)** was being maintained within Fayette County, and, who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the **Public Nuisance**.   Because each of those five (5) **Open Dump/*Public Nuisance*** conditions continue to exist within Fayette County unabated as of the date of this Complaint, **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia are each jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(a)(5)** and **VI(a)(4)(A), (B)** of the **FCoWV Public Nuisance Abatement Ordinance** for:  **(i)** all ***Abatement Action*** required properly to abate that ***Public Nuisance*** in compliance with that Ordinance; and **(ii)** timely reimbursement of all ***Abatement Action Costs*** incurred and to be incurred to secure proper abatement of that ***Public Nuisance*** in compliance with the Ordinance.

232.  Because:   **(i)** Defendants **Hanover/CGL 60203**, **Continental/ RDU 9433461**, and **Travelers/Designated Policies** each provided liability insurance coverage to Defendant **EACC**, now a defunct and dissolved limited liability company, that affords **EACC** indemnification for liability it incurs by operation of law or that it assumed by contract for property damage that resulted from occurrences during the coverage period of its policy (*i.e.,* the policy period of each such insurance policy extended beyond January 1, 1966) up to the remaining, available limits of liability coverage afforded by each policy; and **(ii)** under West Virginia law, the costs of properly abating a Public Nuisance are, for purposes of liability insurance coverage, "property damage;" the Governmental Plaintiff is authorized by Section **VI(j)** of the **FCoWV Public Nuisance Abatement Ordinance** to bring, and hereby brings and asserts, subject to the provisions Section

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **109** of **125** pages

**VI(j)**, a Direct Action asserting the liability of **Remedial Defendant EACC** described in the preceding Paragraph of this Complaint directly against Defendants **Hanover/CGL 60203**, **Continental/ RDU 9433461**, and **Travelers/Designated Policies**, each of which is jointly and severally liable to the Governmental Plaintiff for the proper abatement of the *Per Se* ***Public Nuisances*** within Fayette County for which **EACC** is liable, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**, up to the remaining, available limits of liability insurance coverage it is providing to **EACC**.

> d. *Public Nuisance* **Pursuant to Section V(a)(10), Subparagraph (6) of the FCoWV Public Nuisance Abatement Ordinance – Release or Disposal of any Hazardous Waste, Hazardous Substances, Waste, or Pollutant or Contaminant at or emanating from any Facility which causes, or contributes to the presence in any** *Waters of the State* **within Fayette County of any Pollutant or Contaminant at elevated levels that may present a significant, adverse impact to the chemical, physical, hydrologic, or biological components of any impacted aquatic ecosystems – Asserted against all Remedial Defendants:**

**233.** Section **V(a)(10), Subparagraph (6)** of the **FCoWV Public Nuisance Abatement Ordinance** provides, in relevant part:

> **(a)** Each of the following are hereby defined and declared to be a **Public Nuisance,** and each day any of the following acts, omissions are committed, or conditions maintained or allowed to exist within Fayette County shall constitute a separate offense:
>
> > \*\*\*          \*\*\*          \*\*\*          \*\*\*          \*\*\*
>
> **(10)** the **Release** or **Disposal** of any **Hazardous Waste, Hazardous Substances, Waste,** or **Pollutant or Contaminant** at, under, or emanating from any **Facility** which causes, creates, or contributes to any of the following conditions within Fayette County:
>
> > \*\*\*          \*\*\*          \*\*\*          \*\*\*          \*\*\*
>
> **(6)** the presence in any ***Waters of the State*** within Fayette County of any **Pollutant** or **Contaminant** at elevated levels that may present a significant, adverse impact to the chemical, physical, hydrologic, or biological components of any impacted aquatic ecosystems or drinking water source, . . .

**234.** The manganese compounds that have been released, that are being released, and that

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** ___2:21-cv-00307___, **(S.D. WV)**
**Verified Complaint**
Page **110** of **125** pages

threaten imminently to be released into the groundwater and connected surface waters within the **Subject Watershed** at least in part from the five (5) unlined **Open Dumps/Facilities** on the **Subject Property** are a "**Hazardous Waste**" as that term is defined in Section **III(u)(1)(2)** of the **FCoWV Public Nuisance Abatement Ordinance**.

