# EXHIBIT 1



# CODE ENFORCEMENT AGENCY
## FAYETTE COUNTY, WEST VIRGINIA

### Matter No. 2019-002 CEA

# INFORMATION DEMAND
# NO. 2019-002-8A2-0041

**IN RE:** **Investigation of Known & Reasonably Suspected Conditions of Public Nuisance in the Johnson Fork of the Loop Creek Watershed within Fayette County, West Virginia, Fayette County, West Virginia Code Enforcement Agency – Matter No. 2019-002**

---

**TO RESPONDENT:** NATIONAL GRID NE HOLDINGS 2 LLC
SUCCESSOR TO EASTERN GAS AND FUEL ASSOCIATES
(POWELLTON NUMBER 6 MINE, FAYETTE COUNTY, WEST VIRGINIA)

**DATE & TIME OF PRODUCTION:** December 6, 2019 at 11:00 a.m. EST

**PLACE OF PRODUCTION:**    Office of the Fayette County Prosecuting Attorney
108 East Maple Avenue
Fayetteville, WV 25840

**DESIGNATED RESPONSIBLE ATTORNEY:**  Michael O. Callaghan, Esq.
Chief Assistant Fayette Co. Prosecuting Attorney
ENVIRONMENTAL & PUBLIC HEALTH
  PROTECTION UNIT
Neely &Callaghan
159 Summers Street
Charleston, WV 25301
Telephone:  304-343-6500
Facsimile:  304-343-6528
E-Mail: mcallaghan@neelycallaghan.com

**PLEASE TAKE NOTICE** that, pursuant to Section VIII(a) of Fayette County, West Virginia Ordinance No. 2018-001 (hereinafter:  Ordinance 2018-001), entitled the Fayette County Comprehensive Public Nuisance Abatement Ordinance, the Fayette County, WV Code Enforcement Agency (hereinafter:  "**CEA**") has determined that YOU have or may have information regarding one or more of the matters described in Section VIII(a)(2)(A) through (E) of Ordinance 2018-001, inclusive, that does or may pertain to the condition of Public Nuisance that the CEA knows or reasonably suspect exists, or may exist, within Fayette County; to wit: within the ENVIRONMENT of the Johnson Fork Creek Watershed of Loop Creek located in Fayette County, West Virginia;

**WHEREFORE, YOU ARE LAWFULLY COMMANDED to produce at the time, date, and place set forth above the WRITINGS required and YOUR written responses to the information demanded by this Information Demand, specifically including the WRITINGS and information demanded described in Exhibit 1, which is attached hereto and incorporated by this reference as if set forth in full herein.**

## NOTICES TO RESPONDENT:

1.  **Availability of Official Version of Relevant Ordinances of Fayette County, WV:**  This **Information Demand** is issued pursuant to provisions of the Fayette County, West Virginia Ordinance No. 2018-001 that became effective on August 17, 2018 and is entitled:  "Fayette County Comprehensive Public Nuisance Abatement Ordinance."  You may review and download a complete and verified version of Ordinance 2018-001 as enacted by the County Commission of Fayette County, West Virginia from the official website of Fayette County, West Virginia that may be found at the following web address: https://fayettecounty.wv.gov/commission/Pages/Enacted-Ordinances.aspx

2.  **Failures or Refusals to Comply with Properly Served CEA Information Demand:**  Pursuant to Section VIII of Ordinance 2018-001, the failure or refusal of any Respondent named in this **Information Demand** that has been properly served with a copy of this **Information Demand** timely and competently to comply with any requirement of this **Information Demand** may subject the Respondent to:  **(a)** a compulsory administrative order by the CEA requiring immediate compliance with this **Information Demand**; **(b)** commencement of a civil enforcement action against you brought by the Fayette County Prosecuting Attorney in a court of competent jurisdiction; **(c)** pursuant to Sections XVIII(a)(2)(C) and XXII of Ordinance 2018-001 to the award to the Fayette County Commission and against you of Fayette County's litigation costs, including attorneys' fees and expenses, expert witness fees and expenses, and the fees and expenses of no more than one (1) non-testifying technical or scientific expert to assist the Fayette County Prosecuting Attorney in the preparation and prosecution of the action to secure enforcement of this **Information Demand**; or **(d)** pursuant to Section VIII(a)(2)(B) of Ordinance 2018-001 to the judicial imposition of a civil penalty in the amount of not less than $5,000 nor more than $10,000

per day for each day of non-compliance with this **Information Demand** in a civil action brought against you by the Fayette County Prosecuting Attorney.

