EXHIBIT 5

# IN THE CIRCUIT COURT OF FAYETTE COUNTY, WEST VIRGINIA

NATIONAL GRID NE HOLDINGS 2 LLC,
on its own behalf and
as successor-by-merger to EASTERN GAS
AND FUEL ASSOCIATES,

Plaintiff,

v.

COUNTY COMMISSION OF FAYETTE
COUNTY, WEST VIRGINIA; FAYETTE
COUNTY CODE ENFORCEMENT
AGENCY; EASTERN ASSOCIATED COAL,
LLC; ALLIANZ UNDERWRITERS
INSURANCE COMPANY; ALLIANZ
INSURANCE COMPANY AG; AMERICAN
HOME ASSURANCE COMPANY;
ARROWOOD INDEMNITY COMPANY;
ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES LIMITED;
BERKSHIRE HATHAWAY DIRECT
INSURANCE COMPANY; CENTURY
INDEMNITY COMPANY; CHICAGO
INSURANCE COMPANY; COLUMBIA
CASUALTY COMPANY; CONTINENTAL
CASUALTY COMPANY; EVANSTON
INSURANCE COMPANY; EXECUTIVE
RISK INDEMNITY INC.; FACTORY
MUTUAL INSURANCE COMPANY;
FIREMAN'S FUND INSURANCE
COMPANY; FIRST STATE INSURANCE
COMPANY; GENERAL REINSURANCE
CORPORATION; HARTFORD CASUALTY
INSURANCE COMPANY; ILLINOIS
UNION INSURANCE COMPANY;
INSURANCE COMPANY OF THE STATE
OF PENNSYLVANIA; INTERSTATE FIRE
& CASUALTY COMPANY; LEXINGTON
INSURANCE COMPANY; MUNICH
REINSURANCE AMERICA, INC.;
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA;
NAVIGATORS INSURANCE COMPANY;

Civil Action No. 21-C-62
Judge Paul R. Blake

**FIRST AMENDED COMPLAINT FOR
DECLARATORY RELIEF AND BREACH
OF CONTRACT**

DC: 7566249-1

NORTHEASTERN INSURANCE
COMPANY OF HARTFORD; PACIFIC
EMPLOYERS INSURANCE COMPANY;
PENNSYLVANIA LUMBERMENS
MUTUAL INSURANCE COMPANY;
STARR INDEMNITY & LIABILITY
COMPANY; ST. PAUL FIRE AND MARINE
INSURANCE COMPANY; TIG
INSURANCE COMPANY; WESTPORT
INSURANCE COMPANY; and ZURICH
AMERICAN INSURANCE COMPANY,

Defendants.

Plaintiff National Grid NE Holdings 2 LLC ("National Grid Holdings 2"), on its

own behalf and as successor-by-merger to Eastern Gas and Fuel Associates, alleges as follows

for its First Amended Complaint[1] against defendants.

## NATURE OF ACTION

1.     This is an action for declaratory relief pursuant to the West Virginia

Uniform Declaratory Judgments Act (W. Va. Code § 55-13-1 *et seq*.) and for breach of contract

arising out of underlying claims asserted against National Grid Holdings 2 in a nuisance action

brought by the Code Enforcement Agency of Fayette County, West Virginia and a federal

environmental lawsuit filed by the County Commission of Fayette County (the "County

Actions"). Plaintiff seeks, *inter alia*:

a.     a declaration of the rights, duties and obligations of the parties

under liability insurance policies issued by the defendant insurance

---

[1] Pursuant to W. Va. Rule of Civ. P. 15(a), no leave of Court is required for the filing of this First Amended Complaint, as no party has filed a responsive pleading to the original Complaint. The purpose of the First Amended Complaint is to remove certain insurer entities as Defendants.

companies and syndicates to National Grid Holdings 2's predecessor, with respect to the insurers' obligation to defend and/or indemnify National Grid Holdings 2 against the claims asserted in the underlying County Actions;

b. damages against defendant Century Indemnity Company for breach of its contractual duty to defend National Grid Holdings 2 in the County Actions;

c. a declaration that the County Defendants (as described below) are not entitled to maintain a direct action for recovery of insurance proceeds against Hanover Insurance Company and Travelers Casualty and Surety Company, or to compel those insurers to perform investigative and remedial action to address environmental damage in Fayette County for which one of their insureds allegedly is responsible; and

d. a declaration establishing the method of apportioning the proceeds of the relevant insurance policies between National Grid Holdings 2 and defendant Eastern Associated Coal LLC, the successor to a dissolved former subsidiary of Eastern Gas & Fuel Associates, in the event they are both found liable to the County Defendants for nuisance abatement damages and environmental cleanup costs.

## JURISDICTION AND VENUE

2. Jurisdiction is proper in this matter because all of the defendants, within the time period relevant herein, are (a) Fayette County government entities, (b) in the case of

Eastern Associated Coal LLC, a West Virginia company that conducted mining operations in

Fayette County, and (c) in the case of the insurer defendants, have been licensed to transact

insurance business in West Virginia, have in fact transacted insurance business in West

Virginia, and/or have maintained a substantial presence in West Virginia. Each of the insurer

defendants also has regularly issued or subscribed to liability insurance policies providing

coverage for operations and risks located in West Virginia, including in Fayette County. Also,

the amount in controversy satisfies the minimum jurisdictional amount.

      3.     Many of the insurer defendants have contractually consented to this

Court's jurisdiction by including or incorporating the following "Service of Suit" provision, or a

materially identical provision, in their policies:

> It is agreed that in the event of the failure of Underwriters
> hereon to pay any amount claimed to be due hereunder,
> Underwriters hereon, at the request of the Assured, will submit to
> the jurisdiction of any Court of competent jurisdiction within the
> United States and will comply with all requirements necessary to
> give such Court jurisdiction and all matters arising hereunder shall
> be determined in accordance with the law and practice of such
> Court.

      4.     Venue in Fayette County is appropriate because the government entity

defendants are located in Fayette County, Eastern Associated Coal LLC conducted mining

operations in Fayette County, some or all of the insurer defendants conduct business in Fayette

County, and the surface waters and groundwater within the Johnson Fork – Loop Creek

Watershed of the Kanawha River that are alleged to have been contaminated in the underlying

County Actions are located in Fayette County.

