# EXHIBIT 7

Case 2:21-cv-00007   Document 36-6   Filed 06/02/21   Page 2 of 81 PageID #: 1399

will
slp to atty

**IN THE CIRCUIT COURT OF** _____ Fayette _____ **COUNTY, WEST VIRGINIA**

## CIVIL CASE INFORMATION STATEMENT
### (Civil Cases Other than Domestic Relations)

**I. CASE STYLE:**

**Plaintiff(s)**

County Commission of Fayette County,

West Virginia

Case No. 21 - C - 56

Judge: Paul M Blake, Jr.

**Plaintiff's Phone:** Attorney: 304-343-6500

**vs.**

**Defendant(s)**

The Continental Insurance Company,

Name

100 Matsonford Road Suite 200

Street Address

Radnor, PA 19087

City, State, Zip Code

**Days to Answer** 20

**Type of Service**

**Defendant's Phone:**

2021 MAY -4 A 11: 50
FAYETTE COUNTY CLERK

**II. TYPE OF CASE:**

- [✓] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other: _____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other: _____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [ ] Yes [✓] No  CASE WILL BE READY FOR TRIAL BY (Month/Year): 10 / 2021

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**
[ ] Yes [✓] No

**IF YES, PLEASE SPECIFY:**
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

Attorney Name: Michael O. Callaghan

Firm: Neely & Callaghan

Address: 1337 Virginia Street East Suite 200 Charleston WV 25301

Telephone: 304-343-6500

Representing:
- [✓] Plaintiff
- [ ] Defendant
- [ ] Cross-Defendant
- [ ] Cross-Complainant
- [ ] 3rd-Party Plaintiff
- [ ] 3rd-Party Defendant

[ ] **Proceeding Without an Attorney**

Original and _____ copies of complaint enclosed/attached.

Dated: 05 / 04 / 2021   Signature: _____

**SCA-C-100: Civil Case Information Statement (Other than Domestic Relations)**   Revision Date: 4/2020

**Plaintiff:** _____ , *et al*   **Case Number:** _____

**vs.**

**Defendant:** _____ , *et al*

## CIVIL CASE INFORMATION STATEMENT
## DEFENDANT(S) CONTINUATION PAGE

_____   Defendant's Phone: _____
Defendant's Name

_____   Days to Answer: _____
Street Address

_____   Type of Service: _____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____   Defendant's Phone: _____
Defendant's Name

_____   Days to Answer: _____
Street Address

_____   Type of Service: _____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____   Defendant's Phone: _____
Defendant's Name

_____   Days to Answer: _____
Street Address

_____   Type of Service: _____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____   Defendant's Phone: _____
Defendant's Name

_____   Days to Answer: _____
Street Address

_____   Type of Service: _____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____   Defendant's Phone: _____
Defendant's Name

_____   Days to Answer: _____
Street Address

_____   Type of Service: _____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____   Defendant's Phone: _____
Defendant's Name

_____   Days to Answer: _____
Street Address

_____   Type of Service: _____
City, State, Zip Code

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____   Defendant's Phone: _____
Defendant's Name

_____   Days to Answer: _____
Street Address

_____   Type of Service: _____
City, State, Zip Code

**SCA-C-100:  Civil Case Information Statement-Defendant(s) Continuation Page**        Revision Date:  4/2020

# IN THE CIRCUIT COURT OF FAYETTE COUNTY, WEST VIRGINIA

**County Commission of**
**Fayette County, West Virginia,**

- Plaintiff,

**COPY**

CIVIL ACTION NO: 21-C-56 (B)

**Ex Rel.:  Anthony Ciliberti Esq.,**
**Fayette Co. Prosecuting Attorney**

- Real Party in Interest

v.

**The Continental Insurance Company,**
**a Pennsylvania corporation**
**authorized to do business in WV,**

- Defendant.

## SUMMONS

**TO THE ABOVE-NAMED DEFENDANT:**

**The Continental Insurance Company,**
**a Pennsylvania corporation**
**authorized to do business in WV,**

c/o Chief Executive Officer
100 Matsonford Road
Suite 200
Radnor, PA   19087

c/o Stathy Darcy
Its Statutory Agent
151 N. Franklin Street, 9th Floor
Chicago, IL   60606

**SERVED BY:** Personal

**IN THE NAME OF THE STATE OF WEST VIRGINIA, YOU ARE HEREBY SUMMONED AND REQUIRED TO SERVE UPON, MICHAEL CALLAGHAN, NEELY & CALLAGHAN, 1337**

Virginia St. E., Suite 200, CHARLESTON, WV 25301 an ANSWER, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy which is herewith delivered to you.   You are required to serve your answer within **20** days after service of this summons upon you, exclusive of the day of service.   If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred for asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated this the _4th_ day of _May_ , 20_21_.

_Deborah B. Hendrick_

**CLERK OF COURT**

Case 2:21-cv-00007 Document 36-6 Filed 06/02/21 Page 6 of 81 PageID #: 1403

# IN THE CIRCUIT COURT OF FAYETTE COUNTY, WEST VIRGINIA

☐ COPY

County Commission of
  Fayette County, West Virginia,

            - **Plaintiff,**

CIVIL ACTION NO: 21-C-54 (B)

Ex Rel.: Anthony Ciliberti Esq.,
  Fayette Co. Prosecuting Attorney

         - **Real Party in Interest**

      v.

The Continental Insurance Company,
  a Pennsylvania corporation
  authorized to do business in WV,

        - **Defendant.**

## SUMMONS

**TO THE ABOVE-NAMED DEFENDANT:**

The Continental Insurance Company,
  a Pennsylvania corporation
  authorized to do business in WV,

| | |
|---|---|
| c/o Chief Executive Officer | c/o Stathy Darcy |
| 100 Matsonford Road | Its Statutory Agent |
| Suite 200 | 151 N. Franklin Street, 9th Floor |
| Radnor, PA   19087 | Chicago, IL   60606 |

**SERVED BY:** Personal

**IN THE NAME OF THE STATE OF WEST VIRGINIA, YOU ARE HEREBY SUMMONED AND REQUIRED TO SERVE UPON, MICHAEL CALLAGHAN, NEELY & CALLAGHAN, 1337**

**Virginia St. E., Suite 200, CHARLESTON, WV 25301** an **ANSWER,** including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy which is herewith delivered to you.   You are required to serve your answer within **20** days after service of this summons upon you, exclusive of the day of service.   If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred for asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated this the 4th day of May , 20 21

_____
**CLERK OF COURT**

# IN THE CIRCUIT COURT OF FAYETTE COUNTY, WEST VIRGINIA

**County Commission of**
 **Fayette County, West Virginia,**

 **- Plaintiff,**

 **CIVIL ACTION NO:** 21-C-54 (B)

**Ex Rel.: Anthony Ciliberti Esq.,**
 **Fayette Co. Prosecuting Attorney**

 **- Real Party in Interest**

 **v.**

**The Continental Insurance Company,**
 **a Pennsylvania corporation**
 **authorized to do business in WV,**

 **- Defendant.**



### VERIFIED COMPLAINT FOR ENFORCEMENT OF A CIVIL INFORMATION DEMAND PROPERLY ISSUED AND SERVED PURSUANT TO THE DULY PROMULGATED FAYETTE CO. PUBLIC NUISANCE CIVIL INVESTIGATION ORDINANCE, FAYETTE CO. ORDINACE No. 2017-002

Plaintiff's Relator, Anthony Ciliberti, Esq., the duly elected Fayette County Prosecuting Attorney, hereby brings this civil action in the name of, and on behalf of, Plaintiff, THE COUNTY COMMISSION OF FAYETTE COUNTY, WEST VIRGINIA (hereinafter: "Governmental Plaintiff"), pursuant to the express authority conferred upon him by: **(1)** W. Va. Code § 7-4-1 to attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceedings in which Fayette County is interested; and **(2)** by Section 15(a) of Fayette County Ordinance 2017 002, entitled "Fayette County Public Nuisance Civil Investigation Ordinance" (hereinafter: "Civil Investigation Ordinance"), to enforce the requirements of a Civil Information Demand properly issued and served pursuant to the lawful authority of the County Commission of

---

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page 1 of 20 pages

Fayette County under the same Civil Investigation Ordinance, which became effective December 15, 2017. In support of his request, on behalf of the Public, for the relief requested herein, all of which is necessary and proper to secure timely and adequate protection of the Public Health, Safety, Welfare and the Environment within Fayette County, Relator states as follows:

## I.   LEGAL BACKGROUND:

### a.   Legal Background: The "Public Nuisance Doctrine" in West Virginia:

1.   Article II, Section 2 of the West Virginia Constitution provides that all of the powers of government are resident in the Citizens of the State of West Virginia "and can be rightfully exercised only in accordance with their will and appointment." Pursuant to Article III, Section 3 of the Constitution of the State of West Virginia, the government of the State of West Virginia is instituted by the Citizens of West Virginia and vested with all of their powers as Sovereigns "for the "common benefit, protection and security of the people, nation or community:" Most prominent among those powers inherent in the Sovereignty of those citizens and vested by them in their State government are the "Police Powers" of the State of West Virginia[1], by which is meant

---

[1] Articulating the nature and extent of the inherent "Police Powers" of a Sovereign State in our Republic, the West Virginia Supreme Court of Appeals held:

> The police power of the state is the power of government inherent in every sovereignty to enact laws, within constitutional limits, to promote the general welfare of its citizens. The police power is difficult to define because it is so extensive, elastic and constantly evolving to meet the new and increasing demands for its exercise for the benefit of society. It embraces the power of the state to preserve and promote the public welfare and it is concerned with whatever affects the peace, security, morals, health and general welfare of the community. **The exercise of the police power cannot be circumscribed within narrow limits nor can it be confined to precedents resting on conditions of the past. As civilization becomes more complex and advancements are made, the police power of necessity must develop and expand to meet such conditions.**

*State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740 (1965), Headnote # 9 [Bolding emphasis added].

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **2** of **20** pages

the inherent power to protect the Public Health, Safety, Welfare and the Environment for the benefit of present and future generations of the Public.

2.    The principles of law that form the remedial arm of the "Police Powers," which is to say the set of expansive legal authorities that govern the inherent power of the Sovereign State to PROHIBIT AND ABATE anything that impermissibly and unreasonably endangers the Public Health, Safety, Welfare or the Environment, or impermissibly and unreasonably impairs the beneficial uses of any natural resource held in Public Trust for the benefit of present and future generations of the Public, is referred to as the "Public Nuisance Doctrine.[2]"

3.    Those acts or conditions that present or may present such impermissible and unreasonable endangerments or impairments to the Public or any substantial number of persons are referred to by the common law and statutes of West Virginia as each being a "Public Nuisance". *State ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221 *; 488 S.E.2d 901 (1997) ("A public nuisance action usually seeks to have some harm which affects the public health and safety abated. 28  Thus, until such harm is abated, the public nuisance is continuing and the statute of limitations does not accrue.").

4.    Because of its origin and continuing place among the "Police Powers," it has long been and remains a fundamental principle of the common law of Public Nuisance in West Virginia that

---

[2] Describing the extent of the State's authority under the "Public Nuisance Doctrine," the United States Supreme Court held:

> **Although the police power of a state cannot be arbitrarily exercised, it is to be remembered that it is one of the most essential powers of government, <u>one that is the least limitable.</u>** It may, indeed, seem harsh in its exercise, and usually is harsh on some individual.  **But the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily.**

*Hadacheck* v. *Sebastian*, 239 U.S. 394, Syllabus # 1 (1915) [Bolding and Underlining emphasis added].

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **3** of **20** pages

the power to bring and prosecute a Public Nuisance Abatement action lies only with public prosecutors authorized to bring the claims of the Sovereign State, and such other public officials as are authorized by law. Id. at p. 241. ("Ordinarily, a suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public."[3])

**b.  Legal Background:  The State of West Virginia's Delegation of Its Powers Under the Public Nuisance Doctrine to County Governments:**

5.  Reflecting the nationwide preference of most States for exercise of their inherent authorities under the Public Nuisance Doctrine whenever practicable at the local levels of government[4], the State of West Virginia, without relinquishing its own inherent authority, has delegated **all of it powers under the Public Nuisance Doctrine**, save only the legal authority to impose felony-level criminal penalties, to the county governments within West Virginia.[5]

---

[3]  *State ex rel. Smith* v. *Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 228 (1997).

[4]  Research Division, National Assn. of Counties, "County Authority:  A State by State Report" (Dec. 2010), available online at:   http://www.nvnaco.org/wp-content/uploads/County-Authority-a-State-by-State-Report.pdf

[5]  Pursuant to **W. Va. Code § 7-1-3**, County Commissions within West Virginia are vested "under rules prescribed by law" with superintendence of the internal "police" *(i.e.,* public protection) and fiscal affairs of Fayette County, a political subdivision of the State of West Virginia.

Pursuant to W. Va. Code **§ 7-1-3kk**, County Commissions within West Virginia are vested with the following "Police Powers" of the State of West Virginia:

> **In addition to all other powers and duties now conferred by law upon county commissions, commissions are hereby authorized to enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance.**  The ordinances may provide for a misdemeanor penalty for its violation.  The ordinances may further be applicable to the county in its entirety or to any portion of the county as considered appropriate by the county commission.

**Id.** [Bolding and underscoring emphasis added].

---

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **4 of 20** pages

**c.** **Legal Background: Enactment of the Fayette County Public Nuisance Civil Investigation Ordinance, Fayette Co. Ordinance No. 2017-002:**

**6.** Recognizing that the proper and effective discharge of the responsibilities and authorities conveyed to it by W. Va. Code §§ 7-3-3ff and 7-3-3kk required Fayette County to develop and implement an effective legal mechanism timely to identify and investigate known and reasonably suspected, active or imminently threatened acts or conditions of Public Nuisance within Fayette County, Plaintiff, the County Commission of Fayette County, following two (2) duly-noticed Public Hearings, enacted on December 15, 2017 the Fayette County Public Nuisance Civil Investigation Ordinance, Fayette Co. Ordinance 2017-002, a verified copy of which is attached hereto as **Exhibit A** and incorporated herein by reference. In the duly-promulgated Preamble to that Ordinance, the Fayette County Commission declared it Findings and the Legislative Facts and Purposes upon which that Ordinance is premised:

> **WHEREAS, the Fayette County Commission has determined** that the timely and proper protection of the Public Health, Safety, Welfare, and the Environment within Fayette County, and the timely, adequate, and effective identification, prevention ·and abatement of any existing or imminently threatened Public Nuisance or Imminent and Substantial Endangerment to the Public Health, Safety, Welfare, or the Environment within or affecting the Fayette County public **requires that Fayette County have in place adequate investigatory legal authority and procedures timely to acquire the relevant information necessary adequately to respond to any such Public Nuisance or Endangerment, and timely and competently to determine and implement or cause to be implement appropriate abatement of any such Public Nuisance or Endangerment within or adversely impacting Fayette County**; and

---

Pursuant to W. Va. Code **§ 7-1-3ff(b)**, County Commissions within West Virginia are vested with the following "Police Powers" of the State of West Virginia:

> **(b) Plenary power and authority** are hereby conferred upon every county commission to adopt ordinances regulating **the removal and clean up of any accumulation of refuse or debris**, overgrown vegetation **or toxic spillage or toxic seepage located on private lands which is determined to be unsafe, unsanitary, dangerous, or detrimental to the public safety or welfare, whether the result of natural or manmade force or effect.**

[Bolding emphasis added.]

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **5** of **20** pages

WHEREAS, the provisions, requirements and prohibitions hereinafter contained and enacted in this Ordinance are declared, as a matter of legislative fact and public policy, to be necessary and appropriate to the provision of adequate protection of the Public Health, Safety, Welfare, and the Environment within Fayette County; and it is further declared that the provisions, requirements, and prohibitions hereinafter contained and enacted are in pursuance of, and for the purpose of securing for the benefit to present and future generations of the Public within Fayette County, of timely and appropriate abatement of Public Nuisances within Fayette County and adequate protection of the Public Health, Safety, Welfare, and of the Environment within Fayette County;

Paragraphs 3 and 4, Preamble to Fayette Co. Ordinance 2017-002 [Bolding emphasis added.]

7.    Closely paralleling similar legislative action by the West Virginia Legislature[6], the County Commission of Fayette County in the Civil Investigation Ordinance delegated authority to the Fayette County Prosecuting Attorney to conduct civil investigations into any known or reasonably suspected Public Nuisance conditions that do or may exist in Fayette County.   Specifically, the Civil Investigation Ordinance provides, in relevant part:

**Section 4 - Authority of Fayette County Prosecuting Attorney to Conduct Civil Investigations into, and to inspect Real Property and Premises Pertaining to, a Known or Reasonably Suspected Public Nuisance:**

**(a)  Public Nuisance Civil Investigation Authorized; Scope and Confidential Nature of On-going Investigation by Fayette County Prosecuting Attorney:**  If the Fayette County Prosecuting Attorney has a reasonable basis to believe that Public Nuisance exists, or may exist within Fayette County, he may, and shall, upon request of the Fayette County Commission, make a timely and thorough investigation into any act or condition that may present a Public Nuisance in Fayette County, the scope and extent of which investigation may, as determined necessary and proper by the Fayette County Prosecuting Attorney, extend to all matters reasonably calculated to lead to the discovery of admissible evidence relevant to any of the following matters:

**(1)**  whether a Public Nuisance exists within Fayette County;

**(2)**  the origin, nature, extent, and options (including their related costs) for abatement of any endangerments to the Public Health, Safety, Welfare, or the Environment within

---

[6]  In order to secure adequate enforcement of the WV Consumer Credit Protection Act, the West Virginia Legislature conveyed Civil Investigation authority to the WV Attorney General in W. Va. Code § 46A-7-10 and expressly authorized injunctive relief to compel compliance with Civil Investigation Demands properly issued by the Attorney General pursuant to that Act.

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

Verified Complaint for Enforcement of Civil Information Demand

Page 6 of 20 pages

Fayette County that are or may be presented by such existing or imminently threatened Public Nuisance;

**(3)** the identity and location of person(s) with potential legal liability to abate Public Nuisance, and their knowledge of, nexus to, and action(s) or failure(s) to act with respect to any known or suspected Public Nuisance within Fayette County;

**(4)** the source, identification, nature, concentrations, characteristics, or quantity of any Waste(s), Hazardous Waste(s), Hazardous Substance(s) or pollutant or contaminant which have been released, are being released, or imminently threaten to be released into the Environment at any place where they do or may cause, create or contribute to a Public Nuisance within Fayette County;

**(5)** Any information relating to the ability of any person who does or may have legal liability to abate a Public Nuisance to pay for or to perform a cleanup; non-exclusively including the complete contents of, and available limits of liability under, any insurance or indemnification policy or agreement (including any riders, endorsements, alterations, cancellations, or side agreements relating to such policy or agreement) pursuant to which an insurance business or other indemnitor may be liable to satisfy all or part of a possible judgment or other compulsory process of law against any person who does or may have legal liability to abate a Public Nuisance, or to indemnify or reimburse for payments made to satisfy any possible judgment against such person;

**(6)** the identity and location of any person(s) who has or may have information relevant to any matter within the scope of investigation authorized by this Section 4;

## II.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS:

**8.** In this case involving contamination of the surface waters and groundwaters within the

Johnson Fork-Loop Creek watershed by the past and continuing **Releases**[7] into the **Environment**[8]

---

[7] Consistent with the relevant provisions of its definition in **Section III(q)** of the Civil Investigation Ordinance, the term "Release" as used herein means:

> The term **"Release'** shall mean means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the Environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any Hazardous Substance…

[8] Consistent with the relevant provisions of its definition in Section III(e) of the Civil Investigation Ordinance, the term "Environment" as used herein means: "any surface water, groundwater, soil water, drinking water supply, soil, land surface, subsurface strata, or ambient air within Fayette County.

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **7** of **20** pages

of **Hazardous Substances**[9], **Hazardous Wastes**[10] and toxic **Wastes**[11] from, *inter alia*, five (5) large, unlicensed coal mining waste disposal sites on the surface of the land within that watershed, the Fayette County Prosecuting Attorney has a reasonable basis to believe that a Public Nuisance exists or may exist within Fayette County. Specifically, based upon investigation, the Fayette County Prosecuting Attorney uncovered evidence that the Page/Kincaid Public Service District's water supply, which, until very recently, was used in it provision of public water supply services to residents and businesses within that watershed, has been compromised by toxic contaminants. Further, Investigation by D. Scott Simonton, Ph.D., P.E, a prominent Environmental Engineer and Full Professor at Marshall University, appointed by the Fayette County, WV Code Enforcement

---

[9] Consistent with the relevant provisions of its definition in **Section III(h)** of the Civil Investigation Ordinance, the term "**Hazardous Substance**" as used herein means:

> The term "**Hazardous Substance**" shall have the same meaning as is provided in CERCLA section 104(14), 42 U.S.C. § 9601(14), as that term has been construed and interpreted by the decisions of the Courts of the United States having jurisdiction to interpret and apply the provisions of CERCLA.

[10] Consistent with the relevant provisions of its definition in **Section III(i)** of the Civil Investigation Ordinance, the term "Hazardous Waste" as used herein means:

> The term "**Hazardous Waste**" shall mean **a Waste or combination of Wastes, which because of its quantity, concentration or physical, chemical, or infectious characteristics**: **(1)** may cause, or significantly contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or **(2) pose a substantial present or potential hazard to human health or the Environment when improperly treated, stored, transported, disposed of or otherwise managed...**

Id. [Bolding emphasis added.]

[11] Consistent with the relevant provisions of its definition in **Section III(u)** of the Civil Investigation Ordinance, the term "**Waste**" as used herein means:

> The term "**Waste**" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant or air pollution control facility, and **other discarded material including** solid, liquid, semisolid or contained gaseous material resulting from industrial, commercial, **mining** and agricultural operations and from community activities.

Id. [Bolding emphasis added.]

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **8** of **20** pages

Agency[12] as a Special Investigator, indicates that the beneficial uses of the waters within the

Johnson Fork-Loop Creek watershed have been and are continuing to be adversely impacted by

previous and continuing coal mining waste disposal activity within that watershed; all of which is

located within Fayette County.  Attached as **Exhibit B** is a declaration of D. Scott Simonton, Ph.D.,

P.E which is incorporated herein.

    **9.**    Based upon the results of this investigation by the Fayette Co. Code Enforcement Agency

and the Fayette County Prosecuting Attorney, the Governmental Plaintiff has a reasonable basis

to believe that a condition of Public Nuisance exists or may exist within Fayette County,

specifically within the Johnson Fork-Loop Creek watershed.

    **10.**  Additionally, investigation by the Fayette Co. Code Enforcement Agency determined that

Eastern Gas & Fuel Associates, a Massachusetts Business Trust (hereinafter: "EGFA"), and its

wholly-owned (until March 31, 1987) subsidiaries, Eastern Associated Coal Corporation, and Coal

Products Corporation, owned and maintained or operated very extensive coal mining facilities[13] in

the Johnson Fork-Loop Creek watershed throughout most of the 20th Century.