235.  The total iron and total manganese that have been released, that are being released, and that threaten imminently to be released into the groundwater and connected surface waters within the **Subject Watershed** at least in part from the five (5) unlined **Open Dumps/Facilities** on the **Subject Property** are each a "**Waste**" as that term is defined in Section **III(ww)** of the **FCoWV Public Nuisance Abatement Ordinance**.

236.  The presence of levels of iron in the groundwater at and downgradient of the five (5) **Open Dumps/Facilities** on the **Subject Property** at levels in excess of 300 μg/L of total iron in groundwater is a continuing *Public Nuisance* in Fayette County declared by the County Commission of Fayette County in Section **V(a)(10), subparagraph (6)(vi)** of the **FCoWV Public Nuisance Abatement Ordinance** because that condition was caused or contributed to by the "**Release**" or "**Disposal**" of a "**Waste**" or **Leachate** at, under or emanating from the five (5) **Open Dumps/Facilities** on the **Subject Property** in Fayette County.

237.  The presence of levels of manganese in the groundwater within the **Subject Watershed** at and downgradient of the five (5) **Open Dumps/Facilities** on the **Subject Property** at levels in excess of 50 μg/L of total manganese in groundwater is a *Public Nuisance* in Fayette County declared by the County Commission of Fayette County in Section **V(a)(10), subparagraph (6)(iii)** of the **FCoWV Public Nuisance Abatement Ordinance** because that condition was caused or contributed to by the **Release** or **Disposal** of either or both a "**Hazardous Waste**" and a "**Solid Waste**" at, under or emanating from the five (5) **Open Dumps/Facilities** on the **Subject Property**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **111** of **125** pages

in Fayette County.

238.  Continuously since the date of the original creation of each of the five (5) **Open Dumps** of coal mining waste within the **Subject Watershed** each such **Open Dump** has been Releasing, and each is continuing to **Release**, **Hazardous Waste**, **Hazardous Substances**, **Solid Wastes** <u>and</u> **Pollutants and Contaminants** into the *Waters of the State*, including the groundwaters, within the **Subject Watershed**, thereby causing and contributing to the presence within *Waters of the State* within that Watershed of **Pollutants or Contaminants,** including Iron, Cadmium, Manganese, Arsenic, and Beryllium at elevated levels that may present, and, in fact do present, a significant, adverse impact to the chemical and biological components of the aquatic ecosystem within the **Subject Watershed**.  Accordingly each of the five (5) unlined **Open Dump Facilities** on the surface of land within the **Subject Watershed** is a *Public Nuisance* lawfully declared by Section **V(a)(10), Subparagraph (6)** of the **FCoWV Public Nuisance Abatement Ordinance** and, therefore, a *Per Se* Public Nuisance under the common law of West Virginia.

239.  Because **EGFA** is a *Person* that first created and contributed to the *Public Nuisance* under Section **V(a)(10), Subparagraph (6)** described in the preceding paragraph of this Complaint by its pre-1966 acts in connection with its mining operations in the **Subject Watershed**, it is jointly and severally liable for the remedial relief imposed by the Ordinance required properly to abate that *Public Nuisance* pursuant to Sections **V(a)(10), Subparagraph (6)** and **VI(a)(1)(A) and (B)** of the Ordinance.  Consequently, **Remedial Defendant** National Grid NE Holdings 2 LLC. as the corporate successor to the pre 1966 remedial liability imposed on **EGFA** and retained by **EGFA** pursuant to applicable law, non-exclusively including Section **VI(i)** of the **FCoWV Public Nuisance Abatement Ordinance**, is jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(a)(10), Subparagraph (6)** and **VI(a)(1)(A), (B)** and **(i)** of the **FCoWV**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** <u>2:21-cv-00307</u>**, (S.D. WV)**
**Verified Complaint**
Page **112** of **125** pages

**Public Nuisance Abatement Ordinance** for: **(i)** all *Abatement Action* required properly to abate that *Public Nuisance* in compliance with that Ordinance; and **(ii)** timely reimbursement of all *Abatement Action Costs* incurred and to be incurred to secure proper abatement of that *Public Nuisance* in compliance with the Ordinance.