**3.   This Information Demand Is Exempt from Requirements of the West Virginia Insurance Consumer Financial Information Privacy Regulations:**  This **Information Demand** is issued by the **CEA** pursuant to the authority vested in it by Sections VII and VIII of Ordinance 2018-001, which was duly enacted by the County Commission of Fayette County, West Virginia in exercise of the express authority vested in that County Commission by West Virginia Code §§ 7-1-3 and 7-1-3kk. Thus, WVCSR §§ 114-57-14.1(l), (m) and (n) and 114-57-15.2 exempt this **Information Demand** , from the limitations and requirements of the West Virginia Insurance Consumer Financial Information Privacy regulations, WVCSR, Title 114, Series 57, as the Respondents are required by local law to provide the information demanded herein.

**4.   Conditional Obligation Timely to File Required Privilege Log:**   Pursuant to Section XVIII(e)(1) of Ordinance 2018-001, if any Respondent to this **Information Demand**, based in whole or in part upon a claim of privilege or for work product protection, fails or refuses to produce and allow inspection and copying of any Writing demanded in this **Information Demand** or to provide a complete and accurate response to the information requested herein, such Respondent must timely file with the Office of the Fayette County Prosecuting Attorney under seal a Privilege Log that complies with the requirements set forth in that Section XVIII(e).  Failure or refusal timely to file a Privilege Log that complies with the requirements of Section XVIII(e)(1) results by operation of law in the imposition of the sanctions set forth in Section XVIII(e)(2) of Ordinance 2018-001.

**5.   Timely Filing of Written Certifications of Responses Required:**   Pursuant to Section VIII(d)(3)(a) of Ordinance 2018-001, the Respondent to this **Information Demand** is required to deliver to the Designated Responsible Attorney set forth in this **Information Demand** on or before the Date and Time for Production set forth in this **Information Demand** the written certifications required by that Section VIII(d)(3) subscribed to under oath.

**6.   Requirements Relating to Timing of Review of this Information Demand:**  Pursuant to Section VIII(f)of Ordinance 2018-001, any Respondent properly served with this **Information Demand** that seeks from any court, governmental agency, or tribunal any relief that would as a practical  matter have the effect of quashing, in whole or in part, or modifying all or any part of this **Information Demand** may only seeks any such legal or equitable relief in one of the following proceedings: **(1)** in a civil action brought by the Fayette County Prosecuting Attorney in a court of competent jurisdiction before which the Fayette County Prosecuting Attorney is prosecuting against such Respondent a claim pursuant to Section **VIII** of Ordinance 2018-001 seeking enforcement or civil penalties relating to this **Information Demand**; or **(2)**, in a civil action brought by the Fayette County Prosecuting Attorney in a court of competent jurisdiction before which the Fayette County Prosecuting Attorney is prosecuting against such Respondent a claim for abatement of, or recovery of Abatement Action Costs or civil penalties regarding, the same known or suspected Public Nuisance addressed by this **Information Demand**.

**7.   Mandatory, Prospective Record Retention Obligation:**  Pursuant to Section VIII.V(a) of Ordinance 2018-001, following receipt of service of this Information Demand, each Respondent is subject to the prospective record-keeping requirements set forth Section VIII.V of Ordinance

2018-001 with respect to all records described in Section VIII.V(c) of that Ordinance, non-exclusively including all WRITINGS herein demanded, for the duration of time set forth in Section VIII.V(a) of that Ordinance; violation of which requirements are subject to the civil and criminal penalties set forth in Sections XXIII(a) and XXIV(a)(8), respectively, of Ordinance 2018-001.

**IT IS SO ORDERED** by the majority vote of the Fayette County Code Enforcement Agency, Fayette County, West Virginia at its duly-noticed Public Meeting on this 23rd day of October 2019.

FAYETTE COUNTY CODE
ENFORCEMENT AGENCY
FAYETTE COUNTY, WEST VIRGINIA

By: _____

~~Debbie Berry~~ Kate McDaniel
Acting As    Fayette County Administrator
Its Chairperson

ATTEST:

_____
~~Aletha L. Stolar~~  GENE KISTLER
acting A< Secretary and Member
Fayette County Code Enforcement Agency

Page 4 of 17 pages

# EXHIBIT 1

## TO

## FAYETTE COUNTY, WEST VIRGINIA

## CEA INFORMATION DEMAND NO. 2019-002-8A2-0041

**LAWFUL DEMAND is hereby made of the Respondents named in this Information Demand, pursuant to Ordinance No. 2018-001:**