## THE PARTIES

      5.     Plaintiff National Grid NE Holdings 2 LLC ("National Grid Holdings 2")

is a corporation organized under the laws of the State of Massachusetts with its principal place

of business in Waltham, Massachusetts. National Grid Holdings 2 is the successor by merger to Eastern Gas and Fuel Associates ("Eastern Gas").

6.      Defendant County Commission of Fayette County, West Virginia ("the Commission") is a corporation organized under West Virginia law, and was established pursuant to W. Va. Code § 7-1-1 *et seq.* The Commission is authorized to exercise certain enumerated local government powers in Fayette County pursuant to specific delegations of authority by the West Virginia Legislature.

7.      Defendant Fayette County Code Enforcement Agency ("FCCEA") was established by the Commission to investigate alleged public nuisances within Fayette County and to enforce public nuisance abatement orders and other orders of the Commission. The FCCEA has alleged that it has legal authority to enforce Fayette County Ordinance # 2018-001, entitled "Fayette County Comprehensive Public Nuisance Abatement Ordinance" (the "2018 Nuisance Ordinance"). The Commission and the FCCEA are collectively referred to below as "the County" or "the County Defendants".

8.      Defendant Eastern Associated Coal, LLC ("EAC") is a dissolved West Virginia limited liability company that maintained its principal place of business in Scott Depot, West Virginia. EAC is a successor-in-interest to Eastern Associated Coal Corporation, a former subsidiary of Eastern Gas that was sold by Eastern Gas to a third party in 1987. EAC obtained a certificate of termination from the West Virginia Secretary of State on June 10, 2016.

9.      Defendant Allianz Underwriters Insurance Company, formerly known as Allianz Underwriters, Inc. ("Allianz Underwriters") is a property and casualty insurance company organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. Allianz Underwriters transacts the business of insurance in West Virginia on

a surplus lines or non-admitted basis and at all relevant times has been engaged in the business of selling insurance policies.

10.     Defendant Allianz Insurance Company AG ("Allianz") is a property and casualty insurance company organized under the laws of the Federal Republic of Germany, with its principal place of business in Munich, Germany. Allianz has transacted or currently transacts the business of insurance in West Virginia on a surplus lines or non-admitted basis, and insured the liability risks and operations of Eastern Gas and its former subsidiaries in Fayette County. Allianz at all relevant times has been engaged in the business of selling insurance policies.

11.     Defendant American Home Assurance Company ("American Home") is a property and casualty insurance company organized under the laws of the State of New York, with its principal place of business in New York, New York. American Home is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

12.     Defendant Arrowood Indemnity Company, formerly known as Royal Indemnity Company ("Arrowood"), is a property and casualty insurance company organized under the laws of the State of Delaware, with its principal place of business in Charlotte, North Carolina. Arrowood is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies and/or handling and resolving claims submitted under such insurance policies.

13.     Defendant Associated Electric & Gas Insurance Services Limited ("AEGIS") is a property and casualty insurance company organized under the laws of Bermuda, with its principal place of business in East Rutherford, New Jersey. AEGIS transacts the

business of insurance in West Virginia on a surplus lines or non-admitted basis and at all relevant times has been engaged in the business of selling insurance policies.

14.    Defendant Berkshire Hathaway Direct Insurance Company, formerly known as American Centennial Insurance Company ("Berkshire Hathaway"), is a property and casualty insurance company organized under the laws of the State of Nebraska, with its principal place of business in Omaha, Nebraska. Berkshire Hathaway is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

15.    Defendant Century Indemnity Company ("Century") is a successor-in-interest to California Union Insurance Company ("California Union"), CIGNA Specialty Insurance Company ("CIGNA Specialty") and CCI Insurance Company, the latter of which is a successor-in-interest to Insurance Company of North America ("INA") under certain policies it issued to Eastern Gas. Century is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies, and handling and resolving claims under policies issued by California Union, CIGNA Specialty and INA.

16.    Defendant Chicago Insurance Company ("Chicago Insurance") is a property and casualty insurance company organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. Chicago Insurance is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

17.    Defendant Columbia Casualty Company ("Columbia Casualty") is a property and casualty insurance company organized under the laws of the State of Illinois, with

its principal place of business in Chicago, Illinois. Columbia Casualty transacts the business of insurance in West Virginia on a surplus lines or non-admitted basis and at all relevant times has been engaged in the business of selling insurance policies.

18.   Defendant Continental Casualty Company ("Continental Casualty") is a property and casualty insurance company organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. Continental Casualty is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

19.   Defendant Evanston Insurance Company ("Evanston") is a property and casualty insurance company organized under the laws of the State of Illinois, with its principal place of business in Rosamond, Illinois. Evanston transacts the business of insurance in West Virginia on a surplus lines or non-admitted basis and at all relevant times has been engaged in the business of selling insurance policies.

20.   Defendant Executive Risk Indemnity Inc., formerly known as American Excess Insurance Company ("Executive Risk"), is a property and casualty insurance company organized under the laws of the State of Delaware, with its principal place of business in Philadelphia, Pennsylvania. Executive Risk is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

21.   Defendant Factory Mutual Insurance Company ("FM Global") is a property and casualty insurance company organized under the laws of the State of Rhode Island, with its principal place of business in Johnston, Rhode Island. FM Global is licensed to transact

the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

22.    Defendant Fireman's Fund Insurance Company ("Fireman's Fund") is a property and casualty insurance company organized under the laws of the State of California, with its principal place of business in Chicago, Illinois. Fireman's Fund is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

23.    Defendant First State Insurance Company ("First State") is a property and casualty insurance company organized under the laws of the State of Connecticut, with its principal place of business in Boston, Massachusetts. First State at all relevant times has been engaged in the business of selling insurance policies and has regularly insured property and liability risks in West Virginia, including the specific liability risks at issue in this action.