    **11.**  Further investigation by the Fayette Co. Code Enforcement Agency and the

Environmental & Public Health Protection Unit of the Fayette Co. Prosecuting Attorney's Office

---

[12] The Fayette County Code Enforcement Agency was created by the County Commission of Fayette County in Section VII of the Fayette County Comprehensive Public Nuisance Abatement Ordinance, Fayette Co. Ordinance # 2018-001 (August 17, 2018) pursuant to the statutory mandate set forth in W. Va. Code § 7-3-3ff(c).

[13] A Newspaper Article published on April 3, 1952 in the Beckley Herald, contemporaneous with the commencement of closure of the Eastern Gas and Fuel Powellton No. 6 mine in the Johnson Fork-Loop Creek Watershed, reports that Eastern Gas and Fuel operated that very large mining facility continuously since 1927, and that during its peak production period in the 1930's the Eastern Gas and Fuel Powellton No. 6 mine produced approximately 3,500 tons of coal **daily** and employed approximately 1,300 miners.  A copy of this Newspaper Article in attached hereto as **Exhibit C** and incorporated herein by reference.

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY v. THE CONTINENTAL INSURANCE CO.*, Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **9** of **20** pages

revealed that The Continental Insurance Company (a.k.a. CNA) issued an Umbrella Excess Third Party Liability Insurance Policy(ies) that provided insurance coverage to EGFA and its wholly owned subsidiaries for covered occurrences of property damage within the policy periods (approximately 1961 through 1967) for which its insured are liable.

**12.** In light of evidence of the existence of these Continental Insurance Co. liability insurance policies, the Fayette County Prosecuting Attorney, acting pursuant to the express authority conveyed to him by **Section 5(a)** of the Civil Investigation Ordinance, issued Civil Information Demand CID # 2020-003-02 ("CID") on December 23, 2020 to Continental Insurance Company ("CNA") (a copy of this CID is attached hereto as Exhibit D and incorporated herein) requiring it to produce the documents described in that CID **and** the information requested in that CID on or before February 5, 2021:

> **1)**  liability insurance policies (of any kind) issued to Eastern Gas & Fuel Associates, Eastern Associated Coal Corporation ("EACC"), Coal Products Corporation ("CPC") between 1963 and 1987, non-exclusively including Continental Insurance Company Insurance Policy Numbers: RD9972829, RDU9433461, XC102700, EXC102779, EXC102071 and EXC103326;
>
> **2)**  all applications & application-related communications regarding the demanded insurance policies (necessary for FCoWV to assess "known loss" issues affecting validity of coverage, and to uncover pre-existing liability policies at the time of each application);
>
> **3)**  all underwriting information related to the demanded policies; and
>
> **4)**  all claims information related to the demanded policies (essential for FCoWV to independently assess the policy's remaining limits of liability coverage).

**13.** CNA was given a generous period of time (over 6 weeks) to respond to CID # 2020-003-02. In addition, in response to repeated requests from CNA was given multiple extensions of time to respond to the CID. After the granting of these requested extensions of time, CNA was required fully to respond to the CID by April 2, 2021, thus, providing CNA with **over**

---

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)*

**Verified Complaint for Enforcement of Civil Information Demand**

Page **10** of **20** pages

**four (4) months to respond** to a CID involving an on-going public investigation into "imminent and substantial endangerments to the environment within Fayette County."

14. CNA was specifically advised in the prominently-displayed Paragraph 4 of the "Notices to Respondent" section of the CID of its right pursuant to Section 10 of Civil Investigation Ordinance timely to seek an order from the Fayette Co. Commission quashing, modifying or providing other relief from the provisions of the CID. Although CNA did file written, broadly worded "objections" to the CID, it never filed any compliant motion[14] under Section 10 of Civil Investigation Ordinance seeking modification or revocation of all or any part of the CID.

15. After all of the granted extensions of time, CID # 2020-003-02 required a compliant response on or before April 2, 2021. It was **not until March 30, 2021** that CNA first advised Relator that it would be withholding the majority of the responsive documents that it had located.

16. Despite having been clearly advised in **Paragraph II.2** ("Instructions") of Appendix I to the CID of the requirement in **Section 6(b)** of the Civil Investigation Ordinance mandating the timely production of a compliant Privilege Log respecting each withheld document or item of information, **CNA has never provided any Privilege Log or any of the information required by Section 6(b) of the Civil Investigation Ordinance to be set forth in such a Privilege Log**.

17. In response to CID # 2020-003-02, CNA made two (2) productions of documents: one on April 2, 2021 (timely under the CID) and one on April 15, 2021 (not timely under the CID). The first CNA production contained only policy provisions (including endorsements) for seven (7) CNA liability policies to EGFA. The production included information about one (1) CNA policy

---

[14] **Section 10(a)** of the Civil Investigation Ordinance requires that a motion seeking relief from the Fayette Co. Commission with respect to a CID issued pursuant to that Ordinance set forth "concisely the relief requested and all of the law and facts which the respondent/movant contends entitles it/them to the relief requested" CNA never filed any such motion.

COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page 11 of 20 pages

to EGFA that had not specifically identified in the CID; namely CNA Policy # EXC 102700 (providing excess liability coverage for the coverage period of 6-1-85 to 6-1-86). Also, the CNA April 2, 2021 Production contained a single Redaction on Document # EG 000037 (None of the required Privilege Log information regarding that redaction has ever been provided.)

18. The second CNA production on April 15, 2021 (untimely under the CID) contained only policy search information and information relating to the tenders of Fayette County's claims against EGFA to CNA by National Grid NE Holdings 2 LLC (successor to the remedial liabilities of EGFA) and tender-related communications between CNA, its third party environmental claims management entity (Resolute) and National Grid, including policy search and tender-related communications between CNA and Resolute.

**19. To date CNA has not produced any of the demand documents or information relating to: (1) policy applications; (2) policy underwriting information; or (3) any information regarding claims made against any of the policies.**

20. In addition, a significant number of the documents provided in the CNA Production on April 15, 2021 were Redacted in whole or in significant part. CNA redacted these documents, all of which were demanded by the CID, without timely providing any of the Privilege Log information required by Section 6(b) of the Civil Investigation Ordinance. A Microsoft Excel table displaying the key information about each non-duplicative document included in the CNA April 15, 2021 production and indicating those documents that CNA redacted in whole or in part is attached as **Exhibit E** and incorporated herein.

## COUNT ONE
### VIOLATION OF SECTION 6(a) OF THE FAYETTE CO. CIVIL INVESTIGATION ORDINANCE - FAILURE TIMELY AND FULLY TO

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **12** of **20** pages

**PROVIDE DOCUMENTS AND INFORMATION REQUIRED TO BE
PRODUCED BY A PROPERLY SERVED CIVIL INFORMATION
DEMAND ISSUED PURSUANT TO THAT ORDINANCE**

**21.** The Governmental Plaintiff incorporates and realleges in this Count all of the allegations asserted in the foregoing paragraphs as if fully set forth herein.

**22.** At all times relevant hereto, the Fayette County Prosecuting Attorney had and has a reasonable basis to believe that a condition of Public Nuisance exists or may exist in the Johnson Fork-Loop Creek watershed within Fayette County, West Virginia.

**23.** At all times relevant hereto, the Fayette County Prosecuting Attorney had and has a reasonable basis to believe that The Continental Insurance Company was and is in possession of information described in **Section 4(a)(5)** of the Civil Investigation Ordinance; namely, information concerning the liability insurance assets of Eastern Gas and Fuel Associates, a party potentially responsible for causing or contributing to the condition of Public Nuisance that Plaintiff alleges exists in the Johnson Fork-Loop Creek watershed in Fayette County, West Virginia, which insurance assets may be available to fund appropriate **Abatement Actions**[15] with respect to such Public Nuisance condition within Fayette County.

**23.** Fayette County Civil Investigation Demand No. 2020-003-02 was issued to Continental Insurance Company in full compliance with the requirements of **Section 5** of the Civil Investigation Ordinance that provides, in relevant part:

> **Section 5 - Authority of Fayette County Prosecuting Attorney to Issue and Enforce Civil Investigation Demand:**

---

[15] Consistent with the relevant provisions of its definition in **Section III(a)** of the Civil Investigation Ordinance, the term **"Waste"** as used herein means any activity(ies) that is or may be necessary to respond to an existing or imminently threatened act or condition of Public Nuisance, including those activities comprising the Remedial Investigation and Remedial Feasibility Study of conditions at and emanating from the site, and those clean up and enforcement actions necessary to secure adequate protection of the Public Health, Safety, Welfare and the Environment.

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page 13 of 20 pages

(a) **Access to and Production of information, Document, Record, or Thing**: By service of a Civil Information Demand in compliance with the requirements of this Ordinance, the Fayette County Prosecuting Attorney may require any person who has or may have any information relevant to any matter within the scope of investigation authorized by Section 4 of this Ordinance to furnish at the time and place specified in the Civil Information Demand, which time shall be at least twenty-one (21) days from the date of service of the Civil Information Demand, unless exigent circumstances require a shorter period of time, all such requested information, document(s), record(s), or thing(s) of any kind which is relevant to such investigation for inspection and copying by the Fayette County Prosecuting Attorney, or his designated Assistant or agent, 11011-exclusively including any matter relevant to the existence, description, nature, custody, condition and location of any book(s), record(s), document(s), substance(s), or other tangible thing(s) and the identity and location of persons having knowledge of relevant facts, or any other matter reasonably calculated to lead to the discovery of evidence relevant to any matter within the scope of investigation authorized by Section 4 of this Ordinance that is in the possession, care, custody, or control of the Person named in and served with the Civil Information Demand, its agents, representatives, employees, directors, partners, consultants, parent corporations or other entities, subsidiaries, and all Persons acting on its behalf or in concert with it, and to the full extent they are or can be available to that Person, all such books, records, documents and things that are in the possession, care, custody, or control of that Person's predecessors and successors-in-interest.

24.  Fayette County Civil Investigation Demand No. 2020-003-01 was properly served by United States Postal Service Priority Mail, Return Receipt Requested, on: **(1)** the Chief Executive Officer of The Continental Insurance Company at its principal place of business of record with the West Virginia Secretary of State; and **(2)** the Registered Statutory Agent for Service of Process for The Continental Insurance Company at its place of business of record with the West Virginia Secretary of State.  Official USPS Return Receipt cards evidencing the receipt of Civil Investigation Demand No. 2020-003-02 by the offices of each recipients are attached as **Exhibit F** and incorporated herein.

26.  The Continental Insurance Company has violated **Section 6(a)** of the Civil Investigation Ordinance by failing or refusing timely to comply with Fayette Co. CID # 2020-003-02 in that it:

   **(1)**  failed or refused to fully produce the demanded documents and information regarding

---

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page 14 of 20 pages

all policy application materials, all policy underwriting information, and all claims information relating to the insurance policies it has issued to EGFA; and

(2) failed or refused timely to produce the sworn certification required by Section 6(a)(3) of the Civil Investigation Ordinance that at all information, record(s), document(s) and thing(s) responsive to the Civil Investigation Demand have been produced or identified in a [Privilege] log required by and timely submitted in compliance with the requirements of Subsection (b) of Section 6 of the Civil Investigation Ordinance.

27. Pursuant to **Section 15** of the Civil Investigation Ordinance, the failure or refusal of The Continental Insurance Company timely and fully to respond to Civil Information Demand No. 2020-003-02 results in the following:

**Sec. 15 - Failure or Refusal to Comply with Civil Investigation Demand or Order:**

**(a)** **Equitable Relief to Compel Compliance Authorized:** In case of the failure or refusal of any Person timely and fully to comply with an Civil Investigation Demand or a Civil Investigation Order properly served on such Person pursuant to this Ordinance, the Fayette County Prosecuting Attorney may, *sua sponte*, and shall, when directed by the Fayette County Commission, promptly commence and diligently prosecute a civil action in the name of the Fayette County Commission to invoke the aid of the Fayette County Circuit Court in securing compliance with the requirements of this Ordinance, and requesting the issuance and enforcement of appropriate injunctive and declaratory relief. Upon proper showing, the Fayette County Circuit Court shall issue an order requiring the respondent/defendant forthwith to comply with the Civil Investigation Demand or the Civil Investigation Order.

**(b)** **Equitable criteria for injunctive relief authorized by this Section 15:** In any civil action brought pursuant to this Section 15 in which a temporary restraining order, preliminary injunction, or partial or complete permanent injunction is sought, it shall not be necessary for Fayette County to allege or prove at any stage of the proceeding that irreparable damage will occur should the requested relief not be issued; or that there exists any absence of an adequate remedy at law, and the equitable relief authorized by this Ordinance shall issue upon proper proof without such allegations and proof of any irreparable injury or the absence of an adequate remedy at law.

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page 15 of 20 pages

(c) **Recovery of Fayette County's Attorney Fees and Litigation Costs:** At every significant stage of a civil action brought pursuant to Sections 15 or 16 of this Ordinance in which the Fayette County Commission is a prevailing party or substantially prevailing party on any of its claims for interim or final relief, Fayette County shall be entitled to an award of its reasonable litigation costs, including its attorneys' fees and expenses, expert witness fees and expenses, and the fees and expenses of no more than (1) non-testifying technical or scientific expert to assist the Fayette County Prosecuting Attorney in the preparation and prosecution of the action.

## COUNT TWO

**VIOLATION OF SECTION 6(b) OF THE CIVIL INVESTIGATION ORDINANCE – FAILING OR REFUSING FULLY AND TIMELY TO PRODUCE DOCUMENTS AND INFORMATION DEMANDED BY A PROPERLY SERVED CIVIL INFORMATION DEMAND ON THE BASIS OF A CLAIM OF PRIVILEGE OR ENTITLEMENT TO WORK PRODUCT PROTECION WITHOUT TIMELY FILING THE REQUIRED PRIVILEGE LOG INFORMATION.**

**28.**  The Governmental Plaintiff incorporates and realleges in this Count all of the allegations asserted in the foregoing paragraphs as if fully set forth herein.

**29.**  Defendant The Continental Insurance Company is a **Person**[16] that is required by Section 6(b) of the Civil Investigation Ordinance to timely and fully provide the Privilege Log information required by Section 6 with respect to any document or information demanded by

---

[16] **Section III(m)** of the Civil Investigation Ordinance defines the term "Person" as follows:

> The term **"Person"** means an individual, a deceased individual (or the Estate of a decedent) to the extent of his available insurance assets and undistributed non-insurance assets, trust, firm, joint stock company, corporation, including a governmental corporation, a dissolved or bankrupt corporation to the extent of its available insurance assets and undistributed non~ insurance assets, bankruptcy trustee, debtor in possession under the federal bankruptcy laws, partnership, association, consortium, joint venture, limited liability company, limited liability partnership, or commercial entity.  The term also includes any municipality, county, commission, district, any state, any department, or agency thereof or any political subdivision thereof, any interstate body, or the United States, and any of its agencies or instrumentalities to the extent authorized by law, as well as the estate of a deceased individual to the extent of: **(1)** any undistributed assets; and **(2)** available insurance assets.

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **16** of **20** pages

Fayette Co. CID # 2020-003-02 that has been or is being withheld based upon any claim of legal privilege or upon any assertion of entitlement to Work Product Protection.

29. The Continental Insurance Company has failed and refused and is continuing to fail and refuse to fully produce documents and information demanded by Fayette Co. CID # 2020-003-02 on the basis of a claim of legal privilege or for Work Product Protection without timely filing the Privilege Log Information required by **Section 6(b)** of the Civil Investigation Ordinance.

30. Pursuant to **Section 15** of the Civil Investigation Ordinance, the failure or refusal of The Continental Insurance Company timely and fully to respond to Civil Information Demand No. 2020-003-02 results in the following:

> **Section 9 – Effect of Failure Timely to Provide Required Privilege Log information:**
>
> **(a)** <u>**Assertion of Privilege or Work Product Protection After Failure Timely to Provide Compliant Privilege Log Details Banned:**</u> Except as provided in Subsection © of this Section 9, any **Person** required by either Section 6(b) or Section 7(b) 4) of this Ordinance to provide the concise written statement described therein who failed or refused timely to file a complete and compliant, concise written statement that fully complies with the requirements of this Ordinance, thereafter shall be barred from asserting or relying upon any privilege or claim for work product protection with respect to any demanded information, document(s), record(s) or tangible thing(s) for which a compliant statement of supporting factual basis and legal authority was required by this Ordinance, but not timely filed, in any proceeding before the Fayette County Commission, or in any civil or criminal action in which Fayette County or the Fayette County Prosecuting Attorney acting on behalf of the County Commission, is seeking to enforce any provision of this Ordinance or any Civil Investigation Demand or Civil Investigation Order issued pursuant to it, to abate any Public Nuisance condition, or to recover any Abatement Action Costs, or other fees, costs or penalties pursuant to this or any other Ordinance of Fayette County now or hereafter enacted. Such **Person** shall further be barred from withholding, based upon any assertion of any such privilege or asserted work product protection, access to and production of any demanded information, document, record, or thing, or permission for entry and inspection demanded in any Demand or Order properly served on such Person pursuant to this Ordinance for which all of the details required by subsection © of this Section 6 were not timely provided.                     .

---

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **17** of **20** pages

**(b)** <u>Scope of Bar on Assertion of Privilege or Work Product Protection</u>: The bar established by this subsection (a) of this Section 9 shall apply only to the assertion by such **Person,** or any agent or representative of such Person, of any privilege or work product protection respecting any information, document(s), record(s), or tangible thing(s) sought by any provision of a Civil Information Demand or Civil Information Order properly served on such **Person** pursuant to this Ordinance, with respect to which assertion this Ordinance required the filing of a concise written statement pursuant to either Section 6(b) or 7(b)(4) of this Ordinance, but for which no such compliant statement was timely filed.

**(c)** <u>Bar Not Applicable to Privilege Against Self-Incrimination</u>: Notwithstanding any provision of this or any other Ordinance of Fayette County, the Bar imposed pursuant to Subsection (a) of this Section 9 shall not apply to any failure or refusal to produce such information, document, record, or thing, or to permit demanded entry and inspection based upon the claimed application of the privilege against self-incrimination.

## PRAYER FOR RELIEF:

Pursuant to the Civil Investigation Ordinance, Plaintiff County Commission of Fayette County, by and through Relator, Fayette County Prosecuting Attorney Anthony Ciliberti, seeks an order of this Court forthwith compelling the compliance of the Respondent/Defendant, The Continental Insurance Company, with the requirements of the Civil Investigation Ordinance as authorized by Section 15 of the Civil Investigation Ordinance by requesting the issuance and enforcement of appropriate injunctive and declaratory relief: **(1)** requiring the Respondent/Defendant The Continental Insurance Company forthwith fully to comply with Civil Investigation Demand within fourteen (14) days of the entry of this Court's Injunctive and Declaratory Order; and (2) imposing upon Respondent/Defendant The Continental Insurance company the bar against assertion of any legal privilege or other lawful basis for failing or refusing to produce the demanded documents or information required by Section 9 of the Civil Investigation Ordinance. Further, pursuant to the provisions of Section 15(c) of the Civil Investigation Ordinance, Plaintiff is entitled to an award of its reasonable litigation costs, including its

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **18** of **20** pages

attorney's' fees and expenses, expert witness fees and expenses, and the fees and expenses of no more than one (1) non-testifying technical or scientific expert to assist the Fayette County Prosecuting Attorney in the preparation and prosecution of this action.

## VERIFICATION:

**State of West Virginia,**
**Kanawha County,**

to-wit:   Michael O. Callaghan, Esq. (WV Bar No. 5509), Chief Assistant Fayette County Prosecuting Attorney, Environmental and Public Health Protection Unit, being duly sworn, says that he has read the foregoing Verified Complaint for Declaratory and Injunctive Relief to Secure Timely Enforcement of the Fayette County Public Nuisance Civil Investigation Ordinance, Fayette Co. Ordinance No. 2017-002, and that he knows the contents thereof; that the facts and allegations therein contained are true, except such as are therein stated upon information and belief, and that as to such allegations he believes them to be true.

Michael O. Callaghan, Esq.
Chief Assistant Fayette Co. Prosecuting Attorney

Taken, sworn to and subscribed before me this ...3......day of May 2021

Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
BRANDY HEFLIN
Great Expectations Realty
1837 Virginia St E
Charleston WV 25301
My Commission Expires February 4, 2026

Respectfully submitted,

**ANTHONY CILIBERTI, ESQ.**
**FAYETTE CO. PROSECUTING ATTORNEY**

By: _____
Michael O. Callaghan (WV Bar No. 5509)

---

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)*

**Verified Complaint for Enforcement of Civil Information Demand**

Chief Assistant Fayette County Prosecuting
  Attorney
OFFICE OF THE FAYETTE COUNTY
  PROSECUTING ATTORNEY
ENVIRONMENTAL & PUBLIC HEALTH
  PROTECTION UNIT
NEELY & CALLAGHAN
1337 Virginia Street East
Charleston, WV 25301
Telephone: (304) 343-6500
Facsimile: (304) 343-6528
mcallaghan@neelycallaghan.com

*COUNTY COMMISSION OF FAYETTE COUNTY, WV, EX REL. ANTHONY CILIBERTI, FAYETTE CO. PROSECUTING ATTORNEY* v. THE CONTINENTAL INSURANCE CO., Case No. _____, (Fayette Co. Circuit Court)

**Verified Complaint for Enforcement of Civil Information Demand**

Page **20** of **20** pages

# FAYETTE COUNTY, WV ORDINANCE NO. 2017- 022

AN ORDINANCE DECLARING THE PUBLIC NECESSITY FOR, AND AUTHORIZING, AND ESTABLISHING PROCEDURES TO GOVERN THE EXERCISE OF, FORMAL CIVIL INVESTIGATION PROCEEDINGS BY THE COUNTY COMMISSION, AND CIVIL INVESTIGATION DEMAND AUTHORITY FOR THE FAYETTE COUNTY PROSECUTING ATTORNEY TO: (1) INVESTIGATE ANY ACT OR CONDITION WHICH MAY PRESENT, OR IMMINENTLY THREATEN TO PRESENT, A PUBLIC NUISANCE WITHIN FAYETTE COUNTY, OR AN IMMINENT AND SUBSTANTIAL ENDANGERMENT TO THE PUBLIC HEALTH, SAFETY, WELFARE, OR THE ENVIRONMENT WITHIN FAYETTE COUNTY; (2) REQUIRING PERSONS PROPERLY SERVED WITH THE PROCESS REQUIRED BY THIS ORDINANCE TIMELY TO PRODUCE DOCUMENTS AND RECORDS, AND INFORMATION RELEVANT TO SUCH PUBLIC NUISANCE OR ENDANGERMENT; (3) AUTHORIZING COMMENCEMENT OF FORMAL INVESTIGATIVE PROCEEDINGS BEFORE THE COUNTY COMMISSION FOR TAKING OF LIVE TESTIMONY AND RELATED EVIDENCE RELEVANT TO ANY SUCH EXISTING OR THREATENED PUBLIC NUISANCE OR ENDANGERMENT TO THE PUBLIC HEALTH, SAFETY, WELFARE , OR THE ENVIRONMENT WITHIN OR ADVERSELY AFFECTING FAYETTE COUNTY, WEST VIRGINIA; (4) PROVIDING PROCEDURES FOR RECOVERY OF PUBLIC COSTS OF INVESTIGATION, ATTORNEYS' FEES AND LITIGATION COSTS, INCLUDING EXPERT WITNESS FEES AND COST INCURRED BY FAYETTE COUNTY TO COMPEL TIMELY COMPLIANCE WITH THE REQUIREMENTS OF THIS ORDINACE; (5) PROVIDING FOR INSUANCE OF APPROPRIATE INJUNCTIVE RELEIF TO COMPEL COMPLIANCE WITH THE REQUIREMENTF OF THE ORDIANANCE AND, WHEN APPROPRIATE, AUTHORITY TO IMPOSE CIVIL AND CRIMINAL PENALTIES; AND (6) PROVIDING AN EFFECTIVE DATE FOR THIS ORDINANCE.