240.  **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia are each a *Person* that, during the existence of five (5) **Open Dumps** of coal mining waste on the surface of the **Subject Watershed,** owned the **Subject Property** (or the Surface Estate appertaining to the real property on the surface of which all of the five (5) **Open Dumps** are located) during the time periods that the **Releases** of **Hazardous Waste**, **Hazardous Substances**, **Solid Wastes** <u>and</u> **Pollutants and Contaminants** into the *Waters of the State*, including the groundwaters, within the **Subject Watershed** causing and contributing to the presence within *Waters of the State* within that Watershed of **Pollutants or Contaminants,** including Iron, Cadmium, Manganese, Arsenic, and Beryllium at elevated levels that may present, and, in fact do present, a significant, adverse impact to the chemical and biological components of the aquatic ecosystem within the **Subject Watershed** was ongoing, and the **Public Nuisance** declared in Section **V(a)(10), Subparagraph (6)** was being maintained within Fayette County, and, who, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused appropriately to abate the **Public Nuisance**.  Because each of those five (5) **Open Dumps/***Public Nuisance* conditions continue to exist within Fayette County unabated as of the date of this Complaint, Defendants **EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia are each jointly and severally liable to the Governmental Plaintiff pursuant to Sections **V(a)(10), Subparagraph (6)** and **VI(a)(4)(A), (B)** of the **FCoWV Public Nuisance Abatement Ordinance** for: **(i)** all *Abatement Action* required properly to abate that *Public*

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **113** of **125** pages

*Nuisance* in compliance with that Ordinance; and **(ii)** timely reimbursement of all ***Abatement Action Costs*** incurred and to be incurred to secure proper abatement of that ***Public Nuisance*** in compliance with the Ordinance.

241. Because: **(i) Remedial Defendants Hanover/CGL 60203**, **C**ontinental/ **RDU 9433461**, and **Travelers/Designated Policies** each provided liability insurance coverage to **Remedial Defendant EACC**, now a defunct and dissolved corporation, that affords **EACC** indemnification for liability it incurred by operation of law or that it assumed by contract for property damage that resulted from occurrences during the coverage period of its policy (*i.e.,* the policy period of each such insurance policy extended beyond January 1, 1966 and was entirely within the 1960's) up to the remaining, available limits of liability coverage afforded by each policy; and **(ii)** under West Virginia law, the costs of properly abating a Public Nuisance are, for purposes of liability insurance coverage, "property damage;" the Governmental Plaintiff is authorized by Section **VI(j)** of the **FCoWV Public Nuisance Abatement Ordinance** to bring, and hereby brings and asserts, pursuant to the authority of and subject to the provisions of Section **VI(j)**, a Direct Action asserting the liability of **Remedial Defendant EACC** described in the preceding Paragraph of this Complaint directly against **Remedial Defendants Hanover/CGL 60203**, **C**ontinental/ **RDU 9433461**, and **Travelers/Designated Policies**, each of which is jointly and severally liable to the Governmental Plaintiff for the proper abatement of the *Per Se* Public Nuisances within Fayette County for which **EACC** is liable, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**, up to the remaining, available limits of liability insurance coverage it is providing to **EACC**.

242. The Governmental Plaintiff has incurred and is continuing to incur **Abatement Action Costs**, within the meaning of that term in Section **III(b)** the **FCoWV Public Nuisance Abatement**

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **114** of **125** pages

**Ordinance**, in responding to the *Public Nuisance* conditions in the **Subject Watershed** addressed above.

## COUNT FIVE
### JUDICIAL ABATEMENT OF A CONTINUING PUBLIC NUISANCE PURSUANT TO THE COMMON LAW OF WEST VIRGINIA
**(*Governmental Plaintiff against all Remedial Defendants*)**

243.   The Governmental Plaintiff incorporates and reallege in this Count all of the allegations asserted in the foregoing paragraphs as if fully set forth herein.

244.     Pursuant to W.Va. Code § 7-1-3kk, the General Law of West Virginia has vested in the Governmental Plaintiff, The County Commission of Fayette County, the authority "to abate or cause to be abated anything which the commission determines to be a public nuisance."  As such, the Governmental Plaintiff has the authority to itself abate or to prosecute a judicial action for abatement of a Public Nuisance under duly promulgated statutes[42], ordinances, and regulations and common law of West Virginia to secure timely and adequate abatement of unacceptable harms and hazards to the Public Health, Safety, Welfare or the Environment presented by the conditions of Public Nuisance alleged herein.