**YOU ARE, BY THIS INFORMATION DEMAND, LAWFULLY REQUIRED to produce, and permit inspection and copying of, the WRITINGS described below, and timely to produce written responses to the information demanded below, according to the instructions and definitions set forth below, at the place and on or before the date and time indicated in this Information Demand. All terms used in Information Demand No. 2019-002-8A2-0041 have the same meaning as set forth in this Exhibit 1.**

**A.    INSTRUCTIONS:**

**1.**    YOU must produce and permit inspection and copying of all of the WRITINGS described below that are in YOUR possession, custody or control or that of any PERSON acting on YOUR behalf, at YOUR direction, or under YOUR control, non-exclusively including YOUR AFFILIATES, subsidiaries, parent companies, agents, employees, consultants, contractors, subcontractors, insurance brokers and agents, and attorneys, accountants and investigators.

**2.**    WRITINGS and information that exists in electronic form is specifically requested to be produced in "native format, or near-native formats and should not be converted to imaged formats. Native format requires production in the same format in which the documents or information was customarily created, used, and stored by YOU. The table below supplies examples of the native formats or near-native formats in which specific types of electronically stored information ("ESI") should be produced.

Source ESI:

Microsoft Word documents

Native or Near-Native Fom1 or Forms Sought

.DOC, .DOCX

Microsoft Excel Spreadsheets

Microsoft PowerPoint Presentations

Microsoft Access-Databases

WordPerfect documents

Adobe Acrobat Documents

Images

E-mail

Databases

.XLS, .XLSX

.PPT, .PPTX

.MDB, .ACCDB

.WPD

.PDF

.JPG, .JPEG, .PNG

Messages and attachments should be produced in a form or forms that readily support import into standard E-Mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice.

Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and produced. For Lotus Notes mail, furnish. NSF files or convert to .PST. If YOUR workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file.

Unless the entire contents of a database are responsive, extract responsive content to a fielded and electronically searchable format preserving metadata values, keys and field relationships. If doing so is infeasible, please provide the entire database and supply information concerning the scheme and query language of the database, along with a detailed description of its export capabilities, so as to facilitate crafting a query to extract and export responsive data.

3.    WRITINGS and information that do not exist in native electronic formats or which YOU assert require redaction of privileged content should be produced in searchable .PDF formats or as single page TIFF images with OCR text furnished and logical unitization and family relationships preserved.

4.      YOU must provide within the Privilege Log required by Section 6(b) of Fayette County Ordinance 2017-002 all of the information required by that section for: **(a)** any withholding or redaction of each WRITING; and (b) each piece or item of information that YOU withhold or redact in any way.

5.      Production of ESI should be made using appropriate electronic media of the producing party's choice, such as DVD, CD, flash/thumb drive, or portable external hard drive, provided that the production media chosen does not impose an undue burden or expense upon the Respondents.

6.      If YOU have any questions regarding compliance with this **Information Demand**, please contact the Designated Responsible Attorney indicated on this **Information Demand**.

### B.      DEFINITIONS:

1.      The term "AFFILIATE" and "AFFILIATED" shall have the meaning as a company is an 'affiliate' of, or a company is 'affiliated' with, another specified company if it directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the other specified company or similar ownership, management, shareholders, or directors.

2.      The term "DISPOSAL" means the discharge, deposit, injection., dumping, spilling, leaking, or placing of any HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT or CONTAMINANT, or WASTE into or on any land or water so that such HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT or CONTAMINANT, or WASTE, or any constituent thereof, may enter the ENVIRONMENT or be emitted into the air or discharged into any WATERS OF THE STATE within Fayette County including groundwaters.

3.      The terms "ELECTRONICALLY STORED INFORMATION" and "ESI" shall mean information that is stored in an electronic medium and includes every tangible media from which WRITINGS can be perceived, reproduced, or otherwise communicated with the aid of a computer or other device.  ESI specifically includes, but is not limited to, computer hard drives, optical media like CDs and DVDs, RAM (volatile memory), detached, networked, portable, internal, and external hard drives, cloud storage, smart cards, computer magnetic tapes, backup tapes, drum and disk storage devices, PDAs, and wireless phones, floppy disks (including Zip, Jaz, Maxtor, USB, Flash, or Snap drives) or the RAM for printers or other peripheral devices.

4.      The term "ENVIRONMENT" means any WATERS OF THE STATE, surface water, groundwater, soil water, drinking water supply, soil, land surface, subsurface strata, or ambient air within Fayette County.