24.    Defendant General Reinsurance Corporation, formerly known as North Star Reinsurance Corporation ("General Re"), is a property and casualty insurance company organized under the laws of the State of Delaware, with its principal place of business in Stamford, Connecticut. General Re is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

25.    Defendant Hartford Casualty Insurance Company ("Hartford Casualty") is a property and casualty insurance company organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. Hartford Casualty is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

26.     Defendant Illinois Union Insurance Company ("Illinois Union") is a property and casualty insurance company organized under the laws of the State of Illinois, with its principal place of business in Philadelphia, Pennsylvania. Illinois Union transacts the business of insurance in West Virginia on a surplus lines or non-admitted basis and at all relevant times has been engaged in the business of selling insurance policies.

27.     Defendant Insurance Company of the State of Pennsylvania ("ICSOP") is a property and casualty insurance company organized under the laws of the State of Illinois, with its principal place of business in New York, New York. ICSOP is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

28.     Defendant Interstate Fire & Casualty Company ("Interstate") is a property and casualty insurance company organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. Interstate transacts the business of insurance in West Virginia on a surplus lines or non-admitted basis and at all relevant times has been engaged in the business of selling insurance policies.

29.     Defendant Lexington Insurance Company ("Lexington") is a property and casualty insurance company organized under the laws of the State of Delaware, with its principal place of business in Boston, Massachusetts. Lexington transacts the business of insurance in West Virginia on a surplus lines or non-admitted basis and at all relevant times has been engaged in the business of selling insurance policies.

30.     Defendant Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company ("Munich Re"), is a property and casualty insurance company organized under the laws of the State of Delaware, with its principal place of business

in Princeton, New Jersey. Munich Re is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

31.     Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a property and casualty insurance company organized under the laws of the State of Pennsylvania, with its principal place of business in New York, New York. National Union is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

32.     Defendant Navigators Insurance Company ("Navigators") is a property and casualty insurance company organized under the laws of the State of New York, with its principal place of business in Stamford, Connecticut. Navigators is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

33.     Defendant Northeastern Insurance Company of Hartford ("Northeastern") is a property and casualty insurance company organized under the laws of the State of Connecticut, with its principal place of business in Des Moines, Iowa. Northeastern was licensed to transact the business of insurance in West Virginia during the period relevant to this complaint, and is currently engaged in the business of handling and resolving claims under policies issued by Northeastern.

34.     Defendant Pacific Employers Insurance Company ("Pacific Employers") is a property and casualty insurance company organized under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. Pacific Employers is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

35.    Defendant Pennsylvania Lumbermens Mutual Insurance Company ("Pennsylvania Lumbermens") is a property and casualty insurance company organized under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. Pennsylvania Lumbermens is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

36.    Defendant Starr Indemnity & Liability Company ("Starr Indemnity") is a property and casualty insurance company organized under the laws of the State of Texas, with its principal place of business in New York, New York. Starr Indemnity is the successor-in-interest to Republic Insurance Company, which subscribed to liability insurance policies issued to Eastern Gas. Starr Indemnity is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

37.    Defendant St. Paul Fire and Marine Insurance Company ("St. Paul Fire & Marine"") is a property and casualty insurance company organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. St. Paul Fire & Marine is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

38.    Defendant TIG Insurance Company ("TIG") is a property and casualty insurance company organized under the laws of the State of California, with its principal place of business in Manchester, New Hampshire. TIG is a successor-in-interest to Ranger Insurance Company, which issued or subscribed to excess liability policies issued to Eastern Gas. TIG is licensed to transact the business of insurance in West Virginia and at all relevant times has been

12

engaged in the business of selling insurance policies and handling and resolving claims under policies issued by Ranger Insurance Company.

39.    Defendant Westport Insurance Company, formerly known as Puritan Insurance Company ("Westport"), is a property and casualty insurance company organized under the laws of the State of Missouri, with its principal place of business in Kansas City, Missouri. Westport is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

40.    Defendant Zurich American Insurance Company ("Zurich American"), is a property and casualty insurance company organized under the laws of the State of New York, with its principal place of business in Schaumburg, Illinois. Zurich American is an alleged successor-in-interest to Zurich Insurance Company under certain liability insurance policies issued to Eastern Gas. Zurich American is licensed to transact the business of insurance in West Virginia and at all relevant times has been engaged in the business of selling insurance policies.

41.    The insurers listed in paragraphs 9 through 40 above are collectively referred to as the "Insurer Defendants."

## BACKGROUND FACTS

**A.    National Grid Holdings 2 and Eastern Gas**

42.    Eastern Gas was formed in 1929 as a voluntary business trust. The County alleges that for a number of years, Eastern Gas conducted coal mining operations in West Virginia, including mining operations in Fayette County, West Virginia. In 1989, Eastern Gas changed its name to Eastern Enterprises.

43.    In 1963, Eastern Gas formed a wholly-owned subsidiary named Eastern Associated Coal Corporation ("EACC"), a West Virginia company, which assumed ownership

of Eastern Gas's mining operations, assets and properties, as well as all liabilities arising out of or derived from those mining operations, including environmental liabilities. By January 1, 1966, all mining-related assets, properties and liabilities of Eastern Gas had been transferred to EACC.

44.    After EACC assumed ownership and control of Eastern Gas's mining assets and liabilities, Eastern Gas formed another wholly-owned subsidiary named Coal Properties Corporation ("CPC"), and transferred all of its stock in EACC to CPC. As a result of this transaction, CPC became the direct parent of EACC. In 2005, EACC converted to a West Virginia limited liability company under the name of Eastern Associated Coal LLC ("EAC"). EAC was formally dissolved by a certificate of termination filed with the West Virginia Secretary of State in June 2016.

45.    In 1987, Eastern Gas entered into a Stock Exchange Agreement with Peabody Holding Company, Inc. ("Peabody"), pursuant to which Eastern Gas exchanged 100% of the common stock of CPC for 15.01% of the common stock of Peabody. Eastern Gas also entered into a separate Stock Exchange Agreement with Mid-Continent Barge Lines, Inc. ("MCBL"), an affiliate of Peabody, pursuant to which Eastern Gas exchanged 100% of the preferred stock of CPC for 15.01% of the common stock of MCBL. As a result of these transactions, Eastern Gas no longer owned CPC.