WHEREAS, the Fayette County Commission is authorized and empowered by West Virginia Code Section 7-1-3kk to enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety, and to abate or cause to be abated anything which the County Commission determines to be a Public Nuisance; and

WHEREAS, the Fayette County Commission is also authorized and granted plenary power by West Virginia Code Section 7-1-3-ff to enact ordinances regulating the removal and clean-up of any accumulation of refuse or debris, or toxic spillage or toxic seepage located on private lands which is determined by the County Commission to be unsafe, unsanitary, dangerous, or detrimental to the public safety or welfare, whether the result of natural or manmade force or effect; and

WHEREAS, the Fayette County Commission has determined that the timely and proper protection of the Public Health, Safety, Welfare, and the Environment within Fayette County, and the timely, adequate, and effective identification, prevention and abatement of any existing or imminently threatened Public Nuisance or Imminent and Substantial Endangerment to the Public Health, Safety,


PLAINTIFF'S EXHIBIT

Welfare, or the Environment within or affecting the Fayette County public requires that Fayette County have in place adequate investigatory legal authority and procedures timely to acquire the relevant information necessary adequately to respond to any such Public Nuisance or Endangerment, and timely and competently to determine and implement or cause to be implement appropriate abatement of any such Public Nuisance or Endangerment within or adversely impacting Fayette County; and

WHEREAS, the provisions, requirements and prohibitions hereinafter contained and enacted in this Ordinance are declared, as a matter of legislative fact and public policy, to be necessary and appropriate to the provision of adequate protection of the Public Health, Safety, Welfare, and the Environment within Fayette County; and it is further declared that the provisions, requirements, and prohibitions hereinafter contained and enacted are in pursuance of, and for the purpose of securing for the benefit to present and future generations of the Public within Fayette County, of timely and appropriate abatement of Public Nuisances within Fayette County and adequate protection of the Public Health, Safety, Welfare, and of the Environment within Fayette County;

NOW, THEREFORE, BE IT ORDAINED BY THE COUNTY COMMISSION OF FAYETTE COUNTY, WEST VIRGINIA THAT THE FOLLOWING IS INTENDED TO BE, AND IS HEREBY, ORDAINED, ORDERED AND DECLARED TO BE, A LAWFUL ORDINANCE OF FAYETTE COUNTY, WEST VIRGINIA:

## Section 1 - Title:

This Ordinance shall be known, and may be cited, as the "Fayette County Public Nuisance Civil Investigation Ordinance."

## Section 2 - Applicability:

This Ordinance shall apply within and throughout Fayette County, West Virginia.

## Section 3 - Definitions:

The following definitions shall apply for purposes of, and shall govern, the interpretation and enforcement of this Ordinance, and shall be understood and construed, together with the context in which these defined terms are used in this Ordinance, to set forth the legislative intent of this Ordinance. When not inconsistent with the context, words used in the present tense include the future; words used in the singular include the plural, and the plural the singular. The word "shall" or "must" is always mandatory and not merely directory. The word "may" is permissible and not mandatory. The masculine gender shall include the feminine or neutral gender.

(a) The term "Abatement Action" means any activity(ies) that is or may be necessary to respond to an existing or imminently threatened Public Nuisance, specifically including, but not limited to, all the following activities:

(1) The investigation, study, analysis, or assessment of the nature and extent of any known or suspected nuisance condition, including, but not limited to, any known or potential endangerments to the public health, safety, welfare, or to the Environment resulting from, contributed to by, or that may be presented by such nuisance within or affecting Fayette County;

(2) The analysis, selection and implementation of suitable methodology and technology for the conduct of a comprehensive remedial investigation in compliance with the requirements of this Ordinance, the assessment of the qualifications of, and retention of, appropriate scientific, legal, and technical personnel determined by the Fayette County Commission, or any agent authorized by it, to be necessary or appropriate to the effective conduct of a remedial investigation by the County, or to the effective oversight and monitoring of a remedial investigation being performed by or on behalf of any Person(s) liable for the Public Nuisance, and the creation, finalization, and implementation of the comprehensive work plan for the appropriate remedial investigation approved by the Fayette County Commission, or any agent authorized by it;

(3) The analysis and selection of suitable methodology and technology for the conduct of a comprehensive feasibility study (including any appropriate endangerment analysis or treatability studies) in compliance with the requirements of this Ordinance; the assessment of the qualifications of, and retention of, the scientific, legal, and technical personnel necessary or appropriate to the conduct of a feasibility study (including any necessary or appropriate endangerment analysis or treatability studies) by the County, or to the effective oversight and monitoring of a feasibility study being performed by or on behalf of any Person(s) liable for the Public Nuisance, and the creation, development through the review and comment process determined appropriate by the County, finalization, and implementation of the comprehensive work plan for the appropriate feasibility study approved by the Fayette County Commission, or any agent authorized by it;

(4) The development and implementation of a Public Nuisance/Public Health Endangerment Abatement Action Plan that adequately protects, or restores to the maximum extent practicable, the public health, safety, welfare, and the Environment, natural resources, and current and potential beneficial uses of Environmental media owned or held in trust for the benefit of present and future generations of the public within the Fayette County Environment;

(5) Such actions as are necessary and proper for the Fayette County Commission, or any agent authorized by it, to implement, and to evaluate the effectiveness of, any of the activities listed in subparagraphs (1) through (4) of this Section 3(a), whether those activities were implemented in whole or in part by Fayette County, or by any other Person;

(6) Such actions as are necessary and proper for the Fayette County Commission, or any agent authorized by it, to provide comprehensive and effective oversight and monitoring of the performance of any Abatement Action(s) being undertaken by a liable Person that has been approved by the Fayette County Commission, a Hearing Officer appointed by the County Commission, or any agent authorized by the Fayette County Commission, as capable of implementing an approved Removal Action or Remedial Action, or that has been ordered by a court to perform an Abatement Action, or both such actions, with respect to any Public Nuisance within or affecting Fayette County;

(7) Such actions as are necessary and proper for Fayette County effectively to coordinate and cooperate with the lawful actions of appropriate agencies of federal, state or other county government in responding to any Public Nuisance;

(8) All enforcement activities determined the Fayette County Prosecuting Attorney to be necessary and proper to effectuate the public purposes of the Ordinance, or to secure the effective or enforceable performance of any Abatement Action ordered or sought by the Fayette County Commission.

(b) The term "Abatement Action Costs" means any fees and costs incurred and to be incurred by Fayette County that in the judgment of the Fayette County Commission or its authorized agent(s) are determined to be necessary or proper in performing or preparing to perform an Abatement Action, and shall include, but shall not be limited to, the following costs incurred or to be incurred by the County:

(1) for expert assistance in health, law, engineering and Environmental science, expert witness services and legal fees (including, but not limited to, costs of the County Prosecuting Attorney and the legal fees and cost of any retained legal counsel deemed necessary and proper at the sole discretion of the County Commission, any investigator or agent authorized by the Fayette County Commission, or the Fayette County Prosecuting Attorney) to study, investigate, abate, remove, remediate or respond to an actual or threatened Public Nuisance or any endangerment to the public health, welfare or the Environment that may be presented by an actual or threatened Public Nuisance;

(2) to investigate or respond to the existence, or threat of a Public Nuisance or Endangerment to the Public Health;

(3) to monitor, assess or evaluate a Public Nuisance or any endangerment to the public health, safety, welfare, or to the Environment that may be presented by an actual or threatened Public Nuisance;

(4) to prevent, minimize, or mitigate a Public Nuisance or any endangerment to the public health, safety, welfare or to the Environment that may be presented by an actual or threatened Public Nuisance; or

(5) to oversee and monitor the performance by any responsible party of any investigation or Abatement Action in response to a condition which is or may be a Public Nuisance;

(6) interest on such costs, which interest shall accrue from the later of: (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of such costs recoverable under this Ordinance shall be the same rate as is specified for prejudgment interest determined in accordance with the provisions of West Virginia Code § 56-6-31.

(c) The term "CERCLA" shall mean the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (also sometimes known as the "federal Superfund Act"), 42 U.S.C. §§ 9601-9675.

(d) The term "Disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any Waste into or on any land or water so that such Waste or any constituent thereof may enter the Environment or be emitted into the air or discharged into any waters, including ground waters.

(e) The term "Environment" means any surface water, groundwater, soil water, drinking water supply, soil, land surface, subsurface strata, or ambient air within Fayette County.

(f) The term "Facility" means:

(1) Any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock or aircraft; or

(2) Any site or area where Hazardous Waste or a Prohibited Hazardous Substance has been deposited, stored, disposed of, or placed, or otherwise has come to be located, but does not include any consumer product in consumer use.

(g) The term "Governmental entity" means any officer, agency, department, including the

executive, legislative and judicial departments, division, bureau, board, instrumentality, and commission of the United States or any State; and any other body, including any municipality, which is created by state or local governmental authority or which is primarily funded by or pursuant to state or local governmental authority.

(h) The term "Hazardous Substance" shall have the same meaning as is provided in CERCLA section 104(14), 42 U.S.C. § 9601(14), as that term has been construed and interpreted by the decisions of the Courts of the United States having jurisdiction to interpret and apply the provisions of CERCLA.

(i) The term "Hazardous Waste" shall mean a Waste or combination of Wastes, which because of its quantity, concentration or physical, chemical, or infectious characteristics: (1) may cause, or significantly contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (2) pose a substantial present or potential hazard to human health or the Environment when improperly treated, stored, transported, disposed of or otherwise managed; and (3)the term shall non-exclusively include any Waste or Wastes the lawful management or Disposal of which requires a federal hazardous waste treatment, storage or disposal permit issued pursuant to Subtitle C of RCRA, or a West Virginia hazardous waste treatment, storage or disposal permit duly issued pursuant to the West Virginia Hazardous Waste Management Act (hereinafter: "WV HWMA"), Article 22-18 of the West Virginia Code.

(j) The term "Indemnitor or Insurer" means any Person who provides by contract or otherwise any indemnification of any liable party or potentially liable party, specifically including any duty to defend or provide partial or full indemnification to a potentially liable party, that does or may provide coverage for any claims of Fayette County pursuant to any applicable law against any liable Person or potentially liable Person as a result of such Person's act, omission or occurrences that gives rise to the liability or potential liability of such Person under this Ordinance or under applicable law for any Abatement Action, Removal Action, Remedial Action, recovery of Abatement Action Costs, litigation costs, attorneys' fees and costs, or any Penalties or Damages of any kind recoverable by Fayette County with respect to any Public Nuisance or any Endangerment to the public health, safety, welfare or the Environment within Fayette County.

(k) The term "Knowingly" imports only a knowledge that the facts exist which brings the act or omission within the any applicable provision of this Ordinance. The term does not require any knowledge of the unlawfulness of such act or omission, nor does it require any knowledge of any requirement in law that a Person affirmatively conduct any inquiry or assessment; however, for purposes of this Ordinance, a Person acts knowingly if he proceeds without knowledge of any fact which the law, including this Ordinance, imposes an affirmative obligation to know or ascertain.

(l) The term "Land Disposal" means disposal in or on the land, including placement in a landfill, surface impoundment, waste pile, injection well, land treatment facility, salt dome formation, salt bed formation, or underground mine or cave, or placement in a concrete vault or bunker intended for disposal purposes.

(m)The term "Person" means an individual, a deceased individual (or the Estate of a decedent) to the extent of his available insurance assets and undistributed non-insurance assets, trust, firm, joint stock company, corporation, including a governmental corporation, a dissolved or bankrupt corporation to the extent of its available insurance assets and undistributed non-

insurance assets, bankruptcy trustee, debtor in possession under the federal bankruptcy laws, partnership, association, consortium, joint venture, limited liability company, limited liability partnership, or commercial entity. The term also includes any municipality, county, commission, district, any state, any department, or agency thereof or any political subdivision thereof, any interstate body, or the United States, and any of its agencies or instrumentalities to the extent authorized by law, as well as the estate of a deceased individual to the extent of: (1) any undistributed assets; and (2) available insurance assets.

(n) The term "Proceeding" means any action, hearing, investigation, inquest, or inquiry (whether conducted by a court of competent jurisdiction, the Fayette County Commission, a Hearing Officer appointed by the Fayette County Commission, or any other Person authorized by law) in which, pursuant to law, specifically including this Ordinance, testimony can be compelled to be given or documents or evidence of any kind can be compelled to be produced.

(o) The term "Public Nuisance" shall mean any of the following within Fayette County, or that does or may adversely affect the Public Health, Safety, Welfare, or the Environment within Fayette County:

   (1) any condition(s), act(s), event(s) or activity(ies) defined or held to be a "Public Nuisance" by state law, including the any Final Order, Judgment, or Final Decision of any circuit court of West Virginia, or of the West Virginia Supreme Court of Appeals;

   (2) any condition(s), act(s), event(s) or activity(ies) lawfully declared to be a Public Nuisance by any duly-enacted Resolution, Order or Ordinance enacted by the County Commission of Fayette County, West Virginia, or by the City Council (or a municipal agency lawfully authorized by the City Council) of any West Virginia Municipality properly acting pursuant to its authority under the West Virginia Code, as the same may be amended from time to time;

   (3) any condition(s), act(s), event(s) or activity(ies) that presents, may present, or imminently threatens to present an imminent and substantial endangerment to the Public Health, Safety, Welfare, or the Environment within Fayette County;

   (4) any condition(s), act(s), event(s) or activity(ies) that is, or imminently threatens to be, detrimental to any beneficial uses within Fayette County of any natural resource owned by the State or held in public or private trust for the benefit of present and future generations of the public;

   (5) the Release into the Environment of any Hazardous Substance, which presents, or which may present, an imminent and substantial endangerment to the public health, safety, welfare, or the Environment within Fayette County, or which is detrimental to any beneficial uses within Fayette County of any natural resource owned by the State or held in trust for the benefit of present and future generations of the public; or

   (6) the Disposal of any Waste or Hazardous Waste, which: (i) presents, or which may present, an imminent and substantial endangerment to the Public Health, Safety, Welfare, or the Environment within Fayette County, or (ii) is, or imminently threatens to be, detrimental to any beneficial uses within Fayette County of any natural resource owned by the State or held in trust for the benefit of present and future generations of the public.

(p) The term "RCRA" shall mean the federal Solid Waste Management Act, as amended by the Resource Conservation and Recovery Act of 1976, as further amended (also known as the

"federal Hazardous Waste Management Act"), 42 U.S.C. §§ 6901-6992k.

(q) The term "Release' shall mean means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the Environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any Hazardous Substance), but excludes (1) any release which results in exposure to Persons solely within a workplace, with respect to a claim which such Persons may assert against the employer of such Persons, (2) emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, or vessel, (3) release of source, byproduct, or special nuclear material from a nuclear incident, as these terms are defined in the Atomic Energy Act of 1954 [42 USCS §§ 2011 et seq.], if such release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under section 170 of such Act [42 USCS § 2210]; and (4) the normal application of fertilizer.

(r) The term "Remedial Action" shall have the same meaning set forth in CERCLA Section 104(24), 42 U.S.C. Section 9601(24), as that term has been construed and interpreted by the decisions of the Courts of the United States having jurisdiction to interpret the provisions of CERCLA.

(s) The term "Removal Action" shall have the same meaning as is provided in CERCLA section 104(23), 42 U.S.C. Section 9601(23), as that term has been interpreted and construed by the decisions of the courts of the United States having jurisdiction to interpret the provisions of CERCLA.

(t) The term "Storage," when used in connection with Waste, means the containment of Waste, either on a temporary basis or for a period of years, in such a manner as not to constitute Disposal of such Waste.

(u) The term "Waste" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant or air pollution control facility, and other discarded material including solid, liquid, semisolid or contained gaseous material resulting from industrial, commercial, mining and agricultural operations and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under Section 402 of the federal Water Pollution Control Act, as amended, or source, special nuclear or by-product material as defined by the federal Atomic Energy Act of 1954, as amended.

## Section 4 – Authority of Fayette County Prosecuting Attorney to Conduct Civil Investigations Into, and to Inspect Real Property and Premises Pertaining to, a Known or Reasonably Suspected Public Nuisance:

(a) **Public Nuisance Civil Investigation Authorized; Scope and Confidential Nature of On-going Investigation by Fayette County Prosecuting Attorney:** If the Fayette County Prosecuting Attorney has a reasonable basis to believe that **Public Nuisance** exists, or may exist within Fayette County, he may, and shall, upon request of the Fayette County Commission, make a timely and thorough investigation into any act or condition that may present a **Public Nuisance** in Fayette County, the scope and extent of which investigation may, as determined necessary and proper by the Fayette County Prosecuting Attorney, extend to all matters reasonably calculated to lead to the discovery of admissible evidence relevant to any of the following matters:

(1) whether a **Public Nuisance** exists within Fayette County;

(2) the origin, nature, extent, and options (including their related costs) for abatement of any endangerments to the Public Health, Safety, Welfare, or the Environment within Fayette County that are or may be presented by such existing or imminently threatened Public Nuisance;

(3) the identity and location of person(s) with potential legal liability to abate Public Nuisance, and their knowledge of, nexus to, and action(s) or failure(s) to act with respect to any known or suspected Public Nuisance within Fayette County;

(4) the source, identification, nature, concentrations, characteristics, or quantity of any Waste(s), Hazardous Waste(s), Hazardous Substance(s) or pollutant or contaminant which have been released, are being released, or imminently threaten to be released into the Environment at any place where they do or may cause, create or contribute to a Public Nuisance within Fayette County;

(5) Any information relating to the ability of any person who does or may have legal liability to abate a Public Nuisance to pay for or to perform a cleanup; non-exclusively including the complete contents of, and available limits of liability under, any insurance or indemnification policy or agreement (including any riders, endorsements, alterations, cancellations, or side agreements relating to such policy or agreement) pursuant to which an insurance business or other indemnitor may be liable to satisfy all or part of a possible judgment or other compulsory process of law against any person who does or may have legal liability to abate a Public Nuisance, or to indemnify or reimburse for payments made to satisfy any possible judgment against such person

(6) the identity and location of any person(s) who has or may have information relevant to any matter within the scope of investigation authorized by this Section 4;

(b)  The Fayette County Prosecuting Attorney shall not make public the name or identity of a person whose acts or conduct he investigates pursuant to this section or the facts disclosed in any on-going investigation, but this subsection does not apply to disclosures lawfully required in any civil or criminal actions before any court or enforcement proceedings pursuant to this chapter.

## Section 5 — Authority of Fayette County Prosecuting Attorney to Issue and Enforce Civil Investigation Demand:

(a)  **Access to and Production of Information, Document, Record, or Thing:**  By service of a Civil Information Demand in compliance with the requirements of this Ordinance, the Fayette County Prosecuting Attorney may require any person who has or may have any information relevant to any matter within the scope of investigation authorized by Section 4 of this Ordinance to furnish at the time and place specified in the Civil Information Demand, which time shall be at least twenty-one (21) days from the date of service of the Civil Information Demand, unless exigent circumstances require a shorter period of time, all such requested information, document(s), record(s), or thing(s) of any kind which is relevant to such investigation for inspection and copying by the Fayette County Prosecuting Attorney, or his designated Assistant or agent, non-exclusively including any matter relevant to the existence, description, nature, custody, condition and location of any book(s), record(s), document(s), substance(s), or other tangible thing(s) and the identity and location of persons having knowledge of relevant facts, or any other matter reasonably calculated to lead to the discovery of evidence relevant to any matter within the scope of investigation authorized by Section 4 of this Ordinance that is in the possession, care, custody, or control of the Person named in and served with the Civil Information Demand, its agents, representatives, employees,

directors, partners, consultants, parent corporations or other entities, subsidiaries, and all Persons acting on its behalf or in concert with it, and to the full extent they are or can be available to that Person, all such books, records, documents and things that are in the possession, care, custody, or control of that Person's predecessors and successors-in-interest.

    (1) If the information, document(s), record(s), or thing(s) specified in a Civil Information Demand are located outside this State, a person properly served with a Civil Information Demand pursuant to this Section 5 at his option shall either make them available to the Fayette County Prosecuting Attorney at the time and place within this County specified in the Civil Information Demand, or pay the reasonable and necessary expenses for the Fayette County Prosecuting Attorney or his representative to examine and copy them at the place where they are maintained. The Fayette County Prosecuting Attorney may designate a representative, non-exclusively including comparable officials of the state or unit of local government in which the records are located, to inspect and copy them on his behalf.

    (2) If any of the information, document(s), or record(s) specified in a Civil Information Demand authorized by this Section 5(a) are electronically stored, the following requirements apply to such electronically stored information:

        (i) A respondent must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

        (ii) If the Civil Information Demand does not specify a form for producing electronically stored information, the person named in and served with the Civil Information Demand must produce such electronically stored information in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

        (iii) he person named in and served with the Civil Information Demand need not produce the same electronically stored information in more than one form.

(b) **Demand for Inspection of Real Property and Premises**: The Fayette County Prosecuting Attorney, by service of a Civil Information Demand in compliance with the requirements of this Ordinance, may require any person to permit entry by the Fayette County Prosecuting Attorney or any agent authorized by him onto designated land or other property possessed or controlled by the responding party at which any evidence within the scope of investigation authorized by Section 4 of this Ordinance may be found, so that the Fayette County Prosecuting Attorney or his authorized agent may inspect, measure, survey, photograph, test, or sample the property or any designated object(s), structure(s), machine(s), apparatus, device(s), equipment, material(s), operation, or Environmental media on, in, above or under it, on the date and at the time specified in the Civil Information Demand, which time shall be at least seventy-two (72) hours from the date and time of service of the Civil Information Demand, unless exigent circumstances require a shorter time.

(c) **When Personal Appearance Required**: A Person commanded to furnish and permit inspection and copying of designated information, document(s), record(s) or tangible thing(s), or inspection of premises pursuant to this Section 5 need not appear in person at the place of production or inspection unless that Person had been properly served with a Civil Information Order pursuant to Section 7 of this Order commanding him to appear for hearing before the Fayette County Commission or its appointed Hearing Officer.