---

[42]   In addition to its authority under W. Va. Code §§ 7-1-3, 7-1-3ff, and 7-1-3kk, the County Commission of Fayette County also has authority to seek judicial abatement of Public Nuisance condition within the County pursuant to W. Va. Code § 16-3-6, which provides:

> The state director of health or any county or municipal health officer shall inquire into and investigate all nuisances affecting the public health within his jurisdiction; and the said director or any such officer **or the county commission of any county** or any municipality **is authorized and empowered to apply to the circuit court of the county in which any such nuisance exists, or to the judge thereof in vacation, for an injunction forthwith to restrain, prevent or abate such nuisance**.

**Id.** [Bolding emphasis added].

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
*v. National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **115** of **125** pages

245. Under the common law of West Virginia law, a Public Nuisance is "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *Hark v. Mountain Fork Lumber Co.,* 127 W.Va. 586, 595-96 (1945).

246. The Restatement (Second) of Torts § 82lB, which has on multiple occasions[43] been cited by the West Virginia Supreme Court of Appeals as articulative of the common law of West Virginia, defines a public nuisance as "an unreasonable interference with a right common to the general public."

247. Where a condition "is shown by facts and circumstances to constitute a nuisance affecting public health 'no measure of necessity, usefulness or public benefit will protect it from the unflinching condemnation of the law.'" *Board of Com'rs of Ohio County v. Elm Grove Mining Co.*, 122 W.Va. 442, 9 S.E.2d 813, 817 (W.Va. 1940) (quoting 1 Wood on Nuisances, 3d Ed., §19); *Respublica v. Caldwell*, 1 U.S. 150 (1785).

248. The West Virginia Supreme Court of Appeals has described Public Nuisance generally under the common law of West Virginia as "the doing of or the failure to do something that injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public[.] (footnotes omitted)". *State, ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245 (1997) at fn. 28.

249. The West Virginia Supreme Court of Appeals in *State, ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245 (1997) explicitly recognized that a Public Nuisance arising from environmental contamination can take the form of both an "endangerment to the public health [and] safety" and physical harm to environmental media ("in the soil and . . . the

---

[43] *Hedricks* v. *Stalnaker*, 181 W. Va. 31 (1989) and *Duff* v. *Morgantown Energy Ass'n.*, 187 W. Va. 712 (1992)

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.* v. *National Grid NE Holdings 2 LLC, et al.,* Case No. 2:21-cv-00307, (S.D. WV)

**Verified Complaint**

Page 116 of 125 pages

waters of this State"). 200 W.Va. at 245, 488 S.E.2d at 925.

250.  The seriousness of the harm and of the unacceptable endangerments to the Public Health, Safety, Welfare and the **Environment** caused by the noxious and offensive Public Nuisance conditions within the **Subject Watershed** alleged herein cannot be justified under West Virginia law, and substantially outweigh, any claimed social utility of the past coal mining conduct of Defendants.

251.  The conduct of the **Remedial Defendants EGFA** and **EACC** in the operation of each of their mining and mining waste disposal **Facilities** on the **Subject Property** alleged herein is a a substantial factor in causing and contributing to the condition of a <u>continuing</u> Public Nuisance in the **Subject Watershed** alleged herein.

252.  The aforementioned acts and omissions of **EGFA** and **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia caused or contributed to the continuing common law Public Nuisance conditions within the **Subject Watershed** by their failure and refusal to abate or cause the abatement of the five (5) illegal, unlined **Open Dumps** of mining waste consisting of **Hazardous Wastes**, **Hazardous Substances**, **Solid Wastes** and **Toxic Pollutants and Contaminants.**  These quintessential, very hazardous Public Nuisance conditions within the **Subject Watershed** alleged herein are:  **(a)** seriously injurious to *Waters of the State*, all of which are a publicly-owned *Natural Resource* held in trust by the State of West Virginia for the use and benefit of present and future generations of the Public; **(b)** constitutes an unreasonable interference with the free use and enjoyment of such *Waters of the State* within the **Subject Watershed**; and **(c)** is injurious to the proper and healthful functioning of the **Environment** within the **Subject Watershed** and offensive to the senses, such that an ordinary person would reasonably be annoyed or disturbed by such condition.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** <u>2:21-cv-00307</u>, **(S.D. WV)**
**Verified Complaint**
Page **117** of **125** pages

253.  **Remedial Defendant** National Grid NE Holdings 2, LLC is strictly liable, jointly and severally, for the timely and appropriate abatement of the Public Nuisance condition in the **Subject Watershed** because it is:  **(a)** the corporate successor to pre-1966 remedial liabilities of **EGFA**, a Person that, by its acts and omissions as a former **Owner** and **Operator** of the coal mining's **Facilities** in the **Subject Watershed** created, contributed to, or maintained each of the five (5) unlined **Open Dumps** of mining waste within the **Subject Watershed** resulting in a single, indivisible harm in the nature of the continuing condition of Public Nuisance alleged herein; and **(b)** a "person" that, regardless of actual knowledge of the existence or nature of the nuisance condition, failed or refused to abate the Public Nuisance.