5.      The term "FACILITY" means: (a) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, injection well, pit, pond, lagoon, impoundment, ditch, cave, tunnel, mine, mine shaft, landfill, storage container, motor vehicle, rolling stock, ship, boat, vessel, barge, or aircraft; or (b) any site or area where a HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT or CONTAMINANT, or WASTE has been RELEASED, deposited, STORED, DISPOSED of, placed, or otherwise has come to be located, but does not include any consumer product in consumer use.

6.      The term "GENERATOR," when used in connection with HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT or CONTAMINANT, or WASTE, means any PERSON, by site, whose act or process produces the HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT or CONTAMINANT, or WASTE at issue, or whose act first causes a HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT or CONTAMINANT, or WASTE to become subject to remedial action or regulation by any Governmental entity.

7.      The term "HAZARDOUS SUBSTANCE" shall have the same meaning as is provided in CERCLA section 104(14), 42 U.S.C. § 9601(14), as that definition has been construed and interpreted by the decisions of the courts of the United States having jurisdiction to interpret and apply the provisions of CERCLA.

8.      The term "HAZARDOUS WASTE" shall mean:

   (a) a WASTE or combination of WASTES, which because of its quantity, concentration or physical, chemical, or infectious characteristics may:

      (i) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
      (ii) may pose a substantial present or potential hazard to human health or the ENVIRONMENT when improperly treated, STORED, transported, DISPOSED of, or otherwise managed; and

   (b) any of the following specific WASTE or WASTES:

      (i)     a WASTE or WASTES the lawful management or DISPOSAL of which requires a federal hazardous waste TREATMENT, STORAGE or DISPOSAL permit issued pursuant to Subtitle C of RCRA, 42 U.S.C. §§ 6921-6939g, or a West Virginia hazardous waste TREATMENT, STORAGE or DISPOSAL permit pursuant to the West Virginia Hazardous Waste Management Act (hereinafter: "WVHWMA"), Article 22-18 of the West Virginia Code;

9.      The term "INSURANCE POLICY, means any policy or contract of insurance, regardless of when or by whom issued or executed, and regardless of whether it follows form, that has at any time been, placed, issued, quoted, canceled, or terminated, non-exclusively including any and all insurance WRITINGS RELATING TO any policy or contract of insurance with a policy period, whether actual, proposed or requested, of any time from 1900 to the present, and that has or may

have a provision that provides or RELATES TO, or may have provided or RELATED TO any defense or indemnity coverage, regardless of whether such coverage is primary, excess, or umbrella in nature, for any actual, alleged, or potential liability of any INSURED to any third party arising from any action, omission or condition on, at, under, or arising directly or indirectly in connection with any legal interest in, activity at, on or under, or any condition of, or environmental impairment to or emanating from the PROPERTY, regardless of how, if at all, such liability may be denominated, categorized, limited, or excluded. The term "INSURANCE POLICY" also includes all rating agreements, renewal agreements, separately-issued endorsements, and other WRITINGS that change, modify, add to, delete or supplement any term or condition of any INSURANCE POLICY or demonstrate the existence at any time of any additional INSURANCE POLICY or INSURANCE POLICIES.

**10**     The term "INSURED" means each PERSON identified in or associated with an INSURANCE POLICY.

**11.**     The term "LAND DISPOSAL means disposal in or on the land, including placement in a landfill, surface impoundment, waste pile, gob pile, injection well, land treatment facility, salt dome formation, salt bed formation, underground mine or cave, or placement in a concrete vault or bunker intended for disposal purposes.

**12.**     The term "PERSON" means an individual, a deceased individual (or the Estate of a decedent) to the extent of available insurance assets and undistributed non-insurance assets), trust, firm, joint stock company, corporation, including a governmental corporation; a dissolved, defunct or bankrupt business entity to the extent of its available insurance and undistributed non-insurance assets, a bankruptcy trustee, debtor in possession under the federal bankruptcy laws, partnership of any kind, association, consortium, joint venture, limited liability company, limited liability partnership, or commercial entity. The term also includes any municipality, county, commission, district, any state, and any department, agency, office or authority thereof, or any political subdivision of any State, any interstate body, or the United States, and any of its agencies or instrumentalities to the extent authorized by law.

**13.**     The term "PROPERTY" means all geographical areas as shown on Exhibit 2 attached hereto and incorporated herein within the Upper Armstrong Creek Watershed in Fayette County, West Virginia in which YOU have now, or have had at any time, any ownership interest, usufructuary right, mineral right, tenancy of any kind, or any other legal or equitable interest, whether held directly by YOU or on YOUR behalf, or in conjunction with any other PERSON, in any Real Property (specifically including any surface property, mineral right, coal mining or coal extraction rights, or rights to control surface or subsurface operations), or which YOU or any PERSON acting on YOUR behalf now holds, or has ever held, any rights, legal or equitable, under any license, easement, option, mortgage or deed of trust of any kind, whether held directly by YOU or on YOUR behalf or in conjunction with any other PERSON.