46.    In 1990, Eastern Gas entered into a Stock Purchase Agreement with HM Holdings, Inc., pursuant to which Eastern Gas sold HM Holdings its 15.01% share of the common stock of Peabody and its 15.01% share of the common stock of MCBL.

47.    In 2000, KeySpan Corporation ("KeySpan") acquired Eastern Gas, which had been renamed Eastern Enterprises in 1989. In 2002, KeySpan merged Eastern

Enterprises into a subsidiary named KeySpan New England LLC ("KeySpan NE"), and Eastern

Enterprises thereafter ceased to exist.

48.    In 2007, KeySpan merged with and into National Grid US8 Inc., a

wholly-owned subsidiary of National Grid plc.  In 2008, KeySpan NE was renamed National

Grid NE Holdings 2 LLC, the plaintiff herein.

**B.    The Underlying County Actions**

49.    In October 2019, the County issued an "Information Demand" and

"Notice of Endangerment and Conditional Notice of Intent to File a Federal Civil Action" to

National Grid Holdings 2 and seven other respondents.  The Notice of Endangerment alleged

that the respondents had owned and operated mining facilities in Fayette County, and had

disposed of hazardous substances that contaminated surface waters and groundwater within the

Johnson Fork - Loop Creek Watershed of the Kanawha River.  The County alleged that the

respondents are liable under federal law for the investigation and cleanup of environmental

damage to the Watershed, and it threatened to file a lawsuit against the respondents under the

federal Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B), if they did not

take action to abate the contamination.

50.    On May 10, 2021, the FCCEA, on behalf of the County, initiated an

administrative action against National Grid Holdings 2 and other respondents by issuing a

"Time-Sensitive Abatement Action Order" No. 2021-002-9.5(b)-001.  The FCCEA alleges that

the Abatement Order is based on its authority under the Commission's 2018 Nuisance

Ordinance.  The Abatement Order was issued to National Grid Holdings 2, EAC and four other

alleged "Remedial Respondents," two of which (Hanover Insurance Company and Continental

Casualty, misidentified as Continental Insurance Company) are liability insurance companies.

The Order also directs numerous insurance companies to provide records and other information

relating to any liability insurance policies they issued to Eastern Gas, EACC or CPC at any time from 1946 to 1988.

51.    The FCCEA alleges, *inter alia*, that:

a.    National Grid Holdings 2 is a "legal successor" to the environmental liabilities imposed by the 2018 Nuisance Ordinance on Eastern Gas as a result of its acts or omissions prior to January 1, 1966;

b.    From the late 1920s through 1965, Eastern Gas owned and operated the Powellton No. 6 Coal Mine, the Island Mine and other mining operations within the Johnson Fork – Loop Creek Watershed, including five surface impoundments containing coal mining waste;

c.    The surface impoundments have released heavy metals and other hazardous substances into the Watershed and have contaminated soil, sediment, surface waters and groundwater within the Watershed;

d.    Environmental conditions resulting from historical mining operations within the Watershed constitute a "public nuisance" under West Virginia law and the 2018 Nuisance Ordinance; and

e.    National Grid Holdings 2 and the other "Remedial Respondents" owned and operated the mining facilities at various times, or insured those entities, and are strictly, jointly and severally liable

52.     Based on the foregoing purported "findings," the FCCEA alleges that the

"Remedial Respondents" are jointly and severally obligated to pay for the costs of conducting

(a) a Remedial Investigation of the nature and extent of the environmental damage allegedly

resulting from releases of hazardous substances from the five surface impoundments and

associated mining operations within the Johnson Fork – Loop Creek Watershed, and (b) a

Feasibility Study to evaluate alternatives for permanent remedial action to abate and clean up

environmental contamination resulting from historical mining operations within the Watershed.

53.     On May 18, 2021, the County filed a civil action styled *County*

*Commission of Fayette County, West Virginia v. National Grid NE Holdings 2 LLC, et al.*, No.

2:21-cv-00307, in the United States District Court for the Southern District of West Virginia

(the "Federal Action").  The County alleges in the Federal Action that National Grid Holdings

2, EAC and five other defendants are jointly and severally liable under federal and state

environmental statutes, the 2018 Nuisance Ordinance and the common law of nuisance to

investigate, clean up and abate a public nuisance, and to reimburse the County for its alleged

abatement costs, attributable to environmental damage from historical mining operations in the

Johnson Fork – Loop Creek Watershed.  The County also purports to assert "direct action"

claims for nuisance abatement and environmental cleanup costs against three insurers –

Hanover Insurance Company ("Hanover"), Continental Casualty (misidentified as Continental

Insurance Company), and Travelers Casualty and Surety Company ("Travelers C and S") –

based on their alleged status as insurers of EAC's predecessor EACC.

C.    **The Hanover and Travelers C and S Policies and 2008 Settlement Agreements**

54.    In addition to naming National Grid Holdings 2, EAC and other alleged owners and operators of mining facilities within the Watershed as "Remedial Defendants," the County Actions allege that Hanover, Continental Casualty and Travelers C and S are jointly and severally obligated up to their respective policy limits to perform a Remedial Investigation and Feasibility Study, clean up and abate environmental damage, and pay for the County's nuisance abatement costs, solely by virtue of the fact that they issued general liability insurance policies to Eastern Gas allegedly covering its former subsidiary EACC, the predecessor of the dissolved EAC. None of those insurers is a responsible party under Section VI(a) of 2018 Nuisance Ordinance or any other federal or West Virginia environmental statute.

55.    On information and belief, the Hanover policies include a standard "no action" clause that provides in pertinent part:

> No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by a judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.
>
> Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a codefendant in any action against the insured to determine the insured's liability.

56.    On information and belief, the Travelers C and S policies contain a materially identical "no action" provision.

57.    The County has neither recovered a monetary judgment against, nor entered into a settlement agreement with, National Grid Holdings 2, EAC, or any other alleged

18

insured under the Hanover, Continental Casualty and Travelers C and S policies that can be

enforced against the proceeds of those policies.