(d) **Confidential Nature of On-Going Public Nuisance Investigation**: The Fayette County Prosecuting Attorney, any Fayette County Assistant Prosecuting Attorney, any Fayette County

employee, officer, or agent, or any employee or agent of any federal, state, or local governmental office or agency working in concert or cooperation with the Fayette County Prosecuting Attorney, or any of his Assistants or agents shall not make public: (1) the name or identity of a Person whose knowledge, act(s) or conduct is being investigated by the Fayette County Prosecuting Attorney pursuant to this Section 5; (2) any fact(s) discovered in the course of such investigation; or (3) the name or identifying information about any confidential source of information to the Office of the Fayette County Prosecuting Attorney, but this Subsection (d) of this Section 5 does not apply to disclosures of any public information expressly authorized by applicable federal or state law, or to the disclosure of any information in any proceeding before the Fayette County Commission, or the disclosure of any information in compliance with applicable Rules and Orders of the Court and the West Virginia Rules of Professional Conduct during the course or in connection with a civil or criminal action(s) or enforcement proceeding(s) pursuant to this Ordinance.

## Section 6 – Required Response to Civil Investigation Demand:

(a) <u>Verified Response to Demand for Access to and Production of Information Required</u>: Any Person named in and required to respond by a Civil Information Demand authorized by Section 5(a) of this Ordinance and properly served pursuant to this Ordinance shall, on or before the date and time set forth in the Civil Information Demand for production, deliver to the Fayette County Prosecuting Attorney, or his designated Assistant or agent identified in the Civil Information Demand, if any, a written certification, signed under oath administered before a notary public or other official authorized by law to administer such an oath attesting to the following:

(1) that the information provided, if any, is truthful and complete;

(2) that the information, record(s), document(s), or thing(s) produced, if any, together with those withheld from production as privileged or for any other reason and for which the information required by Section 6(b) of this Ordinance has been timely produced, if any, constitutes the truthful and complete results of a diligent search, conducted in good faith, for the information, document(s), record(s) and thing(s) demanded; and

(3) that all information, record(s), document(s) and thing(s) responsive to the Civil Investigation Demand have been produced or identified in a log required by and timely submitted in compliance with the requirements of Subsection (b) of this Section 6.

(b) <u>Privilege Log Information Required</u>: Any Person named in a Civil Information Demand authorized by and properly served pursuant to this Ordinance who, based in whole or in part upon a claim of privilege or for work product protection: (1) fails or refuses to produce and allow inspection and copying of any information, document(s), record(s) or thing(s) demanded pursuant to Section 5(a) of this Ordinance; (2) fails or refuses to permit the entry and inspection demanded pursuant to Section 5(b) of this Ordinance, must file with the Office of the Fayette County Prosecuting Attorney and under seal with the Office of the Fayette County Clerk on or before the date on which a response to a Civil Information Demand is required pursuant to Subsection (a) of this Section 6 a concise written statement setting forth all facts supporting the claim of privilege or other asserted basis for withholding the demanded production or refusing the demanded access, and all of the asserted legal authority upon which the failure or refusal to produce is based. The concise written statement required by this Subsection 6(b) must, at a minimum, include the following as to each piece of information, document, record or tangible thing withheld:

(1) the identity of the author thereof, and of any other Person who participated or assisted in

its preparation, creation, and modification, if any;

(2) the name, title or other identifying data;

(3) the date of the creation of the information, document, record or thing, or, if no date appears thereon, the approximate date;

(4) a summary of the nature (*e.g*, letter, memo, invoice, *etc.*) and content of the information, document, record or thing sufficient to identify it;

(5) the name and location of each Person having or last having possession, care, custody or control of the original and of each copy thereof, and the names of all Persons to whom the information, document, record or thing has been disclosed, sent, or otherwise shared;

(6) if such information, document, record or thing was, but is no longer, in the possession or control of the Person from whom the information, document, record or thing is requested, the disposition that was made of it, including but not limited to the name and address of the Person to whom the information, document, record or thing was transferred, or who disposed of the information, document, record or thing, as well as the date, time, place and mode or method of transfer or disposal; and

(7) the precise, current location of the information, document, record or thing and the complete name and address of its current custodian.

## Section 7 – Fayette County Commission Formal Investigation Proceeding to Take Live Testimony and Receive Evidence Pertaining to a Known or Suspected Public Nuisance within or Adversely Affecting Fayette County:

(a) **Commencement and Scope of Fayette County Commission Formal Public Nuisance Investigation Proceeding:** Upon motion of any member of the Fayette County Commission, upon formal request of the Fayette County Board of Health, or upon filed petition of the Fayette County Prosecuting Attorney, the Fayette County Commission may by Formal Resolution commence before it, or before a joint formal proceeding with the Fayette County Board of Health, a Formal Public Nuisance Investigation Proceeding to take live testimony and obtain and receive evidence pertaining to a known or suspected Public Nuisance within or adversely affecting Fayette County. In the formal resolution commencing such Formal Investigation Proceeding, the Fayette County Commission may Order that all related hearings be held or conducted during the course of the Formal Public Nuisance Investigation Proceeding to take live testimony, receive evidence, and hear and determine in the first instance any motions or objections relating to such hearings, testimony or evidence be held and conducted directly before the County Commission or before a Fayette County Hearing Officer appointed by the Fayette County Commission. The Formal Resolution commencing such Formal Public Nuisance Investigation Proceeding shall describe in reasonable detail the known or suspected Public Nuisance(s) to be investigated. The scope of any Formal Public Nuisance Investigation Proceeding conducted pursuant to this Ordinance shall be limited to matters reasonably calculated to lead to the discovery of admissible evidence relevant to any of the issues or matters delineated in Section 4(a) through (f), inclusive, of this Ordinance as they relate to or pertain to the known or suspected Public Nuisance(s) described in the Formal Resolution commencing the Formal Public Nuisance Investigation Proceeding.

(b) **County Commission Civil Investigation Orders:**

(1) **Civil Investigation Orders Authorized in the Course of a Formal Public Nuisance Investigation Proceeding:** For the purpose of conducting any Formal Public Nuisance Investigation Proceeding commenced pursuant to this Ordinance, the Fayette County Commission, or any Hearing Officer appointed by it, may, *sua*

*sponte,* and, upon motion of the Fayette County Prosecuting Attorney, shall, issue any one or more of the following Investigative Orders to any Person who the County Commission, or its appointed Hearing Officer has reasonable grounds to believe does or may have knowledge of any fact, matter or issue relevant to and within the scope of the subject-matter of Formal Public Nuisance Investigation Proceeding as set forth in Section 4 of this Ordinance:

    (A)    a Civil Investigation Order requiring the production of information, document(s), record(s), or tangible thing(s) relevant to and within the scope of the subject-matter of Formal Public Nuisance Investigation Proceeding;

    (B)    a Civil Investigation Order requiring that access to property be granted to: **(i)** the Fayette County Commission, and any of its members, **(ii)** any Hearing Officer appointed by the Fayette County Commission, **(iii)** any authorized agent(s) or investigator(s) designated by the Fayette County Commission or by any Hearing Officer appointed by it, **(iv)** the Fayette County Prosecuting Attorney and any authorized agent(s) or investigator(s) designated by him for the purpose conducting inspections, making copies of relevant data, taking samples, or taking photographs relevant to and within the scope of the subject-matter of Formal Public Nuisance Investigation Proceeding;

    (C)    an Order directing that written answers be submitted under oath to written interrogatories, or that written responses be submitted under oath to written requests for admissions, set forth in the Order; or

    (D)    an Order directing the attendance and testimony of any Person who does or may have knowledge of any fact, matter or issue relevant and within the scope of the Formal Public Nuisance Investigation Proceeding at a hearing before the Fayette County Commission or a Hearing Officer appointed by it.

(2) **Service of a Civil Investigation Order:**  Service of Civil Investigation Order issued in connection with any Fayette County Commission Formal Public Nuisance Investigation Proceeding shall be accomplished in the manner provided in Rule 45(b)(1) and (2) of the West Virginia Rules of Civil Procedure.

(3) **Required Time Periods for Compliance with Civil Investigation Order:**  A Civil Investigation Order described in Subsections (b)(1)(A) through (C), inclusive, of this Section 7 shall provide a minimum of fourteen (14) days following receipt of service within which to comply with the requirements of the Order, unless exigent circumstances require a shorter time period. A Civil Investigation Order described in Subsection (b)(1)(D) of this Section 7 shall be served upon the Person(s) named in the Order at least ten (10) days prior to the commencement of the hearing at which the Respondent's attendance is required if such Civil Investigation Order does not also require that Person to produce specified information, document(s), record(s) and tangible thing(s), and at least fourteen (14) days prior to the commencement of the hearing at which the Respondent's attendance is required if such Order requires production of any specified information, document(s), record(s) and tangible thing(s).

(4) **Verified Response to Civil Investigation Order for Access to and Production of Information Required:** Any Person named in and required to respond by a Civil Information Order authorized by Subsections (b)(1)(A) through (C), inclusive, of this Section 7 and properly served pursuant to this Ordinance shall, on or before the date and time set forth in the Civil Information Demand for production,

file with the Fayette County Clerk and deliver or cause to be delivered a copy to the Fayette County Prosecuting Attorney, or his designated Assistant or agent identified in the Civil Information Demand, if any, a written certification, signed under oath administered before a notary public or other official authorized by law to administer such an oath attesting to the following:

(1) that the information provided, if any, is truthful and complete;

(2) that the information, record(s), document(s), or thing(s) produced, if any, together with those withheld from production as privileged or based any assertion of work product protection, and for which the information required by Subsection (c) of this Section 7 of this Ordinance has been timely produced, if any, constitutes the truthful and complete results of a diligent search, conducted in good faith, for the information, document(s), record(s) and thing(s) demanded; and

(3) that all information, record(s), document(s) and thing(s) responsive to the Civil Investigation Order have been produced or identified in a log required by and timely submitted in compliance with the requirements of Subsection (c) of this Section 7.

(c) <u>Assertion of Privilege in Response to Civil Investigation Order</u>:  Any  Person named in a Civil Investigation Order who, based in whole or in part upon a claim of privilege or for work product protection, fails or refuses timely to comply with any provision of such Civil Investigation Order authorized and described in Subsections (b)(1)(A) through (C) of this Section 7 must file with the Office of the Fayette County Clerk and with the Office of the Fayette County Prosecuting Attorney on or before the date on which a response to such Civil Information Order is required a concise, verified written statement setting forth privilege log details that fully complies with the requirements set forth in Section 6(b) of this Ordinance.

(d) <u>Presiding Officer of Formal Public Nuisance Investigation Proceeding</u>: With respect to any Formal Public Nuisance Investigation Proceeding to take live testimony directly before the Fayette County Commission, the Fayette County Commission shall designate a qualified court reporter and, from among its members, a Presiding Officer for the Formal Public Nuisance Investigation Proceeding, who shall be the President of the Fayette County Commission, unless the County Commission by unanimous vote appoints another person deemed qualified by the County Commission.  The Presiding Officer shall control the course of the Formal Public Nuisance Investigation Proceeding to take live testimony, and shall rule, in the first instance, on all evidentiary objections and assertions of privilege or work product protection presented during the course of the proceeding before him.

(e) <u>Interrogation of Respondents or Other Witnesses</u>: With respect to any Formal Public Nuisance Investigation Proceeding to take live testimony directly before the Fayette County Commission, the Fayette County Commission shall designate a Lead Interrogator authorized to question the witness on behalf of County Commission. Unless Council by unanimous vote appoints one of its own members as Lead Interrogator, the Lead Interrogator shall be the Fayette County Prosecuting Attorney, or any Assistant Fayette County Prosecuting Attorney appointed by either the Fayette County Prosecuting Attorney or the Fayette County Commission.

(f) <u>Interrogation by Members of the Fayette County Commission</u>: Notwithstanding appointment by the Fayette County Commission of a Lead Interrogator for any Formal Public Nuisance Investigation Proceeding to take live testimony directly before the Fayette County Commission, any member of Fayette County Commission present at the Formal Public Nuisance Investigation Proceeding shall be entitled to question any witness with respect to any matter(s)

within the scope of, and on matters or issues pertinent to, the Formal Public Nuisance Investigation Proceeding, subject only to the overall responsibility and authority of the Presiding Officer to control the order of the proceeding, including its scope, course and duration.

## Sec. 8 – Appeal of Ruling of Presiding Officer or Hearing Officer:

(a)     **Right to Appeal Ruling of Presiding Officer or Hearing Officer**:  The Fayette County Prosecuting Attorney, any respondent to a Civil Information Demand or Civil Information Order issued pursuant to this Ordinance, or any witness before any Fayette County Commission Formal Public Nuisance Investigation proceeding aggrieved by any Ruling or Order issued by a Hearing Officer appointed by the Fayette County Commission on or in connection with any motion made pursuant to the provisions of Section 10 of this Ordinance, or by any Ruling or Order issued by the Presiding Officer during the course of, or in connection with, any proceeding to take live testimony or receive evidence pursuant to a Civil Investigation Order issued pursuant to this Ordinance may appeal such Ruling or Order to the Fayette County Commission only by filing a written Notice of Appeal in strict compliance with the time-frames and terms and conditions set forth in this Section 8.

(b)     **Notice of Appeal; Deadline for Filing; Required Contents**:  Strict compliance with the requirements set forth in this Subsection (b) of this Section 8 regarding the time for filing and content of any Notice of Appeal any ruling authorized by Subsection (a) of this Section 8 is required, and is intended to be, and shall be interpreted and applied so as to be, jurisdictional to the authority of the Fayette County Commission to review any such ruling.

(1) *Timeframe for Filing Notice of Appeal*:     A written notice of appeal that fully complies with the requirements of Subparagraphs (2) and (3) of this Subsection 8(b) must be filed with the Office of the Fayette County Clerk on or before the following required filing dates and times:

(A) *Appeal of Ruling of the Presiding Officer*:  A notice of appeal of any Ruling or Order of the Presiding Officer in any Fayette County Commission Formal Public Nuisance Investigation proceeding authorized by Subsection (a) of this Section 8 must be filed on or before the end of the regular business hours of the Office of the Fayette County Clerk three (3) business days after the designated court reporter of the relevant Fayette County Commission Formal Public Nuisance Investigation proceeding to take live testimony or receive evidence pursuant to Section 7 of this Ordinance files with the County Clerk an initial, complete transcript of the proceedings, whether in electronic form or in hard copy, of the proceeding in which the challenged ruling was made;

(B) *Appeal of Ruling of the Hearing Officer*:  A notice of appeal of any Ruling or Order of the Hearing Officer authorized by Subsection (a) of this Section 8 must be filed on or before the end of the regular business hours of the Office of the Fayette County Clerk five (5) business days after: (i) the date of the hearing or proceeding in which the challenged Ruling or Order was made orally on the record of such hearing or proceeding, or (ii) the date the aggrieved person first receives service of Hearing Officer's written Ruling or Order, if such Ruling or Order was first made in such written Ruling or Order.

(2) *Required Content of Notice of Appeal*:     The Notice of Appeal required by this Section 8 shall specify with particularity the Ruling(s) and Order(s) to be challenged in the appeal, including specific references to the transcript of proceedings or record,

and providing a succinct summary of the legal and factual grounds that will be advanced in support of the appeal.

(3) *Service of Notice of Appeal:* The Notice of Appeal filed with the Office of the Fayette County Clerk required by this Section 8 must include a written certification that the Notice of Appeal has been served on all parties to the proceeding that gave rise to the challenged Ruling or Order, each Presiding Officer or Hearing Officer that made the challenged Ruling or Order, and the Office of the Fayette County Prosecuting Attorney, if Fayette County or the Fayette County Prosecuting Attorney is not the appellant. If the relevant Presiding Officer is or was a member of the Fayette County Commission at the time of such Ruling or Order, service on such Presiding Officer shall be accomplished by serving a separate copy of the Notice of Appeal on the Office of the Fayette County Clerk.

(b) __Procedures on Appeal__: Following filing of a compliant Notice of Appeal pursuant to subsections (a) and (b) of this Section 8, the Fayette County Commission will issue and the Fayette County Clerk will serve on each party to the appeal, a schedule applicable to the appellate proceeding, which schedule will include the required filing dates for the brief(s) of each party to the proceeding. In compliance with the timeframe established in such Schedule, each appellant shall file with the Office of the Fayette County Clerk and serve on all parties to the appeal a brief not to exceed fifteen (15) pages in a form that complies with the requirements of Rule 6 of the West Virginia Rules for Trial Courts promulgated by the West Virginia Supreme Court of Appeals. Each appellee in each appeal shall file with the Office of the Fayette County Clerk and serve on all parties its responsive brief not to exceed fifteen (15) pages in a form that complies with the requirements of Rule 6 of the West Virginia Rules for Trial Courts promulgated by the West Virginia Supreme Court of Appeals with the Office of the Fayette County Clerk on or before the end of the regular business hours of the Office of the Fayette County Clerk five (5) business days after the appellant files his opening brief.

(c) __Oral argument discretionary with County Commission__: On the cover page of its brief each Appellant and Appellee to an appeal pursuant to this Section 7 shall state whether that party is requesting an opportunity to present an oral argument before the Fayette County Commission. At the conclusion of the briefing on each appeal, the Fayette County Commission will determine whether in its judgment oral argument will aid the County Commission in a just and expeditious resolution of the appeal. If the request for oral argument is granted by the County Commission, the parties to the appeal will be notified by the Fayette County Clerk of the date and time scheduled for County Commission to hear oral arguments.

## Section 9 — Effect of Failure Timely to Provide Required Privilege Log information:

(a) __Assertion of Privilege or Work Product Protection After Failure Timely to Provide Compliant Privilege Log Details Barred__: Except as provided in Subsection (c) of this Section 8, any Person required by either Section 6(b) or Section 7(b)(4) of this Ordinance to provide the concise written statement described therein who failed or refused timely to file a complete and compliant, concise written statement that fully complies with the requirements of this Ordinance, thereafter shall be barred from asserting or relying upon any privilege or claim for work product protection with respect to any demanded information, document(s), record(s) or tangible thing(s) for which a compliant statement of supporting factual basis and legal authority was required by this Ordinance, but not timely filed, in any proceeding before the Fayette County Commission, or in any civil or criminal action in which Fayette County or the Fayette County Prosecuting Attorney acting on behalf

of the County Commission, is seeking to enforce any provision of this Ordinance or any Civil Investigation Demand or Civil Investigation Order issued pursuant to it, to abate any Public Nuisance condition, or to recover any Abatement Action Costs, or other fees, costs or penalties pursuant to this or any other Ordinance of Fayette County now or hereafter enacted. Such Person shall further be barred from withholding, based upon any assertion of any such privilege or asserted work product protection, access to and production of any demanded information, document, record, or thing, or permission for entry and inspection demanded in any Demand or Order properly served on such Person pursuant to this Ordinance for which all of the details required by subsection (c) of this Section 6 were not timely provided.

(b) **Scope of Bar on Assertion of Privilege or Work Product Protection:** The bar established by this subsection (a) of this Section 8 shall apply only to the assertion by such Person, or any agent or representative of such Person, of any privilege or work product protection respecting any information, document(s), record(s), or tangible thing(s) sought by any provision of a Civil Information Demand or Civil Information Order properly served on such Person pursuant to this Ordinance, with respect to which assertion this Ordinance required the filing of a concise written statement pursuant to either Section 6(b) or 7(b)(4) of this Ordinance, but for which no such compliant statement was timely filed.

(c) **Bar Not Applicable to Privilege Against Self-Incrimination:** Notwithstanding any provision of this or any other Ordinance of Fayette County, the Bar imposed pursuant to Subsection (a) of this Section 9 shall not apply to any failure or refusal to produce such information, document, record, or thing, or to permit demanded entry and inspection based upon the claimed application of the privilege against self-incrimination.

## Section 10 - Motion to Quash or Modify a Civil Information Demand or Civil Information Order Issued Pursuant to this Ordinance Authorized; Procedures before County Commission, or Its Appointed Hearing Officer, upon Filing of Such Motion; actions by County Commission upon Timely Request for Hearing:

(a) **Motion to Quash or to Modify Allowed; Time Period for Filing:** Any Person who has been named as a respondent in a Civil Information Demand or Civil Information Order served pursuant to this Ordinance may file a motion with the Fayette County Commission seeking an Order to quash or to modify all or any portion of any such Demand or Order by timely filing a written motion that fully complies with the requirements set forth in Rule 6.01 of the West Virginia Trial Court Rules not to exceed, without prior leave from the County Commission, twenty (20) pages setting forth concisely the relief requested and all of the law and facts which the respondent/movant contends entitles it/them to the relief requested. Notice of the Respondent's intent to file any such motion seeking relief with respect to any Civil Information Demand served pursuant to this Ordinance must be filed under seal with the Office of the Fayette County Clerk and served on the Fayette County Prosecuting Attorney on or before the tenth (10th) day following the Respondent's receipt of service of the Civil Information Demand. Respondent's motion seeking any relief authorized by this Section 10 with respect to such Demand must be filed under seal with the Office of the Fayette County Clerk and served on the Fayette County Prosecuting Attorney on or before the fourteenth (14th) day following the Respondent's receipt of service of the Civil Information Demand. The Fayette County Prosecuting Attorney may file a response or opposition to any such motion filed pursuant to this Subsection 10(a) on behalf of Fayette County within ten (10) days following the filing of Respondent's motion.

(b) <u>Time Requirement for Filing of Motion Deemed Jurisdictional</u>:  The time-period requirement within which a Respondent may file a motion authorized by this Section 10 shall be deemed jurisdictional, and may not be waived other than by express written Order of the Fayette County Commission upon showing of manifest and compelling good cause for delayed filing.  Upon timely receipt of a motion which complies with the requirements of this Section 10, the Fayette County Clerk shall refer the matter to the Fayette County Commission for further proceedings as set forth in this Ordinance.

(c) <u>Hearing before County Commission upon timely request</u>:  Any respondent named in an a Civil Information Demand or Civil Information Order served pursuant to this Ordinance that has timely filed a motion authorized by this Section 10 that complies with the requirements of this Section 10 may on or before the required filing date for it motion request a hearing before the County Commission by filing a written request for hearing, which request shall state whether the requested hearing is for purposes of advancing oral argument, introduction of testimony and live evidence, or both, and, if an evidentiary hearing is requested, shall set forth in summary fashion the name of persons who may give evidence during such hearing and a brief summary of the evidence to be offered by each witness.  Upon timely receipt of a request for hearing filed in compliance with the requirement of this Section 10, the County Commission shall issue an order either setting the matter down for hearing within thirty (30) days before the Fayette County Commission, or referring the matter for hearing before a Hearing Officer appointed by the Fayette County Commission.  Hearings shall be recorded by electronic device or by court reporter.  The West Virginia Rules of Evidence do not apply to the proceedings, but each party has the right to present evidence and examine and cross-examine all witnesses.