254.  **Remedial Defendants EACC**, Pardee and Curtin Realty LLC and Quercus West Virginia are each  strictly liable, jointly and severally, for the timely and appropriate abatement of the Public Nuisance condition in the **Subject Watershed** because each of them is Person that, regardless of its actual knowledge of the existence or nature of the nuisance condition, failed or refused to abate the hazardous Public Nuisance condition on the surface of the **Subject Property** during its time of ownership of the **Subject Property** (or the Surface Estate appertaining to the real property on the surface of which all of the five (5) **Open Dumps** are located) thereby contributing to the resulting single, indivisible harm to the Public Health, Safety, Welfare and the **Environment** within the **Subject Watershed** by maintaining each of the five (5) unlined **Open Dumps/Public Nuisance** conditions within the **Subject Watershed**.

255.  Because:  **(i) Remedial  Hanover/CGL 60203**, **Continental/ RDU 9433461**, and Travelers/Designated Policies each provided liability insurance coverage to **Remedial Defendant EACC**, now a defunct corporation, that affords **EACC** indemnification for liability it incurs by operation of law or that it assumed by contract for property damage resulting from

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** <u>2:21-cv-00307</u>, **(S.D. WV)**
**Verified Complaint**
Page **118** of **125** pages

occurrences during the coverage period of its policy (*i.e.,* the policy period of each such insurance policy was in the 1960's) up to the remaining, available limits of liability coverage afforded by each policy; **(ii)** under West Virginia law, the costs of properly abating a Public Nuisance are, for purposes of liability insurance coverage, "property damage;" **(iii)** under West Virginia law[44] a defunct, dissolved corporation may properly be sued for its liability up to the amount of its undistributed assets, including the remaining, available limits of its liability insurance coverage; and **(iv)** under West Virginia law, in any civil action brought against a dissolved corporation solely to recover against its remaining, available limits of liability insurance coverage, the liability insurer of the dissolved corporation is the sole Real Party in Interest; **Remedial Defendants Hanover/CGL 60203**, **Continental/ RDU 9433461**, and **Travelers/Designated Policies** are each liable to the Governmental Plaintiff for the proper abatement of the *Per Se* Public Nuisances within Fayette County for which **EACC** is liable, to wit, each of the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property**, up to the remaining, available limits of liability insurance coverage it provided to **EACC**.

256.  Because the Public Nuisance conditions at and emanating from the **Subject Property** and within the **Subject Watershed** arise out of and result from the **Release** of **Hazardous Substances** into the **Environment**, the abatement of that Public Nuisance should be undertaken by the Defendants, jointly and severally, and at their sole cost in full compliance with the Orders of this Court and in a manner consistent with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R., Part 300.

---

[44]  *See:* Footnote 35, *supra.*

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **119** of **125** pages

## COUNT FOUR:

## UNJUST ENRICHMENT

### (*The Governmental Plaintiff against all Remedial Defendants*)

257.  The Governmental Plaintiff incorporates and realleges in this Count all of the allegations asserted in the foregoing paragraphs as if fully set forth herein.

258.  **EGFA** and Remedial Defendants **EACC**, Pardee and Curtin Realty LLC, and Quercus West Virginia, LLC have each failed or refused to perform or fund the necessary and proper abatement and remedial actions with respect to the five (5) **Open Dumps** of mining waste on the surface of the **Subject Property** in the **Subject Watershed** necessary and proper to **Respond** to the Public Nuisance conditions alleged herein.

259.  The Governmental Plaintiff has the authority and responsibility under applicable law to provide adequate protection of the Public Health, Safety, Welfare and the **Environment,** and to abate and cause to be abated, *inter alia*, the five (5) **Open Dumps**/Per Se Public Nuisance conditions existing on the surface of the **Subject Property**.