14.    The term "POLLUTANT OR CONTAMINANT" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into any water, including groundwater. This term does not mean:

(a) sewage from vessels or a discharge incidental to the normal operation of a vessel of the Armed Forces of the United States (within the meaning of 33 U.S.C. § 1322) or of the State of West Virginia;

(b) water, gas, or other material which is injected into a well to facilitate production of oil or gas, or water derived in association with oil or gas production and disposed of in a well, if the well is used either to facilitate production or for disposal purposes and is lawfully approved by authority of the State of West Virginia, and if the State of West Virginia has determined that such injection or disposal will not, when operated in compliance with applicable regulations and permit terms and conditions, result in the degradation of ground or surface water resources within Fayette County; provided however, that such well is maintained and operated in compliance with all such applicable regulations and permit terms and conditions;

(c) petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a HAZARDOUS SUBSTANCE under subparagraphs (A) through (F) of CERCLA § 101(14), 42 U.S.C. § 9601(14); or

(d) natural gas, liquefied natural gas, or synthetic gas of pipeline quality (or mixtures of natural gas and such synthetic gas).

15.    The terms "RELATES TO and "RELATED TO" mean in any way evidencing, demonstrating, describing, explaining, supporting, mentioning, discussing, commenting on, constituting, concerning, comprising, containing, reflecting upon, identifying, stating, depicting, illustrating, recording, or referring to the given subject.

16.    The term "RELEASE" shall mean any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or DISPOSING into the ENVIRONMENT (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any HAZARDOUS SUBSTANCE, HAZARDOUS WASTE or POLLUTANT or CONTAMINANT).

17.    The term "STORAGE" or "STORED" when used in connection with HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT or CONTAMINANT, or WASTE, means the containment of any of them (either on a temporary basis or for a period of years) in such a manner as not to constitute DISPOSAL.

18.    The term "TOXIC," when used to modify the terms "spillage," "seepage," "POLLUTANT or CONTAMINANT," "substance" or "WASTE" means those substances, including disease-

causing agents, which after accumulation, discharge, DISPOSAL, or RELEASE into the ENVIRONMENT and upon exposure, ingestion, inhalation or assimilation into any organism, either directly. from the ENVIRONMENT or indirectly by ingestion through food chains:

(a) causes, on the basis of reliable, scientific information, death, disease, behavioral abnormalities, cancer, genetic mutations, physiological malfunctions (including malfunctions in reproduction) or physical deformations, in such organisms or their offspring; or

(b) presents or may present, on the basis of reliable, scientific information, a substantial risk of death, disease, behavioral abnormalities, cancer, genetic mutations, physiological malfunctions (including malfunctions in reproduction) or physical deformations, in such organisms or their offspring.

(c) For all purposes of this **Information Demand**, the term "TOXIC" shall non-exclusively include any substance listed by the United States Environmental Protection Agency in exercise of its authority under section 307(a) of the Federal Water Pollution Control Act, as amended by the Clean Water Act, 33 U.S.C. § 1317(a).

19.    The term "TREATMENT," when used in connection with HAZARDOUS WASTE or HAZARDOUS SUBSTANCE, means any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any such waste or substance so as to neutralize such waste or substance, or so as to render such waste or substance nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. Such term includes any activity or processing designed to change the physical form or chemical composition of any HAZARDOUS WASTE or HAZARDOUS SUBSTANCE so as to render it non-hazardous.

20.    The term "WATERS OF THE STATE" means any and all water on or beneath the surface of the ground, whether percolating, standing, diffused or flowing, wholly or partially within or bordering West Virginia and within its jurisdiction, and non-exclusively includes natural or artificial lakes, rivers, streams, creeks, branches, brooks, ponds, impounding reservoirs, springs, wells, watercourses and wetlands; provided however, that the term does not include farm ponds, industrial settling basins and ponds, and waste treatment facilities.

21.    The term "WASTE" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant or air pollution control facility, and other discarded material including solid, liquid, semisolid or contained gaseous material resulting from industrial, commercial, mining, agricultural operations, or from community activities.