58.    Under the law of West Virginia, absent a policy provision or statute

providing otherwise, an underlying claimant such as the County may not maintain a direct

action against a liability insurer seeking damages or other coercive relief unless and until the

claimant obtains a money judgment against an insured entity. No statute or policy provision

authorizes the coercive relief sought by the County directly against Hanover, Continental

Casualty and Travelers C and S as alleged insurers of EAC.

59.    In 2008, National Grid Holdings 2's predecessor, KeySpan NE, entered

into two separate Confidential Settlement Agreements and Releases with Hanover and Travelers

C and S (the "2008 Agreements") that resolved a lawsuit addressing KeySpan NE's claims for

insurance coverage of unrelated environmental liabilities under (a) policies issued by Hanover

to Eastern Gas with effective periods from March 1, 1956 to March 1, 1966, and (b) policies

issued by Travelers C and S to Eastern Gas with effective periods from March 1, 1966 to June

1, 1979. Under the terms of the 2008 Agreements, Hanover and Travelers C and S each made a

substantial settlement payment to KeySpan NE, and it released and discharged those insurers

from "any and all past, present and future Claims and liability of any kind or nature directly or

indirectly connected with, arising out of or relating in any way to, in whole or in part, the

[Hanover and Travelers C and S] Policies...." The 2008 Agreements expressly stated that

"[a]ny and all purported rights, duties, responsibilities and obligations of [Hanover and

Travelers C and S]" under the policies were deemed exhausted, extinguished and terminated;

that the policies would thereafter be treated as null and void; and that "neither KeySpan nor any

other Person shall have any right thereafter to present or tender any Claim whatsoever under any of the [Hanover and Travelers C and S] Policies...."

60.     As part of the consideration for Hanover's and Travelers C and S's settlement payments, KeySpan NE agreed to defend, indemnify and hold those insurers harmless against any and all claims asserted by any other person against those insurers relating to the Hanover and Travelers C and S policies, and to "use all reasonable efforts to have itself substituted in for [Hanover and Travelers C and S] as the real party in interest" with respect to any such claims.

61.     As a result of the indemnification provisions in the 2008 Settlement Agreements, National Grid Holdings 2, as successor to KeySpan NE, is the real party in interest with respect to the claims asserted against Hanover and Travelers C and S in the County Actions.

**D.      The Liability Insurance Policies**

62.     At various times from at least 1961 to 1985, the Insurer Defendants or their respective predecessors, in consideration of premiums paid by Eastern Gas, issued or subscribed to primary, umbrella and excess liability insurance policies covering Eastern Gas (hereinafter collectively "the Policies")). Each of the Policies provides Eastern Gas with broad coverage for bodily injury, personal injury and property damage liability arising out of the operations of Eastern Gas. The Policies provide Eastern Gas with uninterrupted coverage for "occurrences" resulting in liability to third parties for injury or damage happening during the policy periods. The policy numbers and policy periods of each of the Policies known to National Grid Holdings 2 are listed in Attachment A hereto, which is incorporated herein by reference. National Grid Holdings 2 reserves the right to seek coverage under additional

Policies issued or subscribed by the Insurer Defendants in the event such Policies become known to National Grid Holdings 2.

63.     National Grid Holdings 2 is the legal successor by merger to Eastern Gas's rights under the Policies.

64.     Each of the Policies requires the issuing or subscribing insurers to indemnify, or pay on behalf of, National Grid Holdings 2 all sums that it becomes legally obligated to pay, as well as defense costs it incurs, as a result of claims and suits by third parties alleging bodily injury, personal injury or property damage arising out of Eastern Gas's operations, as long as any part of the alleged injury or damage occurred during the policy period. The contractual obligation of the Insurer Defendants to indemnify National Grid Holdings 2 for covered claims and suits on the terms described above is triggered by the exhaustion of the limits of any underlying insurance stated in the Policies, and is subject only to per occurrence and aggregate limits of liability (if any) expressly set forth in the Policies.

65.     Defendant Century's predecessor INA issued annual primary comprehensive general liability policies (the "Primary Policies") to Eastern Gas, with effective periods from June 1979 to June 1983. Each of the Primary Policies requires Century to defend National Grid Holdings 2, and to pay all costs, including attorneys' fees, experts' fees and supplemental expenses, incurred in the investigation and defense of underlying actions alleging bodily injury, personal injury or property damage that potentially occurred, in whole or in part, during the relevant policy periods. Century's obligation to defend potentially covered actions against National Grid Holdings 2 (the "duty to defend") applies even if the underlying allegations are groundless, false or fraudulent. Century's duty to defend National Grid

Holdings 2 continues until the applicable limits of liability set forth in the Primary Policies are exhausted by payment of adverse judgments or settlements.

66.     Eastern Gas timely paid all premiums due under the Policies, and all pertinent conditions and requirements for invoking the Policies have been satisfied and/or have been waived, excused, or are subject to an estoppel against the Insurer Defendants.

**E.     The Coverage Dispute**

67.     In December 2019, National Grid Holdings 2 provided the Insurer Defendants with written notice and copies of the County's Information Demand and Notice of Endangerment, and stated that it believed that the Policies provide full coverage, up to their stated limits, for the underlying property damage claims asserted by the County.  The Insurer Defendants either did not respond to the notice letter, or responded by generally reserving the right to disclaim coverage of the claims asserted by the County.

68.     National Grid Holdings 2 has provided the Insurer Defendants with copies of the County's Abatement Order, and reiterated that it expects the insurers to provide coverage for the initial County Action and for any liability imposed on National Grid Holdings 2 as a result of that Action.

69.     None of the Insurer Defendants has agreed to defend National Grid Holdings 2 or reimburse its defense costs in either of the County Actions.  None of the Insurer Defendants has agreed to indemnify National Grid Holdings 2 for any losses and liabilities sustained by National Grid Holdings 2 as a result of the County Actions.

<u>**FIRST CLAIM FOR RELIEF**</u>

**(Declaratory Relief -- Duty to Defend -- Against Defendant Century)**

70.     Plaintiff National Grid Holdings 2 repeats and incorporates by reference the allegations in paragraphs 1 through 69 as if set forth in full herein.