(d) <u>Signing of Motions and Other Papers; Representations to County Commission or Its Appointed Hearing Officer; Sanctions</u>:

(1) *Signing of pleadings and other papers*.  Every pleading, motion and other paper submitted to the County Commission or to its appointed Hearing Officer in the course of a proceeding conducted pursuant to this Ordinance shall be signed by at least one attorney of record for each party in the attorney's individual name, or if the respondent or other party is not represented by an attorney shall be signed by that respondent or other party.  Each paper shall state the signer's address and phone number, and the West Virginia State Bar identification number, if any.  An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(2) *Representations to or before the County Commission or its appointed Hearing Officer*.  By presenting to the County Commission or its appointed Hearing Officer (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:

(A) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(B) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(C) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(D) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(3) *Sanctions:*  If, after notice and a reasonable opportunity to respond, the Fayette County Commission or it appointed Hearing Officer, determines that subparagraph (2) of this Section 10(d) has been violated, the County Commission or its Hearing Officer, subject to the conditions stated below, may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subparagraph (2) of this Section 10(d) or are responsible for the violation.

(A) *Initiated by motion:*  A motion by any party to any proceeding under this Ordinance before the County Commission or it appointed Hearing Officer for imposition of sanctions pursuant to this Section 10(d) shall be made separately from other motions or requests and shall describe with particularity the specific conduct alleged to violate subparagraph (2) of this Section 10(d). Such motion shall be filed with the County Clerk and shall be served on the Fayette County Prosecuting Attorney and all parties to the proceeding or their Attorney, but shall not be presented to the County Commission or its appointed Hearing Officer unless, within ten (10) days after service of the motion (or such other period as the County Commission or its appointed Hearing Officer may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the County Commission or its appointed Hearing Officer may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) *Initiated on instance of the County Commission or its appointed Hearing Officer:* On its own initiative, the County Commission or its appointed Hearing Officer may enter an order describing the specific conduct that appears to violate subparagraph (2) of this Section 10(d) and directing an attorney, law firm, or party to show cause why it has not violated Subparagraph (2) of this Section 10(d) with respect thereto.

(4) *Nature of sanction; limitations:*  A sanction imposed for violation of subparagraph (2) of this Section 14(f) shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, and an order to pay a penalty into the appropriate County Fund as directed by the County Commission or its appointed Hearing Officer, or, if imposed on motion of a party and warranted for effective deterrence, and order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(5) *No Sanction against represented party.*  Monetary sanctions may not be awarded against a represented party for a violation of subparagraph (2) of this Section 10(d).

(6) *Order to Show Cause to precede dismissal or settlement.*  Monetary sanction may not be awarded on the initiative of the County Commission or its appointed Hearing Officer unless the County Commission or its appointed Hearing Officer issues an order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(7) *Required content of Order imposing sanction:*  When imposing sanction pursuant to this subparagraph (2) of this Section 10(d), the County Commission or its appointed

Hearing Officer shall describe the conduct determined to constitute a violation of this subparagraph (2) of this Section 10(d) and explain the basis for the sanction imposed.

(e) **Evidentiary Burdens**: At any hearing held before the County Commission or its appointed Hearing Officer upon a motion authorized by this Section 10, Fayette County shall have the *prima facie* burden of proving that its Demand or Order is authorized by the terms of this Ordinance, thereafter, the respondent shall have the burdens of proof and persuasion as to its entitlement to the relief requested in its motion and as to any allegation set forth in its motion in support of the requested relief by a preponderance of the evidence and has the duty to go forward with the evidence.

(f) **Findings of facts, determinations, and conclusions of law**: At the conclusion of the hearing, or as soon thereafter as proper deliberation allows, the County Commission or its appointed Hearing Officer shall make findings of fact, determinations and conclusions of law with respect to all matters properly raised in Respondent's motion. The County Commission or its Appointed Hearing may require parties to Respondent's motion to submit proposed Findings of Fact and Conclusions of Law.

## Section 11 – Representation of Respondent or Other Witness at Public Hearing:

At any proceeding held in the course of a Public Nuisance Formal Investigation Proceeding before the Fayette County Commission, or before its appointed Hearing Officer, the respondent(s) or any other witness who may give testimony or offer evidence in any such proceeding may appear in person or by attorney, either or both, and, after demonstrating to the satisfaction of the Commission or its Hearing Officer an appropriate, relevant and material need, may have compulsory process for the attendance of witnesses and the production of pertinent books and papers, if there are any. With leave from the Presiding Officer or Hearing Offer, which may be granted for good cause shown, other parties in interest may also appear and be heard under oath.

## Section 12 – Final Action by County Commission:

An action by the Fayette County Commission: (a) issuing, declining to issue, or modifying in any was any requirement of a Public Nuisance Civil Investigation Order; or (b) issuing a Final Order on a motion filed pursuant to Section 10 of this Ordinance, is a Final Order of the County Commission.

## Section 13 – Exhaustion of County and State Law Remedies Required:

Any Person who has been named as respondent in a Civil Information Demand or Civil Information Order served pursuant to this Ordinance that seeks from any court, governmental agency, or tribunal any relief that would as a practical matter have the effect of quashing, in whole or in part, or modifying all or any part of a Civil Information Demand or Civil Information Order properly served pursuant to this Ordinance must first timely raise such request before the Fayette County Commission by filing with the Fayette County Clerk a compliant motion pursuant to Section____ of this Ordinance, and thereafter exhaust all of the remedies provided by law with respect to any ruling on such motion. Failure of any such Person under this Ordinance to exhaust the remedies available pursuant to this Ordinance and, thereafter, and thereafter, the remedies available pursuant to West Virginia law shall bar any request to any court, governmental agency, or tribunal for any relief that

would as a practical matter have the effect of quashing, in whole or in part, or modifying all or any part of a Civil Information Demand or Civil Information Order properly served pursuant to this Ordinance.

## Section 14 — Judicial Review of Final Orders from Fayette County Commission:

Any application for judicial review of, and any appeal of, any final and binding decision of the Fayette County Commission on matters arising pursuant to this Ordinance, specifically including, but not limited to, any ruling imposing liability for civil penalties pursuant to Section 16 of this Ordinance, shall be to the Fayette County Circuit Court in accordance with the provisions of Article three, Chapter fifty-eight of the West Virginia Code.

## Sec. 15 — Failure or Refusal to Comply with Civil Investigation Demand or Order:

(a) **Equitable Relief to Compel Compliance Authorized**: In case of the failure or refusal of any Person timely and fully to comply with an Civil Investigation Demand or a Civil Investigation Order properly served on such Person pursuant to this Ordinance, the Fayette County Prosecuting Attorney may, *sua sponte*, and shall, when directed by the Fayette County Commission, promptly commence and diligently prosecute a civil action in the name of the Fayette County Commission to invoke the aid of the Fayette County Circuit Court in securing compliance with the requirements of this Ordinance, and requesting the issuance and enforcement of appropriate injunctive and declaratory relief. Upon proper showing, the Fayette County Circuit Court shall issue an order requiring the respondent/defendant forthwith to comply with the Civil Investigation Demand or the Civil Investigation Order.

(b) **Equitable criteria for injunctive relief authorized by this Section 15**: In any civil action brought pursuant to this Section 15 in which a temporary restraining order, preliminary injunction, or partial or complete permanent injunction is sought, it shall not be necessary for Fayette County to allege or prove at any stage of the proceeding that irreparable damage will occur should the requested relief not be issued; or that there exists any absence of an adequate remedy at law, and the equitable relief authorized by this Ordinance shall issue upon proper proof without such allegations and proof of any irreparable injury or the absence of an adequate remedy at law.

(c) **Recovery of Fayette County's Attorney Fees and Litigation Costs:** At every significant stage of any civil action brought pursuant to Sections 15 or 16 of this Ordinance in which the Fayette County Commission is a prevailing party or substantially prevailing party on any of its claims for interim or final relief, Fayette County shall be entitled to an award of its reasonable litigation costs, including its attorneys' fees and expenses, expert witness fees and expenses, and the fees and expenses of no more than one (1) non-testifying technical or scientific expert to assist the Fayette County Prosecuting Attorney in the preparation and prosecution of the action.

## Section 16 — Civil penalties:

(a) **Imposition of Civil Penalties:** Any Person who, after being properly served with a Civil Investigation Order pursuant to this Ordinance, fails or refuses timely and fully to comply with any requirement of this Ordinance or of any Civil Information Order issued pursuant to this Ordinance shall be liable to Fayette County for the civil penalty determined in accord with the provisions of this Section 16 to be credited to and deposited in the proper County Fund as directed by the Fayette County Commission.

(b) **Minimum and Maximum Amount of Civil Penalty:** The amount of the civil penalty

that may be imposed pursuant to this Section 16 is:

    (1) For any matters not governed by the provisions of Subparagraph (2) of this Subsection 16(b), not more than Twenty-five hundred dollars ($2,500), but not less than five hundred dollars ($500) per violation per each calendar day of violation;

    (2) for any violation of any provision of a Civil Investigation Order following resolution by the Fayette County Commission of any motion brought pursuant to Section 10 of this Ordinance by the respondent regarding such Order, not more than ten thousand dollars ($10,000), but not less than one thousand dollars ($1,000) per each calendar day of each such violation.

(c) **Commencement of civil action or County Commission proceeding authorized with respect to Civil Penalties:** Liability for civil penalties may be imposed in a civil action brought by the Fayette County Prosecuting Attorney in the name of the Fayette County Commission before any court of competent jurisdiction, or liability for civil penalties pursuant to this Section 16 may be imposed by the County Commission in a public proceeding before the County Commission commenced by the Fayette County Prosecuting Attorney filing a written complaint seeking imposition of civil penalties, and properly served in compliance with the provisions of Rule 4 of the West Virginia Rules of Civil Procedure on the respondent to the Civil Investigation Order alleged to be liable for civil penalties pursuant to this Section 16 of this Ordinance. Any civil action seeking imposition of civil penalties pursuant to this Section 16 may be brought by the Fayette County Prosecuting Attorney, *sua sponte*, and shall be brought by the Fayette County Prosecuting Attorney when so directed by the Fayette County Commission. A claim for imposition of a civil penalty pursuant to this Section 16 may be joined with an action for any other remedy available to the Fayette County Commission pursuant to federal or state law, or pursuant to this or any other Fayette County Ordinance.

(d) **Determination of Amount of Civil Penalty:** In determining the amount of any civil penalty to be imposed under this Section 16, the court or County Commission shall, at a minimum, impose a penalty amount not to exceed the maximum penalty and not to be less than the minimum penalty set forth in Section 16(b), and that:

    (1) will eliminate all economic benefit which has accrued to, and which is accruing, or will accrue to the liable party by reason of the failure or refusal to comply with the Civil Investigation Order giving rise to his liability and which fully reimburses the public for the harm and damage done to the public health, safety, welfare, or the Environment, if any, as a result of the liable party's past or present maintenance of the Public Nuisance or other noncompliance during the period of any delay in the ability of Fayette County properly to respond to such Public Nuisance in whole or in part caused by the respondent's failure or refusal to comply with the Civil Investigation Order. Impossibility of substantial compliance, or the impossibility of quantifying the harm to the public health, safety or the Environment, does not bar the assessment of a civil penalty under this Section 16;

    (2) will appropriately reflect consideration of the liable party's degree of recalcitrance, the absence of good faith cooperation with the County, or any other governmental entities responding to the Public Nuisance, the liable party's defiance of, or indifference to, the requirements of the law, and any unusual or extraordinary burdens imposed on the public health, safety, welfare or the Environment, or upon the public fiscal resources of Fayette County as a result of the need to undertake any enforcement action to achieve compliance with this Ordinance, or other costs, delays or expenses

occasioned by the noncompliance as factors requiring enhancement of the minimum penalty amount; and .

(3) may mitigate the total amount of civil penalty calculated under subparagraphs (1) and (2) of this subsection (d) to reflect any part of the liable party's maintenance of the Public Nuisance or other noncompliance caused by the existence of extenuating circumstances that were wholly beyond the liable party's control, or to recognize bona fide efforts by the liable party timely to comply with the requirements of the law and to extend significant and meaningful cooperation with respect to the investigation and abatement of the known or suspected Public Nuisance to Fayette County and to other governmental enforcing agencies acting with their jurisdiction.

## Section 17 — Criminal Penalties:

(a) <u>Imposition of Criminal Penalties</u>: Any Person committing any of the following specified offenses is guilty of a misdemeanor and, upon conviction thereof, shall be subject to the following criminal sanctions:

(1) any Person who intentionally or with reckless disregard to the truthfulness of any matter asserted misrepresents any material fact in a response to a Civil Information Demand or Civil Information Order properly served pursuant to this Ordinance, or in any record, report, or other document filed or required to be maintained, produced or submitted under the provisions of this Ordinance or of any Demand or Order issued pursuant to it shall be fined not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or imprisoned in a county or regional jail not more than six (6) months, or both fined and imprisoned.

(2) Any Person who, without good and proper cause, fails or refuses timely and completely to comply with any requirement of a Civil Investigation Order properly served pursuant to this Ordinance shall be fined not less than five hundred dollars ($500) nor more than two thousand five hundred dollars ($2,500), or imprisoned in a county or regional jail not more than sixty (60) days, or both fined and imprisoned.

(3) Any Person who, without good and proper cause, fails or refuses timely and completely to comply with any requirement of a Civil Investigation Order properly served pursuant to this Ordinance after the Fayette County Commission has entered its Final Order on a motion brought by such Person pursuant to Section 10 of this Ordinance with respect to such Civil Information Order, which Final Order was not Stay issued by a court of competent jurisdiction, shall be fined not less than Five thousand dollars ($5,000) nor more than seventy-five hundred dollars ($7,500), or imprisoned in a county or regional jail not more than six (6) months, or both fined and imprisoned.

(4) Any Person described in Section 5(d) of this Ordinance who discloses any information in violation of the prohibitions set forth in that section shall be fined not less than Five thousand dollars ($5,000) nor more than ten thousand five hundred dollars ($10,000), or imprisoned in a county or regional jail not more than nine (9) months, or both fined and imprisoned.

(b) <u>Courts of competent criminal jurisdiction</u>: Magistrate courts shall have concurrent jurisdiction with circuit courts to adjudicate matters pursuant to the provisions of this Section 17.

## Section 18 - Provisions severable:

The several sections and subsections of this Ordinance are severable, and if any section or subsection hereof shall be held unconstitutional or otherwise invalid, all the remaining sections and subsections of the Ordinance shall nevertheless remain valid.

## Section 19 - Effective Date:

This Ordinance of Fayette County, West Virginia shall become effective on the 15th day of December, 2017

IT IS SO ORDAINED, RESOLVED AND ENACTED by majority vote of the County Commission of Fayette County, West Virginia this 15th day of December, 2017.

COUNTY COMMISSION
FAYETTE COUNTY, WEST VIRGINIA

By: _____
Hon. Matthew D. Wender, M.B.A.
Its President

ATTEST:

Kelvin E. Holliday
County Clerk, Fayette County, West Virginia

# IN THE CIRCUIT COURT OF FAYETTE COUNTY, WEST VIRGINIA

County Commission of
Fayette County, West Virginia,

- Plaintiff,

CIVIL ACTION NO:

Ex Rel.: Anthony Ciliberti Esq.,
Fayette Co. Prosecuting Attorney

- Real Party in Interest

v.

The Continental Insurance Company,
a Pennsylvania corporation
authorized to do business in WV,

- Defendant.

FAYETTE COUNTY
CIRCUIT CLERK
2021 MAY -4  A 11: 48

## DECLARATION OF DAVID SCOTT SIMONTON, Ph.D., P.E. IN SUPPORT OF VERIFIED COMPLAINT FOR ENFORCEMENT OF A CIVIL INFORMATION DEMAND PROPERLY ISSUED AND SERVED PURSUANT TO THE DULY PROMULGATED FAYETTE CO. PUBLIC NUISANCE CIVIL INVESTIGATION ORDINANCE, FAYETTE CO. ORDINACE No. 2017-002

1.      My name is D. Scott Simonton, Ph.D., P.E.  I am an adult and a resident citizen of

the State of West Virginia.  I am also a Registered Professional Engineer (WV 013637, MS 29794,

KY 35795, VA 63019) with over 29 years of professional experience in State environmental and

public health protection regulatory agencies, private consulting and academia.

2.      I have been appointed by the Fayette County, WV Code Enforcement Agency as

a Special Investigator.

3.      By appointment of successive Governors of the State of West Virginia, I served

from 2002 to 2017 as Member, and for a number of those years as Vice Chairman, of the West



PLAINTIFF'S EXHIBIT 3

Virginia Environmental Quality Board, an administrative, adjudicatory agency of the State of West Virginia that functions as quasi-judicial State Board of Review responsible for hearing and resolving appeals regarding the issuance or denial of permits, permit conditions, or enforcement decisions rendered by the West Virginia Department of Environmental Protection, Division of Water and Waste Management. Until July 2005, the Board had rule-making authority and reviewed/revised the Requirements Governing Water Quality Standards Rule - Title 47CRS2, typically during a triennial review cycle. Rule revisions would then go through the legislative review and adoption process. Final approval was then obtained from the U.S. Environmental Protection Agency before being finalized as "Effective" and implemented by WV Regulators.

4.     I am a Professor and Program Coordinator of the Master of Science Degree Environmental Science Program at Marshall University. I provide consulting services and litigation support through my own company. I have personal knowledge of the matters set forth herein and could truthfully and competently testify as to all such matters. I hold all of the opinions expressed herein to a reasonable degree of scientific and engineering certainty.

5.     I have a Bachelor's Degree in Civil Engineering from West Virginia Institute of Technology, a Master's Degree in Environmental Engineering from Marshall University, and a Ph.D. in Engineering from the University of New Mexico ("UNM"). My coursework included many graduate courses that either focused specifically on or included contaminant fate and transport. My Doctoral research dissertation was titled "Stability of Arsenic and Selenium Immobilized by In-Situ Microbial Reduction". My work was funded by the U.S. Department of Energy and focused on the fate and transport of metals and metalloids in the subsurface environment. While at UNM, I also conducted research on the fate and transport of metals in copper mining wastes. As a practicing engineer in private consulting and in working with State

regulatory agencies, my work has always included a significant amount of work in the area of contaminant fate and transport, and I have worked on hundreds of projects involving fate and transport of contaminants. That work has included fate and transport of organic and inorganic contaminants in all environmental media, including air, soil, surface water and groundwater. I teach graduate-level courses that include elements of fate and transport and site investigations, as it is a major aspect of environmental science and engineering, and I have published peer-reviewed articles and presented at national and international conferences on subjects that include fate and transport. I have testified in numerous depositions and trials regarding fate and transport issues.

6. In the course of my education described above, I also took many courses that included elements of site investigation, site characterization, and risk assessment, or courses specific to that subject matter. My 29+ years of experience has included hundreds of projects in which I conducted site investigations, site characterization and risk assessments as a project manager or project engineer for these types of projects, or was a reviewer of work products resulting from these types of projects. This work includes experience with all classes of contaminants, including organics, inorganics and radionuclides, in soil, air, surface water and groundwater. I was a member of the team that developed the Risk-Based Corrective Action Program for the State of Idaho, was one of the first Licensed Remediation Specialists in the State of West Virginia, and in the past had a contract with the WVDEP to review site assessments and risk assessments submitted under the State of West Virginia's Voluntary Remediation Program. I have been hired by consulting firms to review environmental site assessments and conduct environmental and public health protection risk assessments when they did not have the internal expertise. I teach graduate courses specific to the areas of environmental and public health protection site investigation, site characterization and risk assessment, and many that include

elements of these subjects, as these are subjects that are central to what environmental scientists and engineers do. I have testified in numerous depositions and trials regarding site investigation, site characterization and risk assessment.

7.        In the education described above, I also had coursework that included elements of the toxicological effects/toxicity of environmental contaminants to humans and ecological receptors. I have also received training on this subject through short courses specific to the development of the Idaho Risk-Based Corrective Action Program and through numerous conferences. My risk assessment experience and training are described above. Environmental Risk assessment includes a necessary knowledge and evaluation of toxicity and toxicological effects. In this regard, the environmental engineering profession overlaps with the toxicology profession. The toxicity of contaminants to humans and ecological receptors were central components in many of the risk assessments I have conducted. I have presented at national and international conferences on the toxicity of contaminants, and published peer-reviewed journal articles specific to toxicity of contaminants. I teach graduate courses that include elements of toxicity and toxicological effects, as this is a central subject to what environmental scientists and engineers do. I have testified in numerous depositions and trials regarding toxicity and toxicological effects of pollutants and contaminants.

8.        My professional experience includes considerable environmental engineering, regulatory compliance, and project management experience. I have significant experience in the areas of environmental and public health protection site investigations, fate and transport, process engineering and wastewater treatment system operation and design, especially for industrial facilities. I have dealt with many different groundwater, soil, process and wastewater issues, including those for metal fabricators, natural gas compressor stations, chemical facilities, poultry

processors, quarry operations, coal mines and preparation plants, remediation systems, and glass manufacturers. I also have considerable experience in risk assessment, Voluntary Remediation and Brownfield's programs, and in environmental and public health protection regulatory issues, especially in the areas of water, waste and air quality permitting and compliance, and have an excellent understanding of industrial processes. I have experience in the areas of risk based corrective action, soil and groundwater remediation, surface water quality, and facility audits. My professional employment experience includes positions with the West Virginia Division of Environmental Protection and the Idaho Division of Environmental Quality, where I helped develop the Idaho Risk Based Corrective Action Program.

9.      In addition to my service on the West Virginia Environmental Quality Board, I also have considerable experience with regulations and permitting under the Clean Water Act, having professional experience with the West Virginia Division of Environmental Protection as a Clean Water Act National Pollutant Discharge Elimination System (NPDES) industrial discharge permit writer. Additionally, I have considerable experience in preparing NPDES permit applications and managing NPDES compliance programs for industrial clients as a consulting engineer.

10.     I have experience in environmental engineering, risk assessment, safety and compliance as it pertains to complex litigation. I have filed testimony in state and federal courts. In addition to consulting work, I teach and/or have taught environmental engineering and environmental science as a full professor. My curriculum vitae containing a description of my education, professional experience as an environmental engineer, including prior testimony for the past 12 years, publications and affiliations for the past 10 years is attached as Appendix A.

11.     In relation to this matter, I have authored a report resulting from my assignment by the Fayette County Code Enforcement Agency to investigate potential sources and causes of contamination in the Page-Kincade PSD Public Water Supply.

12.     In relation to this matter, I made field observations and took environmental samples. I have investigated the potential for mine-waste dumps (gob piles) and other mining activities in the Johnson Fork Watershed to be a source of contamination, as the PSD well is located in the Johnson Fork Watershed.

13.     A review of WVDEP records for these two areas obtained through a Freedom of Information Act request was conducted. WVDEP Records indicate 2 areas of mine-waste dumping within the watershed, containing 5 gob piles. Records indicate that WVDEP has assigned Problem Area Description (PAD) numbers to the 2 areas: PAD WV004926 Spruce Hollow (Fox) Refuse Pile (1 gob pile) and WV002374 Johnson Fork Refuse Pile (4 gob piles). See attached map, Figure 1. A purpose of the PAD is to score the sites for potential reclamation under the AML program.