260.  By undertaking necessary **Responses** to, including necessary investigations into the nature and extent of, the *Per Se* Public Nuisance conditions at and emanating from the **Subject Property** and within the **Subject Watershed** alleged herein, the Governmental Plaintiff has incurred necessary expense to respond to the *Per Se* Public Nuisance conditions existing on the **Subject Property**, and in so doing has conferred and is conferring an economic benefit on each of the **Remedial Defendant**s in consequence of the interest of each **Remedial Defendant** in that same property, which interest arises from each **Remedial Defendant's** liability, jointly and severally, for the timely and competent investigation and abatement of the Public Nuisance conditions that they each created, contributed to, or maintained.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307*, (S.D. WV)*
**Verified Complaint**
Page **120** of **125** pages

**261.** The Governmental Plaintiff**'s** expenditure of public funds to investigate and **Respond** to the Public Nuisance conditions in the **Subject Watershed** alleged herein, which would otherwise be **Remedial Defendants'** obligation to fully fund or perform, has unjustly enriched Defendants.

## VI.   *PRAYER FOR RELIEF*:

WHEREFORE, the Governmental Plaintiff, in discharge of its statutory authority and responsibility to provide adequate protection of the Public Health, Safety, Welfare and the **Environment** within Fayette County and to abate conditions of *Public Nuisance* within Fayette County, respectfully requests that this Court award the following relief to the Governmental Plaintiff with respect to the causes of action asserted herein:

**A.** Pursuant to **RCRA** § 7002(a)(1(b), 42 U.S.C. § 6972(a)(1)(B), the West Virginia common law of Public Nuisance Abatement, and Section **XXII** of the **FCoWV Public Nuisance Abatement Ordinance**, an Order of this Court requiring each of the **Remedial Defendants**[45], jointly and severally, and subject to appropriate oversight and monitoring by both the Fayette County Code Enforcement Agency and the Fayette County Solid Waste Authority:  **(a)** to undertake at their sole cost a Remedial Investigation and Feasibility Study ("**RI/FS**") of the **Subject Property** and the **Subject Watershed** in full compliance with the applicable requirements of the **NCP, (b)** timely and competently to implement at their sole cost such immediate or interim removal or remedial actions as the Court may determine to be necessary

---

[45]  As stated in Paragraphs 74 and 78 of this Complaint, the Relief herein requested against **Remedial Defendants Hanover/CGL 60203**, **Continental/ RDU 9433461**, and Travelers/Designated Policies is limited to the remaining available limit of coverage provided under each of those liability insurance policies to **EACC**.

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **121** of **125** pages

and proper to appropriate abatement of any Public Nuisance condition(s) or imminent and substantial endangerments to health or the **Environment** within the **Subject Watershed**; **(c)** following filing of the required final **RI/FS** report with this Court, and after conduct of such hearings as the Court determines to be appropriate, to timely and competently implement at their sole cost the Remedial Action Plan, if any, for the **Subject Watershed** selected and approved by the Court;

B. Pursuant to Sections **VI(i)** and **XXII(b)(5)** of the **FCoWV Public Nuisance Abatement Ordinance** and subject to the provisions of Paragraphs 74 and 78 of this Complaint, a Declaratory Judgment that the **Remedial Defendants** are liable, jointly and severally, to the Governmental Plaintiff for timely reimbursement of all future *Abatement Action Costs* to be incurred by the Governmental Plaintiff in compliance with the Orders of this Court and the requirements of the **FCoWV Public Nuisance Abatement Ordinance** with respect to the Public Nuisance within the **Subject Watershed** herein at issue;

C. Pursuant to **CERCLA** §§ 111(g) and 310(a)(1) and (c), 42 U.S.C. § 9611(g) and 9659(a)(1) and (c), an Order compelling **Remedial Defendant** Quercus West Virginia, LLC forthwith to publish the newspaper notification to potential injured parties required by **CERCLA** § 311(g), 42 U.S.C. § 9611(g);

D. Pursuant to Federal Rule of Civil Procedure 53 and in furtherance of the goals of timely and effective implementation of the complex and continuing mandatory injunctive relief required herein pursuant to the principles articulated in this Court's holding in *Ohio Valley Envtl. Coal.* v. *Fola Coal Co., LLC*, Case No. 2:15-cv-01371 (S.D. WV) (Chamber, C.J.) (September 27, 2017 Order on Plaintiff's Motion for Appointment of a Special Master), entry of an Order of Reference to a Special Master appointed by this Court and authorized: **(i)** to see to the timely and effective