22.    The term "WRITING" means any form of communication, recording, or representation, including letters, works, pictures, sounds or symbols, or combinations thereof, and any record

thereby created, regardless of media or storage mechanism, including, but not limited to any ESI, handwriting, typewriting, printing, photographs, photostats, photocopies, recordings transmissions by facsimile and E-mail, and every other means of recording upon any tangible thing.  The meaning of WRITING includes all non-duplicative drafts, versions not sent, all amendments, endorsements, modifications, and copies that differ only in margin notes or annotations, as well as all exhibits and attachments thereto and summaries of, or RELATED TO, any such WRITING.

23.     The terms "YOU," and "YOUR" mean: **(a)** EASTERN ENTERPRISES, INC. (successor to Eastern Gas and Fuel Associates) and **(b)** anyone who is acting, or who at any time since 1900 has acted on behalf of EASTERN ENTERPRISES, INC. or Eastern Gas and Fuel Associates, including, but not limited to, any incorporator, organizer, member, director, officer, agent, trustee, insurance company, attorney, accountant, investigator, employee, predecessor, successor, parent company, subsidiary, AFFILIATE, partner, manager, divisions, of either.

## C. **WRITINGS DEMANDED**:

YOU are LAWFULLY REQUIRED to produce and make available for inspection, scanning, and copying, according to the Instructions and Definitions set forth in Sections A and B of this Information Demand, the following WRITINGS:

**1.** Each WRITING RELATED TO any search made by YOU in whole or in part to respond to this **Information Demand** to identify, find, or produce the WRITINGS demanded herein. (Please note that this requires YOU to print out and produce all results of computer searches, even if such print out only shows the search terms and that no results were found.)

**2.** Each WRITING evidencing, creating, comprising, or RELATED TO any legal or equitable interest, non-exclusively including any tenancy interest or access right of any kind, YOU now have, or have ever had, in, at, or appertaining to the PROPERTY, non-exclusively including any deed, conveyancing document, lease, license, easement, lien, option, mortgage, deed of trust, or contingent or non-contingent future interest.

**3.** If YOU are now leasing, or have at any time since 1900 granted any legal or equitable interest, non-exclusively including any lease, sub-lease, access right, license, easement usufructuary right, to any PERSON that appertains to all or any portion of the PROPERTY, non-exclusively including any mineral rights, or surface or sub-surface mining rights, for each such legal or equitable interest, provide all WRITINGS:

   **A.** that comprise, evidence or RELATE TO each such legal or equitable interest;

   **B.** that evidence or RELATE TO the name and current mailing address of each PERSON to which such legal or equitable interest was granted;

**C.** that evidence or RELATE TO the contact PERSON or PERSONS acting on behalf of each such PERSON identified in the WRITINGS that are responsive to Section C.3.B of this **Information Demand**; and

**D.** evidencing or relating to the nature of each business conducted at, on, under, or in any way appertaining to the PROPERTY by each PERSON to which such legal or equitable interest was granted.

**4.** Each WRITING RELATING TO the location of utilities lines, impoundments, WASTE piles, water access or drainage FACILITIES on the PROPERTY, non-exclusively including wells, ditches, sanitary sewer, storm drain, septic systems, leach fields, holding ponds, impoundments, water treatment facilities, water quality mitigation measures, facilities, or structures.

**5.** Each WRITING RELATING TO any past or pending civil, criminal or administrative litigation RELATING TO, in whole or in part, directly or indirectly, the PROPERTY or any operations or activities conducted in whole or in part on the PROPERTY, specifically including for each litigation:

**A.** each WRITING that evidences or RELATES TO the names and contact information for each attorney for each party to the litigation to the litigation or administrative action;

**B.** each WRITING that comprises or RELATES TO a copy of each depositions and each response to interrogatories and requests for admissions for each party to the litigation;

**6.** Each WRITING comprising, evidencing or RELATING TO each INSURANCE POLICY, regardless of by whom obtained, purchased or otherwise procured, that does or may provide any defense or indemnification to YOU for any liabilities, actual or alleged, that YOU now have, may have, or had or may have had at any time, that do or may arise out of or RELATE TO YOUR ownership of, operation(s) or activities conducted in whole or in part at, or legal or equitable interest in or appertaining to, the PROPERTY, or to any ENVIRONMENTAL impairment, loss of water, damage or condition at or emanating, in whole or in part, from the PROPERTY.

**7.** Each WRITING that identifies or RELATES TO each insurance agent and each insurance broker with which YOU have had any contractual relationship of any kind in connection with YOUR actual or potential acquisition during or after 1900 of any liability insurance that did, may have, does, or may provide any defense or indemnification to YOU for any liabilities, actual or alleged, that YOU now have, now may have, or had or may have had at any time, that did, do or may arise, or may have arisen, out of or RELATE TO, directly or indirectly, YOUR ownership of, operation(s) at, or legal or equitable interest in or appertaining to, the PROPERTY, or to any environmental impairment or condition at or emanating, in whole or in part, from the PROPERTY.