22

71.    This is a claim for declaratory judgment pursuant to the West Virginia Uniform Declaratory Judgments Act (W. Va. Code § 55-13-1 *et seq.*). National Grid Holdings 2 seeks a judicial determination of its rights and of the duty of defendant Century to defend National Grid Holdings 2 against the County Actions under the Primary Policies.

72.    Pursuant to the terms of the Primary Policies, Century has a duty to defend National Grid Holdings 2 in the County Actions.

73.    Century has not accepted its obligation to defend National Grid Holdings 2 against the County Actions as it is required to do under the terms of the Primary Policies.

74.    An actual and justiciable controversy presently exists between National Grid Holdings 2 and Century with respect to the extent of Century's duty to defend National Grid Holdings 2 against the County Actions.  The issuance of declaratory relief by this Court will resolve some or all of this existing controversy between National Grid Holdings 2 and Century.

75.    Pursuant to W. Va. Code § 55-13-10 and the common law of this State, National Grid Holdings 2 also seeks an award of attorneys' fees and costs for prosecuting this claim for declaratory relief.

## SECOND CLAIM FOR RELIEF

**(Breach of Contract – Duty to Defend – Against Defendant Century)**

76.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 75 as if set forth in full herein.

77.    This is a claim for damages for breach of contract.  Plaintiff National Grid Holdings 2 seeks reimbursement from Century of the defense costs National Grid

23

Holdings 2 has incurred and will continue to incur in defending itself against the County

Actions, which Century has failed to defend.

78.     National Grid Holdings 2 has incurred and continues to incur financial

losses in the investigation and defense of the County Actions.

79.     Century has breached its contractual obligation under the Primary

Policies to provide a complete defense to National Grid Holdings 2 against one or more of the

County Actions.

80.     As a direct result of Century's breach of its duty to defend, National Grid

Holdings 2 has been and will be deprived of the benefit of the insurance coverage for which its

predecessor paid substantial premiums, and has been and will be forced to pay sums in the

investigation and defense of the County Actions, including attorneys' fees, experts' fees, and

supplemental expenses, which Century has a contractual obligation to pay.

81.     As a direct result of Century's breach of its duty to defend, National Grid

Holdings 2 has been forced to incur and will continue to incur consequential damages,

including, without limitation, attorneys' fees and other expenses in bringing this action and the

lost earnings on amounts wrongfully held by Century, which damages are not subject to the

Primary Policies' limits of liability.

82.     As a direct and proximate result of the aforesaid acts and omissions by

Century, National Grid Holdings 2 has been damaged in an amount to be proven at trial, for all

damages, costs and payments, and all other sums incurred to date.

# THIRD CLAIM FOR RELIEF

**(Declaratory Relief -- Duty to Indemnify -- Against All Insurer Defendants)**

83.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 82 as if set forth in full herein.

84.     This is a claim for declaratory judgment pursuant to W. Va. Code § 55-13-1 *et seq.* National Grid Holdings 2 seeks a judicial determination of its rights and the obligations of the Insurer Defendants to indemnify it under the Policies for any damages, losses, liabilities and monetary obligations sustained by or imposed upon National Grid Holdings 2 as a result of the County Actions.

85.     Pursuant to the terms of the Policies, the Insurer Defendants are obligated to indemnify National Grid Holdings 2 for, or pay on its behalf, all sums that it becomes legally obligated to pay through judgment, settlement or otherwise, and all expenses it incurs, as a result of the claims asserted in the County Actions.  The Insurer Defendants' contractual duty to indemnify National Grid Holdings 2 is subject only to the conditions set forth in Paragraph 64, which is incorporated herein by reference.

86.     The Insurer Defendants have failed to acknowledge their duty to indemnify National Grid Holdings 2 on the terms described herein.

87.     An actual controversy of a justiciable nature presently exists between National Grid Holdings 2 and the Insurer Defendants concerning the proper construction of the Policies and the extent of the Insurer Defendants' duty to indemnify National Grid Holdings 2 for the underlying claims asserted in the County Actions.  The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

88.     Pursuant to W. Va. Code § 55-13-10 and the common law of this State,

National Grid Holdings 2 also seeks an award of attorneys' fees and costs for prosecuting this

claim for declaratory relief.

## FOURTH CLAIM FOR RELIEF

**(Declaratory Relief – Hanover and Travelers C and S Policies -- Against the County Defendants)**

89.     Plaintiff repeats and incorporates by reference the allegations in

paragraphs 1 through 88 as if set forth in full herein.

90.     This is a request for declaratory judgment pursuant to W. Va. Code § 55-

13-1 *et seq*. National Grid Holdings 2 seeks a judicial determination that (a) the coercive relief

sought by the County against Hanover and Travelers C and S in the County Actions is void and

of no legal effect, because Hanover and Travelers C and S are not responsible parties under the

2018 Nuisance Ordinance or any other federal or West Virginia environmental statute, and the

County Defendants have not obtained a monetary judgment against, or enforceable settlement

agreement with, any insured entity under the Hanover and Travelers C and S Policies; (b) the

County Defendants may not initiate or maintain any other direct action against Hanover and

Travelers C and S without first obtaining a monetary judgment against, or enforceable

settlement agreement with, an entity insured under the Hanover and Travelers C and S Policies;

and (c) the applicable property damage limits of the Hanover and Travelers C and S Policies in

any event have been exhausted as a result of the 2008 Settlement Agreements.

91.     By virtue of the indemnification provisions in the 2008 Settlement

Agreements between KeySpan NE, Hanover and Travelers C and S, National Grid Holdings 2,

as successor to KeySpan NE, is the real party in interest with respect to the County's claims

against Hanover and Travelers C and S.

92.    Hanover and Travelers C and S are not a responsible parties under the

2018 Nuisance Ordinance or any federal or West Virginia environmental statute.

93.    The County Defendants have not recovered a monetary judgment against,

or entered into a written settlement agreement with, EAC or any other insured under the

Hanover and Travelers C and S policies that is enforceable against those insurers.