14.     The Spruce Hollow gob pile was evaluated in 1995. The site is described as a 5 acre gob pile with an average thickness of 8 feet. No mention is made regarding who put the waste there, only that it was from mining in the 40's and 50's. I believe Eastern Gas and Fuel Powellton #6 mine was the only operation at that location at that time. A concern was raised regarding slippage of the pile into the adjoining stream, creating a dam in the stream that could eventually fail, creating a hazard for those downstream. The scoring matrix indicates a potential (a score of 5 out of 10) for water quality impacts.

15.     The Johnson Hollow Refuse Piles were evaluated in 1987. While WVDEP indicates 4 piles for PAD WV002374 in current on-line mapping, this document appears to only

evaluate one of the piles on the western side of Johnson Fork. The pile is described as 1.4 acres approximately 10 feet thick. WVDEP indicates that the biggest threat from this pile is a slope stability issue.

16.  Other than these two reports, it seems that WVDEP has had no other activity at these waste disposal areas.

17.  Eastern Gas and Fuel had a significant operation in the Powellton No. 6 mine in Johnson Hollow. This operation included mining, material handling and a loadout. This operation lasted into the 1950's, and at least some of the coal waste now in Johnson Hollow came from these operations. WVGES data also indicates that Peabody operated a mine in the watershed, however I believe that to also be the Powellton No. 6 mine.

18.  I inspected some of the identified gob piles on May 31, 2019. I was accompanied by Bob Butcher, a forestry contractor for Quercus LLC, the owner of the majority of the surface property in the watershed. The inspection included walking to some of the areas identified by WVDEP as gob piles, confirming that they were mine-waste dumps, and sampling surface water associated with the dumps.

19.  Laboratory analysis indicates the presence of contaminants associated with mine-waste in the waters influenced by these mine-waste dumps.

20.  As these dumps were not constructed in a manner protective of the environment – for example lined with an impermeable barrier to prevent groundwater contamination - groundwater beneath the dumps is certainly contaminated and is directly hydraulically connected to surface waters and to the valley alluvial aquifer from which the PSD draws its public supply water.

21.     WVDEP stated in their report of the Spruce Hollow Refuse Pile that "the creek channel at the toe of the refuse pile appears to have been slightly altered, leaving still a large unblocked drainage channel area. Should frequent heavy rainfalls occur the refuse pile embankment could slide and block Spruce Hollow Creek causing a damming impoundment to occur. The failure of the impoundment would most likely cause substantial personal property loss and even injury or death". WVDEP ranked Flood Hazard Potential as a 7 out of 10 for this gob pile. My observations confirmed the WVDEP observations in that the toe of the gob pile does appear to be encroaching on the stream and is within the flood plain.

22.     These coal waste dumps certainly contribute to the contamination of an underground drinking water source. The aquifer is clearly contaminated based on the PSD source water monitoring and contamination within their system. However, because of the commingling with these and other sources (such as other historic mining activities) of groundwater contamination in the watershed it would be impossible to attribute contributions of this contamination to individual sources based on current information.

23.     The coal seams themselves and improperly disposed of mine waste material continue to be the primary sources of contaminants in the watershed. It is through the mined coal seams and the coal-waste open dumps that air, water and disruptions in the hydrologic balance originate. Contaminated groundwater originates in the coal seams and open coal-waste dumps and migrates through the seams and adjacent rock layers and into the groundwaters and surface waters of the Johnson Fork and Johnson Fork Receiving Watershed.

24.     Mining activities in the Subject Watershed were conducted above drainage (ie. up-gradient) mostly in the Powellton coal seam, mining of which is notorious for contaminating ground and surface waters with toxic pollutants if appropriate controls are not utilized and

included disposal of wastes above drainage in open coal-waste dumps. This mining activity created mine and mine waste drainage which continues to this day, increasing the concentrations of toxic substances in groundwater and subsequently to the surface waters to which they are connected or in which such contaminates continue to migrate within the environment. This contaminant generation occurs in both the mined seams and in the mining waste material disposed of within or adjacent to these mining operations. Seepage of contaminates and contaminated groundwater continue to flow into surface waters in areas in which mines operated. These discharges commingle with similarly contaminated groundwater from other mining operations in the adjacent valley aquifer and surface streams, forming a single surface water and groundwater plume and sediment plume. Mining activities contaminated and continue to contaminate groundwater and surface water in the Johnson Fork Receiving Watershed.

25.    The full nature and extent of the contamination and impact from these operations is not entirely known. Fully defining the impact of these operations will require a full and complete remedial investigation.

Compensation:

26.    I am being paid at a rate of $350 per hour for work on this matter.

CV, Publications and Presentations, Testimony:

27.    My CV includes a list of publications and presentations. It and a list of trial and deposition testimony and is attached.

_____

D. Scott Simonton, Ph.D., P.E.

# EGFA's Powellton No. 6 Mine Ends 67-Year Life

## Run Of Mine

### By Dick Marsh



LAST CARS OF COAL



MOURNERS AT THE DEATH



the Sandridge Coal Page

While at Garrison, also had an opportunity to meet C. E. Keffer, general foreman at the new No. 3 mine, opened last July to extract the rich No. 2 Gas seam from the bed in the mountain.

After completing the trip at the mines, the party stopped at the boarding-house...




FINAL WORK DAY for the men shown in the above picture was last Friday at Park & Tilford's Powellton No. 6 mine. Shown in the picture...



EXTERIOR SCENE at the Powellton No. 6 mine, which soon will disappear due to the closing of the operation is shown in the above picture. The bird box buildings are mine entry, with the main building in the extreme right.

ANGLO-CANADIAN
OIL CO. LTD.
BECKLEY

Joseph X. Fazio & Co.
DIAL 1475

PARK & TILFORD
FOUNDED 1840



# ANTHONY CILIBERTI
# FAYETTE COUNTY PROSECUTING ATTORNEY

### Fayetteville, West Virginia 25840-1226

December 23, 2020

**IN RE:** Investigation of Known & Reasonably Suspected Conditions of Public Nuisance in the Johnson Fork-Loop Creek Watershed within Fayette County, West Virginia

Office of the Prosecuting Attorney of Fayette County, West Virginia, Environmental & Public Health Protection Unit - Matter No. 2019-003

# CIVIL INVESTIGATION DEMAND
# NO. 2020-003-02

## TO RESPONDENT: Continental Insurance Company

c/o Chief Executive Officer
100 Matsonford Road
Suite 200
Radnor, PA 19087

c/o Stathy Darcy
Its Statutory Agent
151 N. Franklin Street, 9th Floor
Chicago, IL 60606

**DATE & TIME OF PRODUCTION:** February 5, 2021 at 11:00 a.m. EST

**PLACE OF PRODUCTION:** Office of the Fayette County Prosecuting Attorney
108 East Maple Avenue
Fayetteville, WV 25840

**RESPONSIBLE COUNTY ATTORNEY:** Christine B. Stump, Esq
Asst. Fayette Co. Prosecuting Attorney

---

### ENVIRONMENTAL AND PUBLIC HEALTH PROTECTION UNIT

159 Summers Street
Charleston, West Virginia 25301-2134
Telephone: 304-343-6500
Facsimile: 304-343-6528
E-Mail: mcallaghan@neelycallaghan.com



Michael O. Callaghan
Chief Assistant Prosecuting Attorney
Environmental & Public Health Protection

RESPONDENT: Insurance Company of North America
December 23, 2020
Matter No. 2019-003 – Investigation of Public Nuisance in Johnson Fork-Loop Creek Watershed
RE: CIVIL INVESTIGATION DEMAND, NO. 2020-003-01
Page 2 of 4 pages

ENVIRONMENTAL & PUBLIC
HEALTH PROTECTION UNIT
Stump & Associates, PLLC
230 West Randolph Street
Lewisburg, WV 24901-2519
Telephone: (681) 318-3509
E-Mail: chris@cstumplaw.com

**PLEASE BE ADVISED** that, pursuant to Fayette County, West Virginia Ordinance No. 2017-002, the Prosecuting Attorney of Fayette County, West Virginia has determined that there exists a reasonable basis to suspect that a condition of Public Nuisance exists, or may exist, within Fayette County; to wit: within the Johnson Fork-Loop Creek Watershed within Fayette County, West Virginia;

**PLEASE BE FURTHER ADVISED** that, pursuant to Section 4 of Fayette County, West Virginia Ordinance No. 2017-002, the Prosecuting Attorney of Fayette County, West Virginia has determined that the Respondent named above has, or may have, information relevant to the investigation of the aforementioned known or reasonably suspected condition of Public Nuisance within Fayette County, West Virginia, which information is within one or more of the categories of matters specified in Section 4 of Fayette County Ordinance No. 2017-002;

**WHEREFORE, YOU ARE LAWFULLY COMMANDED to produce at the time, date, and place set forth above the WRITINGS and INFORMATION required by this Civil Information Demand, specifically including the WRITINGS and INFORMATION described in Exhibit 1, which is attached hereto and incorporated by this reference as if set forth in full herein.**

## NOTICES TO RESPONDENT:

**1. Availability of Official Version of Relevant Ordinances of Fayette County, WV:** This Civil Investigation Demand is issued pursuant to provisions of the Fayette County, West Virginia Ordinance No. 2017-002 that became effective on December 15, 2017 and is entitled: Fayette County Public Nuisance Civil Investigation Ordinance. You may review and download a complete and verified version of Fayette County Ordinance 2017-002 as enacted by the County Commission of Fayette County, West Virginia from the official website of Fayette County, West Virginia that may be found at the following web address: https://fayettecounty.wv.gov/commission/Pages/Enacted-Ordinances.aspx

---

**ENVIRONMENTAL AND PUBLIC HEALTH PROTECTION UNIT**

159 Summers Street
Charleston, West Virginia 25301-2134
Telephone: 304-343-6500
Facsimile: 304-343-6528
E-Mail: mcallaghan@neelycallaghan.com

Michael O. Callaghan
Chief Assistant Prosecuting Attorney
Environmental & Public Health Protection

RESPONDENT:  Insurance Company of North America
December 23, 2020
Matter No. 2019-003 – Investigation of Public Nuisance in Johnson Fork-Loop Creek Watershed
RE:  CIVIL INVESTIGATION DEMAND, NO. 2020-003-01
Page 3 of 4 pages

**2.  Failures or Refusals to Comply with Properly Served Civil Information Demand:** Pursuant to Section 15 of Fayette County Ordinance 2017-002, the failure or refusal of any Respondent named in this **Civil Information Demand** that has been properly served with a copy of this **Civil Information Demand** timely and competently to comply with any requirement of this **Civil Information Demand** may subject the Respondent to:  **(i)** a compulsory judicial order requiring compliance with this **Civil Information Demand** issued in a civil enforcement action brought by the Fayette County Prosecuting Attorney in a court of competent jurisdiction; and **(ii)** to the **award to the Fayette County Commission and against such Respondent** of Fayette County's litigation costs, including attorneys' fees and expenses, expert witness fees and expenses, and the fees and expenses of no more than one (1) non-testifying technical or scientific expert to assist the Fayette County Prosecuting Attorney in the preparation and prosecution of the action to secure enforcement of this **Civil Information Demand.**

**3.  Civil Information Demand Exempt from Requirements of West Virginia Insurance Consumer Financial Information Privacy Regulations:**  This **Civil Information Demand** is issued by the Prosecuting Attorney of Fayette County, West Virginia pursuant to the authority vested in the Fayette County Prosecuting Attorney by Section 5(a) of Fayette County Ordinance 2017-002, which was duly enacted by the County Commission of Fayette County, West Virginia in exercise of the express authority vested in that County Commission by West Virginia Code §§ 7-1-3 and 7-1-3kk. Accordingly, this **Civil Information Demand** is exempt, pursuant to WV C.S.R. §§ 114-57-14.1(l), (m) and (n) and 114-57-15.2, from the limitation and requirements of the West Virginia Insurance Consumer Financial Information Privacy regulations set forth in WV C.S.R., Title 114, Series 57 as the Respondent is required by local law to provide the information demanded by this **Civil Information Demand.**

**4.   Right to Seek Order Quashing or Modifying this Civil Information Demand:** Pursuant to Section 10 of Fayette County Ordinance 2017-002, the Respondent to this Civil Information Demand may seek an Order from the Fayette County Commission quashing or modifying all or any portion of this Civil Information Demand by timely filing a written motion that fully complies with the requirements set forth in Rule 6.01 of the West Virginia Trial Court Rules not to exceed, without prior leave from the County Commission, twenty (20) pages setting forth concisely the relief requested and all of the law and facts which the respondent/movant contends entitles it/them to the relief requested.  **Notice of Respondent's intent to file any such motion must be filed under seal with the Fayette County Clerk's Office and served on the Fayette County Prosecuting Attorney on or before the tenth (10th ) day following Respondent's receipt of service of this Civil Information Demand.**  Any motion seeking any such relief authorized by Section 10 must be filed under seal with the Office of the Fayette County Clerk and served on the Fayette County Prosecuting Attorney on or before the fourteenth (14th) day following the Respondent's receipt of service of this **Civil Information Demand.**

**ENVIRONMENTAL AND PUBLIC HEALTH PROTECTION UNIT**

159 Summers Street
Charleston, West Virginia 25301-2134
Telephone:  304-343-6500
Facsimile:  304-343-6528
E-Mail:  mcallaghan@neelycallaghan.com

Michael O. Callaghan
Chief Assistant Prosecuting Attorney
Environmental & Public Health Protection

RESPONDENT: Insurance Company of North America
December 23, 2020
Matter No. 2019-003 – Investigation of Public Nuisance in Johnson Fork-Loop Creek Watershed
RE: CIVIL INVESTIGATION DEMAND, NO. 2020-003-01
Page 4 of 4 pages

**5.** **Requirement to Exhaust All County Remedies:** Pursuant to Section 13 of Fayette County Ordinance 2017-002, any Respondent properly served with this **Civil Information Demand** that seeks from any court, governmental agency, or tribunal any relief that would as a practical matter have the effect of quashing, in whole or in part, or modifying all or any part of this **Civil Information Demand must first timely raise such request before the Fayette County Commission by filing with the Fayette County Clerk a compliant motion pursuant to Section 10 of Fayette County Ordinance 2017-002,** and thereafter exhaust all of the remedies provided by law with respect to any ruling on such motion.

**ANTHONY CILIBERTI, ESQ.**
**FAYETTE COUNTY PROSECUTING ATTORNEY**

By: _____
Michael O. Callaghan, Esq.
Chief Assistant Fayette County Prosecuting Attorney
Environmental & Public Health Protection Unit

DATED: December 23, 2020

---

**ENVIRONMENTAL AND PUBLIC HEALTH PROTECTION UNIT**

159 Summers Street
Charleston, West Virginia 25301-2134
Telephone: 304-343-6500
Facsimile: 304-343-6528
E-Mail: mcallaghan@neelycallaghan.com

Michael O. Callaghan
Chief Assistant Prosecuting Attorney
Environmental & Public Health Protection

# EXHIBIT 1

# TO

## FAYETTE COUNTY, WEST VIRGINIA

## CIVIL INFORMATION DEMAND NO. 2020-003-02

YOU ARE, BY THIS CIVIL INFORMATION DEMAND, LAWFULLY REQUIRED timely to produce, and permit inspection and copying of, the WRITINGS described below, and timely to produce written responses to the INFORMATION demanded below, according to the Instructions and Definitions set forth below, at the place and on or before the date and time indicated in this Civil Information Demand. All terms used in this Civil Information Demand have the same meaning as set forth in this Exhibit 1.

## I.     DEFINITIONS:

**1.**     The term "AFFILIATE" and "AFFILIATED" shall have the meaning as a company is an 'affiliate' of, or a company is 'affiliated' with, another specified company if it directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the other specified company or similar ownership, management, shareholders, or directors.

**2.**     The terms "COMMUNICATE" or "COMMUNICATION" means every manner of disclosure, transfer, or exchange of information whether orally or in WRITING and whether by face-to-face, telephone, computer, mail, e-mail, facsimile, video or audio transmission, personal delivery, or otherwise.

**3.**     The terms "ELECTRONICALLY STORED INFORMATION" and "ESI" each mean information that is stored in an electronic medium, *see* Federal Rule of Civil Procedure, Rule 34, and includes every tangible media from which WRITINGS can be perceived, reproduced, or otherwise communicated with the aid of a computer. ESI specifically includes, but is not limited to, computer hard drives, optical media like CDs and DVDs, RAM (volatile memory), detached, networked, portable, internal, and external hard drives, cloud storage, smart cards, computer magnetic tapes, backup tapes, drum and disk storage devices, PDAs, smart phones and wireless phones, floppy disks (including Zip, Jaz, Maxtor, USB, Flash, or Snap drives) or the RAM for printers or other peripheral devices.

**4.**     The term "ENVIRONMENT" means any surface water, groundwater, drinking  water supply, soil, land surface, subsurface strata, or ambient air within Fayette  County, West Virginia.

5.      The term "FACILITY" means: (a) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, injection well, pit, pond, lagoon, impoundment, ditch, cave, tunnel, mine, mine shaft, landfill, storage container, motor vehicle, rolling stock, ship, boat, vessel, barge, or aircraft; or (b) any site or area where a HAZARDOUS WASTE, HAZARDOUS SUBSTANCE, POLLUTANT or CONTAMINANT, or WASTE has been RELEASED, deposited, STORED, DISPOSED of, placed, or otherwise has come to be located, but does not include any consumer product in consumer use.

The term "INSURANCE POLICY" means any policy of insurance, or part thereof, RELATED TO a **POTENTIALLY RESPONSIBLE PARTY** (hereinafter sometimes referred to as: "**RP**"), including but not limited to any and all insurance WRITINGS, whether RELATED TO insurance policies that were placed, issued, quoted, canceled, or terminated by YOU during one or more years within the period of 1963 through 1987, inclusive, and that has or may have a provision that provides or may provide defense or indemnity coverage for any actual or potential liability of any INSURED to any third party arising from any action, omission or condition on, at or under the PROPERTY which might have or might cause damage or injury to the public. third parties or the property of either of them, is a nuisance condition, or that is or may be an endangerment to the Public Health, Safety, Welfare or the ENVIRONMENT regardless of:  **(a)** how such coverage may be limited, excepted or conditioned, **(b)** whether such liability is for property damage, personal injury or otherwise, **(c)** whether such coverage is primary, excess, or umbrella in nature, **(d)** whether the policy follows form, **(e)** who issued the policy, and whether or not the policy is or was terminated, canceled, bound, placed, or not renewed.  The term "INSURANCE POLICY" also includes all rating agreements, renewal agreements, separately issued endorsements, and other WRITINGS that change, modify, add to, delete or supplement the terms of any INSURANCE POLICY or demonstrate the existence or possible existence of any additional INSURANCE POLICY or INSURANCE POLICIES; **non-exclusively including Continental Insurance Company Insurance Policy Numbers: RD9972829, RDU9433461, XC102700, EXC102779, EXC102071 and EXC103326.**

6.      The terms "INSURED" and "INSUREDs" each means each PERSON identified, whether as an Insured, Additional Named Insured, or otherwise, in or associated with an INSURANCE POLICY.

7.      The term "PERSON" means an individual, a deceased individual (or the Estate of a decedent) to the extent of available insurance assets and undistributed non-insurance assets, trust, firm, joint stock company, corporation, including a governmental corporation, a dissolved, defunct or bankrupt business entity to the extent  of its available insurance assets and undistributed non-insurance assets, a bankruptcy trustee, debtor in possession under the federal bankruptcy laws, partnership, association, consortium, joint venture, limited liability company, limited liability partnership, or commercial entity.  The term also includes any municipality, county, commission, district, any state, any department, or agency thereof, or any political subdivision thereof, any interstate body, or the United States, and any of its agencies or instrumentalities to the extent

authorized by law.

**8.** The term "PROPERTY" means all or any part of the surface and subsurface of all real property on or under which operations related to the mining operations, mining waste disposal site(s), complex, site(s), Facility(ies) or locations within Fayette County, West Virginia owned, leased, or operated by any **POTENTIALLY RESPONSIBLE PARTY** were at any time located, and specifically includes any surface rights respecting, and mineral rights appertaining to any ore or minerals underlying, such PROPERTY.

**9.** The terms "**POTENTIALLY RESPONSIBLE PARTY**" or "**PRP**" each means any of the following:

    **(a)** Eastern Associated Coal Corporation;

    **(b)** Eastern Associated Coal, LLC

    **(c)** Eastern Gas and Fuel Associates;

    **(d)** Coal Products Corporation;

    **(e)** Eastern Associates

**10.** The terms "RELATES TO" and "RELATED TO" mean in any way, directly or indirectly, evidencing, demonstrating, describing, explaining, supporting, mentioning, discussing, commenting on, **constituting**, concerning, **comprising**, **containing**, reflecting upon, identifying, stating, depicting, illustrating, recording, or referring to the given subject.

**11.** The term "WATERS OF THE STATE" means any and all water on or beneath the surface of the ground, whether percolating, standing, diffused or flowing, wholly or partially within this state, or bordering this state and within its jurisdiction and includes, without limiting the generality of the foregoing, natural or artificial lakes, rivers, streams, creeks, branches, brooks, ponds, impounding reservoirs, springs, wells, watercourses and wetlands; provided however, that the term does not include farm ponds, industrial settling basins and ponds, and waste treatment facilities.

**12.** The term "WASTE" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant or air pollution control facility, and other discarded material including solid, liquid, semisolid or contained gaseous material resulting from industrial, commercial, mining, agricultural operations, or from community activities.

**13.** The term "WRITING" herein is used in the broadest sense possible, regardless of media or storage mechanism, including, but not limited to any ESI, handwriting, typewriting, printing, photographs, photostats, photocopies, transmissions by fax and e-mail, and every other means of recording upon any tangible thing, and any form of communication or representation, including letters, works, pictures, sounds or symbols, or combinations thereof, and any record thereby created. The meaning of "WRITING" non-exclusively includes, **(a)** letters, words, numbers, or their equivalent set down in any form; **(b)** a "recording" consists of letters, words, numbers, or their equivalent recorded in any manner; **(c)** a "photograph" means a photographic image or its equivalent stored in any form; **(d)** an "original" of a writing or recording means the writing or

recording itself or any copy or counterpart intended to have the same effect by the person who executed or issued it (with respect to **ESI**, "original" means any printout -- or other output readable by sight -- if it accurately reflects the information; with respect to a photograph, "original" includes the negative or a print from it); **(e)** a "duplicate" means a copy or counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original; and **(f)** all non-duplicative drafts, versions not sent, all amendments, endorsements, modifications, and copies that differ only in margin notes or annotations, as well as all exhibits and attachments thereto and summaries of or RELATED TO any such WRITING.

**14.**    The terms "YOU" and "YOUR" means the Continental Insurance Company, and anyone acting on its behalf, including, but not limited to, its respective, agents, trustees, attorneys, accountants, investigators, employees, predecessors, successors, subsidiaries, affiliated companies, and the officers and directors of any of them.