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
v. *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307, **(S.D. WV)**
**Verified Complaint**
Page **122** of **125** pages

implementation of this Court's Orders herein; **(ii)** to adjudicate in the first instance any disputes between the parties regarding implementation of this Court's Orders, any requests for contempt sanctions, and to make a Report to the Court reflecting the Special Master's Findings of Fact, Conclusions of Law and Recommended Order respecting each such adjudication, which Order will be binding upon all parties to such adjudications as an Order of this Court unless application to this Court for review of such Order is timely filed or such Order is modified or vacated by this Court;

    **E.** Pursuant to **RCRA** § 7002(e), 42 U.S.C. § 6972(e) and subject to the provisions of Paragraphs 74 and 78 of this Complaint, an award to the Governmental Plaintiff and against each of the **Remedial Defendants**, jointly and severally, of the Governmental Plaintiff's costs of this litigation, excluding fees and cost exclusively related to Court  (including reasonable attorney's and expert witness fees and expenses);

    **F.** Pursuant to **CERCLA** § 310(f), 42 U.S.C. § 9659(f), an award to the Governmental Plaintiff and against **Remedial Defendant** Quercus West Virginia, LLC of the Governmental Plaintiff's costs of this litigation concerning Count Two herein (including reasonable attorney's and expert witness fees and expenses);

    **G.** Pursuant to the West Virginia common law of Unjust Enrichment and subject to the provisions of Paragraphs 74 and 78 of this Complaint, an award to the Governmental Plaintiff and against each **Remedial Defendant**, jointly and severally, of an equitable Order for Restitution for all reasonable sums, specifically including all technical, legal and other consulting costs, the Governmental Plaintiff  has incurred and will incur to investigate and **Respond** to the Public Nuisance conditions at and emanating from the **Subject Property** and within the **Subject Watershed** alleged herein, which would otherwise be the **Remedial Defendants'** obligation fully

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.**  2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **123** of **125** pages

to fund or perform;

**H.**    As to all Defendants, jointly and severally, a non-duplicative award to the Governmental Plaintiff of prejudgment interest, pursuant to **CERCLA** § 107(a), 42 U.S.C. § 9607(a) and West Virginia law;

**I.**    Such other and further relief as this Court deems proper and warranted.

**The Governmental Plaintiff** respectfully requests that this Court retain continuing jurisdiction over this action to the extent necessary and for as long as necessary to enforce and interpret, and to secure and review the **Remedial Defendants'** compliance with, such Order that this Court may enter herein.

## VERIFICATION:

**State of West Virginia,**
**Kanawha County,**

to-wit: Michael O. Callaghan, Esq. (WV Bar No. 5509), Chief Assistant Fayette County Prosecuting Attorney, Environmental and Public Health Protection Unit, being duly sworn, says that he has read the foregoing Verified Complaint and that he knows the contents thereof; that the facts and allegations therein contained are true, except such as are therein stated upon information and belief, and that as to such allegations he believes them to be true.

_____
Michael O. Callaghan, Esq.
Chief Assistant Fayette County Prosecuting Attorney
Environmental and Public Health Protection Unit

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
BRANDY HEFLIN
Great Expectations Realty
1337 Virginia St E
Charleston WV 25301
My Commission Expires February 4, 2026

Taken, sworn to and subscribed before me this 18th day of May 2021

_____
Notary Public

---

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
*v. National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**

**Verified Complaint**

Page **124** of **125** pages

Respectfully submitted:

**ANTHONY CILIBERTI, ESQ.**
**FAYETTE COUNTY PROSECUTING ATTORNEY**

By: */s/ Michael O. Callaghan*

Michael O. Callaghan, Esq. (WV Bar No. 5509)
Chief Assistant Fayette County Prosecuting Attorney
    Environmental & Public Health Protection Unit
c/o NEELY & CALLAGHAN
1337 Virginia Street East
Charleston, WV  25301
Telephone:  (304) 343-6500
Facsimile:  (304) 343-6528
mcallaghan@neelycallaghan.com

*The County Commission of Fayette County, West Virginia, ex rel. Ciliberti, Esq.*
**v.** *National Grid NE Holdings 2 LLC, et al.,* **Case No.** 2:21-cv-00307 **(S.D. WV)**
**Verified Complaint**
Page **125** of **125** pages