**8.** Each WRITINGS RELATING TO any RELEASE of any POLLUTANT OR CONTAMINANT or any WASTE into the ENVIRONMENT at, on or from the PROPERTY (*e.g.*, records or reports from or to any federal, state, county, or other local governmental agency), non-exclusively including reports required by or RELATING TO applicable governmental permits, reports RELATING TO environmental investigations or reclamation activities at or appertaining, in whole or in part, to the PROPERTY.

**9.** Each WRITING RELATING TO any chemical that is now being, or that at any time has been, used, handled, STORED, GENERATED, RELEASED, or DISPOSED of at or from the PROPERTY.

**10.** Each WRITING RELATING TO the management or disposition of any WASTES GENERATED, STORED, OR DISPOSED of at or from the PROPERTY, non-exclusively including to waste rock and overburden, petroleum wastes, maintenance chemicals, such as antifreeze, lubricating fluids, solvents, degreasing agents, grease, and water or coal processing chemicals.

**11.** Each WRITING RELATING TO any equipment maintenance or equipment storage area on or adjacent to the PROPERTY.

**12.** Each WRITING RELATING TO the any spill or RELEASE of any commercial chemical product, non-exclusively including any cleaning agent, detergent or solvent, at or in the vicinity of any maintenance area or any storage areas at, on or adjacent to the PROPERTY, or as result of operations or activities conducted at, on, under or adjacent to the PROPERTY.

**13.** Each WRITING RELATING TO each PERSON that now owns or has at any time owned all or any part of the PROPERTY, non-exclusively including each WRITING that identifies or RELATES TO the current address if known to YOU, or, if not, the most recent address for each such PERSON.

**14.** If the WRITINGS YOU produce in response to Demand No. C.13 of this **Information Demand** identifies any business or governmental entity of any kind, each WRITING that identifies or RELATES TO the name, title, and last known address of each officer, director, member, or manager of each such entity.

**15.** Each WRITING RELATING TO YOUR sale or purchase, in whole or in part, of all or any portion, of YOUR legal or equitable interest in the PROPERTY, or of YOUR financial interest, if any, in or resulting in whole or in part from any operation or activity conducted at the PROPERTY at any time since 1900.

**16.** Each WRITING RELATING TO the ownership history of all or any portion of the PROPERTY.

**17.** Each WRITING RELATED TO YOUR sale or purchase or transfer of, in whole or in part, any permits that RELATES TO any activity or business operation at, on or under the PROPERTY.

**18.** Each WRITING that RELATES TO each mining location at, on under, or adjacent to all or any portion of the PROPERTY.

**19.** Each WRITING that comprises or RELATES TO any map that RELATES TO or is associated with any survey of all or any portion of the PROPERTY.

**20.** Each WRITING RELATING TO each property, mineral right (for each seam of coal, or other ore or mineral), and mining facility YOU now own or operate or that YOU have owned or operated at any time since 1900, whether alone or in conjunction with any other PERSON, all or any part of which is or was located within the Upper Armstrong Creek watershed in Fayette County, West Virginia.

**21.** Each WRITING RELATED TO any permit, or portions thereof, issued by any department or agency of the State of West Virginia that RELATES TO, in whole or in part, any activity or business operation at, on, under or adjacent to the PROPERTY.

**22.** Each WRITING RELATED TO any known, suspected, actual, or alleged violation of the terms or conditions of any permit, or portions thereof, issued by any department or agency of the State of West Virginia or of the United States of America that RELATES TO, in whole or in part, any activity or business operation at, on, under or adjacent to the PROPERTY.

**23.** Each WRITING that RELATES TO any data evidencing, demonstrating, or that appertains in any way to, the TOXIC properties, characteristics, or propensities of each chemical, at any concentration or in combination with any other chemical, RELEASED (including injected), DISPOSED OF, STORED, or TREATED now or at any time during or after 1900 on, at, under, or adjacent to the PROPERTY.

**24.** Each WRITING RELATED TO any STORAGE of HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT OR CONTAMINANT, or WASTE at, on, under, or adjacent to the PROPERTY.

**25.** Each WRITING RELATED TO any transportation to or from the PROPERTY or adjoining properties of any HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT OR CONTAMINANT, or WASTE.

**26.** Each WRITING that lists, describes or RELATE TO any rent, royalties, proceeds or consideration of any kind that YOU have paid or received or should have paid or received at any time since 1900 that RELATES TO or appertains in any way to any legal or equitable interest in the PROPERTY.