94.    The County Defendants' Abatement Order against Hanover, and the

coercive relief they have sought directly against Hanover and Travelers C and S in the County

Actions, are void, unenforceable, contrary to West Virginia law, and exceed the scope of the

County's enumerated powers.  To the extent the County's actions against Hanover and

Travelers C and S are determined to be within the scope of its enumerated powers, such actions

constitute an unconstitutional retroactive impairment of private insurance contracts, namely, the

Hanover and Travelers C and S policies issued to Eastern Gas.

95.    An actual and justiciable controversy exists between National Grid

Holdings 2 and the County Defendants with respect to (a) the lawfulness and enforceability of

the County's direct actions against, and Abatement Order issued to, Hanover and Travelers C

and S, (b) whether the County may compel Hanover and Travelers C and S to conduct a

Remedial Investigation and Feasibility Study within the Johnson Fork – Loop Creek Watershed,

(c) whether the County may maintain a direct action for recovery of nuisance abatement costs

against Hanover and Travelers C and S without first obtaining a judgment against, or settlement

agreement with, EAC that is enforceable under the policies issued by those insurers, and (d)

whether the applicable property damage limits of the Hanover and Travelers C and S policies

were exhausted by their payments under the 2008 Settlement Agreements.  The issuance of

27

declaratory relief by this Court will resolve some or all of the existing controversy between National Grid Holdings 2 and the County Defendants.

96.     Pursuant to W. Va. Code § 55-13-10, National Grid Holdings 2 also seeks an award with regard to this request for declaratory relief of such costs as the Court may find equitable and just.

## FIFTH CLAIM FOR RELIEF

### (Equitable Apportionment – Against All Defendants)

97.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 96 as if set forth in full herein.

98.     The County Defendants have alleged that EACC is a named insured under the Policies issued by the Insurer Defendants, and that the Policies provide coverage for EAC's liability (as successor to EACC) for conducting a Remedial Investigation and Feasibility Study, and for paying nuisance abatement and cleanup costs as alleged in the County Actions.

99.     National Grid Holdings 2, as successor to Eastern Gas, is a named insured under the same Policies.

100.    The Policies are a finite asset of National Grid Holdings 2, with stated limits of liability.

101.    On information and belief, EAC has no available assets to satisfy its alleged liability to the County other than the Policies, under which the County Defendants allege EAC is insured.

102.    In the event the County Defendants obtain a final monetary judgment against EAC, or enter into a written settlement agreement with EAC, that is covered by the Policies and enforceable against the Insurer Defendants, the Court should declare the proper

method for equitably apportioning the proceeds of the Policies between National Grid Holdings 2, EAC and the County.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff National Grid Holdings 2 prays for relief as follows:

1.    On its First Claim for Relief, plaintiff requests that the Court enter judgment:

(a)    declaring that defendant Century is contractually obligated to provide a complete defense to National Grid Holdings 2, and to pay its reasonable attorneys' fees, experts' fees and other costs, in the County Actions;

(b)    awarding to National Grid Holdings 2 court costs and reasonable attorneys' fees incurred by plaintiff in bringing this action; and

(c)    awarding such other and further relief as the Court deems appropriate.

2.    On its Second Claim for Relief, plaintiff requests that the Court enter judgment:

(a)    awarding National Grid Holdings 2 compensatory damages and consequential damages, in an amount to be proven at trial, plus interest thereon and costs according to law, for Century's breach of its contractual duty to defend National Grid Holdings 2 in the County Actions;

(b)    awarding to National Grid Holdings 2 court costs and reasonable attorneys' fees incurred in bringing this action; and

(c)    awarding National Grid Holdings 2 such other and further relief as the Court deems appropriate.

3.    On its Third Claim for Relief, plaintiff requests that the Court enter judgment:

   (a)    declaring that pursuant to the terms of the Policies, the Insurer Defendants are obligated to indemnify National Grid Holdings 2 for, or pay on its behalf, all sums it becomes legally obligated to pay, through judgment, settlement or otherwise, and all expenses it incurs, as a result of the Abatement Order and the claims asserted against it in the County Actions, subject only to the conditions set forth in Paragraph 64 above;

   (b)    awarding to National Grid Holdings 2 court costs and reasonable attorneys' fees incurred in bringing this action; and

   (c)    awarding such other and further relief as this Court deems appropriate.

4.    On its Fourth Claim for Relief, plaintiff requests that the Court enter judgment:

   (a)    declaring that Hanover and Travelers C and S cannot be named as responsible parties under the County's 2018 Nuisance Ordinance or any other federal or West Virginia environmental statute;

   (b)    declaring that unless and until the County obtains a monetary judgment against, or enters a written settlement agreement with, EAC or any other insured under the Hanover and Travelers C and S Policies that is enforceable against Hanover and Travelers C and S, the County Defendants may not initiate or maintain a direct action against Hanover, Travelers C and S or National Grid Holdings 2 in its capacity as indemnitor of Hanover and Travelers C and S;

(c)     declaring that the County's Abatement Order against Hanover and

Travelers C and S, and the coercive relief it has sought against those insurers in the County

Actions, are void, unenforceable, contrary to West Virginia law, exceed the scope of the

County's enumerated powers, and otherwise operate as an unconstitutional retroactive

impairment of the Hanover and Travelers C and S policies;

(d)     declaring that the applicable property damage limits of the

Hanover and Travelers C and S policies are exhausted;

(e)     awarding to National Grid Holdings 2 such costs as the Court may

find equitable and just; and

(f)     awarding National Grid Holdings 2 such other and further relief as

the Court deems appropriate.

5.     On its Fifth Claim for Relief, plaintiff requests that the Court enter

judgment:

(a)     declaring an appropriate method of apportioning the finite

proceeds of the Policies to satisfy National Grid Holdings 2's alleged liability to the County and

EAC's alleged liability to the County; and

(b)     awarding National Grid Holdings 2 such other and further relief as

the Court deems appropriate.