**15.**    All terms which are in the singular form include the plural, and all terms which are in the plural form include the singular; also, all terms which are in the past tense include the present, and all terms which are in the present tense include the past.  All defined terms should be read as defined within this Exhibit unless specifically defined otherwise within the categories below.

## II.    INSTRUCTIONS:

**1.**    YOU must produce, and permit inspection and copying of, all the WRITINGS described below that are in the possession, custody or control of YOU or any PERSON acting on YOUR behalf, at YOUR direction, or under YOUR control including, for example, YOUR AFFILIATES, subsidiaries, parent companies, agents, employees, consultants, tenants, subcontractors, insurance brokers and agents, and attorneys, accountants and investigators.

**2.**    If YOU withhold all or any part of any WRITINGS described or requested by this Civil Information Demand based, in whole or in part, on a claim of privilege or for work product protection, YOU must produce to the Office of the Fayette County Prosecuting Attorney on or before the date and time for production indicated in this **Civil Information Demand** the concise, written statement required by Section 6(b) of Fayette County Ordinance 2017-002 setting forth, with respect to each WRITING or Information YOU are **not** producing **all** of the information required by that Section 6(b).

**3.**    If a WRITING responsive to any part of this **Civil Information Demand** was in YOUR possession or control, is no longer in YOUR possession or control, YOU must provide a written statement setting forth what disposition was made of it, including, but not limited to:  **(1)** the name and address of the PERSON who disposed of the WRITING; and **(2)** the date, time, place, and mode or method of disposal; and **(3)** a complete description of all locations where YOU know or reasonably suspect the original or any copy of all or any portion of such WRITING may now be found.

**4.** WRITINGS that exist in electronic form are specifically requested to be produced in "native format" or near-native formats and should not be converted to imaged formats. Native format requires production in the same format in which the documents or information was customarily created, used, and stored by YOU. The table below supplies examples of the native formats or near-native formats in which specific types of electronically stored information (ESI) should be produced.

| Source ESI | Native or Near-Native Form or Forms Sought |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| WordPerfect documents | .WPD |
| Adobe Acrobat Documents | .PDF |
| Images | .JPG, .JPEG, .PNG |
| E-mail | Messages and attachments should be produced in a form or forms that readily support import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats such as .MSG or .EML may be furnished if source foldering data is preserved and produced. For Lotus Notes mail, furnish NSF files or convert to .PST. If YOUR workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a delimited text file. |
| Databases | Unless the entire contents of a database are responsive, extract responsive content to a fielded and electronically searchable format preserving metadata values, keys and field relationships. If doing so is infeasible, please provide the entire database and supply information concerning the scheme and query language of the database, along with a detailed description of its export capabilities, so as to facilitate crafting a query to extract and export responsive data. |

**5.** WRITINGS and information that do not exist in native electronic formats or which require

redaction of privileged content should be produced in searchable .PDF formats or as single page .TIFF images with OCR text furnished and logical unitization and family relationships preserved. YOU must provide the basis for any redactions for each document and information so redacted as required on the privileged log.

**6.**     Production of ESI should be made using appropriate electronic media of the producing party's choosing, such as DVD, CD, flash/thumb drive, or portable external hard drive, provided that the production media chosen does not impose an undue burden or expense upon the recipient.

## III.   WRITING DEMANDS:

YOU are to produce and make available for inspection, scanning, and copying, according to the instructions and definitions above, the following WRITINGS:

1.     Each WRITING RELATED TO any search made by YOU to respond to this Information Demand or to identify, find, or produce the WRITINGS or INFORMATION requested by this Information Demand.  (Please note that this requires YOU to print out and produce all results of computer searches, even if such printout only shows the search terms and that no results were found.)

2.     Each WRITING RELATED TO each INSURANCE POLICY, or portion thereof.

3.     Each WRITING that RELATES TO any underwriting file, or portion thereof, for, about or concerning, in whole or in part, directly or indirectly, any **PRP**.

4.     Each WRITING that identifies any PERSON who issued, or may have issued, an INSURANCE POLICY to, or for the benefit, in whole or in any part, of, any **PRP**.

5.     Each WRITING that identifies any PERSON who issued, or may have issued, an INSURANCE POLICY RELATED TO the PROPERTY or to any aspect of any operation or activity conducted or to be conduct at the PROPERTY.

6.     Each WRITING that RELATES TO any claim filed for any benefits, indemnification, or defense filed under, against, or with any respect to each INSURANCE POLICY.

7.     Each WRITING that RELATES TO the submission, proposal, or bid to place, sell or quote a price to or for the benefit of, directly or indirectly, any PRP for an INSURANCE POLICY.

8.     Each WRITING that RELATES TO any application for an INSURANCE POLICY.

9.     Each WRITING that RELATES TO any contract or proposal for any contract with any PERSON for reinsurance of an INSURANCE POLICY.

10.     Each WRITING that RELATES TO any COMMUNICATION by or behalf of any

Insurance Agent, Insurance Broker, Insurance Placement Agency, or Insurance Company, to, with, on behalf of, or relating to any PRP.

11.   Each WRITING that RELATES TO any WRITING demanded by this Civil Information Demand, but that has been destroyed, discarded, recycled, or lost.

12.   Each WRITING RELATED TO the current or historical extent of mining operations at, on, under, or adjoining to the PROPERTY.

13.   Each WRITING RELATED TO any permit, or portions thereof, issued by the West Virginia Department of Environmental Protection or any other governmental agency for, concerning or RELATING TO any activity or operation that has been, is being, or is to be, conducted at the PROPERTY.

14.   Each WRITING RELATED TO ownership of the PROPERTY or adjoining properties.

15.   Each WRITING RELATED TO the purchase, rental, or leasing of all or any portion of the PROPERTY, adjoining properties or licenses or easements concerning either the PROPERTY or adjoining properties .

16.   Each WRITING concerning any inspections of the PROPERTY, or about or RELATED TO any facility, structure, or operation on the PROPERTY.

17.   Each WRITING RELATED TO any sampling, testing, or data collection results within or concerning or addressing any aspect of the ENVIRONMENT or WATERS OF THE STATE, or WASTES stored or disposed at or in the vicinity of the PROPERTY or within the Johnson Fork-Loop Creek Watershed in Fayette County, West Virginia.

## IV.  <u>INFORMATION DEMANDED:</u>

YOU are LAWFULLY REQUIRED to produce complete and accurate written responses to the following Information Requests, and timely to produce those written responses according to the Instructions and Definitions set forth in Sections **I** and **II** of this **Exhibit 1 to Civil Information Demand No. 2020-003-01**:

**1.**  If complete copies of any INSURANCE POLICY or INSURANCE POLICIES demanded in this **Civil Information Demand** are not available to YOU, please identify the name and last known mailing address for:

(a) each PERSON that purchased or otherwise procured the issuance of each such INSURANCE POLICY; and

(b) each insurance carrier, insurance agent, and insurance broker that had, may have had, has, or may have any information RELATING TO each such INSURANCE POLICY or INSURANCE POLICIES.

2. Please identify each individual who provided any factual information that is reflected in any of YOUR responses to the Requests for Information set forth in this Section **IV** of this **Exhibit 1 to Civil Information Demand No. 2020-003-01**, or who otherwise assisted in the drafting of any of YOUR responses to such Requests for Information, and for each such individual, please provide his or her full name, address, and telephone number, position held with each Respondent at the time such information or assistance was provided, and describe the information or drafting assistance provided.

3. Please identify each individual who participated in the effort to search for or identify any WRITINGS responsive to the Demand for Production of Documents set forth in Section **III** of this **Exhibit 1 to Civil Information Demand No. 2020-003-01**, and for each such individual, please provide his or her full name, address, and telephone number, and describe the collection, file, or location which he or she searched.

4. Please identify each individual who determined that any item of information or WRITING responsive to this **Civil Information Demand** was destroyed, deleted, or is no longer available to YOU, and for each such individual, please provide his or her full name, address, and telephone number, position held with each Respondent at the time such determination was made, and describe the item(s) of information or WRITINGS as to which such determination was made.

*If YOU have any questions regarding compliance with this Civil Information Demand, please contact:*

Christine B. Stump, Esq.
Assistant Fayette County Prosecuting Attorney
ENVIRONMENTAL & PUBLIC HEALTH
  PROTECTION UNIT
c/o Stump & Associates, PLLC
230 West Randolph Street
Lewisburg, WV 24901-2519
Telephone: (681) 318-3509
E-Mail: chris@cstumplaw.com

PLAINTIFF'S EXHIBIT

# Non-Duplicative Documents - CNA 4-15-21 Production

FAYETTE COUNTY
CIRCUIT CLERK
2021 MAY -4 AM 11:45

| Document Date | Document Type | Author(s) | Addressee(s) | CCs | Document Title | Document Description | Confidenti | Produced By | Production Date | Production File # | Pages | Transmitted By | Date Estim | Document Transmittal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | Table | | | | | PART REDACTED - Table of 10 | N | CNA (Resolute) | 20210415 | EG 000765 | 1 | E-mail | N | |
| 2020012 | letter | Edward Craft (Resolute) | Francis Murphy, Esq (Nat Grid) | | | Potential Issues with EGFA  Claimant: Acknowledging Nat Grid Letter of 12- | N | CNA (Resolute) | 20210415 | EG 001187 | 2 | E-mail | N | |
| 2200213 | E-Mail | Stacey White (Resolute) | Thomas Barlball (Resolute) | | | Eastern Gas - Status Checking - Expect almost done | N | CNA (Resolute) | 20210415 | EG 001770 | 1 | E-mail | N | 1859 hrs |
| 19610621 | POLICY | | | | | Continental Ins Co POLICY with Excess Third Party Declarations Page | N | CNA (Resolute) | 20210415 | EG 000965 | 19 | | | |
| 19640621 | POLICY | | | | | Continental Ins Co POLICY with Excess Third Party Declarations Page | N | CNA (Resolute) | 20210415 | EG 000984 | 20 | | | |
| 19770610 | POLICY | | | | | Continental Ins Co POLICY with Excess Third Party Declarations Page | N | CNA (Resolute) | 20210415 | EG 001004 | 20 | | | |
| 19850601 | POLICY | | | | | Continental Ins Co POLICY with Excess Marine & Declarations Page | N | CNA (Resolute) | 20210415 | EG 000941 | 12 | | | |
| 19850601 | POLICY | | | | | Continental Ins Co POLICY with Excess Marine & Declarations Page | N | CNA (Resolute) | 20210415 | EG 000930 | 11 | | | |
| 19850601 | POLICY | | | | | Continental Ins Co POLICY with Excess Marine & Declarations Page | N | CNA (Resolute) | 20210415 | EG 000918 | 12 | | | |
| 19860601 | POLICY | | | | | Continental Ins Co POLICY with Excess Marine & Declarations Page | N | CNA (Resolute) | 20210415 | EG 000953 | 12 | | | |
| 20190000 | Form | CNA | | | | CNA Claims Form - Claim # E2F39284 - | N | CNA (Resolute) | 20210415 | EG 001661 | 40 | | Y | |
| 20191007 | letter | FCoWV | Nat Grid & PRPs at JF-LC Site | | | FCoWV NOE - JF-LC RCRA NOE - JF-LC | N | CNA (Resolute) | 20210415 | EG 001718 | 1 | USPS | N | |
| 20191023 | letter | FCoWV CEA | Nat Grid | | | FCoWV CEA JF-LC Info Demand # 2019- FCoWV CEA CID | N | CNA (Resolute) | 20210415 | EG 001701 | 1 | USPS | N | |
| 20191200 | Form | CNA Claims | | | | E2F39348 - Policy # RDX 3652348 | N | CNA (Resolute) | 20210415 | EG 001506 | 3 | | Y | |
| 20191200 | Form | CNA Claims Acknowledgement Letter & Attached Nat Grid | CNA Loss Report | | | RDX 3652438 CNA Claims Form | N | CNA (Resolute) | 20210415 | EG 001236 | 3 | | Y | |
| 20191219 | E-Mail | Thomas Barlball (Resolute) | Claims Reporting (Resolute) | Clayton Budlong (Resolute) Gregory Gaines (Resolute) | | E2F39284 - Nat REDACTED | N | CNA (Resolute) | 20210415 | EG 001760 | 1 | E-mail | N | 1124 hrs |
| 20191224 | letter | Francis Murphy, Esq (Nat Grid) | CNA | | | RD9972829 6/21/61- Nat Grid Tender for CNA | N | CNA (Resolute) | 20210415 | EG 001659 | 2 | E-mail | N | |
| 20191224 | letter | Francis Murphy, Esq (Nat Grid) | CNA Loss Report | | | RDX3652438 6/15/77- Nat Grid Tender Letter to CNA | N | CNA (Resolute) | 20210415 | EG 001551 | 2 | E-mail | N | |
| 20191224 | letter | Francis Murphy, Esq (Nat Grid) | Columbia Casualty Co (@ Loss Reporting - CNA | | | RDX3652438 6/15/77 Nat Grid Tender Letter to Columbia | N | CNA (Resolute) | 20210415 | EG 001551 | 2 | E-mail | N | |
| 20191224 | letter | Francis Murphy, Esq (Nat Grid) | CNA (Loss Reporting) | | | RD9972829 6/21 t/61- Nat Grid Tender of 6/21/64, FCoWV Claims to | N | CNA (Resolute) | 20210415 | EG 001389 | 2 | E-mail | N | |
| 20191230 | E-Mail | Claims Reporting (Resolute) Diane | Thomas Barlball (Resolute) | Clayton Budlong (Resolute) Gregory Gaines (Resolute) | | E2F39284 - Nat Grid/EGFA DOL: 6-22- New Notice Received Against Attached | N | CNA (Resolute) | 20210415 | EG 001761 | 1 | E-mail | N | 1628 hrs |
| 20191230 | E-Mail | Cynthia Patterson (CNA) | Claims Reporting (Resolute) | Katrina McDowell (CNA) | | E2F39284 - Nat Grid/EGFA DOL: 6-22- Documents are Attached | N | CNA (Resolute) | 20210415 | EG 001762 | 1 | E-mail | N | 1513 hrs |
| 20191230 | E-Mail | Cynthia Patterson (CNA) | Daniel Jordan (CAN) | Katrina McDowell (CNA) Elizabeth Chin (CAN) Lisa | | E2F39284 - Nat Grid/EGFA DOL: 6-22- Document | N | CNA (Resolute) | 20210415 | EG 001762 | 1 | E-mail | N | 1405 hrs |
| 20191230 | E-Mail | Eileen Coleman (Nat Grid) | CNA - Claims Loss Report | | | E2F39284 Forwarding Letter from Francis | N | CNA (Resolute) | 20210415 | EG 001616 | 1 | E-mail | N | 1754 hrs |
| 20191230 | Form | CNA Claims Acknowledgement Letter & Attached Nat Grid | | | | E2F39284 - Policy # 9999998 Form Letter & Attached Nat Grid | N | CNA (Resolute) | 20210415 | EG 001613 | 3 | | Y | |
| 20191230 | letter | CNA Claims Acknowledgement Letter & Attached Nat Grid | | | | 3652348 Form Letter & Attached Nat Grid | N | CNA (Resolute) | 20210415 | EG 001506 | 3 | | Y | |
| 20191230 | E-Mail | Cynthia Patterson (CNA) | CNA Claims Reporting | Katrina McDowell (CNA) | | E2F39284 - National Grid Holdings / Documents from | N | CNA (Resolute) | 20210415 | EG 001477 | 1 | E-mail | N | 1412 hrs |
| 20191230 | E-Mail | Diane - Claims Reporting (Resolute) | Thomas Barlball (Resolute) | Claims Reporting (Resolute) Clayton Budlong | | E2F39284 - National Grid Holdings / Received New Notice Against | N | CNA (Resolute) | 20210415 | EG 001474 | 1 | E-mail | N | 1628 hrs |
| 20191230 | E-Mail | Eileen Coleman (Nat Grid) | Loss Report (@cnaasap.com) | Bonnie Barrett, (Faegre) Donna Ricobono | | E2F39348 - Policy # Successor to EGFA Form Letter & Attaching Murphey | N | CNA (Resolute) | 20210415 | EG 000511 | 1 | | | |
| 20191231 | Form | CNA Claims | | | | 3652348 CNA Claims Form | N | CNA (Resolute) | 20210415 | EG 001553 | 41 | | N | 0710 hrs |
| 20191231 | E-Mail | Cynthia Patterson (CNA) | | | | E2F39284 - National Grid Holdings / Forwarding Additional | N | CNA (Resolute) | 20210415 | EG 001477 | 1 | E-mail | N | 1606 hrs |

| 20200102 | E-Mail | Stacey White (Resolute) | Richard West, Esq (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001764 | 1 | E-mail | N | 1750 hrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20200102 | E-Mail | Assoc General Counsel | Stacey White (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001764 | 1 | E-mail | N | 1317 hrs |
| 20200102 | E-Mail | Richard West, Esq (Resolute) Assoc General Counsel | Stacey White (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001764 | 1 | E-mail | N | 1314 hrs |
| 20200102 | E-Mail | Claims Reporting (Resolute) | Stacey White (Resolute) | Thomas Baribalt (Resolute) | New Acct - Nat Grid/Eastern Gas & | New Env Claim Against Existing | N | CNA (Resolute) | 20210415 | EG 001764 | 1 | E-mail | N | 0822 hrs |
| 20200102 | E-Mail | Assoc General Counsel | Stacey White (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001759 | 1 | E-mail | N | 1733 hrs |
| 20200102 | E-Mail | Stacey White (Resolute) | Richard West, Esq (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001759 | 1 | E-mail | N | 1317 hrs |
| 20200102 | E-Mail | Stacey White (Resolute) | Richard West, Esq (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001759 | 1 | E-mail | N | 0844 hrs |
| 20200102 | E-Mail | Stacey White (Resolute) | Richard West, Esq (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001754 | 1 | E-mail | N | 1916 hrs |
| 20200102 | E-Mail | Richard West, Esq (Resolute) Assoc General Counsel | Stacey White (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001754 | 1 | E-mail | N | 1314 hrs |
| 20200102 | E-Mail | Assoc General Counsel | Stacey White (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED - Attaching KeySpan & | N | CNA (Resolute) | 20210415 | EG 001747 | 1 | E-mail | N | 1914 hrs |
| 20200102 | E-Mail | Stacey White (Resolute) | Richard West, Esq (Resolute) | | New Acct - Nat Grid/Eastern Gas & | REDACTED | N | CNA (Resolute) | 20210415 | EG 001743 | 1 | E-mail | N | 1444 hrs |
| 20200102 | E-Mail | Stacey White (Resolute) | Nate Dyer (Resolute) | Thomas Baribalt (Resolute) | E2F39284 - National Grid Holdings / | Forwarding Documents | N | CNA (Resolute) | 20210415 | EG 001473 | 1 | E-mail | N | 1434 hrs |
| 20200102 | CNA Search Request Form | Yolanda Rush (Resolute) for Edward Craft (Resolute), Acct | | | CNA Search Request Form | PART REDACTED - Identifies 7 Policy | N | CNA (Resolute) | 20210415 | EG 001201 | 1 | . | N | |
| 20200102 | E-Mail | Edward Craft (Resolute) | Yolanda Rush (Resolute) | | EGFA Policy Search - CNA | Attaching Policy Search Form for | N | CNA (Resolute) | 20210415 | EG 000822 | 1 | E-mail | N | 1200 hrs |
| 20200102 | E-Mail | Stacey White (Resolute) | Edward Craft (Resolute) | | Nat Grid - EGFA - DOL: 6/22/61 | Attaching KeySpan Settlement Agmt | N | CNA (Resolute) | 20210415 | EG 000760 | 1 | E-mail | N | 1917 hrs |
| 20200102 | E-Mail | Richard West, Esq (Resolute) Assoc General Counsel | Stacey White (Resolute) | | Nat Grid - EGFA - DOL: 6/22/61 | REDACTED | N | CNA (Resolute) | 20210415 | EG 000760 | 1 | E-mail | N | 1314 hrs |
| 20200102 | Form | Requestor: Edward White, Acct. Manager (Resolute) | | | Policy Search Request Form | PART REDACTED - List 7 EGFA | N | CNA (Resolute) | 20210415 | EG 000756 | 1 | E-mail | N | |
| 20200103 | E-Mail | Yolanda Rush (Resolute) | Phillip Clark (Resolute) | Edward Craft (Resolute) | Policy Research Assignment (CNA | Assigning Policy Search | N | CNA (Resolute) | 20210415 | EG 000821 | 1 | E-mail | N | 0636 hrs |
| 20200103 | letter | Edward Craft (Resolute) | Francis Murphy, Esq (Nat Grid) | | EGFA Claimant: Co. Commission of | National Grid to forward all N | N | CNA (Resolute) | 20210415 | EG 000800 | 2 | E-mail | N | |
| 20200103 | E-Mail | Edward Craft (Resolute) | Yolanda Rush (Resolute) Phillip Clark (Resolute) | Cheryl Johnson (Resolute) | Policy Research Assignment- Eastern | Rick West forwarded 2 of the | N | CNA (Resolute) | 20210415 | EG 000782 | 1 | E-mail | N | 0856 hrs |
| 20200103 | E-Mail | Edward Craft (Resolute) | Francis Murphy, Esq (Nat Grid) | | EGFA - HW Acknowledgement | Transmitting Letter | N | CNA (Resolute) | 20210415 | EG 000767 | 1 | E-mail | N | 2116 hrs |
| 20200106 | E-Mail | CLT (Resolute) (signed: Shelia Jaimes, Claims Technician | Yolanda Rush (Resolute) | CLT (Resolute) | Policy Research Assignment (CNA | PART REDACTED | N | CNA (Resolute) | 20210415 | EG 000820 | 1 | E-mail | N | 1201 hrs |
| 20200106 | E-Mail | Edward Craft (Resolute) | CLT (Resolute) | | Policy Research Assignment (CNA | PART REDACTED - | N | CNA (Resolute) | 20210415 | EG 000820 | 1 | E-mail | N | 1153 hrs |
| 20200106 | E-Mail | Edward Craft (Resolute) | Matthew Chavez (Resolute) | | EGFA Claim File Assignment- Eastern | Check Claim Files N | N | CNA (Resolute) | 20210415 | EG 000774 | 1 | E-mail | N | 2203 hrs |
| 20200106 | E-Mail | Edward Craft (Resolute) | CLT (Resolute) | | Claims Number Assignment- Eastern | PART REDACTED - Can claim # be | N | CNA (Resolute) | 20210415 | EG 000770 | 1 | E-mail | N | 1752 hrs |
| 20200108 | E-Mail | Edward Craft (Resolute) | Yolanda Rush (Resolute) | | Claims Number Request - RE Policy | Makes sense - I would be fine with | N | CNA (Resolute) | 20210415 | EG 000818 | 1 | E-mail | N | 1027 hrs |
| 20200108 | E-Mail | Yolanda Rush (Resolute) | Edward Craft (Resolute) | | Claims Number Request - RE Policy | PART REDACTED - Historical Claim # | N | CNA (Resolute) | 20210415 | EG 000818 | 1 | E-mail | N | 1026 hrs |
| 20200108 | E-Mail | Edward Craft (Resolute) | Yolanda Rush (Resolute) | CLT (Resolute) | Claims Number Request - RE Policy | Coverage not yet confirmed, Policy | N | CNA (Resolute) | 20210415 | EG 000819 | 1 | E-mail | N | 0934 hrs |
| 20200108 | E-Mail | Yolanda Rush (Resolute) | Edward Craft (Resolute) | CLT (Resolute) | Claims Number Request - RE Policy | PART REDACTED - Are we certain to | N | CNA (Resolute) | 20210415 | EG 000819 | 1 | E-mail | N | 0818 hrs |
| 20200108 | E-Mail | Richard West, Esq (Resolute) Assoc General Counsel | Stacey White (Resolute) Edward Craft (Resolute) | | Eastern Gas | REDACTED | N | CNA (Resolute) | 20210415 | EG 000796 | 1 | E-mail | N | 1757 hrs |
| 20200108 | E-Mail | Phillip Clark (Resolute) | Yolanda Rush (Resolute) | Cheryl Johnson (Resolute) | Policy Research Assignment- Eastern | They are in RAPID now | N | CNA (Resolute) | 20210415 | EG 000782 | 1 | E-mail | N | 1615 hrs |
| 20200109 | E-Mail | Stacey White (Resolute) | Richard West, Esq (Resolute) Edward Craft (Resolute) | | Eastern Gas | REDACTED | N | CNA (Resolute) | 20210415 | EG 000796 | 1 | E-mail | N | 1616 hrs |
| 20200109 | E-Mail | Assoc General Counsel | Stacey White (Resolute) Edward Craft (Resolute) | | Eastern Gas | REDACTED | N | CNA (Resolute) | 20210415 | EG 000796 | 1 | E-mail | N | 1016 hrs |