**27.** Each WRITING between YOU and any PERSON concerning, reporting the results of, or that RELATES TO any inspections or investigations made, of any ENVIRONMENTAL media within or RELATED TO any aspect of the ENVIRONMENT within the Upper Armstrong Creek Watershed in Fayette County, West Virginia.

**28.** Each WRITING RELATING TO each property, mineral right (for each seam of coal or other ore or mineral), and mining facility that is now being, or that has been at any time since 1900, operated on, at, under, or adjacent to the PROPERTY.

**29.** Each WRITING that RELATES TO any WRITING demanded by this **Information Demand** that has been destroyed, discarded, recycled, or lost.

### E. **INFORMATION DEMANDED:**

YOU are LAWFULLY REQUIRED to produce complete and accurate written responses
to the following Information Requests, and timely to produce those written responses according to
the Instructions and Definitions set forth in Sections A and B of this **Information Demand**:

**1.** If complete copies of any INSURANCE POLICY or INSURANCE POLICIES demanded
in Section C.6 of this **Information Demand** are not available to YOU, please identify the name
and last known mailing address for:

(a) each PERSON that purchased or otherwise procured the issuance of each such
INSURANCE POLICY; and

(b) each insurance carrier, insurance agent, and insurance broker that had, may have had, has,
or may have any information RELATING TO each such INSURANCE POLICY or
INSURANCE POLICIES.

**2.** Please identify each individual who provided any factual information that is reflected in
any of YOUR responses to the Requests for Information set forth in this Section D of this
**Information Demand,** or who otherwise assisted in the drafting of any of YOUR responses to
such Requests for Information, and for each such individual, please provide his or her full name,
address, and telephone number, position held with each Respondent at the time such information
or assistance was provided, and describe the information or drafting assistance provided.

**3.** Please identify each individual who participated in the effort to search for or identify any
WRITINGS responsive to the Demand for Production of Documents set forth in Section C of this
**Information Demand**, and for each such individual, please provide his or her full name, address,
and telephone number, and describe the collection, file, or location which he or she searched.

**4.** For any PERSON, non-exclusively Eastern Gas and Fuel Associates, that is a
predecessor-in-interest to the Respondent named in this **Information Demand** that has at any time
since 1900 had any legal or equitable interest, non-exclusively including any tenancy interest, in
the PROPERTY, please identify:

(a) each PERSON who is now, or has been at any time since 1900, a member, officer, director,
for each such predecessor-in-interest to the Respondent to this Information Demand;

(b) each PERSON who each such predecessor-in-interest to the Respondent to this Information
Demand has employed or retained as Superintendent or on-site Project or Mine Manager
with respect to any of YOUR operations or activities at, on, under or appertaining in any
way to the PROPERTY;

(c) each PERSON who each such predecessor-in-interest to the Respondent to this Information
Demand has employed or retained in any management or supervisory capacity with any
responsibility for monitoring or assessing YOUR compliance with the terms and conditions
of any governmental permit issued to YOU since 1900 that applies, directly or indirectly,

to any of YOUR operations or activities at, on, under or appertaining in any way to the PROPERTY

**(d)** for each PERSON included in YOUR response to Section D.4.a, .b or .c of this **Information Demand**, his or her full name, last known address, and telephone number;

**(e)** for each PERSON included in YOUR response to Section D.4.a, .b, .c of this **Information Demand**, each title or position held with each such Respondent and the dates during which each such PERSON held each such title or position;

**(f)** for each PERSON included in YOUR response to Section D.4.a of this **Information Demand**, the percentage of total membership interest, if any, in each such Respondent, or the percentage of total voting stock interest, if any, in each such Respondent, owned, held or controlled, either directly or by any form of trust, at any time since 1900, and the time period during which each such percentage was owned, held, or controlled.

5.    Please identify each individual who determined that any item of information or WRITING responsive to this **Information Demand** was destroyed, deleted, or is no longer available to YOU, and for each such individual, please provide his or her full name, address, and telephone number, position held with each Respondent at the time such determination was made, and describe the item(s) of information or WRITINGS as to which such determination was made.

*If YOU have any questions regarding compliance with this **CEA Information Demand**, please contact:*

> Michael O. Callaghan, Esq.
> Chief Assistant Fayette County Prosecuting Attorney
> Environmental & Public Health Protection Unit
> NEELY & CALLAGHAN
> 159 Summers Street
> Charleston, WV  25301
> Telephone: (304) 343-6500
> Facsimile: (304) 343-6528
> E-Mail:  mcallaghan@neelycallaghan.com