**JURY DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

June 8, 2021

Shawn P. George (WVSB #13?)
George & Lorensen PLLC
1526 Kanawha Blvd E
Charleston, West Virginia 25311
(304) 343-5555
sgeorge@gandllaw.com

Of Counsel:

William F. Greaney
Michael E. Lechliter
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-5486
(202) 662-6291 (fax)
wgreaney@cov.com
mlechliter@cov.com

*Attorneys for Plaintiff*

32

DC: 7566251-1

## ATTACHMENT A

| Insurer | Policy Number | Policy Period |
|---|---|---|
| Allianz Underwriters Insurance Company | AUX5200531 | 6/1/1982-6/1/1983 |
| Allianz Underwriters Insurance Company | AUX5200959 | 6/1/1983-6/1/1984 |
| Allianz Underwriters Insurance Company | AUX5200960 | 6/1/1983-6/1/1984 |
| Allianz Insurance Company AG | H0001424 | 6/3/1977-6/1/1978 |
| American Home Assurance Company | CE3381679 | 5/15/1973-6/15/1976 |
| Arrowood Indemnity Company | EC102071 | 6/1/1983-6/1/1984 |
| Arrowood Indemnity Company | EC102072 | 6/1/1983-6/1/1984 |
| Arrowood Indemnity Company | EC102073 | 6/1/1983-6/1/1984 |
| Associated Electric & Gas Insurance Services Limited | 010A | 5/15/1980-7/1/1983 |
| Associated Electric & Gas Insurance Services Limited | 010NJ | 7/1/1983-6/1/1985 |
| Associated Electric & Gas Insurance Services Limited | 010CNJ | 6/1/1985-6/1/1986 |
| Berkshire Hathaway Direct Insurance Company | CC002540 | 6/1/1982-6/1/1983 |
| Century Indemnity Company | ISL1176 | 6/1/1979-6/1/1980 |
| Century Indemnity Company | ISL1330 | 6/1/1980-6/1/1981 |
| Century Indemnity Company | ISLGO002701 | 6/1/1981-6/1/1982 |
| Century Indemnity Company | ISL209169 | 6/1/1982-6/1/1983 |
| Century Indemnity Company | ZCX006606 | 6/1/1983-6/1/1984 |
| Chicago Insurance Company | 25SU034933 | 6/1/1982-6/1/1983 |
| Columbia Casualty Company | RDX3652438 | 6/1/1977-6/1/1978 |
| Continental Casualty Company | RD9972829 | 6/21/1961-6/21/1964 |
| Continental Casualty Company | RDU9433461 | 6/21/1964-6/21/1967 |
| Evanston Insurance Company | UM100393 | 6/1/1982-6/1/1983 |
| Executive Risk Indemnity Inc. | EUL5099555 | 6/1/1982-6/1/1983 |
| Factory Mutual Insurance Company | MMO005211 | 6/1/1983-6/1/1984 |
| Factory Mutual Insurance Company | MMO005212 | 6/1/1983-6/1/1984 |
| Factory Mutual Insurance Company | MMO006865 | 6/1/1984-6/1/1985 |
| Factory Mutual Insurance Company | MMO06866 | 6/1/1984-6/1/1985 |
| Fireman's Fund Insurance Company | XLX1299533 | 5/15/1977-6/1/1978 |
| First State Insurance Company | 934489 | 6/1/1982-6/1/1983 |
| First State Insurance Company | 980061 | 6/1/1983-6/1/1984 |
| First State Insurance Company | 980591 | 6/1/1984-6/1/1985 |
| General Reinsurance Corporation | NSX15324 | 5/15/1977-6/1/1978 |
| Hartford Casualty Insurance Company | 08XS102705 | 6/1/1982-6/1/1983 |
| Illinois Union Insurance Company | ICX020268 | 6/1/1982-6/1/1983 |
| Insurance Company of the State of Pennsylvania | 41767015 | 6/15/1976-6/15/1977 |
| Insurance Company of the State of Pennsylvania | 41777983 | 6/15/1977-6/1/1978 |
| Interstate Fire & Casualty Company | 155U27979 | 6/3/1977-6/1/1978 |
| Lexington Insurance Company | 5570079 | 11/1/1981-6/1/1982 |
| Lexington Insurance Company | GC403574 | 5/15/1973-5/15/1976 |
| Lexington Insurance Company | CE5503429 | 6/15/1976-5/15/1977 |

| Insurer | Policy Number | Policy Period |
|---|---|---|
| Munich Reinsurance America, Inc. | M1050254 | 6/15/1976-6/15/1977 |
| National Union Fire Insurance Company of Pittsburgh, Pa. | 1186557 | 5/15/1976-6/15/1977 |
| National Union Fire Insurance Company of Pittsburgh, Pa. | 1229247 | 5/15/1977-6/1/1978 |
| National Union Fire Insurance Company of Pittsburgh, Pa. | 1224427 | 5/15/1977-6/1/1978 |
| National Union Fire Insurance Company of Pittsburgh, Pa. | 9600303 | 6/1/1982-6/1/1983 |
| New York Marine Insurers (Northeastern, Pennsylvania Lumbermens, Starr Indemnity, and TIG) | 84L2373/01 | 6/1/1984-6/1/1985 |
| New York Marine Insurers (Northeastern, Pennsylvania Lumbermens, Starr Indemnity, and TIG) | 84L2373/02 | 6/1/1984-6/1/1985 |
| New York Marine Insurers (Northeastern, Pennsylvania Lumbermens, Starr Indemnity, and TIG) | 84L2373/03 | 6/1/1984-6/1/1985 |
| Pacific Employers Insurance Company | XCC012815 | 6/1/1982-6/1/1983 |
| St. Paul Fire and Marine Insurance Company | 390FA9105 | 6/1/1984-6/1/1985 |
| St. Paul Fire and Marine Insurance Company | 390FA9106 | 6/1/1984-6/1/1985 |
| St. Paul Fire and Marine Insurance Company | 390FA9107 | 6/1/1984-6/1/1985 |
| Westport Insurance Corporation | ML650418 | 5/15/1977-6/1/1978 |
| Zurich American Insurance Company | IRDSR4099 | 6/3/1977-6/1/1978 |