| 20200109 | E-Mail | Stacey White (Resolute) | Richard West, Esq (Resolute) Edward Craft (Resolute) | | Eastern Gas | REDACTED | N | CNA (Resolute) | 20210415 | EG 000796 | 1 | E-mail | N | 1015 hrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20200109 | E-Mail | Stacey White (Resolute) | Richard West, Esq (Resolute) Edward Craft (Resolute) | | Eastern Gas | REDACTED | N | CNA (Resolute) | 20210415 | EG 000793 | 1 | E-mail | N | 1615 hrs |
| 20200120 | E-Mail | Phillip Clark (Resolute) | Edward Craft (Resolute) | Stacey White (Resolute) Yolanda Rush (Resolute) | Policy Research - EGFA - CNA | Advising 7 boxes of documents have | N | CNA (Resolute) | 20210415 | EG 000799 | 1 | E-mail | N | 2342 hrs |
| 20200120 | E-Mail | Phillip Clark (Resolute) | Edward Craft (Resolute) | Stacey White (Resolute) Yolanda Rush (Resolute) | Policy Research - EGFA - CNA | Advising 7 boxes of documents have | N | CNA (Resolute) | 20210415 | EG 000798 | 1 | E-mail | N | 2304 hrs |
| 20200127 | E-Mail | Yolanda Rush (Resolute) | Edward Craft (Resolute) | | Claims Number Request - RE Policy | Thank you for confirming | N | CNA (Resolute) | 20200415 | EG 000817 | 1 | E-mail | N | 1513 hrs |
| 20200127 | E-Mail | Edward Craft (Resolute) | Yolanda Rush (Resolute) | CLT (Resolute) | Claims Number Request - RE Policy | Yes, that is my understanding | N | CNA (Resolute) | 20210415 | EG 000817 | 1 | E-mail | N | 0911 hrs |
| 20200127 | E-Mail | Yolanda Rush (Resolute) | Edward Craft (Resolute) | CLT (Resolute) | Claims Number Request - RE Policy | Policy has yet to be confirmed - will | N | CNA (Resolute) | 20210415 | EG 000817 | 1 | E-mail | N | 0908 hrs |
| 20200109 | E-Mail | Diane Somers - Claims Reporting (Resolute) | Edward Craft (Resolute) | Stacey White (Resolute) | EGFA (CNA) | Reports All is Set | N | CNA (Resolute) | 20210415 | EG 001200 | 1 | E-mail | N | 1947 hrs |
| 20200213 | E-Mail | William Stacey White (Resolute) | Edward Craft (Resolute) | | Eastern Gas - Status | Check Repository - Look like more | N | CNA (Resolute) | 20210415 | EG 001778 | 1 | E-mail | N | 1943 hrs |
| 20200213 | E-Mail | Edward Craft (Resolute) | William Stacey White (Resolute | | Eastern Gas - Status | Located 5 Excess Policies - Search | N | CNA (Resolute) | 20210415 | EG 001778 | 1 | E-mail | N | 1304 hrs |
| 20200213 | E-Mail | William Stacey White (Resolute) | Edward Craft (Resolute) | | Eastern Gas - Status | Requests Status Update | N | CNA (Resolute) | 20210415 | EG 001778 | 1 | E-mail | N | 1252 hrs |
| 20200213 | E-Mail | William Stacey White (Resolute) | Thomas Bariball (Resolute) | | Eastern Gas | Acknowledge Request & Agrees Identifies | N | CNA (Resolute) | 20210415 | EG 001776 | 1 | E-mail | N | 1941 hrs |
| 20200213 | E-Mail | Thomas Bariball (Resolute) | Stacey White (Resolute) | | Eastern Gas | Location of 5 Reports Found | N | CNA (Resolute) | 20210415 | EG 001776 | 1 | E-mail | N | 1341 hrs |
| 20200213 | E-Mail | Stacey White (Resolute) | Thomas Bariball (Resolute) | | Eastern Gas | Policies will be Identifies 5 Policies | N | CNA (Resolute) | 20210415 | EG 001776 | 1 | E-mail | N | 1335 hrs |
| 20200213 | E-Mail | Thomas Bariball (Resolute) | Stacey White (Resolute) | . | Eastern Gas | in Repository | N | CNA (Resolute) | 20210415 | EG 001775 | 1 | E-mail | N | 1940 hrs |
| 20200213 | E-Mail | Stacey White (Resolute) | Thomas Bariball (Resolute) | | Eastern Gas | States CPL on 5 Found Excess | N | CNA (Resolute) | 20210415 | EG 001775 | 1 | E-mail | N | 1335 hrs |
| 20200213 | E-Mail | Thomas Bariball (Resolute) | Stacey White (Resolute) | | Eastern Gas | Asks how Ed is Coming - Looks like | N | CNA (Resolute) | 20210415 | EG 001775 | 1 | E-mail | N | 1250 hrs |
| 20200213 | E-Mail | Stacey White (Resolute) | Edward Craft (Resolute) | | Eastern Gas - Status | Send both Letters - we will supplement | N | CNA (Resolute) | 20210415 | EG 001773 | 1 | E-mail | N | 1917 hrs |
| 20200213 | E-Mail | Edward Craft (Resolute) | Stacey White (Resolute) | | Eastern Gas - Status | Have prepared Letter on 5 policies | N | CNA (Resolute) | 20200415 | EG 001772 | 1 | E-mail | N | 1304 hrs |
| 20200213 | E-Mail | Stacey White (Resolute) | Edward Craft (Resolute) | | Eastern Gas - Status | Where are we on the CPL on this? | N | CNA (Resolute) | 20210415 | EG 001772 | 1 | E-mail | N | 1252 hrs |
| 20200213 | E-Mail | Stacey White (Resolute) | Edward Craft (Resolute) | | Eastern Gas - Status | Found 5 Excess Policies - Search | N | CNA (Resolute) | 20210415 | EG 001771 | 1 | E-mail | N | 1904 hrs |
| 20200213 | E-Mail | Stacey White (Resolute) | Edward Craft (Resolute) | | Eastern Gas - Status | Where are we on the CPL on this? | N | CNA (Resolute) | 20210415 | EG 001769 | 1 | E-mail | N | 1851 hrs |
| 20200213 | E-Mail | Stacey White (Resolute) | Thomas Bariball (Resolute) | | Eastern Gas | CPL on Policies completed soon - | N | CNA (Resolute) | 20210415 | EG 001774 | 1 | E-mail | N | 1935 hrs |
| 20200213 | E-Mail | Stacey White (Resolute) | Legal Requests (Resolute) | Edward Craft (Resolute) | REDACTED | REDACTED | N | CNA (Resolute) | 20210415 | EG 001125 | 1 | E-mail | N | 1739 hrs |
| 20200213 | E-Mail | Edward Craft (Resolute) | Stacey White (Resolute) | | Eastern Gas & Fuel | Attached is Position Letter - | N | CNA (Resolute) | 20210415 | EG 001126 | 1 | E-mail | N | 1430 hrs |
| 20200213 | Form | Requestor: Phillip Clark, Policy Research Tech (Resolute) | | | REQUEST FOR COPY OF POLICY FORM | Requests all EGFA Policies - Identifies | N | CNA (Resolute) | 20210415 | EG 001074 | 1 | | N | |
| 20200213 | E-Mail | Phillip Clark (Resolute) | Edward Craft (Resolute) | | RE Certifled/Supplemen tal Policy Research - | Just an Update | N | CNA (Resolute) | 20210415 | EG 001072 | 1 | E-mail | N | 2248 hrs |
| 20200213 | E-Mail | Phillip Clark (Resolute) | fsrmail@cnacentral.com | Yolanda Rush (Resolute) | Certifled/Supplemen tal Policy Research - | Requesting All EGFA Policies | N | CNA (Resolute) | 20210415 | EG 001072 | 2 | E-mail | N | 1648 hrs |
| 20200213 | E-Mail | Edward Craft (Resolute) | Stacey White (Resolute) | | EGFA | Attached Is Position Letter | N | CNA (Resolute) | 20210415 | EG 000870 | 1 | E-mail | N | 2030 hrs |
| 20200214 | E-Mail | Legal Requests (Resolute) (signed by Kristel Bolles, | Brad Kline (Resolute) | Stacey White (Resolute) Edward Craft (Resolute) | REDACTED | REDACTED | N | CNA (Resolute) | 20210415 | EG 001125 | 1 | E-mail | N | 0922 hrs |
| 20200214 | E-Mail | Legal Requests (Resolute) (signed by Kristel Bolles | Brad Kline, Esg (Resolute) | Stacey White (Resolute) Edward Craft (Resolute) | REDACTED | REDACTED | N | CNA (Resolute) | 20210415 | EG 001076 | 1 | E-mail | N | 1421 hrs |
| 20200215 | E-Mail | Thomas Bariball (Resolute) | Stacey White (Resolute) | | Eastern Gas | Requests Status | N | CNA (Resolute) | 20210415 | EG 001125 | 1 | E-mail | N | 1250 hrs |
| 20200219 | E-Mail | Brad Kline, Esq, Assoc General Counsel (Resolute) | Legal Requests (Resolute) | Stacey White (Resolute) Edward Craft (Resolute) | REDACTED | REDACTED | N | CNA (Resolute) | 20210415 | EG 001125 | 1 | E-mail | N | 1153 hrs |
| 20200220 | letter | Edward Craft (Resolute) | Francis Murphy, Esq (Nat Grid) | | EGFA - Claimant: Co Commission FCoWV | CNA Coverage Position on All 7 | N | CNA (Resolute) | 20210415 | EG 001135 | 3 | USPS & E-mail | N | |

| Date | Type | From | To | CC | Subject | Description | Priv | Entity | Date | Bates | # | Format | Y/N | Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20200220 | E-Mail | Edward Craft (Resolute) | Francis Murphy, Esq (Nat Grid) | | EGFA - Claimant: Co Commission FCoWV | E-mail Transmitting Final Reports Search Results for EGFA - | N | CNA (Resolute) | 20210415 | EG 001134 | 1 | E-mail | N | 1603 hrs |
| 20200228 | Form | Phillip Clark, Researcher | Edward Craft (Resolute) | | POLICY RESEARCH REPORT FORM | Results for EGFA - | N | CNA (Resolute) | 20210415 | EG 001140 | 1 | E-mail | N | |
| 20200228 | E-Mail | Phillip Clark, Records Specialist (Resolute) | Edward Craft (Resolute) | Stacey White (Resolute) Yolanda Rush (Resolute) | Completed Policy Research - EGFA - | Search found 7 | N | CNA (Resolute) | 20210415 | EG 001138 | 2 | E-mail | N | 1653 hrs |
| 20200309 | E-Mail | Edward Craft (Resolute) | Francis Murphy, Esq (Nat Grid) | | EGFA - County Commission of | CNA has completed Policy Search - No | N | CNA (Resolute) | 20210415 | EG 001141 | 1 | E-mail | N | 1514 hrs |
| 20200401 | E-Mail | Edward Craft (Resolute) | Kay Perry (Resolute) | | EGFA (National Grid Holdings) | REDACTED | N | CNA (Resolute) | 20210415 | EG 001144 | 1 | E-mail | N | 0843 hrs |
| 20200401 | E-Mail | Kay Perry (Resolute) | Edward Craft (Resolute) | | EGFA (National Grid Holdings) | PART REDACTED - There will be Aloha | N | CNA (Resolute) | 20210415 | EG 001144 | 1 | E-mail | N | 1543 hrs |
| 20200401 | E-Mail | Edward Craft (Resolute) | Kay Perry (Resolute) | | EGFA (National Grid Holdings) | PART REDACTED - | N | CNA (Resolute) | 20210415 | EG 001144 | 1 | E-mail | N | 1323 hrs |
| 20200401 | E-Mail | Kay Perry (Resolute) | Edward Craft (Resolute) | | EGFA (National Grid Holdings) | CNA not Noticed Acct has been reopened - | N | CNA (Resolute) | 20210415 | EG 001144 | 1 | E-mail | N | 1517 hrs |
| 20200414 | E-Mail | Edward Craft (Resolute) | Francis Murphy, Esq (Nat Grid) | | EGFA - County Commission of | Asking if there have been | N | CNA (Resolute) | 20210415 | EG 001146 | 1 | E-mail | N | 1330 hrs |
| 20200431 | letter | Bonnie Barrett, Esq (Faeger for Nat Grid) | MOC, Esq - FCoWV | | FCoWV Information Demand No. 2019- | Accepts FCoWV 1st Settle Offer RE CEA | N | CNA (Resolute) | 20210415 | EG 001178 | 6 | E-mail | N | |
| 20200908 | letter | Bonnie Barrett, Esq (Faeger for Nat Grid) | MOC, Esq - FCoWV | | FCoWV Information Demand No. 2019- | Accepts FCoWV Settle Offer RE CEA | N | CNA (Resolute) | 20210415 | EG 001184 | 2 | E-mail | N | |
| 20201112 | E-Mail | Edward Craft (Resolute) | Stacey White (Resolute) | | Eastern Gas is Fuel (HW) - CNA - Closing | Attaching Closing | N | CNA (Resolute) | 20210415 | EG 001172 | 1 | E-mail | N | 1115 hrs |
| 20201112 | Form | | | | ACCOUNT CHANGE TYPE CLAIM FORM | HW Claim Filed- | N | CNA (Resolute) | 20210415 | EG 001163 | 1 | | Y | |
| 20201120 | E-Mail | Stacey White (Resolute) | Edward Craft (Resolute) CLT (Resolute) Diane Somers | | Eastern Gas is Fuel (HW) - CNA - Closing | Closure Approved | N | CNA (Resolute) | 20210415 | EG 001172 | 1 | E-mail | N | 1553 hrs |
| 20201124 | E-Mail | Edward Craft (Resolute) | CLT (Resolute) Diane Somers (Resolute) | Stacey White (Resolute) | Eastern Gas is Fuel (HW) - CNA - Closing | Done. Thank You | N | CNA (Resolute) | 20210415 | EG 001171 | 1 | E-mail | N | 1333 hrs |
| 20201124 | E-Mail | CLT (Resolute) (signed: Sheila James, Claims Technician | Edward Craft (Resolute) Diane Somers (Resolute) | Stacey White (Resolute) CLT (Resolute) | Eastern Gas is Fuel (HW) - CNA - Closing | Per AM - Closing Note is in RAPID | N | CNA (Resolute) | 20210415 | EG 001172 | 1 | E-mail | N | 1330 hrs |
| 20201130 | E-Mail | Diane Somers - Claims Reporting (Resolute) | CLT (Resolute) | Edward Craft (Resolute) Stacey White (Resolute) | Eastern Gas is Fuel (HW) - CNA - Closing | Reports Acct is now CLOSED in RAPID | N | CNA (Resolute) | 20210415 | EG 001171 | 1 | E-mail | N | 1425 hrs |
| 20201130 | E-Mail | CLT (Resolute) (signed: Sheila James, Claims Technician) | Diane Somers (Resolute) | Edward Craft (Resolute) Stacey White (Resolute) | Eastern Gas is Fuel (HW) - CNA - Closing | Requesting Closure of Acct | N | CNA (Resolute) | 20210415 | EG 001169 | 1 | E-mail | N | 1401 hrs |
| 20201211 | letter | Francis Murphy, Esq (Nat Grid) | Edward Craft (Resolute) | | Eastern Gas-Fayette Co., WV | Description of Communications | N | CNA (Resolute) | 20210415 | EG 001783 | 2 | E-mail | N | |
| 20201211 | letter | Francis Murphy, Esq (Nat Grid) | CNA - ATTN: Edward Craft (Resolute) | | Eastern Gas - Fayette County, WV | Advising CNA of Nat Grid | N | CNA (Resolute) | 20210415 | EG 001189 | 1 | E-mail | N | |
| 20210119 | E-Mail | Edward Craft (Resolute) | Stacey White (Resolute) | | EGFA Letter to Insured RE FCoWV | Draft Response & Status of Search | N | CNA (Resolute) | 20210415 | EG 001780 | 1 | E-mail | N | 1628 hrs |
| 20210120 | CNA Search Request Form | Yolanda Rush (Resolute) for Edward Craft (Resolute), Acct | | | CNA Search Request Form | PART REDACTED - Request Review of | N | CNA (Resolute) | 20210415 | EG 001198 | 1 | | N | |
| 20210120 | E-Mail | Yolanda Rush (Resolute) | Cheryl Johnson (Resolute) | | EGFA Supplemental Policy Search Terms & | Supplemental | N | CNA (Resolute) | 20210415 | EG 001196 | 1 | E-mail | N | 1113 hrs |
| 20210120 | E-Mail | Edward Craft (Resolute) | Yolanda Rush (Resolute) | Meline Parekh (Resolute) | EGFA Supplemental Policy Search - CNA | Supplemental | N | CNA (Resolute) | 20210415 | EG 001196 | 1 | E-mail | N | 1050 hrs |
| 20210120 | E-Mail | Edward Craft (Resolute) | Yolanda Rush (Resolute) | Meline Parekh (Resolute) Stacey White (Resolute) | EGFA Supplemental Policy Search - CNA | Forwards Search Request Form & | N | CNA (Resolute) | 20210415 | EG 001193 | 1 | E-mail | N | 1649 hrs |
| 20210121 | E-Mail | Cheryl Johnson (Resolute) | Phillip Clark, Resolute | Yolanda Rush (Resolute) Edward Craft (Resolute) | POLICY RESEARCH ASSIGNMENT- Eastern | Search - States No | N | CNA (Resolute) | 20210415 | EG 001196 | 1 | E-mail | N | 1724 hrs |
| 20210209 | E-Mail | Edward Craft (Resolute) | Diane Somers (Resolute) | Stacey White (Resolute) | EGFA (CNA) | Requests Opening of Act Report & Search for Policies | N | CNA (Resolute) | 20210415 | EG 001785 | 1 | E-mail | N | 1910 hrs |
| 20210213 | letter | Edward Craft (Resolute) | Francis Murphy, Esq (Nat Grid) | | EGFA - Claimant: Co Commission FCoWV | Report RE Search for Policies | N | CNA (Resolute) | 20210415 | EG 001781 | 2 | E-mail | Y | |
| | Table | | | | Table Indentifying 7 Excess Policies - 6 6/1/85-6/1/86; EXCI02779 6/I/85- EXCI03326 6/1/86- 6/1/87 | | | N | CNA (Resolute) | 20210415 | EG 001752 | 1 | | | |
| | E-Mail | | | | | ENTIRE DOCUMENT | | | | EG 001127 | | | | |
| 20200102 | E-Mail | Stacey White (Resolute) | Nate Dyer (Resolute) Edward Craft (Resolute) | Thomas Bariball (Resolute) | Nat Grid / FCoWV DOL: 6/22/61 | PART REDACTED - Attached Claim has | N | CNA (Resolute) | 20210415 | EG 000475 | 1 | E-mail | N | 1442 hrs |
| 20200731 | letter | Bonnie Barrett, Esq (Faeger for Nat Grid) | MOC, Esq - FCoWV | Kim Goslant, Esq | FCoWV Information Demand 2019-002- | Acceptance of FCoWV 1st Settle | N | CNA (Resolute) | 20210415 | EG 000469 | 1 | E-mail | N | |

| 20201214 | E-Mail | Francis Murphy, Esq (Nat Grid) | Edward Craft (Resolute) | Eastern Gas - Fayette County, WV | Provides Link to Documents | N | CNA (Resolute) | 20210415 | EG 000464 | 1 | E-mail | N | 1559 hrs |
| 20200108 | E-Mail | Nate Dyer (Resolute) Boston, MA | Edward Craft (Resolute) | Nat Grid Holdings | PART REDACTED | N | CNA (Resolute) | 20210415 | EG 000415 | 1 | E-mail | N | 0836 hrs |



**UNITED STATES**
**POSTAL SERVICE**

February 8, 2021

Dear Michael Donovan:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9510 8105 7636 0359 4103 24**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | December 28, 2020, 7:50 am |
| **Location:** | CHICAGO, IL 60606 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Insured |
| | Signature Confirmation™ |
| **Actual Recipient Name:** | M SA |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

## Shipment Details

| | |
|---|---|
| **Weight:** | 4.0oz |

## Destination Delivery Address

| | |
|---|---|
| **Street Address:** | 151 N FRANKLIN ST |
| **City, State ZIP Code:** | CHICAGO, IL 60606-1915 |

## Recipient Signature

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004



 **UNITED STATES**
**POSTAL SERVICE**

February 8, 2021

Dear Michael Donovan:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9410 8036 9930 0131 0805 39**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered to Agent for Final Delivery |
| **Status Date / Time:** | January 9, 2021, 11:39 am |
| **Location:** | WAYNE, PA 19087 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Signature Confirmation™ |
| | Up to $50 insurance included |
| **Recipient Name:** | CONTINENTAL INSURANCE  COMPANY |
| **Actual Recipient Name:** | B PATTERSON |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

## Shipment Details

| | |
|---|---|
| **Weight:** | 4.0oz |

## Recipient Signature

Signature of Recipient:
(Authorized Agent)

*Jno*
*C19 Barry*

100 W MATSONFORD RD
WAYNE, PA 19087

Address of Recipient:

*3 — 210*

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004