Stephen E. Hessler (admitted *pro hac vice*)
Patrick Evans (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

James H. M. Sprayregen, P.C.
Ross M. Kwasteniet (admitted *pro hac vice*)
Justin R. Bernbrock (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
KUTAK ROCK LLP
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219-3500
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

*Counsel for the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PATRIOT COAL CORPORATION, *et al.*, | ) Case No. 15-32450 (KLP) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### (I) CONFIRMING THE DEBTORS' FOURTH AMENDED JOINT PLAN OF
### REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE
### AND (II) APPROVING THE FOURTH AMENDED DISCLOSURE STATEMENT

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

having:[1]

---

[1] Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") have the meanings given to them in the *Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 7, 2015 (as amended, supplemented, or modified, the "Plan"), attached hereto as **Exhibit A**, or, where applicable, the *Fourth Amended Disclosure Statement for Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 7, 2015 (as amended, supplemented, or modified, the "Disclosure Statement").

a.　　　　commenced, on May 12, 2015 (the "Petition Date"), these chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.　　　　continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.　　　　filed, on July 13, 2015, the *Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 498] and the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 499];

d.　　　　filed, on August 17, 2015, the *Amended Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 858, Ex. A] and the *Debtors' Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 859, Ex. A];

e.　　　　filed, on August 18, 2015, the *Second Amended Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 880, Ex. A] and the *Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 881, Ex. A];

f.　　　　obtained, on August 20, 2015, entry of the *Order Approving Certain Rights Offering Procedures and Forms in Connection Therewith* [Docket No. 902];

g.　　　　obtained, on August 21, 2015, entry of an order [Docket No. 916] (the "Disclosure Statement Order") approving the *Third Amended Disclosure Statement for Debtors' Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, *see* [Docket No. 941, Ex. A], solicitation procedures, and related notices, forms, and ballots (the "Solicitation Packages") in connection with soliciting votes on the *Debtors' Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, *see* [Docket No. 942, Ex. A];

h.　　　　obtained, on September 17, 2015, entry of an order that, among other things, scheduled the hearing to consider the entry of orders, respectively, approving the Disclosure Statement and confirming the Plan (the "Combined Hearing") and approved the Debtors' proposed solicitation procedures (the "Solicitation Procedures") and related notices, forms, and ballots (collectively, the "Solicitation Packages") [Docket No. 1320] (the "Scheduling and Solicitation Order");

i.　　　　filed, on September 18, 2015, the *Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1332, Ex. A] (the "September 18 Plan") and the *Fourth Amended Disclosure Statement for Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to*

*Chapter 11 of the Bankruptcy Code* [Docket No. 1333, Ex. A] (as amended, modified, or supplemented, the "Disclosure Statement"), which included procedures governing the rights offering contemplated by the Plan (the "Rights Offering"), filed as Exhibit D to the Disclosure Statement (the "Rights Offering Procedures"), including the subscription forms for the Rights Offering, filed as Annexes 1–2 to the Rights Offering Procedures (the "Subscription Forms");

j.    caused the Rights Offering Procedures and Subscription Forms to be served on Holders eligible to participation in the Rights Offering, beginning on or about September 22, 2015, as evidenced by the *Affidavit of Service* [Docket No. 1514];

k.    caused the Solicitation Packages, the Disclosure Statement (with the Plan and other exhibits annexed there), the Disclosure Statement Order, the Scheduling and Solicitation Order, notice of the Combined Hearing (the "Combined Hearing Notice") and the deadline for objecting to confirmation of the Plan ("Confirmation") or adequacy of the Disclosure Statement, and a ballot with instructions to cast a vote to accept or reject the Plan to be available in electronic format on-line or available in paper-copy format upon request, pursuant to the Scheduling and Solicitation Order, beginning on or about September 18, 2015 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Scheduling and Solicitation Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 1530] (the "Solicitation Affidavit");

l.    commenced an auction on September 21, 2015, in compliance with the *Order Approving Debtors' Motion for Entry of an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sales of Certain of the Debtors' Assets, (B) Approving the Form and Manner of Notice, (C) Scheduling Auctions and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief* [Docket No. 406] (the "Bidding Procedures Order") in which the Winning Bidder and the Backup Bidder (each as defined in the Bidding Procedures Order) were identified; with all necessary parties being provided sufficient notice and receiving the *Notice of Designation of Winning and Backup Bids* [Docket No. 1368], as evidenced by the *Affidavit of Service* [Docket No. 1383];

m.    caused notice of the Combined Hearing to be published on September 24, 2015, in *The Wall Street Journal (National Edition)*, as evidenced by the *Affidavit of Publication* [Docket No. 1570], the *Charleston Gazette-Mail*, as evidenced by the *Affidavit of Publication* [Docket No. 1569], and the *Richmond Times-Dispatch*, as evidenced by the *Affidavit of Publication* [Docket No. 1571];

n.    filed, on October 5, 2015, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1554] (the "Confirmation Brief");

o.     filed on October 7, 2015, the *Declaration of Christina Pullo of Prime Clerk LLC Regarding the (I) Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code and (II) Results of the Rights Offering* [Docket No. 1573] (the "Voting Report");

p.     filed, on October 7, 2015, the Plan[2] [Docket No. 1579], which, among other things, incorporated certain amendments to the September 18 Plan, including the Committee Settlement incorporated in Article IV.T of the Plan (the "Committee Settlement"), which provided for a resolution pursuant to the Plan of, among other things, the objection of the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee") to confirmation of the Plan [Docket No. 1241] (the "Committee Objection");

q.     filed, on October 7, 2015, the *Declaration of Raymond Edward Dombrowski, Jr. in Support of an Order Confirming the Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1580] (the "Declaration in Support of Confirmation");

r.     filed, on October 8, 2015, an asset purchase agreement among the Debtors and Blackhawk Mining LLC ("Blackhawk") in connection with Blackhawk's designation as the Winning Bidder as Exhibit S to the Plan Supplement [Docket No. 1593] (as amended, supplemented, or modified from time to time, the "Blackhawk APA" and the transaction contemplated by the Blackhawk APA, the "Blackhawk Transaction");

s.     filed, on October 8, 2015, that certain settlement term sheet by and between Patriot Coal Corporation and the West Virginia Department of Environmental Protection (the "WVDEP") as Exhibit U to the Plan Supplement [Docket No. 1593] (the "WVDEP Settlement Term Sheet"), providing for a resolution pursuant to the Plan of, among other things, *The West Virginia Department of Environmental Protection's Revised and Restated Objection to Confirmation of the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 1422] (the "WVDEP Objection") and certain environmental obligations to the State of West Virginia; and

t.     filed, on October 8, 2015, the proposed *Findings of Fact, Conclusions of Law, and Order (I) Confirming the Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code and (II) Approving the Fourth Amended Disclosure Statement* [Docket No. 1591].

---

[2]    The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order. To the extent that there may be any conflict between the terms contained in the Plan and this Confirmation Order, the terms of the Confirmation Order will be controlling, to the extent of such conflict.

This Court having:

    a.      set October 7, 2015, as the date for the commencement of the Combined Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

    b.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Declaration in Support of Confirmation, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

    c.      held the Combined Hearing;

    d.      heard the statements and arguments made by counsel in respect of Confirmation;

    e.      considered all oral representations, documents, filings, and other evidence regarding Confirmation;

    f.      overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

    g.      taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to Confirmation or approval of the Disclosure Statement having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Combined Hearing establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

KE 37539997

# I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED

THAT:

## A.   Jurisdiction and Venue[3]

1.     On the Petition Date, the Debtors commenced the Chapter 11 Cases.  Venue in

this Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408

and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The

Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  The Court has

exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of

the Bankruptcy Code and should be confirmed.

## B.   Eligibility for Relief

2.     The Debtors were and continue to be entities eligible for relief under section 109

of the Bankruptcy Code.

## C.   Commencement and Joint Administration of the Chapter 11 Cases

3.     On May 13, 2015, the Court entered an order [Docket No. 48] authorizing the

joint administration and procedural consolidation of the Chapter 11 Cases in accordance with

Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been

made in the Chapter 11 Cases.

## D.   Consideration on Account of Allowed Prepetition ABL Facility Claims Are Not Proceeds of Any Collateral Other than the ABL Priority Collateral

4.     The consideration provided to the Holders of Allowed Prepetition ABL Facility

Claims pursuant to Article III.B.4 of the Plan, including any Cash and loans or letters of credit

issued under the Combined Company New ABL, results from and is on account of the Allowed

---

[3]     Headings to sections and paragraphs in this Confirmation Order are inserted for convenience of reference only and are not intended to affect the interpretation of this Confirmation Order.

KE 37539997

Prepetition ABL Facility being oversecured by ABL Priority Collateral (as defined in the First-Lien Intercreditor Agreement). The Combined Company New ABL replaces and refinances the Allowed Prepetition ABL Facility and, as of the Effective Date, the Combined Company New ABL shall have a first-priority lien on current assets, including receivables, inventory and certain cash, contributed by Blackhawk to the Combined Company and which assets were not subject to any liens or claims held by the Debtors' creditors. The Debtors' distributions on account of the Allowed Prepetition ABL Facility Claims are not proceeds of any collateral other than ABL Priority Collateral (as defined in the First-Lien Intercreditor Agreement) and all such consideration is provided to the Holders of such Claims in exchange for, among other things, the release of their liens on the ABL Priority Collateral as contemplated by the Plan (including Articles IV.G and IV.R of the Plan).

**E.      Plan Supplement**

5.      Commencing September 2, 2015 [Docket No. 1047], and continuing thereafter on September 25, 2015 [Docket Nos. 1405 and 1406] and on October 8, 2015 [Docket Nos. 1593 and 1596], the Debtors caused the Plan Supplement to be filed with the Court. The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Scheduling and Solicitation Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement.

**F.      Modifications to the Plan**

6.      Any modifications to the Plan described or set forth in this Confirmation Order (a) were appropriate under the facts and circumstances of the Chapter 11 Cases, (b) do not require, in accordance with Bankruptcy Rule 3019, additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code,

and (c) do not require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

**G.    Objections Overruled**

7.    Any resolution of objections to Confirmation explained on the record at the Combined Hearing is hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

**H.    DIP Order**

8.    On June 4, 2015, the Court entered the *Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing Use of Cash Collateral, (C) Granting Liens and Superpriority Claims, (D) Granting Adequate Protection, (E) Modifying the Automatic Stay and (G) Granting Related Relief* [Docket No. 230].

**I.    Disclosure Statement**

9.    The Disclosure Statement (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including in connection with the Combined Hearing) contains "adequate information" within the meaning of Section 1125 of the Bankruptcy Code and is hereby approved in all respects.

10.    The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for creditors to have made an informed decision to accept or reject the Plan.

**J.    Scheduling and Solicitation Order**

11.    On September 17, 2015, the Bankruptcy Court entered the Scheduling and Solicitation Order, which, among other things: (a) fixed September 28, 2015 as the deadline for objecting to confirmation of the Plan and/or adequacy of the Disclosure Statement (the "Plan Objection Deadline"); (b) fixed October 2, 2015, at 4:00 p.m. (prevailing Eastern Time), as the

8

deadline for voting to accept or reject the Plan (the "Voting Deadline"); and (c) set October 5, 2015, as the date for the commencement of the Combined Hearing, which was subsequently adjourned to October 7, 2015.

**K.    Transmittal and Mailing of Materials; Notice**

12.    Due, adequate, and sufficient notice of the Rights Offering Procedures, the Disclosure Statement, the Plan, the Plan Supplement, the Combined Hearing, the Voting Deadline, and all deadlines for voting on the Plan or objecting to Confirmation or the adequacy of the Disclosure Statement has been given in substantial compliance with the Scheduling and Solicitation Order, Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), and the Local Bankruptcy Rules for the Eastern District of Virginia (the "Local Rules"), and no other or further notice is or shall be required.

**L.    Solicitation**

13.    The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation (including the extended solicitation period for voting for holders of Class 5 Claims) complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Scheduling and Solicitation Order, and all other applicable rules, laws, and regulations.

**M.    Voting Report**

14.    Prior to the Combined Hearing, the Debtors caused the Voting Report to be filed. The procedures used to tabulate Ballots were fair and conducted in accordance with the Scheduling and Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

15.    As set forth in the Plan and the Disclosure Statement, holders of Claims in Classes 4, 5, 6, 7, and 8 (collectively, the "Voting Classes") were eligible to vote on the Plan in

KE 37539997

accordance with the Solicitation Procedures. Holders of Claims in Classes 1, 2, and 3 are Unimpaired and conclusively presumed to accept the Plan and, therefore, could not vote on the Plan. Holders of Claims or Interests in Classes 9, 10, and 11 (collectively, the "Deemed Rejecting Classes") are Impaired, entitled to no recovery under the Plan, are therefore deemed to have rejected the Plan, and, therefore, could not vote on the Plan.

16. As evidenced by the Voting Report, holders of Claims in Classes 6 and 8 (together with the Deemed Rejecting Classes, collectively, the "Rejecting Classes") voted to reject the Plan, and holders of Claims in Classes 4, 5, and 7 (collectively, the "Impaired Accepting Classes") voted to accept the Plan.

**N. Bankruptcy Rule 3016**

17. The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

**O. Burden of Proof**

18. The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.

**P. Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

19. The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

KE 37539997

> a. **Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

20.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

> i. **Sections 1122 and 1123(a)(1)—Proper Classification**

21.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into eleven different Classes, based on differences in the legal nature or priority of such Claims against and Interests in each Debtor (other than Administrative Claims, DIP Claims, Adequate Protection Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and are required not to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code or the DIP Order, as applicable).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among holders of Claims and Interests.

22.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

KE 37539997

### ii.    Sections 1123(a)(2)—Specification of Unimpaired Classes

23.    Article III of the Plan specifies that Claims in Classes 1, 2, and 3[4] are Unimpaired under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.    Sections 1123(a)(3)—Specification of Treatment of Impaired Classes

24.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.    Sections 1123(a)(4)—No Discrimination

25.    Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.    Section 1123(a)(5)—Adequate Means for Plan Implementation

26.    Articles IV and VII of the Plan specifically provide the means for the Plan's execution and implementation, including:  (a) the sources of consideration for distributions under the Plan; (b) the Blackhawk Transaction; (c) the distribution of Rights as contemplated by the Rights Offering; (d) the transaction contemplated by the asset purchase agreement among the Debtors and Virginia Conservation Legacy Fund and its affiliate (collectively, "VCLF"), whereby VCLF agreed to acquire certain assets and assume certain liabilities excluded from the Blackhawk Transaction (as amended, supplemented, or modified from time to time, the "VCLF APA" and the transaction contemplated by the VCLF APA, the "VCLF Transaction"); (e) the

---

[4]    For the avoidance of any doubt, Class 3 includes all Allowed Secured Claims pursuant to section 506(b) of the Bankruptcy Code, if any.

12

WVDEP Settlement; (f) the Committee Settlement; (g) the good-faith compromise and settlement of Claims; (h) the release of mortgages, deeds of trust, Liens, pledges, and other security interests against property of the Estates; (i) the cancellation of securities and any other instrument providing equity in the Debtors; (j) the general authority to take all actions necessary to effectuate the transactions contemplated by the Plan, including with respect to the Blackhawk Transaction, the VCLF Transaction, and the *Liquidating Trust Agreement* attached as <u>Exhibit Q</u> to the Plan Supplement (the "<u>Liquidating Trust Agreement</u>"), each as applicable; (k) the general authority for all corporate actions necessary to effectuate the Plan; (l) the exemption from certain taxes and fees to the extent provided herein; (m) the preservation of Causes of Action to the extent not released, waived, exculpated, or enjoined under the Plan; (n) the Wind Down and dissolution of the Debtors in accordance with the Liquidating Trust Agreement, (o) if applicable, the formation of the Liquidating Trust and the appointment of the Liquidating Trustee, and (p) distribution of the Payout Event Cash if a Payout Event occurs pursuant to the Plan.[5] Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.     Section 1123(a)(6)—Charter

27.     VCLF and the Liquidating Trust, as applicable, will amend, as necessary, their organizational documents to prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.   Accordingly, the Plan satisfies the requirements of section 1123(a)(6).

### vii.     Section 1123(a)(7)—Directors, Officers, and Trustees

28.     Article IV of the Plan satisfies the requirement of section 1123(a)(7) of the Bankruptcy Code by providing for the establishment of the Liquidating Trust and the

---

[5]     Pursuant to Article X.B of the Plan, the Prepetition LC Agent reserves its right to challenge the implementation of the Payout Event, including the proposed distribution to Holders of Claims contemplated therefrom.

KE 37539997

appointment of the Liquidating Trustee, which is consistent with the interests of creditors and equity security holders, and the Debtors' officers and directors will be discharged of their duties as of the Effective Date.

### b.   Section 1123(b)—Discretionary Contents of the Plan

29.   The Plan contains various provisions that may be construed as discretionary but not necessary for Confirmation under the Bankruptcy Code.  Any such discretionary provision complies with section 1123(b) of the Bankruptcy Code and is not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies section 1123(b).

#### i.   Compromise and Settlement

30.   In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, (a) the provisions of the Plan generally constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest, including claims asserted through filed objections to Confirmation, (b) the Committee Settlement constitutes a good-faith compromise of the controversies raised in the Committee Objection, and (c) the written settlement agreement by and among the WVDEP, the Debtors, Blackhawk, and VCLF as contemplated by the WVDEP Settlement Term Sheet (the "WVDEP Settlement") constitutes a good-faith compromise of the controversies raised in the WVDEP Objection.

#### ii.   Debtor Release

31.   The releases and discharges of Claims and Causes of Action by the Debtors described in Article VIII.C of the Plan in accordance with section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment under Bankruptcy

14

Rule 9019. The Debtors' or the Liquidating Trust's pursuit of any such claims against the Released Parties is not in the best interest of these Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims. The Debtor Release is furthermore an integral part of the Plan, the Blackhawk Transaction, and the VCLF Transaction, and is in the best interests of the Debtors' Estates.

32. The Debtor Release appropriately offers protection to parties that constructively participated in the Debtors' restructuring efforts. Such protections from liability facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Plan.

33. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. In light of the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

### iii. Third Party Release

34. The Third Party Release, set forth in Article VIII.D of the Plan, is an essential provision of the Plan. The Third Party Release is: (a) a consensual third-party release; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the Third Party Release against any of the Released Parties.

35. The Third Party Release is an integral part of the Plan. Like the Debtor Release, the Third Party Release facilitated participation in both the Debtors' Plan and the

chapter 11 process generally.  As such, the Third Party Release appropriately offers protection to parties that constructively participated in the Debtors' restructuring process.

36.     The scope of the Third Party Release in the Plan is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third Party Release and the opportunity to opt out of the Third Party Release, as applicable.  Such releases by holders of Claims that voted in favor of the Plan, that abstained from voting and did not timely submit the relevant opt-out form, or that otherwise consented to give such release are consensual.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Third Party Release to the Plan, the Third Party Release is approved.

### iv.     Exculpation

37.     The Exculpation provisions set forth in Article VIII.E of the Plan are essential to the Plan.  The record in the Chapter 11 Cases fully supports the Exculpation and the Exculpation provisions set forth in Article VIII.E of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

### v.     Injunction

38.     The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third Party Release, and the Exculpation provisions in Article VIII.E of the Plan.  Such injunction provisions are appropriately tailored to achieve those purposes.

### vi.     Preservation of Claims and Causes of Action and Assignment to Liquidating Trust

39.     Article IV.O of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy

16

Code.  Causes of Action not released, waived, or exculpated by the Debtors will be transferred or assigned to the Liquidating Trust as provided by the Plan.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and holders of Claims and Interests.  For the avoidance of any doubt, Causes of Action waived or released under the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, and the DIP Orders will not transfer to the Liquidating Trust and will not constitute Liquidating Trust Assets.

**c.    Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code**

40.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

41.    Votes to accept or reject the Plan were solicited by the Debtors and their agents pursuant to section 1125(a) of the Bankruptcy Code and the Scheduling and Solicitation Order, and the Debtors' use of the Disclosure Statement to solicit votes on the Plan was appropriate.

42.    The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Scheduling and Solicitation Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article VIII.E of the Plan.

KE 37539997

43.     The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

### d.     Section 1129(a)(3)—Proposal of Plan in Good Faith

44.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Blackhawk Transaction, the VCLF Transaction, the Plan itself, and the process leading to its formulation. The Debtors', Blackhawk's, and VCLF's good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, and the record of the Combined Hearing and other proceedings held in the Chapter 11 Cases.

45.     The Plan is the product of arm's-length and good-faith negotiations between and among the Debtors, the Committee, the official committee of non-union retirees appointed in the Chapter 11 Cases (the "Retiree Committee"), Blackhawk, VCLF, the New Money Lender Entities,[6] and certain other of the Debtors' stakeholders.  The Plan itself and the process leading

---

[6]     "New Money Lender Entities" means, collectively, the following in any and all capacities, including, without limitation, as Holders of Claims and/or Interests:  (a) the Combined Company 1.5 Lien Term Loan Agent; (b) DIP Lenders, (c) the Combined Company 1.5 Lien Term Loan Lenders; and (d) with respect to each of the foregoing Entities in clauses (a) through (c) all such Entities' respective current and former affiliates and all such Entities' and such affiliates' respective current and former attorneys, financial advisors, consultants, representatives, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, members (including ex officio members), officers, directors, employees, partners, subsidiaries, principals, agents, managers, administrators, trustees, managed funds, special purpose vehicles, accounts, fund managers and representatives, and successors and assigns of each of the foregoing in any and all capacities directors,

18

to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize stakeholder value. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

46.     Various parties filed objections to the Plan and to Confirmation asserting, *inter alia*, that one or more of the New Money Lender Entities are Plan proponents and have not proceeded in good faith in the Chapter 11 Cases. *See, e.g.*, [Docket Nos. 1422, 1451]. The Court hereby overrules any such lack of good-faith objections and finds that the New Money Lender Entities are not Plan proponents and, in any case, the New Money Lender Entities have proceeded in good faith in these Chapter 11 Cases, including, without limitation, because the New Money Lender Entities were the only parties willing to provide the Debtors with the DIP Facility necessary to prosecute the Chapter 11 Cases (*see* DIP Order at paragraphs (E)(xi), (I), (J), (L), and (M)), and are the only creditors who agreed to provide the additional financing needed to consummate the Restructuring Transactions set forth in the Plan and approved in this Order.

**e.     Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable**

47.     The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses paid by the Debtors' Estates in connection with the Chapter 11 Cases or in connection with the Plan and incident to the Chapter 11 Cases satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

---

employees, partners, subsidiaries, principals, agents, managers, administrators, trustees, managed funds, fund managers and representatives, and successors and assigns of each of the foregoing in any and all capacities.

KE 37539997

     **f.**       **Section 1129(a)(5)—Disclosure of Directors and Officers and Consistency with the Interests of Creditors and Public Policy**

48.     The Debtors have disclosed the identities of all officers and directors for the Combined Company in <u>Exhibit B</u> to the Plan Supplement and all officers and directors for VCLF in <u>Exhibit J</u> to the Plan Supplement.  The Debtors have identified the Liquidating Trustee in <u>Exhibit V</u> to the Plan Supplement.  Accordingly, the Plan satisfies the requirements of section 1129(a) of the Bankruptcy Code.

     **g.**       **Section 1129(a)(6)—Approval of Rate Changes**

49.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

     **h.**       **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests**

50.     The evidence in support of the Plan that was proffered or adduced at the Combined Hearing, including pursuant to the applicable financial projections and facts and circumstances of the Chapter 11 Cases, establishes that holders of Allowed Claims or Interests in every Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

     **i.**       **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

51.     Because the Plan has not been accepted by the Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and thus satisfies section 1129(b) of the

KE 37539997

Case 2:21-cv-00307    Document 59-1    Filed 08/17/21    Page 21 of 152 PageID #: 2474

Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) are satisfied.

**j.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

52.     The treatment of DIP Claims, Adequate Protection Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k.      Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

53.     As set forth in the Voting Report, Holders of Claims in Classes 4, 5, and 7 voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

**l.      Section 1129(a)(11)—Feasibility of the Plan**

54.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing, including the applicable financial projections: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other credible evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, except as provided in the Plan; (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan, including sufficient amounts of Cash to reasonably ensure payment of Allowed Administrative Claims, Allowed Priority Tax

Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed Professional

Fees Claims, Adequate Protection claims, DIP Claims, Cure Costs, and other expenses in

accordance with the terms of the Plan and section 507(a) of the Bankruptcy Code; and

(e) establishes that Blackhawk and VCLF will likely be able to satisfy future obligations with

respect to property of the estate sold to such parties.

55.     Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the

Bankruptcy Code.

### m.      Section 1129(a)(12)—Payment of Statutory Fees

56.     Article II.F of the Plan provides that all fees payable pursuant to

section 1930(a)(6) of the Judicial Code will be paid by the Debtors (before or on the Effective

Date) or the Liquidating Trustee (after the Effective Date).  Accordingly, the Plan satisfies the

requirements of section 1129(a)(12) of the Bankruptcy Code.

### n.      Section 1129(a)(13)—Retiree Benefits

57.     Pursuant to the *Agreed Order between the Debtors and the United Mine Workers

of America Authorizing, but not Directing, the Debtors to Modify Certain Retirees Benefits*, the

Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114

of the Bankruptcy Code).  Therefore, section 1129(a)(13) of the Bankruptcy Code does not apply

to these Chapter 11 Cases.

### o.      Section 1129(b)—Confirmation of Plan over Nonacceptance of Impaired Class

58.     Notwithstanding the fact that the Rejecting Classes have not accepted the Plan,

the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because the

Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting

Classes.  Accordingly, the Plan is fair and equitable toward all Holders of Claims and Interests in

KE 37539997

the Rejecting Classes. As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

### p.     Section 1129(c)—Only One Plan

59.     Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

### q.     Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act

60.     No governmental unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

### r.     Satisfaction of Confirmation Requirements

61.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

### s.     Good Faith

62.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan accomplishes this goal. Accordingly, the Debtors have been, are, and will continue acting in good faith if they proceed to: (a) consummate the Plan, the Blackhawk Transaction,

and the VCLF Transaction, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

> **t.** **Conditions to Effective Date**

63. Entry of the Confirmation Order shall satisfy the conditions to the Effective Date as set forth in Article IX.A.1 of the Plan, *provided that* the Confirmation Order shall not have been stayed, modified, or vacated on appeal. The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in Article X.A of the Plan may only be waived in accordance with the Plan.

> **u.** **Implementation**

64. All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.

> **v.** **Retention of Jurisdiction**

65. The Court properly retains jurisdiction over the matters set forth in Article XII and other applicable provisions of the Plan.

> **w.** **Good Faith of Blackhawk; No Collusion**

66. Blackhawk is not an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors.

67. Blackhawk is purchasing the Blackhawk Purchased Assets in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is

therefore entitled to, and granted pursuant to paragraph 115 below, the full rights, benefits, privileges, and protections of that provision, and has otherwise proceeded in good faith in all respects in connection with the Blackhawk Transaction in that, inter alia:   (i) Blackhawk recognized that the Debtors were free to deal with any other party interested in acquiring the Blackhawk Purchased Assets; (ii) Blackhawk complied with the provisions in the Bidding Procedures Order; (iii) Blackhawk agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) Blackhawk has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (v) no common identity of directors or controlling stockholders exists between Blackhawk, on the one hand, and any of the Debtors, on the other hand; and (vi) the negotiation and execution of the Blackhawk APA and related sale documents were at arms' length and in good faith.

68.     None of the Debtors, Blackhawk, or any of their respective affiliates, partners, members, subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, and their respective successors and assigns, each in their capacity as such, have engaged in any conduct that would cause or permit the Blackhawk APA or any of the related Blackhawk Transaction Documents, or the consummation of the Blackhawk Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

**x.     Business Judgment; Compliance with Bidding Procedures Order; Highest and Best Offer for Blackhawk Purchased Assets**

69.     The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Blackhawk Transaction and other transactions contemplated by the Blackhawk APA and the related

KE 37539997

Blackhawk Transaction Documents, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors and their Estates. Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of depreciation of the value of the Blackhawk Purchased Assets if the Blackhawk Transaction is not consummated promptly; (ii) the Blackhawk APA constitutes the highest or otherwise best offer for the Blackhawk Purchased Assets; (iii) the Blackhawk APA and the closing of the Blackhawk Transactions will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses with respect to the Blackhawk Purchased Assets; and (iv) unless the Blackhawk Transaction is concluded expeditiously as provided for in this Confirmation Order and pursuant to the Blackhawk APA, potential creditor recoveries may be substantially diminished.

70.     In accordance with the Bidding Procedures Order, the Blackhawk APA was deemed a Qualified Bid (as defined in the Bidding Procedures Order) and was eligible to participate at the Auction.

71.     The Debtors conducted an auction process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Blackhawk Purchased Assets. The Auction was duly noticed and conducted in a non-collusive, fair, and good-faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Blackhawk Purchased Assets.

72.     The Blackhawk APA constitutes the highest and best offer for the Blackhawk Purchased Assets and will provide a greater recovery for the Debtors' Estates than would be

provided by any other available alternative.  The Debtors' determination that the Blackhawk APA constitutes the highest and best offer for the Blackhawk Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

73.    The Blackhawk APA represents a fair and reasonable offer to purchase the Blackhawk Purchased Assets under the circumstances of these Chapter 11 Cases.  No other Person or entity or group of entities has offered to purchase the Blackhawk Purchased Assets for greater economic value to the Debtors' Estates than Blackhawk.

74.    Approval of the Blackhawk APA, and the prompt consummation of the Blackhawk Transaction contemplated thereby, is in the best interests of the Debtors and their Estates.

**y.    No Fraudulent Transfer; Blackhawk Not a Successor**

75.    The Blackhawk APA and related Blackhawk Transaction Documents were not entered into, and the Blackhawk Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under applicable law, and none of the parties to the Blackhawk APA or any of the related sale documents are consummating the Blackhawk Transaction with any fraudulent or otherwise improper purpose.  The purchase price for the Blackhawk Purchased Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

76.    The transactions contemplated by the Blackhawk APA do not cause there to be, and there is not, (i) a consolidation, merger, or de facto merger of Blackhawk, on the one hand, with or into the Debtors or the Debtors' Estates, on the other hand, or vice versa, (ii) a substantial

continuity between Blackhawk, on the one hand, and the Debtors or the Debtors' Estates, on the other hand, (iii) a common identity between Blackhawk, on the one hand, and the Debtors or the Debtors' Estates, on the other hand, or (iv) a mere continuation of the Debtors or their Estates, on the one hand, with Blackhawk, on the other hand.  Blackhawk is not and shall not be deemed, as a result of any action taken in connection with the Blackhawk Transaction, to:  (1) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Blackhawk APA); or (2) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors.

### z.    Good Faith of VCLF; No Collusion

77.    VCLF is not an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors.

78.    VCLF is purchasing the VCLF Purchased Assets in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to, and granted pursuant to paragraph 123 below, the full rights, benefits, privileges, and protections of that provision, and has otherwise proceeded in good faith in all respects in connection with the VCLF Transaction in that, inter alia:  (i) VCLF recognized that the Debtors were free to deal with any other party interested in acquiring the VCLF Purchased Assets; (ii) VCLF complied with the provisions in the Bidding Procedures Order; (iii) VCLF agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) VCLF has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (v) no common identity of directors or controlling stockholders exists between VCLF, on the one hand, and any of the Debtors, on the other hand; and (vi) the negotiation and execution of the VCLF APA and related sale documents were at arms' length and in good faith.

KE 37539997

79.     None of the Debtors, VCLF, or any of their respective affiliates, partners, members, subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, and their respective successors and assigns, each in their capacity as such, have engaged in any conduct that would cause or permit the VCLF APA or any of the related VCLF Transaction Documents, or the consummation of the VCLF Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

**aa.     Business Judgment; Compliance with Bidding Procedures Order; Highest and Best Offer for VCLF Purchased Assets**

80.     The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the VCLF Transaction and other transactions contemplated by the VCLF APA and the related VCLF Transaction Documents, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors and their Estates.  Such business reasons include, but are not limited to, the facts that:  (i) there is substantial risk of depreciation of the value of the VCLF Purchased Assets if the VCLF Transaction is not consummated promptly; (ii) the VCLF APA constitutes the highest or otherwise best offer for the VCLF Purchased Assets; (iii) the VCLF APA and the closing of the VCLF Transactions will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses with respect to the VCLF Purchased Assets; and (iv) unless the VCLF Transaction is concluded expeditiously as provided for in this Confirmation Order and pursuant to the VCLF APA, potential creditor recoveries may be substantially diminished.

81.     In accordance with the Bidding Procedures Order, the VCLF APA was deemed a Qualified Bid (as defined in the Bidding Procedures Order).

82.     The Debtors conducted an auction process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order.  The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the VCLF Purchased Assets.  The VCLF Transaction was duly noticed and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the VCLF Purchased Assets.

83.     The VCLF APA constitutes the highest and best offer for the VCLF Purchased Assets and will provide a greater recovery for the Debtors' Estates than would be provided by any other available alternative.  The Debtors' determination that the VCLF APA constitutes the highest and best offer for the VCLF Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

84.     The VCLF APA represents a fair and reasonable offer to purchase the VCLF Purchased Assets under the circumstances of these Chapter 11 Cases.  No other Person or entity or group of entities has offered to purchase the VCLF Purchased Assets for greater economic value to the Debtors' Estates than VCLF.

85.     Approval of the VCLF APA, and the prompt consummation of the VCLF Transaction contemplated thereby, is in the best interests of the Debtors and their Estates.

**bb.     No Fraudulent Transfer; VCLF Not a Successor**

86.     The VCLF APA and related VCLF Transaction Documents were not entered into, and the VCLF Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under applicable law, and none of the parties to the VCLF APA or any of the related sale documents are consummating the VCLF Transaction with any

KE 37539997

fraudulent or otherwise improper purpose.  The purchase price for the VCLF Purchased Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

87.     The transactions contemplated by the VCLF APA do not cause there to be, and there is not, (i) a consolidation, merger, or de facto merger of VCLF, on the one hand, with or into the Debtors or the Debtors' Estates, on the other hand, or vice versa, (ii) a substantial continuity between VCLF, on the one hand, and the Debtors or the Debtors' Estates, on the other hand, (iii) a common identity between VCLF, on the one hand, and the Debtors or the Debtors' Estates, on the other hand, or (iv) a mere continuation of the Debtors or their Estates, on the one hand, with VCLF, on the other hand.  VCLF is not and shall not be deemed, as a result of any action taken in connection with the VCLF Transaction, to: (1) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the VCLF APA); or (2) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors.

## II.     ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

88.     This Confirmation Order approves the Disclosure Statement.

89.     This Confirmation Order confirms the Plan.

90.     This Confirmation Order approves the Plan Supplement.

KE 37539997

91.      The Plan and this Confirmation Order will be effective and binding on all parties in interest in the Chapter 11 Cases, including: (a) the Debtors; (b) the Committee; (c) the Retiree Committee; (d) Blackhawk; (e) VCLF; (f) the Liquidating Trust and the Liquidating Trustee; (g) the Government Environmental Entities; (h) all holders of Claims and Interests, whether or not Impaired under the Plan and whether or not such Holders have accepted or rejected the Plan or affirmatively voted to reject the Plan; (i) each Person or Entity receiving, retaining, or otherwise acquiring property under the Plan; and (j) any non-Debtor party to an Executory Contract or Unexpired Lease with the Debtors.

92.      The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document or exhibit will be approved in their entirety.

## A.      Objections

93.      To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have been otherwise resolved as stated by the Debtors on the record of the Combined Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled on the merits.

## B.      Findings of Fact and Conclusions of Law

94.      The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Combined Hearing in relation to

Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Combined Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

**C.     The Releases, Injunction, Exculpation, and Related Provisions under the Plan**

95.     The following releases, injunctions, exculpations, and related provisions set forth in Article IX of the Plan are hereby approved and authorized in their entirety:

**i.     The Debtor Release**

96.     The Debtor Release set forth in Article VIII.C of the Plan is hereby approved.

**ii.     The Third Party Release**

97.     The Third Party Release set forth in Article VIII.D of the Plan is hereby approved.[7]

**iii.     Exculpation**

98.     The Exculpation provisions set forth in Article VIII.E of the Plan are hereby approved.[8]

**iv.     Injunction**

99.     The injunction provisions set forth in Article VIII.F of the Plan are hereby approved. Article VIII.F of the Plan is necessary to implement the Plan and to preserve and enforce, among other things, the Debtors Release, the Third Party Release, and the Exculpation.

---

[7]     For the avoidance of doubt, in no circumstance shall Peabody, Arch, or Alcoa be Released Parties under Article VIII.D of the Plan.

[8]     For the avoidance of doubt, in no circumstance shall Peabody, Arch, or Alcoa be Exculpated Parties under Article VIII.E of the Plan.

KE 37539997

v.        **WVDEP Settlement**

100.    The WVDEP Settlement, as implemented pursuant to the Plan and subject to final documentation as contemplated by the WVDEP Settlement Term Sheet, is hereby approved.

vi.       **Committee Settlement**

101.    The Committee Settlement, as implemented pursuant to the Plan, is hereby approved.

vii.      **UMWA Health & Retirement Funds Settlement**

102.    The 1974 Pension Plan shall have an Allowed Administrative Claim in the amount of $23 million, which shall be satisfied *first* by any recovery it receives pursuant to the Excess Cash Distribution Mechanism in Article IV.U of the Plan and *then*, to the extent not satisfied in full by distributions through the Excess Cash Distribution Mechanism, through *pro rata* sharing of the General Unsecured Claims Distribution in Article III.B.8 of the Plan.  The 1974 Pension Plan shall also have an Allowed General Unsecured Claim in the amount of $888 million.

103.    The United Mine Workers of America 1992 Benefit Plan's and United Mine Workers of America Combined Benefit Fund's claims against Alcoa are expressly preserved.

**D.      Post-Confirmation Notices, Professional Compensation, and U.S. Trustee Statutory Fees**

104.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than three Business Days after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, must cause notice of Confirmation (the "Notice of Confirmation") to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service to all parties served with the Combined Hearing Notice; *provided that* no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Combined Hearing

34

Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

105.     To supplement the notice procedures described in the preceding sentence, no later than five Business Days after the Effective Date, the Liquidating Trustee shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *USA Today* (National Edition).  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

106.     The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of the Confirmation Order to such filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

107.     From and after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall, without the necessity for any approval by the Court, pay all reasonable fees and expenses of the professional Persons incurred by the Debtors, the Committee, and the Retiree Committee as set forth in Article XII.D of the Plan and subject to section 2.06(c) of the Blackhawk APA.

108.     In accordance with Article II.B of the Plan and subject to section 2.06(c) of the Blackhawk APA, the amount of Professional Fee Claims owing to the Professionals will be paid in Cash to such Professionals by the Debtors, the Liquidating Trust, or at the Liquidating Trust's direction, without interest or other earnings therefrom, when such Claims are approved by the

KE 37539997

Bankruptcy Court; *provided* that, in accordance with Article II.B.1 of the Plan, all final requests for payment of Professional Fee Claims must be Filed with the Bankruptcy Court and served on the Debtors (or the Liquidating Trustee) no later than the first Business Day that is sixty days after the Effective Date; *provided further* that, notwithstanding the foregoing, on the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall pay all unpaid fees earned and expenses incurred, including any fee(s) earned in connection with the Blackhawk Transaction and/or the VCLF Transaction, to the Debtors' retained investment banker; *provided further* that the Debtors' retained investment banker shall file a final request for Professional Fee Claims, including with respect to any fee(s) earned in connection with the Blackhawk Transaction, the VCLF Transaction, and/or any financing commitement, in accordance with Article II.B.1 of the Plan.

109.   **U.S. Trustee Statutory Fees**.  In accordance with Article II.F of the Plan, all fees payable pursuant to section 1930 of title 28 of the United States Code due and payable through the Effective Date, and any interest accruing thereto, shall be paid by the Debtors on or before the Effective Date, and amounts due thereafter shall be paid by the Liquidating Trustee in the ordinary until the entry of a final decree closing the respective Debtor's Chapter 11 Case.  Any deadline for filing claims in these Chapter 11 Cases shall not apply to fees payable by the Debtors pursuant to section 1930 of title 28 of the United States Code or any interest accruing thereto.

**E.   Notice of Subsequent Pleadings**

110.   Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the United States Trustee; (b) the Debtors or the Liquidating Trust, as

applicable, and counsel; (c) Blackhawk and its counsel; (d) VCLF and its counsel; and (e) any party known to be directly affected by the relief sought by such pleadings.

## F.    Retention of Jurisdiction

111.    This Court properly may retain jurisdiction over the matters set forth in Article XI and other applicable provisions of the Plan.

## G.    Reports

112.    After the Effective Date, the Debtors will have no obligation to file with the Court or serve on any parties monthly operating reports that the Debtors were obligated to file under the Bankruptcy Code or a Court order (even for those periods for which a monthly operating report was not filed prior to the Effective Date), ordinary course professional reports, and monthly or quarterly reports for Professionals.  The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidating Trustee.

## H.    Effectiveness of All Actions

113.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors, or the Purchaser and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

## I.    Blackhawk Transaction

114.    **Consummation of the Blackhawk APA; Transfer Free and Clear of Liens and Claims**.    On the Effective Date, the Debtors shall consummate the transactions contemplated by the Blackhawk APA pursuant to the terms thereof in exchange for the Purchase

37

Price (as defined in the Blackhawk APA); provided that the conditions precedent set forth in the Blackhawk APA have been satisfied or waived in accordance with the terms of the Blackhawk APA.  Upon entry of this Confirmation Order by this Court, all matters provided for under the Blackhawk APA will be deemed authorized and approved without any requirement of further act or action by the Debtors' shareholders or the Debtors' boards of directors.  On the Effective Date, in consideration and in exchange for the Purchase Price (as defined in the Blackhawk APA), the Debtors shall tender to Blackhawk duly executed bills of sale and assignment or other appropriate instruments and documents transferring title to and interest in the Blackhawk Purchased Assets, and such transfer shall be free and clear of all Liens, Claims and interests (other than Permitted Encumbrances (as defined in the Blackhawk APA)) pursuant to the terms and conditions of the Blackhawk APA.  The provisions of this Confirmation Order authorizing and approving the transfer of the Blackhawk Purchased Assets free and clear of such Liens, Claims and interests shall be self-executing, and neither the Debtors nor Blackhawk shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Confirmation Order.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Blackhawk Transaction.

115.  **Good Faith of Blackhawk**.  The transactions contemplated by the Blackhawk APA are undertaken by the Debtors and Blackhawk without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the Blackhawk Transaction shall not affect the validity of the Blackhawk Transaction (including the assumption, assignment and/or transfer of any Executory Contract or Unexpired Lease), unless such

authorization and consummation of such Blackhawk Transaction are duly stayed pending such appeal. Blackhawk is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to and hereby granted the full protections of section 363(m) of the Bankruptcy Code.

116. **No Successor Liability for Blackhawk**. Based on the record before this Court, except as otherwise expressly provided in the Plan, this Confirmation Order, or the Blackhawk APA, Blackhawk: (i) does not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations of or assets of the Debtors on or prior to the Effective Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity; and (iii) shall not have any successor or transferee liability of any kind or character; provided that Blackhawk shall promptly perform and discharge the obligations specified in the Blackhawk APA, including, without limitation, the Assumed Liabilities.

117. Subject to the terms of the Blackhawk Transaction Documents, the Blackhawk Purchased Assets shall be transferred to and vest in the Combined Company free and clear of all claims (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code). Other than the Blackhawk Assumed Liabilities, such Blackhawk Purchased Assets shall specifically be taken free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever, whether contingent, unliquidated, unmatured or otherwise, in respect of the Debtors or any property of the Debtors, including, without limitation, any employee, workers' compensation, occupational disease or unemployment or temporary

KE 37539997

disability related claim, including without limitation, claims that might otherwise arise under or pursuant to:

a.    the Employment Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (1974), as amended;

b.    the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., as amended;

c.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e §§ *et seq.*, as amended;

d.    the Federal Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*., as amended;

e.    the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq,* as amended;

f.    the Worker Adjustment and Restraining Act of 1988, 28 U.S.C. §§ 2101 *et seq*.;

g.    the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 6231 *et seq.*, as amended;

h.    the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 §§ *et seq*., as amended;

i.    the Black Lung Benefits Act and the Kentucky Workers' Compensation Act, §§ 342 *et seq,*;

j.    the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 *et seq.*;

k.    the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq*., as amended;

l.    the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701 *et seq.*;

m.    state discrimination laws;

n.    state unemployment compensation laws or any other similar state laws; and

o.    any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors (including any liabilities for or associated with contributions to the UMWA 1974 Pension Plan, including Patriot's withdrawal liabilities under the plan).

118.    Without limiting the generality of the principles of this Section I, neither Blackhawk, the Combined Company, nor any of their affiliates shall assume or be obligated to pay, perform, or otherwise discharge any:

KE 37539997

a.      workers' compensation debts, obligations, and liabilities of the Debtors arising pursuant to state law or otherwise, including, but without limitation, workers' compensation claims or suits of any type, whether known or unknown, whether incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, any workers' compensation claims filed or to be filed or reopenings of those claims, by or on behalf of any of the Debtors' current or former employees, persons laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability;

b.      debts, obligations, and liabilities of the Debtors arising pursuant to the Debtors' ownership or operation of the Blackhawk Purchased Assets on or prior to the closing date, including without limitation, under any theory of successor liability;

c.      liability or benefit obligations related to black lung claims and benefits under the Black Lung Benefits Act of 1972, 30 U.S.C. §§ 901 *et seq.*, the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801 *et seq.*, the Black Lung Benefits Reform Act of 1977, Pub. L. NO. 95-239, 92 Stat. 95 (1978), the Black Lung Benefits Amendments of 1981, Pub. L. No. 97-119, Title 11, 95 Stat. 1643, (1981), in each case, as amended, if applicable, and occupational pneumoconiosis, silicosis, or other lung disease disabilities and benefits arising under federal or state law;

d.      liability or benefit obligations under the Coal Industry Retiree Health Benefit Act of 1922, 26 U.S.C. §§ 9701 *et seq.*, and all amendments and revisions thereof; or

e.      liability for or associated with contributions to the UMWA 1974 Pension Plan, including Patriot's withdrawal liabilities under the plan.

119.    Neither Blackhawk, the Combined Company, nor any of their affiliates shall be deemed, as a result of any action taken in connection with the Blackhawk APA or any other Blackhawk Transaction Document, the consummation of the transactions contemplated by the Blackhawk APA or any other Blackhawk Transaction Document, or the transfer or operation of the Blackhawk Purchased Assets (a) to be a legal successor, or otherwise be deemed a successor to the Debtors; (b) to have, de facto or otherwise, merged with or into the Debtors; (c) to be an alter ego or a continuation of the Debtors; or (d) to have any responsibility for any obligations based on any theory of successor or similar theories of liability, including, without limitation, pursuant to the Black Lung Benefits Act or the UMWA 1974 Pension Plan.

KE 37539997

120.    Without limiting the generality of the foregoing, except as otherwise expressly provided in the Blackhawk APA, other Blackhawk Transaction Documents, or this Confirmation Order, neither Blackhawk, the Combined Company, nor any of their affiliates shall be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Combined Company, Blackhawk, and their affiliates shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor, employment or benefits law, de facto merger or substantial continuity, whether known or unknown as of the closing of the Blackhawk Transaction, then existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or their affiliates or any obligations of the Debtors or their affiliates arising prior to the closing of the Blackhawk Transaction, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Blackhawk Purchased Assets prior to the closing of the Blackhawk Transaction.

121.    **Designated Buyer**.  Subject to terms of the Combined Company Debt Facilities, Blackhawk is hereby authorized, in its discretion, in connection with consummation of the Blackhawk Transaction, to allocate the Blackhawk Purchased Assets, Blackhawk Assumed Liabilities, Assumed Contracts (as defined in the Blackhawk APA), and Assumed Leases (as defined in the Blackhawk APA) among its Affiliates, Subsidiaries, designees, assignees, and/or successors (each a "Designated Buyer") in a manner as it, in its discretion, deems appropriate and such Person shall be entitled to all of the rights, benefits, privileges, and protections of Blackhawk as are accorded to Blackhawk under this Order, and the Debtors shall cooperate with and take all actions reasonably requested by Blackhawk to effectuate any of the foregoing.  In

42

the event that Blackhawk designates any designee to acquire any Blackhawk Purchased Assets, including, without limitation, any Assumed Contracts (as defined in the Blackhawk APA) or Assumed Leases (as defined in the Blackhawk APA), then any reference to "Blackhawk" in this Confirmation Order shall be deemed to be a reference to "Blackhawk and/or such applicable Designated Buyer," unless the context requires otherwise.  Upon the transfer of any Blackhawk Purchased Asset, Assumed Contract (as defined in the Blackhawk APA), or Assumed Lease (as defined in the Blackhawk APA) to, or the assumption of any Blackhawk Assumed Liability by, a Designated Buyer, such Designated Buyer shall be solely responsible for such Purchased Asset, Blackhawk Assumed Liability, Assigned Contract (as defined in the Blackhawk APA), or Assumed Lease (as defined in the Blackhawk APA) (including performance thereunder), as applicable, provided, however, that, notwithstanding any such transfer, Blackhawk shall be jointly and severally liable for the obligations and liabilities of such Designated Buyer.

**J.     VCLF Transaction**

122.     **Consummation of the VCLF APA; Transfer Free and Clear of Liens and Claims**.  On the Effective Date, the Debtors shall consummate the transactions contemplated by the VCLF APA pursuant to the terms thereof in exchange for the Purchase Price (as defined in the VCLF APA); provided that the conditions precedent set forth in the VCLF APA have been satisfied or waived in accordance with the terms of the VCLF APA.  Upon entry of this Confirmation Order by this Court, all matters provided for under the VCLF APA will be deemed authorized and approved without any requirement of further act or action by the Debtors' shareholders or the Debtors' boards of directors.  On the Effective Date, in consideration and in exchange for the Purchase Price (as defined in the VCLF APA), the Debtors shall tender to VCLF duly executed bills of sale and assignment or other appropriate instruments and documents transferring title to and interest in the VCLF Purchased Assets, and such transfer shall

be free and clear of all Liens, Claims and interests (other than Permitted Encumbrances (as defined in the VCLF APA)) pursuant to the terms and conditions of the VCLF APA. The provisions of this Confirmation Order authorizing and approving the transfer of the VCLF Purchased Assets free and clear of such Liens, Claims and interests shall be self-executing, and neither the Debtors nor VCLF shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Confirmation Order. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the VCLF Transaction.

123. **Good Faith of VCLF**. The transactions contemplated by the VCLF APA are undertaken by the Debtors and VCLF without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the VCLF Transaction shall not affect the validity of the VCLF Transaction (including the assumption, assignment and/or transfer of any Executory Contract or Unexpired Lease), unless such authorization and consummation of such VCLF Transaction are duly stayed pending such appeal. VCLF is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to and hereby granted the full protections of section 363(m) of the Bankruptcy Code.

124. **No Successor Liability for VCLF**. Based on the record before this Court, except as otherwise expressly provided in the Plan, this Confirmation Order, or the VCLF APA, VCLF: (i) does not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations of or assets of the Debtors on or prior to the Effective Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity; and

KE 37539997

(iii) shall not have any successor or transferee liability of any kind or character; provided that VCLF shall promptly perform and discharge the obligations specified in the VCLF APA, including, without limitation, the Assumed Liabilities.

125. **Designated Buyer**. VCLF is hereby authorized, in its discretion, in connection with consummation of the VCLF Transaction, to allocate the VCLF Purchased Assets, VCLF Assumed Liabilities, Assumed Contracts (as defined in the VCLF APA), and Assumed Leases (as defined in the VCLF APA) among its Affiliates, Subsidiaries, designees, assignees, and/or successors (each a "Designated Buyer") in a manner as it, in its discretion, deems appropriate and such Person shall be entitled to all of the rights, benefits, privileges, and protections of VCLF as are accorded to VCLF under this Order, and the Debtors shall cooperate with and take all actions reasonably requested by VCLF to effectuate any of the foregoing. In the event that VCLF designates any designee to acquire any VCLF Purchased Assets, including, without limitation, any Assumed Contracts (as defined in the VCLF APA) or Assumed Leases (as defined in the VCLF APA), then any reference to "VCLF" in this Confirmation Order shall be deemed to be a reference to "VCLF and/or such applicable Designated Buyer," unless the context requires otherwise. Upon the transfer of any VCLF Purchased Asset, Assumed Contract (as defined in the VCLF APA), or Assumed Lease (as defined in the VCLF APA) to, or the assumption of any VCLF Assumed Liability by, a Designated Buyer, such Designated Buyer shall be solely responsible for such Purchased Asset, VCLF Assumed Liability, Assigned Contract (as defined in the VCLF APA), or Assumed Lease (as defined in the VCLF APA) (including performance thereunder), as applicable, provided, however, that, notwithstanding any such transfer, VCLF shall be jointly and severally liable for the obligations and liabilities of such Designated Buyer.

126.  **VCLF Commitment Letter**.   The transactions contemplated by the VCLF Commitment Letter are hereby approved in all respects.   The indebtedness to be incurred by VCLF, and the Liens to be granted by VCLF, in connection with the transactions contemplated by the VCLF Commitment Letter, are valid, binding and enforceable, and granted as an inducement to the lenders thereunder to extend the credit contemplated thereby, and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, and shall not otherwise be subject to avoidance under the Bankruptcy Code or other applicable law.   In addition, the equity interests in Healthco (as defined in the VCLF Commitment Letter) to be issued to the lender under the VCLF Commitment Letter are issued as a further inducement to the lender to extend the credit contemplated thereby, shall be deemed to have been issued for fair consideration and reasonably equivalent value, and are deemed not to constitute a fraudulent conveyance or fraudulent transfer, and shall not otherwise be subject to avoidance under the Bankruptcy Code or other applicable law.

**K.**     **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

127.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

128.    **Plan Implementation and Corporate Action Authorization**.  The Debtors or the Liquidating Trustee, as the case may be, and their respective directors, officers, members, agents, and attorneys, are authorized and empowered from and after the date hereof to negotiate,

KE 37539997

execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended, and supplemented (including such modifications to the Liquidating Trust Agreement that are substantially consistent with the terms and provisions of such form and necessary to satisfy the conditions to the effectiveness of the Plan), and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court. To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. The Debtors or the Liquidating Trustee, as applicable, have the authority to reject, assume, and/or assign Executory Contracts and Unexpired Leases after the date hereof as well as after the Effective Date. If such rejection, assumption, and/or assignment of any Executory Contract or Unexpired Lease after the date hereof would, but for the application of this sentence, be unenforceable under applicable law, the Debtors' or the Liquidating Trustee's right to reject, assume, and/or assign Executory Contracts or Unexpired Leases shall nevertheless extend to the Effective Date and the Debtors or the Liquidating Trustee shall nevertheless be authorized to reject, assume, and/or assign any such Executory Contract or Unexpired Lease which is the subject of a motion to reject, assume and/or assign filed before the Effective Date.

129.    The Debtors, the Liquidating Trust, and VCLF, as applicable, are authorized but not directed to take any action necessary or appropriate to implement, effectuate, or consummate

any agreement with respect to financing that such parties, to the extent applicable, have determined necessary to fund the Debtors' exit from chapter 11.

130. **The Liquidating Trust**. Pursuant to Article IV.Q of the Plan, a newly formed liquidating trust with no prior assets or liabilities (the "Liquidating Trust") will be established on the Effective Date for the primary purpose of liquidating the Liquidating Trust Assets and winding down the Debtors' Estates and will be maintained thereafter in accordance with the terms of the Plan and the Liquidating Trust Agreement. The Liquidating Trust Agreement, in substantially the form attached as Exhibit Q to the Plan Supplement, and all of the provisions therein are hereby approved by this Confirmation Order. The designation of Eugene I. Davis as the Liquidating Trustee is approved. Pending the occurrence of the Effective Date, the Debtors are authorized to take all actions as may be necessary to facilitate the creation and implementation of the Liquidating Trust. The Liquidating Trust is authorized and empowered, pursuant to the Plan and the Liquidating Trust Agreement, to liquidate or otherwise administer the Liquidating Trust Assets and implement the Wind Down.

131. **Transfer of Assets to Liquidating Trust**. Pursuant to Article IV.Q of the Plan, the Debtors will (a) transfer all Liquidating Trust Assets to the Liquidating Trust, to the extent the VCLF Transaction is not consummated, subject to all rights, defenses, and setoffs of any party in interest including the Liquidating Trustee and (b) make any available distributions, including the funding of the Disputed Claims Reserve, to the Liquidating Trustee pursuant to the Plan and the Liquidating Trust Agreement.

**L. Release of Liens**

132. Except as otherwise provided in this Confirmation Order, the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, any

Lien, mortgage, deed of trust, pledge, or other security interest securing any Secured Claim shall

be deemed fully released, settled, and compromised and the Holder of such Secured Claim shall

be authorized and directed to release any collateral or other property of the Debtors held by such

Holder and to take such actions, at the expense of the Debtors or the Liquidating Trustee, as the

case may be, and as may be requested by the Debtors or the Liquidating Trustee, as the case may

be, to evidence the release of such lien, including, without limitation, the execution, delivery,

filing, or recording of such releases as may be requested by the Debtors or the Liquidating

Trustee at the sole expense of the Debtors or the Liquidating Trustee, as the case may be.  The

filing of this Confirmation Order with any federal, state, provincial or local agency or department

shall constitute good and sufficient evidence of, but shall not be required to effect, the

termination of such Liens, Claims, and other interests described above.  Any Entity holding such

Liens, Claims, or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly

execute and deliver to the Debtors, the Liquidating Trustee, or the Combined Company, as

applicable, such instruments of termination, release, satisfaction, and/or assignment (in

recordable form) as may be reasonably requested by the Debtors, the Liquidating Trustee, or the

Combined Company, as applicable, in each case at sole cost and expense of the Debtors or the

Liquidating Trustee, as applicable.

## M.    Injunctions and Automatic Stay

133.    Unless otherwise provided in the Plan or in the Confirmation Order, all

injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the

Bankruptcy Code or any order of the Court entered as of the Confirmation Date (excluding any

injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force

and effect through and including the Effective Date.  All injunctions or stays contained in the

KE 37539997

Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**N.    Dissolution of the Debtors**

134.    The Debtors or the Liquidating Trustee, as applicable, is authorized to take any action reasonably necessary to complete the voluntary dissolution of the Debtors pursuant to the Plan and the Liquidating Trust Agreement, as applicable.

**O.    Nonseverability of Plan Provisions upon Confirmation**

135.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.    Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Court is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided by the Plan or this Confirmation Order; and (c) nonseverable and mutually dependent.

**P.    Waiver or Estoppel**

136.    Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court before the Confirmation Date.

**Q.    Securities Laws Exemptions**

137.    The offering, issuance, and distribution of any securities in connection with the VCLF Transaction, including the VCLF Equity Grant, shall be exempt from, among other things,

the registration and prospectus delivery requirements of section 5 of the Securities Act and any

other applicable state or federal law requiring registration and/or prospectus delivery prior to the

offering, issuance, distribution, or sale of securities to the fullest extent permitted by law

pursuant to section 1145 of the Bankruptcy Code or pursuant to another exemption from the

registration requirements of the Securities Act, including, without limitation section 4(a)(2) of

the Securities Act and/or Regulation D promulgated thereunder.  VCLF shall be considered a

successor to the Debtors under section 1145 of the Bankruptcy Code.  Securities issued pursuant

to the section 1145 Bankruptcy Code exemption shall be freely tradable in the United States by

the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code

relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act,

(b) compliance with any rules and regulations of the Securities and Exchange Commission, if

any, applicable at the time of future transfer of such securities or instruments, (c) the restrictions,

if any, on the transferability of such securities and instruments, including those set forth in any

corporate organizational document, and (d) applicable regulatory approval, if any.

**R.      Authorization to Consummate**

138.    The Debtors are authorized to consummate the Plan at any time after the entry of

the Confirmation Order subject to satisfaction or waiver (by the required parties) of the

conditions precedent to consummation set forth in Article IX.A of the Plan.  The substantial

consummation of the Plan, within the meaning of section 1101 of the Bankruptcy Code, is

deemed to occur on the first date, on or after the Effective Date, on which distributions are made

in accordance with the terms of the Plan to Holders of any Allowed Claims.

**S.      Corporate Action Regarding Blackhawk Transaction**

139.    Each of the Debtors and the Liquidating Trustee may take any and all actions to

execute, deliver, File, or record such contracts, instruments, releases, and other agreements or

documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the consummation of the transactions contemplated by the Blackhawk APA, without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by the security holders, officers, or directors of the Debtors or the Liquidating Trustee or by any other Person (except for those expressly required pursuant to the Plan, this Confirmation Order, or the Blackhawk Transaction Documents).

140.    Prior to, on, or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, officers, managers, members, or partners of the Debtors (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, officers, managers, members, or partners of the Debtors or the Liquidating Trustee, or the need for any approvals, authorizations, actions, or consents of any Person.

141.    On and after the Effective Date, the appropriate officers of the Debtors are authorized to issue, execute, and deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions, and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtors, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by any Person.  The secretary and any assistant secretary of the Debtors shall be authorized to certify or attest to any of the foregoing actions.

142.   **Authority to Act**.   Each Debtor and its respective officers and directors, are authorized and empowered pursuant to Section 303 of the Delaware General Corporation Law and other applicable corporation, limited liability company, and limited partnership laws, to take any and all actions necessary or desirable to implement the transactions contemplated by the Plan and this Confirmation Order, in each case without any requirement of further vote, consent, approval, authorization, or other action by the stockholders, security holders, officers, directors, partners, managers, members, or other applicable owners or notice to, order of, or hearing before this Court.   Each federal, state, provincial, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Plan and the transactions contemplated thereby.

143.   **Exemption from Transfer Taxes**.   Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan, the Blackhawk APA or the Blackhawk Transaction Documents shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and each appropriate federal, state, provincial, and local (domestic and foreign) governmental officials and agents shall forgo the collection of any such Stamp or Similar Tax or governmental assessment and shall accept for filing and recordation instruments and other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment.   Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under the Plan, the Blackhawk APA, or the Blackhawk Transaction Documents, (ii) the issuance and distribution of the Purchase Price (as

KE 37539997

defined in the Blackhawk APA), and (iii) the attachment, perfection, maintenance or creation of security interests or any Lien as contemplated by the Plan, the Blackhawk APA, or the Blackhawk Transaction Documents.

**T.      Assumed and Assigned Contracts and Leases**

**i.      Court Approval; Adequate Notice; Adequate Assurance of Future Performance**

144.    The Debtors have exercised reasonable business judgment in determining whether to assume (or assume and assign) each of the Executory Contracts and Unexpired Leases as set forth within the Plan, the Plan Supplement, or this Confirmation Order.  Without amending or altering any prior order of this Court approving the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease, all of such assumptions (and assumptions and assignments) as set forth within the Plan, the Plan Supplement, or this Confirmation Order are hereby approved in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, with such assumptions (and assumptions and assignments) effective as of, and subject to the occurrence of, the Effective Date.  The Debtors have provided sufficient notice to each non-Debtor counter-party to the Executory Contracts and Unexpired Leases of the assumptions (and assumptions and assignments) described in the Plan and the Plan Supplement.  The Debtors and the applicable assignee have, as applicable, provided adequate assurances of future performance, as that term is used in section 365 of the Bankruptcy Code, with respect to the assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease that is to be assumed (or assumed and assigned) pursuant to the Plan.  The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

ii.        **Ipso Facto & Anti-Assignment Clauses.**

145.    To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to the Plan (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assumption and assignment (as applicable), or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the confirmation or consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to prohibit, restrict or condition such assumption or assumption and assignment (as applicable), to modify or terminate such Executory Contract or Unexpired Lease, or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan. Each Executory Contract and Unexpired Lease assumed (or assumed and assigned) pursuant to the Plan shall revest in and be fully enforceable by the applicable assignee in accordance with its respective terms and conditions, notwithstanding and without giving any force or effect to any provision in such Executory Contract or Unexpired Lease (including, without limitation, those described in sections 365(b), (c), (e), and (f) of the Bankruptcy Code) or under applicable non-bankruptcy law that purports to (a) terminate, modify, or restrict, or permit the applicable non-Debtor party to terminate, modify or restrict, such contract or lease or the Debtors' rights, benefits, and privileges thereunder; or (b) create or impose, permit the applicable non-Debtor party to create or impose, any additional duties, obligations, penalties, default rates of interest or

55

payments (monetary and non-monetary) upon any Debtor, in each case as a result of or in connection with (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the confirmation or consummation of the Plan.

### iii.  Cure Disputes

146.  Any counterparty to an Executory Contract or Unexpired Lease that failed to object timely to the proposed assumption (or proposed assumption and assignment), cure amount, or cure obligation (whether as to amount or existence of such obligation) is hereby deemed to have assented to such matters and is deemed to have forever released and waived any objection to the proposed assumption (or proposed assumption and assignment) and cure amount.  The amounts, if any, due from the Debtors pursuant to each Executory Contract or Unexpired Lease assumed, or assumed and assigned, hereunder that are required to be paid as cure under section 365 of the Bankruptcy Code shall be satisfied by payment of such amount in Cash on the Effective Date, or as soon thereafter as is practicable, or on such other terms as the parties to the applicable Executory Contract or Unexpired Lease may otherwise agree in writing.

### iv.  Full Release and Satisfaction of Claims

147.  Subject to any cure claims Filed with respect thereto, assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code.  Any Proofs of

KE 37539997

Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed (or assumed and assigned) by Final Order shall be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of this Court.

### v. Section 365(k) Protection

148. With respect to any Executory Contract or Unexpired Lease assumed and assigned pursuant to the Plan, upon and as of the Effective Date, the applicable assignee shall be deemed to be substituted as a party thereto for the applicable Debtor party to such assigned Executory Contract or Unexpired Lease and, accordingly, the Debtors shall be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such assigned Executory Contract or Unexpired Lease.

### U. Corporate Action Regarding VCLF Transaction

149. Each of the Debtors and the Liquidating Trustee may take any and all actions to execute, deliver, File, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the consummation of the transactions contemplated by the VCLF APA, without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by the security holders, officers, or directors of the Debtors or the Liquidating Trustee or by any other Person (except for those expressly required pursuant to the Plan, this Confirmation Order, or the VCLF Transaction Documents).

150. Prior to, on, or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, officers, managers, members, or partners of the Debtors (as of prior to the Effective Date) shall

KE 37539997

be deemed to have been so approved and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, officers, managers, members, or partners of the Debtors or the Liquidating Trustee, or the need for any approvals, authorizations, actions, or consents of any Person.

151.    On and after the Effective Date, the appropriate officers of the Debtors are authorized to issue, execute, and deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions, and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtors, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by any Person.  The secretary and any assistant secretary of the Debtors shall be authorized to certify or attest to any of the foregoing actions.

152.    **Authority to Act**.  Each Debtor and its respective officers and directors, are authorized and empowered pursuant to Section 303 of the Delaware General Corporation Law and other applicable corporation, limited liability company, and limited partnership laws, to take any and all actions necessary or desirable to implement the transactions contemplated by the Plan and this Confirmation Order, in each case without any requirement of further vote, consent, approval, authorization, or other action by the stockholders, security holders, officers, directors, partners, managers, members, or other applicable owners or notice to, order of, or hearing before this Court.  Each federal, state, provincial, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Plan and the transactions contemplated thereby.

153.    **Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan, the VCLF APA or the VCLF Transaction Documents shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and each appropriate federal, state, provincial, and local (domestic and foreign) governmental officials and agents shall forgo the collection of any such Stamp or Similar Tax or governmental assessment and shall accept for filing and recordation instruments and other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment.   Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under the Plan, the VCLF APA, or the VCLF Transaction Documents, (ii) the issuance and distribution of the Purchase Price (as defined in the VCLF APA), and (iii) the attachment, perfection, maintenance or creation of security interests or any Lien as contemplated by the Plan, the VCLF APA, or the VCLF Transaction Documents.

## V.    **Environmental and Other Laws**

154.    Except for the releases expressly granted by the West Virginia Department of Environmental Protection (the "WVDEP") as set forth in the WVDEP Settlement, nothing in the Plan, the Plan Supplement, any document relating to the Plan (including, but not limited to, the Blackhawk Transaction Documents, the VCLF Transaction Documents and the Liquidating Trust Agreement) or this Confirmation Order or any other order relating to the Blackhawk or VCLF Transactions, or to the Liquidating Trust Agreement:

   a.      (1) with respect to any Entity other than VCLF or Blackhawk: releases, discharges, exculpates, precludes, or enjoins the enforcement of:  (i) any liability or obligation to, or any Claim or any cause of action by, a Governmental Unit or

other Entity under any applicable Environmental Law to which any Entity is subject as and to the extent that they are the owner, lessee, permittee, controller, or operator of real property or a mining operation after the Effective Date (whether or not such liability, obligation, Claim, or cause of action is based in whole or part on acts or omissions prior to the Effective Date); (ii) the obligations in the Specified Orders and Agreements;[9] (iii) any liability under any Environmental Law or other applicable police or regulatory law that is not a Claim; (iv) any Claim under any Environmental Law or other applicable police or regulatory law arising after the Effective Date; (v) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Reorganized Patriot, or any claim assertable by a Governmental Unit against any Person or Entity other than the Debtors or Reorganized Patriot; (vi) any liability under Environmental Law on the part of any Entity other than the Debtors or Reorganized Patriot; (vii) any liability to a Governmental Unit under the Mine Act, any state mine safety law or the Federal Black Lung Benefit Act (the "BLBA") that is not a Claim; or (viii) any valid right of setoff or recoupment by any Governmental Unit, except in the case of each of (i) through (viii) above, to the extent the Plan, the Plan Supplement, or any document relating to the Plan releases, discharges, or exculpates any of the Debtors from, or precludes or enjoins a Governmental Unit or other Entity from pursuing or enforcing against the Debtors (A) any Claims, obligations, or liabilities for costs expended or paid before the Effective Date, or any penalties or fines owed for days of violations of Environmental Law before the Effective Date (which shall be treated as otherwise provided in the Plan); or (B) any Claims, obligations, or liabilities by or to a party that are resolved in a written agreement to which that party has agreed and only as to that party; and (2) with respect to VCLF or Blackhawk: releases, discharges, exculpates, precludes, or enjoins the enforcement of (i) any liability or obligation to, or any Claim or any cause of action by, a Governmental Unit or other Entity under any applicable Environmental Law to which VCLF or Blackhawk is subject as and to the extent that they are the owner, lessee, permittee, controller, or operator of real property or a mining operation after the Effective Date (whether or not such liability, obligation, Claim, or cause of action is based in whole or part on acts or omissions prior to the Effective Date) or (ii) any obligations under the Specified Orders and Agreements expressly assumed by Blackhawk pursuant to

---

[9]   The "Specified Orders and Agreements" shall mean: (1) the Modified Consent Decree in *Ohio Valley Environmental Coalition, et al. v. Patriot Coal Corp., et al.*, Civil Action No. 3:11-cv-00115 (S.D.W. Va.), entered on January 9, 2013, and as subsequently modified by addenda filed on September 5, 2014; (2) the October 8, 2010 Order Specifying Relief and the December 21, 2012 Order in *Ohio Valley Environmental Coalition, et al. v. Hobet Mining, LLC*, Civil Action No. 3:09-cv-01167 (S.D.W. Va.); (3) The Consent Order and Agreement between Eastern Associated Coal, LLC, Clean Streams Foundation, Inc., and Pennsylvania Department of Environmental Protection, Barnes & Tucker Co. Lancashire No. 15 Mine, entered into on November 18, 2013; (4) the Comprehensive Settlement Agreement between Saline Valley Conservancy District and Peabody Coal Company, dated January 5, 2001, as amended on November 16, 2001 (S.D. Ill.); and (5) ongoing groundwater monitoring obligations memorialized and placed in effect pursuant to the Groundwater Management Zone agreement dated December 6, 2006, resolving the injunctive relief sought in Illinois Environmental Protection Agency v. Heritage Coal, f/k/a Peabody Coal. PCB No. 99-134, (Gallatin Cty., Ill.).

KE 37539997

the Blackhawk Transaction Documents or by VCLF pursuant to the VCLF Transaction Documents;

b.   shall enjoin or otherwise bar any Governmental Unit or other Entity from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding clause (a) hereof; *provided* that (i) the Bankruptcy Court retains jurisdiction to determine whether environmental liabilities asserted by any Governmental Unit or other Entity are discharged or otherwise barred by the Plan, the Plan Supplement, any document relating to the Plan, this Confirmation Order, any other order relating to the Blackhawk or VCLF Transactions or the Liquidating Trust, or the Bankruptcy Code and (ii) nothing in any of the orders or other documents identified in the preceding subclause (i) hereof divests any tribunal of any jurisdiction it may have under applicable Environmental Law or other police or regulatory laws to adjudicate any defense asserted under any of those orders or other documents; provided that all Governmental Units and other Entities hereby reserve whatever rights they may have to argue that any tribunal of any jurisdiction has or does not have jurisdiction with respect to the matters described in the preceding subclauses (i) and (ii); or

c.   authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy laws and regulations.

155.   The WVDEP has withdrawn any and all objections to confirmation of the Plan and shall provide the release of the New Money Lender Entities pursuant to and in accordance with the terms and provisions of the WVDEP Settlement.

156.   The WVDEP Settlement shall provide that the release of New Money Lender Entities shall be exclusively enforceable in this Court or another federal court with competent jurisdiction within the Eastern District of Virginia, at the election of the New Money Lender Entities.

157.   The New Money Lender Entities shall be third party beneficiaries of the WVDEP Settlement as it relates to the WVDEP release contained in the WVDEP Settlement.

**W.   Transaction Support Agreement**

158.   Notwithstanding anything in the Plan or this Confirmation Order to the contrary, all rights, claims, and causes of actions of all parties to and under that certain Transaction

KE 37539997

Support Agreement (as defined below) are reserved and preserved in their entirety.  The term "Transaction Support Agreement," as used in this paragraph, means, collectively, (i) that certain Transaction Support Agreement, dated as of June 2, 2015, by and among the signatory parties thereto (as amended by that certain First Amendment to Transaction Support Agreement, dated as of June 18, 2015, by and among the signatory parties thereto (the "TSA First Amendment")); and (ii) the TSA First Amendment.

## X.     Old Republic Settlement Agreement

159.    In accordance with the settlement agreement between Old Republic Insurance Company and its affiliates (collectively, "ORINSCO") and the Debtors pursuant to an agreed Court order   (the "ORINSCO Settlement"), the rights, interest, claims, and defenses of ORINSCO with respect to ORINSCO's ability to offset applicable prefunded losses, refunded program assessments, incurred loss retrospective premium returns, and tax assessment reimbursements against its Allowed Claim are reserved and preserved in their entirety.   In accordance with the ORINSCO Settlement, the Debtors' have the authority to keep the proceeds from the ORINSCO Settlement in their entirety as property of the Estate for, among other things, any costs incident to the Debtors' emergence from chapter 11.

## Y.     Resolution of IRS Objection

160.    Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any implementing Plan documents, nothing will:  (a) affect the ability of the Internal Revenue Service (the "IRS") to pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; (b) preclude the IRS from amending any pre-petition or post-petition claim; or (c) require the IRS to file an Administrative Claim in order to receive payment for any liability described in 11 U.S.C. Section 503(b)(1)(B) and (C).

**Z.        Resolution of Prepetition Notes Trustee's Objection**

161.    As settlement and compromise of various issues raised by the Prepetition Notes Trustee, including without limitation those issues raised in its objection to confirmation and as well as on account of the Prepetition Notes Trustee Charging Lien, the Prepetition Notes Trustee shall receive $450,000 on or promptly after the Effective Date.  Notwithstanding the foregoing, the Prepetition Notes Trustee is entitled to assert the Prepetition Notes Trustee Charging Lien to obtain payment of its reasonable expenses, fees and costs and nothing in the Plan shall be deemed to impair, extinguish, or negatively affect the Prepetition Notes Trustee Charging Lien.

**AA.     Resolution of Fifth Third Bank Objection**

162.    Pursuant to the consensual resolution of the objection to Confirmation of Fifth Third Bank, notwithstanding any provision to the contrary in the Plan or this Confirmation Order, Fifth Third Bank shall be reimbursed for its reasonable legal fees and expenses in the amount of $75,000 which shall be paid as an Allowed Administrative Claim pursuant to Article II A of the Plan.

**BB.     AIG**

163.    Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, any Plan Supplement, the Blackhawk APA, the VCLF APA, any other transaction document, or this Confirmation Order (the "Plan Documents"), nothing in the Plan Documents shall impair or otherwise affect the legal, equitable or contractual rights and defenses of the insurance affiliates of American International Group, Inc. (collectively, "AIG"), arising out of or in connection with any insurance policies, bonds, sureties, related agreements, endorsements, or documents between AIG and any of the Debtors, their successors and assigns (the "Insurance Agreements"). Notwithstanding anything to the contrary in the Plan Documents, the rights and obligations of the parties shall be determined pursuant to the Insurance Agreements under nonbankruptcy law,

KE 37539997

including, without limitation, obligations to pay, provisions regarding arbitration, and all other terms, conditions, limitations and exclusions thereof. For the sake of clarity, nothing in the Plan Documents shall impair or otherwise affect AIG's right to setoff, recoupment, or subrogation in connection with any Insurance Agreement, nor bar AIG from seeking to arbitrate under any Insurance Agreement. Further, AIG may amend any timely filed proofs of claim at any time hereafter without the need for prior Court approval or Liquidating Trust approval. The claim estimation and other claim provisions set forth in Article VII.A.3 and Article VIII.K of the Plan shall not apply to AIG. Any third-party releases in the Plan shall not be binding on AIG. For the avoidance of doubt, if the Debtors assume and assign the Insurance Agreements to VCLF in accordance with the VCLF APA, then the Debtors shall have no continuing obligations to AIG, and VCLF shall have all of the Debtors' obligations under the Insurance Agreements.

## CC.     Objecting Non-Debtor Counterparties to Certain Executory Contracts and Unexpired Leases

164.     Notwithstanding anything contained herein or in the Plan, the objections, rights, interests, claims, and defenses of certain non-debtor counterparties to Executory Contracts and Unexpired Leases (collectively, the "Objecting Counterparties" and each, an "Objecting Counterparty")[10] with respect to the assumption, assumption and assignment, or rejection of their agreements with the Debtors are reserved and preserved in their entirety until a further order providing otherwise. For the avoidance of doubt, to the extent any valid liens exist on leased property that the Debtors intend to assume and assign, nothing in this Order shall be deemed to release the Debtors' obligations to satisfy the Cure Costs, if any, associated with those liens prior to assumption, such issue being preserved until the omnibus hearing scheduled for

---

[10]     The Objecting Counterparties, as that term is used in this paragraph 164 of the Confirmation Order, consist of: AIG; Caterpillar Financial Services Corporation; Kinder Morgan Resources, LLC; Siemens Financial Services, Inc. ("Siemens"); Stollings Trucking Company, Inc.; United Leasing, Inc.; and Virginia Electric and Power Company.

October 22, 2015, at 10:00 a.m. (prevailing Eastern Time).  Notwithstanding anything contained in this Confirmation Order or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to the assumption, assumption and assignment, or rejection of its agreements with any Objecting Counterparty are reserved and preserved in their entirety until a further order providing otherwise.  To the extent that the Debtors and Blackhawk or VCLF, as applicable, and any Objecting Counterparty are unable to reach resolution with respect to these matters, the Court will consider the applicable matters at the omnibus hearing scheduled for October 22, 2015, at 10:00 a.m. (prevailing Eastern Time).[11]

165.    Notwithstanding anything contained herein or in the Plan, the objections, rights, interests, claims, and defenses of ACIN LLC; Natural Resource Partners L.P.; NRP (Operating) LLC; People's Capital and Leasing Corp.; Shepard Boone Coal Company LLC; and WPP LLC (collectively, the "Counterparties Objecting to Cure Amounts" and each, a "Counterparty Objecting to Cure Amounts") with respect to cure amounts relating to their agreements with the Debtors are reserved and preserved in their entirety until a further order providing otherwise. Notwithstanding anything contained in this Confirmation Order or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to the cure amounts relating to its agreements with any Counterparty Objecting to Cure Amounts are reserved and preserved in their entirety until a further order providing otherwise.  To the extent that the Debtors and any Counterparty Objecting to Cure Amounts are unable to reach resolution with respect to these matters, the Court will consider the applicable matters at the omnibus hearing scheduled for October 22, 2015, at 10:00 a.m. (prevailing Eastern Time).

---

[11]    Nothing in this paragraph 164 of the Confirmation Order shall pertain to Siemens' lending relationship with the Debtors as a prepetition asset based lender under the prepetition asset based lending facility.

KE 37539997

166.    **Cassingham Objectors**.  Notwithstanding anything contained herein or in the Plan, or in the Court's *Order Extending the Time within which the Debtors Must Assume or Reject Unexpired Leases of Nonresidential Real Property* filed September 1, 2015 [Docket No. 1029], all of the rights, interests, claims, and defenses of Cassingham, LLC and its affiliated objecting entities party to Docket No. 1416 (collectively, the "Cassingham Objectors") with respect to cure amounts relating to their agreements with the Debtors are reserved and preserved in their entirety until a further order providing otherwise.  Notwithstanding anything contained herein or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to cure amounts related to their agreements with the Cassingham Objectors are reserved and preserved in their entirety until a further order providing otherwise.  To the extent that the Debtors and Blackhawk or VCLF, as applicable, and the Cassingham Objectors are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. prevailing Eastern Time.

167.    **STB Objecting Parties**.  Notwithstanding anything contained herein or in the Plan and pursuant to that *Order Extending the Time within which the Debtors Must Assume or Reject Unexpired Leases of Nonresidential Real Property* entered by the Court on September 1, 2015, extending the time as set forth under sections 365(d)(4)(A)(i) and (ii) to assume nonresidential real property leases (the "Extension Order"), all of the rights, interests, claims, including cure claims and defenses of Courtney Company, Daniels Electric, Inc., Penn Virginia Operating Co., LLC, Toney Fork, LLC and Suncrest Resources, LLC (collectively, the "STB Objecting Parties") with respect to the assumption by the Debtors and assignment to Blackhawk or VCLF, as applicable, or rejection of their agreements, are reserved and preserved in their entirety until a further order providing otherwise.  Notwithstanding anything contained

herein or in the Plan and pursuant to the Extension Order, all of the Debtors' rights, interests, claims, and defenses with respect to the assumption, assumption and assignment, or rejection of its agreements with the STB Objecting Parties are reserved and preserved in their entirety until a further order providing otherwise. To the extent that the Debtors and Blackhawk or VCLF, as applicable, and the STB Objecting Parties are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. (prevailing Eastern Time). For the avoidance of doubt, the *Debtors' Motion for Entry of an Order (a) Authorizing the Debtors to Reject Certain Executory Contracts and Unexpired Leases, Effective* Nunc Pro Tunc *to August 13, 2015, and (b) Granting Related Relief* [Docket No. 820] is hereby adjourned and will be considered at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. (prevailing Eastern Time).

168. **GE Parties**.  Notwithstanding anything contained herein or in the Plan, Disclosure Statement, Plan Supplement, Blackhawk APA, VCLF APA, or any other asset purchase agreement put forward at the Combined Hearing commencing on October [6], 2015 (collectively, the "Plan Sale Documents"), all of General Electric Capital Corporation's and Gelco Corporation d/b/a Element Fleet Management's (together, the "GE Parties") rights, interests, claims, and defenses with respect to the assumption, assumption and assignment, or rejection of its agreements with the Debtors are reserved and preserved in their entirety until a further order providing otherwise. Notwithstanding anything contained herein or in the Plan Sale Documents, all of the Debtors' rights, interests, claims, and defenses with respect to the assumption, assumption and assignment, or rejection of its agreements with the GE Parties are reserved and preserved in their entirety until a further order providing otherwise. Notwithstanding anything contained herein or in the Plan Sale Documents, the GE Parties'

personal property shall not be subject to a sale under section 363 of the Bankruptcy Code as part of the Blackhawk APA, VCLF APA, or any applicable asset purchase agreement at the Combined Hearing commencing on October 7, 2015. The GE Parties' rights, interests, claims, and defenses, with respect to their personal property shall be reserved and preserved in their entirety. To the extent that the Debtors and Blackhawk or VCLF, as applicable, and the GE Parties are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. (prevailing Eastern Time).

169.    **Honey Island**.  Notwithstanding anything contained herein or in the Plan, all rights, interests, claims, and defenses of Honey Island Coal Co., LLC ("Honey Island") with respect to any removal or transfer of the equipment identified in the *Limited Objection of Honey Island Coal Co., LLC to Confirmation of Debtors' Fourth Amended Joint Plan of Reorganization* [Docket No. 1415] (collectively, the "Big Mountain Equipment") are reserved and preserved in their entirety until a further order providing otherwise. Notwithstanding anything contained herein or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to any removal or transfer of the Big Mountain Equipment are reserved and preserved in their entirety until a further order providing otherwise. To the extent that the Debtors and Blackhawk or VCLF, as applicable, and Honey Island are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. (prevailing Eastern Time).

170.    **Pocahontas**.  Notwithstanding anything contained herein or in the Plan, all of the rights, interests, claims, and defenses of Pocahontas Land Corporation ("Pocahontas") with respect to the assumption, assumption and assignment, or rejection of its agreements with the

Debtors, including, without limitation, those issues identified in docket numbers 771 and 1476, are reserved and preserved in their entirety until a further order providing otherwise. Notwithstanding anything contained herein or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to the assumption, assumption and assignment, or rejection of its agreements with Pocahontas are reserved and preserved in their entirety until a further order providing otherwise. To the extent that the Debtors and Blackhawk or VCLF, as applicable, and Pocahontas are unable to reach resolution with respect to these matters as well as the issues identified in docket number 820 (which is also further adjourned with respect to Pocahontas), the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. (prevailing Eastern Time).

171. **Black King Objectors**. Notwithstanding anything contained herein or in the Plan, all of the rights, interests, claims, objections and defenses of Black King Mine Development Company, Boone East Development Company, Eagle Energy, Inc., Bandy Town Coal Company, and Pioneer Fuel Corporation (collectively, the "Black King Objectors" ) with respect to the assumption, assignment, or rejection of its agreements with the Debtors are reserved and preserved in their entirety until a further hearing and order providing otherwise. Notwithstanding anything contained herein or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to the assumptions, assumption and assignment, or rejection of its agreements with the Black King Objectors are reserved and preserved in their entirety until a further hearing and order providing otherwise. To the extent that the Debtors and Blackhawk or VCLF, as applicable, and the Black King Objectors are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. (prevailing Eastern Time).

KE 37539997

172.    **Blue Eagle Land Company**.  Notwithstanding anything contained herein or in the Plan, all of the rights, interests, claims, objections and defenses of Blue Eagle Land Company with respect to the assumption, assumption and assignment, or rejection of its agreements with the Debtors are reserved and preserved in their entirety until a further hearing and order providing otherwise.  Notwithstanding anything contained herein or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to the assumptions, assumption and assignment, or rejection of its agreements with Blue Eagle Land Company are reserved and preserved in their entirety until a further hearing and order providing otherwise and the Debtors confirm that they currently seek and shall only seek to assume and assign the December 31, 2005 Coal Mining Lease *cum onere*, in its entirety.  To the extent that the Debtors and Blackhawk or VCLF, as applicable, and Blue Eagle Land Company are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. (prevailing Eastern Time).

173.    **Rhino**.  Notwithstanding anything contained herein or in the Plan, all of Rhino Eastern LLC's and Rhino Energy WV, LLC's (together "Rhino") rights, interests, claims, and defences—including, but not limited to, the issues raised in the *Objection by Rhino Eastern, LLC and Rhino Energy WV, LLC to Confirmation of Third Amended Plan of Reorganization* [Docket No. 1165]—with respect to the assumption, assumption and assignment, or rejection of its agreements with the Debtors are reserved and preserved in their entirety until a further order providing otherwise.  Notwithstanding anything contained herein or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to the assumption, assumption and assignment, or rejection of its agreements with Rhino are reserved and preserved in their entirety until a further order providing otherwise.  To the extent that the Debtors and Blackhawk or

KE 37539997

VCLF, as applicable, and Rhino are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015, at 10:00 a.m. (prevailing Eastern Time).

174.    **Oracle**.  Notwithstanding anything contained herein or in the Plan, all of Oracle America, Inc.'s ("Oracle") rights, interests, claims, and defenses with respect to the assumption, assumption and assignment, or rejection of its agreements with the Debtors are reserved and preserved in their entirety until a further order providing otherwise.  Notwithstanding anything contained herein or in the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to the assumption, assumption and assignment, or rejection of its agreements with Oracle are reserved and preserved in their entirety until the earlier of (a) entry of a further order providing otherwise or (b) October 22, 2015, or such later date as Oracle and the Debtors may mutually agree upon in writing.  To the extent that the Debtors and Blackhawk or VCLF, as applicable, and Oracle are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015 at 10:00 a.m. prevailing Eastern Time.  Except to the extent any such obligations are inconsistent with the Debtors' or Oracle's obligations under Title 11 of the United States Code or any order of the Court, the Debtors shall be obligated to timely pay any and all amounts arising or otherwise due under any agreements between the Debtors and Oracle, and the Debtors and Oracle shall timely perform any of their respective obligations under such agreements, from the Petition Date until the date such agreements are either assumed, assumed and assigned, or rejected by the Debtors.  The Debtors shall not, without either Oracle's express written consent or a Court order permitting otherwise, (i) provide, enable, or otherwise facilitate Blackhawk's, VCLF's, or any other persons' or entities' use of software licensed by Oracle contrary to any

KE 37539997

agreement between Oracle and the Debtors (including, without limitation, any transitional use, whether under a transitional services agreement, or otherwise) or (ii) transfer any IT-Related Equipment (as such term is used in the Blackhawk APA or VCLF APA, as applicable) containing any Oracle licensed software to Blackhawk, VCLF, or any other persons or entities.

175.    **Shonk**.  Notwithstanding anything contained in this Confirmation Order of in the Plan, all of the rights, interest, claims, objections, and defences of Shonk Land Company LLC ("Shonk") with respect to the assumption, assignment, or rejection of its agreements with the Debtors are reserved and preserved in their entirety until a further hearing and order providing otherwise.  Notwithstanding anything contained in this Confirmation Order of the Plan, all of the Debtors' rights, interests, claims, and defenses with respect to the assumptions, assumption and assignment, or rejection of its agreements with Shonk are reserved and preserved in their entirety until a further hearing and order providing otherwise.  Shonk agrees that on or before Tuesday, October 13, 2015, at 2:00 p.m. (prevailing Eastern Time), Shonk shall provide in writing to Blackhawk and the Debtors a detailed list of specific issues concerning the assumption and assignment, including adequate assurance, related to the Shonk leases or agreements.  To the extent that the Debtors and Blackhawk or VCLF, as applicable, and Shonk are unable to reach resolution with respect to these matters, the Court will consider these matters at the omnibus hearing scheduled for October 22, 2015, at 10:00 a.m. (prevailing Eastern Time).

**DD.    LRPB Lease and Lessors**

176.    **The LRPB Lease**.  This section (entitled "LRPB Lease and Lessors") of this Confirmation Order addresses issues specific to that certain Restatement of Leases and Other Documents dated September 28, 1984 among LaFollette, Robson, Prichard & Broun, *et al.* and Cedar Coal Co. and The Charleston Bank, N.A. as Trustee (as amended, assigned and subleased from time to time, but constituting one wholly integrated lease, the "LRPB Lease") to which

H.A. Robson, LLC (as successor to H.A. Robson Trust), PRC Holdings, LLC, Prichard School, LLC, City National Bank of West Virginia as Trustee under a Trust Agreement dated December 30, 1983 with A.M. Prichard, III, Sarah Ann Prichard and Lewis Prichard and their respective spouses, Robert B. LaFollette Holdings, LLC, Wright Holdings, LLC, Kanawha Boone Holdings LLC, James A. LaFollette Holdings, LLC, LML Properties, LLC, Riverside Park, Inc. and Ohio River Holdings, LLC (as successor to LML-AAW Holdings, L.L.C., RBL – AAW Holdings, LLC, and AAW Holdings, LLC and LaFollette Holdings, Ltd.), and Broun Properties, LLC (collectively, "LRPB") and various Debtors are party, and whereby various Debtors lease approximately 16,000 acres of land located in Boone County and Kanawha County, West Virginia from LRPB, which may be modified pursuant to the Term Sheet dated as of October 4, 2015 executed by and among LRPB, Blackhawk Mining LLC ("Buyer"), and Blackhawk (the "Modification"), which is subject to the occurrence of the Effective Date, the closing of the Blackhawk Transaction (the "Blackhawk Closing"), the payment of Cure Costs (as agreed to by the Debtors and LRPB or otherwise ordered by the Court), and such other conditions as set forth in the Modification.

177. **The Blackhawk/LRPB Lease Permits**. Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or the Blackhawk Transaction Documents, at the Blackhawk Closing: (i) the Debtors shall assume and assign the LRPB Lease, in its entirety, and Buyer shall assume all obligations of the Debtors arising under the LRPB Lease, which, immediately following such assumption and assignment, shall be modified by agreement of LRPB and Buyer pursuant to the Modification; (ii) Blackhawk shall execute and deliver to LRPB the parent guaranty required by the Modification (the "Parent Guaranty"); and (iii) the Debtors, to the extent permitted under applicable non-bankruptcy law, shall assign to Buyer their rights

with respect to the mining permits relating to the LRPB Lease that are listed on Schedule 2.01(g)

to the Blackhawk APA (as filed with the Bankruptcy Court on September 5, 2015, at [Docket

No. 1078) (the "Blackhawk/LRPB Lease Permits").  Following the Blackhawk Closing, Buyer

diligently shall pursue, in accordance with applicable non-bankruptcy law, the transfer of the

Blackhawk/LRPB Lease Permits to Buyer.  Subject to the occurrence of the Blackhawk Closing,

Buyer shall diligently take all measures in accordance with applicable non-bankruptcy law, to

effectuate the transfer of the Blackhawk/LRPB Lease Permits to Buyer.  Except as expressly

provided in the Modification, LRPB has not consented to any sublease, and nothing in this order

compels or overrides the need for such consent; *provided*, *however*, that LRPB will not

unreasonably withhold, condition, or delay its consent to a sublease to an affiliate of VCLF.

178.    **The VCLF Permits**.  Notwithstanding anything to the contrary in the Plan, this

Confirmation Order, or the VCLF Transaction Documents, at the closing of the VCLF

Transaction (the "VCLF Closing"), the Debtors shall assume and assign to VCLF  the following

mining permits (the "Non-Buyer/LRPB Lease Permits"):

| Item | SMCRA Permit No. | Facility Name | Permittee |
|------|------------------|---------------|-----------|
| 1 | H-354 | Coal Fork Haulroad | Remington, LLC |
| 2 | H-370 | Big White Oak Haulroad | Mountain View Coal Company, LLC |
| 3 | O-21-82 | Two Mile Haulroad | Mountain View Coal Company, LLC |
| 4 | R-753 | 1 Mile White Oak Refuse Fill | Mountain View Coal Company, LLC |
| 5 | S-103-80 | Playground | Mountain View Coal Company, LLC |
| 6 | S-193-77 | Cut 26 | Mountain View Coal Company, LLC |
| 7 | S-218-75 | Cut 22 | Mountain View Coal Company, LLC |
| 8 | S-38-80 | Cut 22 | Mountain View Coal Company, LLC |
| 9 | D-31-82 | Robin 6 | Mountain View Coal Company, LLC |
| 10 | S-6015-86 | Cut 30 | Mountain View Coal Company, LLC |
| 11 | U-80-83 | Stockburg No. 1 Mine | Remington, LLC |
| 12 | S-3010-00 | White Oak Extension | Catenary Coal Company, LLC |
| 13 | S-3006-00 | Wildcat Surface Mine | Wildcat, LLC |

Subject to the occurrence of the VCLF Closing, VCLF shall diligently take all measures, in accordance with applicable non-bankruptcy law, to effectuate the transfer of the Non-Buyer/LRPB Lease Permits to VCLF.

179. **Reservation of LRPB Rights Regarding Permit Transfers**. Notwithstanding anything in the Plan, this Confirmation Order, the Blackhawk Transaction Documents or the VCLF Transaction Documents (including the foregoing provisions of this Section that address transfer of the Blackhawk/LRPB Lease Permits and the Non-Buyer/LRPB Lease Permits, LRPB specifically reserves, and does not hereby waive, any rights of LRPB as lessor under the LRPB lease ancillary to the permit transfer process and all laws and regulations governing the same, with respect to adequacy of bonding and security in connection with reclamation and water treatment, and nothing herein shall be construed to constitute a waiver of LRPB's rights with respect to the transfer process.

180. **Preservation of LRPB Claims under Lease**. Notwithstanding anything to the contrary in the Plan, this Confirmation Order, the Blackhawk Transaction Documents, or the VCLF Transaction Documents: (a) with respect to any claim actually asserted, or as may be asserted in the future, against LRPB or liability or loss incurred by LRPB, the indemnity obligations of Buyer and Blackhawk to LRPB under the LRPB Lease, as amended by the Modification, and Parent Guaranty, associated directly or indirectly with environmental conditions, discharges or the need for reclamation, remediation, restoration or mitigation, or acts or omissions related thereto (as used in this paragraph 180, collectively, the "Environmental Matters"), whether on account of an act or omission of Blackhawk, the Buyer, the Debtors, any of their respective sub-lessees, contractors, agents and/or affiliates, or any bonding company or governmental agency that assumes responsibility for operations in connection with the LRPB

Property or any portion thereof, or any other person operating on the LRPB Property with the permission or consent of Buyer or Blackhawk (including without limitation VCLF, any Back-Up Bidder, or the Liquidating Trust, in connection with the Non-Buyer/LRPB Permits), shall not be discharged, waived, limited or released as a result of the Plan, this Confirmation Order, the occurrence of the Effective Date, the Blackhawk Closing or the VCLF Closing; (b) Buyer and Blackhawk shall have primary responsibility to LRPB under the LRPB Lease and the Parent Guaranty, respectively, for indemnity with respect to such claims, liability or losses; (c) the fact or possibility that Environmental Matters do, or may, exist prior to Effective Date, the Blackhawk Closing or the VCLF Closing shall not alter, affect or vitiate LRPB's right to indemnification from Buyer and Blackhawk as provided in the LRPB Lease, as amended by the Modification, and the Parent Guaranty.

181.     **Limitation of Third-Party Releases**.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan (including without limitation the third party release and exculpation provisions set forth in the Plan), the Confirmation Order, the Blackhawk Transaction Documents or the VCLF Transaction Documents shall release, discharge or terminate any guaranty or indemnity issued, granted or given by any person (other than the Debtors) in favor of LRPB, or any predecessor, successor, assign or member of LRPB, or of any guaranty or indemnity of, or with respect to, the LRPB Lease, including without limitation, the guaranty executed by Peabody Holding Company, Inc.

182.     **Debtors' Release of LRPB**.  Effective on the Effective Date, the Debtors hereby waive and release all claims and causes of action that they have, or may have, as of the Effective Date, against LRPB, its agents, attorneys, predecessors, successors, affiliates, and assigns, whether such claims are known or unknown, legal or equitable, disputed or undisputed, fixed or

KE 37539997

contingent, including without limiting the generality of the foregoing, claims arising under Chapter 5 of the Bankruptcy Code.

183. **Inconsistencies and Reservation of Rights**. In the event of any inconsistency between the Plan and/or other sections of the Confirmation Order, on the one hand, and paragraphs 176–182 of this Confirmation Order, on the other, the terms set forth in paragraphs 176–182 of the Confirmation Order shall govern. Notwithstanding anything contained in the Plan or other portions of this Confirmation Order, all rights are reserved with respect to Cure Costs until the omnibus hearing scheduled for October 22, 2015, at 10:00 a.m. (prevailing Eastern Time).

## EE. Peabody

184. Notwithstanding anything in this Confirmation Order or in the Plan to the contrary, Section V.D of the Plan shall not apply to any contracts, agreements, leases, or similar agreements or arrangements to which Peabody Energy Corporation or any of its affiliates (collectively, "Peabody") is or was a party (collectively, "Peabody Agreements"). Peabody, the Debtors, and all parties to the Peabody Agreements reserve all rights with respect to whether any of the Peabody Agreements are executory, and with respect to the assumption or rejection or consequences of assumption or rejection of any Peabody Agreement or the effects of any breach of any Peabody Agreement.

## FF. Subrogating Insurance Carriers

185. Notwithstanding anything in the Plan, the Disclosure Statement, or this Confirmation Order, there shall be no release, extinguishment, or modification of the rights, entitlements, and Liens of ACE, Allied World Assurance Company, Aspen American Insurance Company, AXIS Insurance, Hannover Insurance Company, Ironshore Insurance Ltd., Lexington Insurance Company, Certain Underwriters at Lloyds, Maiden Reinsurance Company, Markel

Global Insurance (formerly Alterra), RSUI Indemnity, and Starr Technical Risks Agency (collectively, the "Subrogating Carriers") in and to any and all Causes of Action (including the proceeds thereof) arising from or related to the February 6, 2013 catastrophic failure of Patriot Coal Corporation's plate and frame press at the Blue Creek Plant located in Charleston, West Virginia. Each of the Subrogating Carriers' rights, entitlements, and Liens in and to such Causes of Action (including the proceeds thereof) are preserved and shall remain enforceable against the present or future holder or holders of any of such Causes of Action, including but not limited to the Debtors and the Liquidating Trust.

## GG.  Assumption of Surety Bond Obligations

186.  Except for surety bonds for permits transferred to Blackhawk or ERP Federal Mining Complex, LLC ("ERP"), which surety bonds shall be replaced, each surety bond issued by Fidelity & Deposit Company of Maryland, Indemnity National Insurance Company, Travelers Casualty and Sureties Company of America, US Specialty Insurance and Sureties Company, Westchester Fire Insurance Company, Federal Insurance Company, Argonaut Insurance Company, and Lexon Insurance Company (together, "Sureties" and the surety bonds issued by such Sureties not excepted in this paragraph collectively, the "Surety Bonds") or affiliates shall be deemed assumed[12] with the Sureties' consent by VCLF as of the Effective Date; *provided* that, at any time after the Effective Date, the Sureties may reimburse any and all premiums and any loss adjustment expenses including attorneys' fees from their collateral or the proceeds therefrom. Additionally, each obligation of a Debtor that is covered by the Surety Bonds and/or any of the Debtors' indemnity agreements in place with the Sureties immediately prior to the Effective Date (collectively, the "Indemnity Agreements"), including, but not limited to obligations under any

---

[12]  In lieu of the assumption of such surety bond, a Surety may elect to issue a rider to any such bond or bonds or to issue new bonds naming VCLF as principal; *provided*, *however*, that in either case the rider or new bond does not contain provisions inconsistent with the terms of this Confirmation Order.

KE 37539997

Surety Bond, the common law of Suretyship, is not being released, discharged, precluded or enjoined by the Plan or the Confirmation Order. Additionally, any of the Debtors' rights to a return of any collateral under any applicable settlement agreements or under the Indemnity Agreements, including a right, if any, to a return of any collateral after the satisfaction of all obligations under the Surety Bonds, the Indemnity Agreements, or applicable law, are hereby (and elsewhere in this Confirmation Order) assigned free and clear of all liens, claims, interests and encumbrances to VCLF pursuant to, among other things, Bankruptcy Code Section 363(f). Additionally, to the extent a Surety determines, in its sole and absolute discretion, to release any collateral or the proceeds of any collateral, such Surety is irrevocably directed to deliver such collateral (other than collateral provided by Arch Coal, Inc. and any of its affiliates (collectively, "Arch Coal"), which is addressed as set forth below) or the proceeds thereof to VCLF without recourse to any such Surety by any party, including any letter of credit issuer. In addition, VCLF will execute an indemnity agreement in a form satisfactory to Sureties (the "New Indemnity Agreements"). The New Indemnity Agreements shall provide that VCLF shall not be liable to indemnify the Sureties for a shortfall between the total bond penal sum of any such Surety and the amount of collateral for such Surety as those amounts exist as of the Effective Date or for premiums or for attorneys' fees under the Indemnity Agreements or the New Indemnity Agreements. Notwithstanding any other provision of the Plan or this Confirmation Order, all letters of credit, the proceeds therefrom, or other collateral issued to the Sureties as security for a Debtor's obligations under the Surety Bonds or Indemnity Agreements shall continue to secure against any payment and performance obligation under the applicable Indemnity Agreement. Notwithstanding any other provisions of the Plan or this Confirmation Order, nothing in the injunction and release provisions of the Plan, including, without limitation, Article IV (E), (G)

and (H); Article VIII (A)-(I) shall be deemed to apply to the Sureties or the Sureties' claims, nor shall these provisions or any provision of the Blackhawk Transaction Documents or any agreement relating to the transfer of real property or other assets relating to a Surety Bond, be interpreted to bar, impair, prevent or otherwise limit the Sureties from exercising their respective rights or remedies under any of the Surety Bonds, letters of credit or proceeds therefrom, the Indemnity Agreements, environmental or other laws, or requirements under which the Surety Bonds were issued, the common law of Suretyship, or other applicable law, and in furtherance thereof, the Sureties are authorized to draw, or to have drawn, on any letters of credit in accordance with the applicable letter of credit.

187.   Notwithstanding any provision in the preceding paragraph to the contrary, the foregoing section shall not apply to nor shall it be deemed to apply to the workers compensation bond issued by Argonaut Insurance Company in the State of West Virginia, which has previously been canceled.

188.   For the avoidance of doubt, no provision of this Confirmation Order (except for the sentence following this sentence), the Plan, the Plan Supplement, any document relating to the Plan (including, but not limited to, the Blackhawk Transaction Documents, the VCLF Transaction Documents and the Liquidating Trust Agreement) or any other order relating to the Blackhawk Transaction or VCLF Transaction, or to the Liquidating Trust Agreement shall impair the rights, if any, of Arch Coal or Peabody, including any rights against any non-debtor party, which are fully reserved, to raise, after the entry of this Confirmation Order any arguments or objections regarding (a) the use or the drawing upon, among other things, any letters of credit and surety bonds posted and guarantees and indemnifications (collectively, the "Credit Support") provided by Arch Coal or Peabody in connection with or related to Surety Bonds securing permits

transferred to VCLF in connection with or upon the consummation of the VCLF Transaction , (b) the application of any proceeds of such Credit Support, (c) the entitlement to any proceeds of such Credit Support not required to satisfy any obligations relating to such Surety Bonds, or (d) VCLF's interest in or use of the proceeds of the Credit Support posted by Arch Coal or Peabody in connection with or related to Surety Bonds securing permits transferred to VCLF in connection with or upon the consummation of the VCLF Transaction, as to which Arch Coal's and Peabody's rights are fully reserved. Notwithstanding the foregoing, the interests or rights of the Debtors and their bankruptcy estates, if any, in the proceeds of the Credit Support posted by Arch Coal or Peabody shall be and hereby are transferred to VCLF free and clear of all liens, claims, encumbrances, rights and interests of all individuals and entities, including, but not limited to Arch Coal or Peabody, to the fullest extent permissible under the provisions of the United States Bankruptcy Code, including but not limited to Section 363 thereof.

## HH.    Survival of Surety Bond Obligations

189.    Except for Surety Bonds for permits transferred to Blackhawk or ERP, which Surety Bonds shall be replaced, all obligations of the Debtors to Sureties under Indemnity Agreements, related agreements, each as amended, or applicable law as of the Effective Date shall be reinstated and shall remain unaffected by the Plan or the Confirmation Order and shall not be discharged or impaired by the Plan or Confirmation Order irrespective of whether the obligation is owed in connection with an event occurring before or after the Effective Date.

## II.    VCLF Transferred Permits

190.    Upon consummation of the VCLF Transaction, VCLF shall be deemed to have assumed all outstanding obligations and conditions of any and all permits issued pursuant to section 404 of the Clean Water Act associated with any and all of the VCLF Purchased Assets, including but not limited to those permits identified on the Transferred Permits table included in

81

Schedule 2.01(g) to the VCLF APA ("404 Permits"), and must perform and comply with all such obligations and conditions, including the mitigation required by each such 404 Permit, without regard to whether those mitigation requirements arise from or are related to discharges of dredged or fill material that occurred prior to the consummation of the VCLF transaction. Within 60 days after consummation of the VCLF Transaction, VCLF shall make all applications required to effectuate the transfer of each 404 Permits from the Debtors to VCLF.

191.    Upon consummation of the VCLF Transaction and government approval of the transfer of any permit issued pursuant to the Surface Mining Control and Reclamation Act of 1977, as amended, and its approved state counterparts ("Mining Permits") from Debtors to VCLF, including those permits identified on the Transferred Permits table included in Schedule 2.01(g) to the VCLF APA and any additional mining permit transferred to VCLF prior to or after the Effective Date, VCLF shall be deemed to have assumed all outstanding obligations and conditions of those permits, and will be liable for, and must perform and comply with, all outstanding obligations and conditions of the permits, including the mitigation, remediation and reclamation required by each such permit, without regard to whether those requirements arise prior to or after the applicable permit transfer to VCLF.

## JJ.    Kentucky Utilities Company

192.    For the avoidance of doubt, notwithstanding anything in this Confirmation Order, the Plan, the Disclosure Statement, the Blackhawk Transaction Documents, including the Blackhawk APA, the VCLF Transaction Documents, including the VCLF APA, or the order authorizing the Debtors to close the Prairie Transactions [Docket No. 953], utility deposits held at any time by Kentucky Utilities Company ("KU") for Debtors Highland Mining Company, LLC and Heritage Coal Company, LLC are not included in the assets to be transferred pursuant to the Blackhawk Transaction or the VCLF Transaction. Those deposits, and the

82

respective interests of the Debtors and KU in and rights concerning them, remain unaffected by this Confirmation Order, the Blackhawk Transaction Documents, and the VCLF Transaction Documents.

## KK.   References to Plan Provisions

193.   The failure specifically to include or reference any particular article, section, or provision of the Plan (and the Plan Supplement) or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of this Court that the Plan (and the exhibits and schedules thereto) be confirmed and any related documents be approved in their entirety and incorporated herein by reference.

## LL.   Right to Be Heard

194.   From and after the Effective Date and continuing through the date of entry of a final decree closing the Chapter 11 Cases, Blackhawk, the Combined Company, and VCLF shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before this Court or other courts, (ii) be entitled to notice and an opportunity for hearing on all such issues, (iii) participate in all matters brought before this Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in this Court.

## MM.   Effect of Non-Occurrence of Conditions to the Effective Date

195.   Notwithstanding the entry of this Confirmation Order, if the Effective Date does not occur, the Plan will have no force or effect.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement will be considered an

admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

## NN.    Non-VCLF Transaction

196.    In the event the Debtors seek the authority to waive condition IX.A.4 of the Plan pursuant to a Final Order of the Bankruptcy Court and implement the Plan through the Liquidating Trust or an alternative transaction other than the VCLF Transaction (a "Non-VCLF Transaction"), nothing in the Plan, the Plan Supplement, any document relating to the Plan (including, but not limited to, the Blackhawk Transaction Documents, the VCLF Transaction Documents and the Liquidating Trust Agreement) or this Confirmation Order or any other order relating to the Blackhawk or VCLF Transactions, or to the Liquidating Trust Agreement shall impair the rights of the Environmental Parties to object to the Debtors' seeking of such Final Order by challenging whether the Plan's implementation through the Liquidating Trust or a Non-VCLF Transaction would violate sections 1129(a)(1), 1129(a)(3), 1129(a)(5), 1129(a)(11), or any other provision of the Bankruptcy Code.

## OO.    Final Order; Successors and Assigns

197.    Pursuant to Bankruptcy Rule 3020(e), the fourteen -day stay of this Confirmation Order imposed thereby is waived and the Debtors are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately upon the entry of this Confirmation Order upon the docket and upon the satisfaction or waiver of the conditions set forth in Article IX of the Plan.  This Confirmation Order is a Final Order and the period in which an appeal must be Filed will commence upon entry of the Confirmation Order.  The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan or this Confirmation Order shall be binding on, and shall inure to the benefit, of any heir, executor, administrator, successor, or assign of each such Person or Entity.

KE 37539997

IT IS SO ORDERED.

Dated:   Oct 9 2015

Richmond, Virginia

/s/ Keith L. Phillips
_____
UNITED STATES BANKRUPTCY JUDGE


Entered on Docket:  Oct 9 2015

KE 37539997

WE ASK FOR THIS:

*/s/ Michael A. Condyles*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
KUTAK ROCK LLP
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219-3500
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

- and -

Stephen E. Hessler (*pro hac vice* pending)
Patrick Evans (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

*Proposed Counsel for the Debtors and*
*Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Michael A. Condyles*

**<u>Exhibit A</u>**

**Fourth Amended Plan of Reorganization**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PATRIOT COAL CORPORATION, *et al.*, | Case No. 15-32450 (KLP) |
| Debtors. | (Jointly Administered) |

---

## DEBTORS' FOURTH AMENDED JOINT PLAN OF
## REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

Stephen E. Hessler (admitted *pro hac vice*)
Patrick Evans (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet (admitted *pro hac vice*)
Justin R. Bernbrock (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
KUTAK ROCK LLP
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219-3500
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

*Counsel for the Debtors and Debtors in Possession*

Dated: October 9, 2015

## TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ............................................................................................... 1
- A.   Defined Terms ................................................................................................... 1
- B.   Rules of Interpretation ..................................................................................... 23
- C.   Computation of Time ....................................................................................... 23
- D.   Governing Law ................................................................................................ 23
- E.   Reference to Monetary Figures ........................................................................ 24
- F.   Controlling Document ..................................................................................... 24

**ARTICLE II. DIP CLAIMS, ADEQUATE PROTECTION CLAIMS, ADMINISTRATIVE CLAIMS, AND PRIORITY TAX CLAIMS** .......................................................... 24
- A.   Administrative Claims ..................................................................................... 24
- B.   Professional Compensation ............................................................................. 24
- C.   DIP Claims ...................................................................................................... 25
- D.   Adequate Protection Claims ............................................................................ 26
- E.   Priority Tax Claims ......................................................................................... 26
- F.   U.S. Trustee Statutory Fees ............................................................................. 26

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ............................. 26
- A.   Summary of Classification .............................................................................. 26
- B.   Treatment of Claims and Interests ................................................................... 27
- C.   Special Provision Governing Unimpaired Claims ........................................... 33
- D.   Class Acceptance Requirement ....................................................................... 33
- E.   Elimination of Vacant Classes ........................................................................ 33
- F.   Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................. 33
- G.   Controversy Concerning Impairment .............................................................. 33

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ............................................. 34
- A.   Sources of Consideration for Plan Distributions .............................................. 34
- B.   Blackhawk Transaction .................................................................................. 34
- C.   Rights Offering ............................................................................................... 35
- D.   VCLF Transaction ........................................................................................... 36
- E.   General Settlement of Claims ......................................................................... 36
- F.   Listing of Securities ....................................................................................... 36
- G.   Release of Liens ............................................................................................. 37
- H.   Cancellation of Securities and Agreements ..................................................... 37
- I.    Restructuring Transactions .............................................................................. 38
- J.    Corporate Action ............................................................................................ 38
- K.   Effectuating Documents; Further Transactions ................................................ 38
- L.   Exemption from Certain Taxes and Fees ......................................................... 39
- M.   D&O Liability Insurance Policies .................................................................... 39
- N.   Indemnification Provisions ............................................................................. 39
- O.   Preservation of Rights of Action ..................................................................... 40
- P.   Wind Down and Dissolution of the Debtors .................................................... 40
- Q.   Liquidating Trust ............................................................................................ 40
- R.   Liquidating Trustee ........................................................................................ 40
- S.   Distribution of Payout Event Cash .................................................................. 41
- T.   Committee Settlement ..................................................................................... 41
- U.   Excess Cash Distribution Mechanism ............................................................. 42
- V.   WVDEP Settlement ........................................................................................ 43
- W.   Coal Act Settlement ........................................................................................ 43

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..................... 43
- A.   Assumption and Assignment of Executory Contracts and Unexpired Leases ............. 43

i

B.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ...............44
C.      Claims Based on Rejection of Executory Contracts and Unexpired Leases .................45
D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ..........45
E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements ........45
F.      Insurance Policies ..........................................................................................................45
G.      Compensation and Benefit Programs .............................................................................46
H.      Reservation of Rights .....................................................................................................46
I.      Nonoccurrence of Effective Date ...................................................................................46

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...............................................46**
A.      Timing and Calculation of Amounts to Be Distributed or Paid ......................................46
B.      Undrawn LC Facility Claims Reserve ...........................................................................47
C.      Distributions and Payments Generally ...........................................................................47
D.      Distributions and Payments of the Purchase Price Paid Pursuant to the Blackhawk APA ..........47
E.      Undeliverable Distributions and Unclaimed Property ...................................................47

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS...........................................................................................................48**
A.      Resolution of Disputed Claims ......................................................................................48
B.      Disallowance of Claims .................................................................................................49
C.      Amendments to Claims ...................................................................................................50

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ....................50**
A.      Discharge of Claims and Termination of Interests ........................................................50
**B.      Release of Liens** ...........................................................................................................51
**C.      Debtor Release** ............................................................................................................51
**D.      Third Party Release** .....................................................................................................51
**E.      Exculpation** .................................................................................................................52
**F.      Injunction** ...................................................................................................................52
G.      Protections Against Discriminatory Treatment .............................................................53
H.      Setoffs ...........................................................................................................................53
I.      Recoupment ...................................................................................................................53
J.      Document Retention ......................................................................................................53
K.      Reimbursement or Contribution .....................................................................................54

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
THE PLAN .......................................................................................................................54**
A.      Conditions Precedent to the Effective Date ..................................................................54
B.      Waiver of Conditions .....................................................................................................55
C.      Effective Date ................................................................................................................55
D.      Effect of Non-Occurrence of Conditions to the Effective Date ...................................55

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN...............................55**
A.      Modification and Amendments .......................................................................................55
B.      Payout Event ..................................................................................................................55
C.      Revocation or Withdrawal of the Plan ...........................................................................56

**ARTICLE XI. RETENTION OF JURISDICTION** ..............................................................................56

**ARTICLE XII. MISCELLANEOUS PROVISIONS** .............................................................................58
A.      Immediate Binding Effect ..............................................................................................58
B.      Additional Documents ....................................................................................................58
C.      Payment of Statutory Fees .............................................................................................58
D.      Dissolution of the Committee and the Retiree Committee............................................59
E.      Reservation of Rights......................................................................................................59
F.      Successors and Assigns...................................................................................................59

ii

G.  Service of Documents ........................................................................................................ 59
H.  Term of Injunctions or Stays ............................................................................................. 60
I.  Entire Agreement ............................................................................................................... 60
J.  Nonseverability of Plan Provisions .................................................................................. 60
K.  Request for Court Hearing and Right to Be Heard ......................................................... 60
L.  Powers of Combined Company ......................................................................................... 60

KE 38073257

## INTRODUCTION

The Debtors propose this joint plan of reorganization for the resolution of the outstanding claims against, and interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof or in section 101 of the Bankruptcy Code, as applicable. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and certain financial projections, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.     *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.     "*1974 Pension Plan*" means the multi-employer pension fund under the UMWA 1974 Pension Plan and Trust.

2.     "*1974 Pension Plan Allowed Administrative Claim*" means an Allowed Administrative Claim in the amount of $23 million; provided, that, the 1974 Pension Plan has agreed that its Allowed Administrative Claim shall be satisfied (a) *first*, by any recovery it receives pursuant to the Excess Cash Distribution Mechanism and (b) *then*, to the extent not satisfied in full by distributions through the Excess Cash Distribution Mechanism, through Pro Rata sharing of the General Unsecured Claims Distribution.

3.     "*1974 Pension Plan Allowed General Unsecured Claim*" means an Allowed General Unsecured Claim in the amount of $888 million.

4.     "*2012-13 Restructuring*" means the Debtors' prior chapter 11 cases, jointly administered under the caption styled *In re Patriot Coal Corp.*, No. 12-51502-659 (KAS) (Bankr. E.D. Mo.).

5.     "*2012-13 Chapter 11 Plan*" means the *Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, confirmed pursuant to the *Amended Order Confirming Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, *In re Patriot Coal Corp.*, No. 12-51502-659 (KAS) (Bankr. E.D. Mo. Dec. 18, 2013) [2012-13 Restructuring Docket No. 5169].

6.     "*Adequate Protection Claims*" means any and all adequate protection Claims, if any, arising under or related to the DIP Orders that assert priority on account of diminution in the value of a prepetition secured party's interest in its collateral pursuant to section 507(b) of the Bankruptcy Code, including all:  (a) ABL Adequate Protection Obligations; (b) LC Adequate Protection Obligations; (c) Term Adequate Protection Obligations; and (d) Note Adequate Protection Obligations, as each such term is defined in the Final DIP Order.

7.     "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Estates pursuant to section 503(b) and 507(a)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including but not limited to the U.S. Trustee Fees; and (c) Professional Fee Claims. For the avoidance of doubt, (i) a Claim asserting priority pursuant to section 503(b)(9) of the Bankruptcy Code is included

1

in the definition of Administrative Claim and (ii) in no instance shall an Intercompany Claim or a DIP Claim be an Administrative Claim.

8.     "*Administrative Claims Bar Date*" means the deadline for filing requests for payment of Administrative Claims (other than Professional Fee Claims or any adequate protection claims arising under the DIP Orders) that arose after July 6, 2015, which deadline shall be the first Business Day that is thirty days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

9.     "*Administrative Claims Objection Bar Date*" means the deadline for filing objections to any Administrative Claim, which shall be the first Business Day that is thirty days following the Administrative Claims Bar Date.

10.    "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

11.    "*Alcoa*" means, collectively, Alcoa Inc. (formerly known as Aluminum Company of America) and its subsidiaries as well as their current and former Affiliates, partners, members, subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, and their respective successors and assigns, each in their capacity as such, and only if serving in such capacity

12.    "*Allowed*" means with respect to Claims:  (a) any Claim other than an Administrative Claim that is evidenced by a Proof of Claim which is or has been timely Filed by the applicable Claims Bar Date or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code, a Final Order or the DIP Orders; (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to (i) the Plan, (ii) any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, (iii) the DIP Orders, or (iv) a Final Order of the Bankruptcy Court; provided, that, with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed for voting purposes only by a Final Order.  Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed by the applicable Claims Bar Date, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such entity pays in full the amount that it owes to the applicable Debtor.

13.    "*Arch*" means, collectively, Arch Coal, Inc. and its subsidiaries as well as their current and former Affiliates, partners, members, subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, and their respective successors and assigns, each in their capacity as such, and only if serving in such capacity.

14.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or similar remedies that may be brought by or on behalf of the Debtors or the Estates, including causes of action or defenses arising under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law.

15.    "*Ballot*" means the form distributed to holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan approved by the Bankruptcy Court.

2

16.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

17.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Virginia having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Eastern District of Virginia.

18.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

19.     "*Bidding Procedures Order*" means the *Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sales of Certain of the Debtors' Assets, (B) Approving the Form and Manner of Notice, (C) Scheduling Auctions and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts, and (E) Granting Related Relief* [Docket No. 406] entered on June 25, 2015.

20.     "*Blackhawk*" means Blackhawk Mining LLC together with its affiliates and subsidiaries.

21.     "*Blackhawk APA*" means that certain Asset Purchase Agreement dated as of June 22, 2015, as amended, modified, or supplemented from time to time, among Blackhawk and certain of the Debtors, including all schedules and exhibits thereto, which shall be Filed with the Plan Supplement.

22.     "*Blackhawk APA Break-Up Fee and Expense Reimbursement*" shall have the same meaning as the term "Blackhawk Bid Protections" set forth in paragraph 13 of the Bidding Procedures Order.

23.     "*Blackhawk Assumed Liabilities*" shall have the same meaning as the term Assumed Liabilities set forth in Section 2.03 of the Blackhawk APA.

24.     "*Blackhawk Excluded Assets*" shall have the same meaning as the term Excluded Assets set forth in Section 2.02 of the Blackhawk APA.

25.     "*Blackhawk Excluded Liabilities*" shall have the same meaning as the term Excluded Liabilities set forth in Section 2.04 of the Blackhawk APA.

26.     "*Blackhawk LLC Agreement*" means that certain Third Amended and Restated Blackhawk Mining LLC Limited Liability Company Agreement dated as of June 22, 2015, as amended, supplemented, modified or restated from time to time.

27.     "*Blackhawk LLC Agreement Joinder*" means the joinder to the Blackhawk LLC Agreement, in substantially the form attached to the Plan Supplement.

28.     "*Blackhawk Purchased Assets*" shall have the same meaning as the term Purchased Assets set forth in Section 2.01 of the Blackhawk APA.

29.     "*Blackhawk Transaction*" means the purchase and sale transaction contemplated by the Blackhawk APA.

30.     "*Blackhawk Transaction Documents*" means the Blackhawk APA and each other document contemplated by the Blackhawk APA or entered into in connection with the Blackhawk Transaction.

31.     "*Black Lung Act*" means the Federal Black Lung Benefit Act, 30 U.S.C. §§ 901–944, as may be amended, modified or supplemented.

32.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

33.    "*Carve Out Reserve*" shall have the same meaning as the term Carve Out Reserve set forth in the Final DIP Order.

34.    "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

35.    "*Causes of Action*" means any claim, cause of action (including Avoidance Actions or rights arising under section 506(c) of the Bankruptcy Code), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Causes of Action also include:  (a) all rights of setoff, counterclaim, cross-claim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

36.    "*Chapter 11 Cases*" means these jointly administered chapter 11 cases commenced by the Debtors and styled *In re Patriot Coal Corporation, et al.*, Chapter 11 Case No. 15-32450 (KLP), which are currently pending before the Bankruptcy Court.

37.    "*Claim*" means any claim against the Debtors, as defined in section 101(5) of the Bankruptcy Code, including:  (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

38.    "*Claims Bar Date*" means the bar date by which a Proof of Claim must be or must have been Filed, as established by (a) the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (II) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims, (III) Establishing the Amended Schedules Bar Date and the Rejection Damages Bar Date, (IV) Approving the Form of and Manner for Filing Proofs of Claim, Including 503(b)(9) Requests, (V) Approving Notice of Bar Dates, and (VI) Granting Related Relief* [Docket No. 246] entered on June 5, 2015; (b) a Final Order of the Bankruptcy Court; or (c) this Plan.

39.    "*Claims Objection Bar Date*" means the later of:  (a) the first Business Day following one hundred and eighty days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, upon a motion Filed before the day that is one hundred and eighty days after the Effective Date, which date may be further extended by the Bankruptcy Court after notice and a hearing upon a motion Filed before the expiration of any such extended period.

40.    "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

41.    "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

42.    "*Coal Act*" means the Coal Industry Retiree Health Benefit Act of 1992.

4

43.     "*Coal Act Stipulation*" means the *Stipulation and Agreed Order Between the Debtors and the United Mine Workers of America 1992 Benefit Plan and the United Mine Workers of America Combined Benefit Fund Regarding Liabilities Under the Coal Act* [Docket No. 1018].

44.     "*Combined Company*" shall have the meaning set forth in Section 1.01 of the Blackhawk APA. For the avoidance of doubt, and regardless of any terms used herein to describe Blackhawk, the Combined Company, or the transactions contemplated by the Blackhawk Transaction Documents, such transactions are not, and shall not be deemed to be, a merger between Blackhawk and the Debtors.

45.     "*Combined Company Debt Documents*" means, collectively, all documents and agreements (including intercreditor agreements) entered into in connection with, and governing, the Combined Company Debt Facilities.

46.     "*Combined Company Debt Facilities*" means, collectively, the Combined Company New ABL, the Combined Company First Lien Term Loan, the Combined Company 1.5 Lien Term Loan, the Combined Company Second Lien Term Loan, and the Combined Company Unsecured Note.

47.     "*Combined Company 1.5 Lien Class B Units*" means those certain Class B Units, representing, in the aggregate, 35% of the equity of the Combined Company, issued to the Combined Company 1.5 Lien Term Loan Lenders in connection with providing $80 million in Cash to the Combined Company, all as more fully set forth in Section 2.06(c) of the Blackhawk APA.  The Combined Company 1.5 Lien Class B Units shall be issued pursuant to, and in accordance with, the allocations set forth in the Blackhawk Transaction Documents.

48.     "*Combined Company 1.5 Lien Term Loan*" shall have the same meaning as the term 1.5 Lien Term Loan set forth in Section 2.06(c) of the Blackhawk APA.  Such loan will be provided by the Combined Company 1.5 Lien Term Loan Lenders, and pursuant to such loan, on the Effective Date, (a) the Combined Company shall receive $80 million in Cash, of which the Combined Company shall pay over to the Debtors up to $32.5 million in Cash to be used solely in accordance with Section 2.06(c) of the Blackhawk APA and (b) the Combined Company will have $115 million aggregate face amount of 1.5 lien secured funded debt on the Effective Date.

49.     "*Combined Company 1.5 Lien Term Loan Agent*" means the administrative agent with respect to the Combined Company 1.5 Lien Term Loan, or any successor agent appointed in accordance with the applicable Combined Company Debt Documents.

50.     "*Combined Company 1.5 Lien Term Loan Lenders*" means, collectively, certain funds and/or accounts managed or advised by Knighthead Capital Management, LLC, Caspian Capital LP on behalf of its advisees, and Davidson Kempner Capital Management LP, on behalf of funds and accounts managed by it (including Midtown Acquisitions L.P.).

51.     "*Combined Company First Lien Single Tranche Term Loan*" shall have the same meaning as the term First Lien Single Tranche Term Loan set forth in Section 2.06(b) of the Blackhawk APA.

52.     "*Combined Company First Lien Term Loan*" shall have the same meaning as the term First Lien Term Loan set forth in Section 2.06(b) of the Blackhawk APA.

53.     "*Combined Company First Lien Tranche B-1 Term Loan*" shall have the same meaning as the term First Lien Tranche B-1 Term Loan set forth in Section 2.06(b) of the Blackhawk APA.

54.     "*Combined Company First Lien Tranche B-2 Term Loan*" shall have the same meaning as the term First Lien Tranche B-2 Term Loan set forth in Section 2.06(b) of the Blackhawk APA.

55.     "*Combined Company New ABL*" shall have the same meaning as the term New ABL set forth in Section 2.06(a) of the Blackhawk APA.

KE 38073257

56. "*Combined Company Second Lien Term Loan*" shall have the same meaning as the term Second Lien Term Loan set forth in Section 2.06(d) of the Blackhawk APA. In the event that the Payout Event does not occur and Class 5 votes to reject the plan, the Combined Company Second Lien Term Loans distributable to the Holders of Allowed Prepetition LC Facility Claims shall be in the aggregate amount equal to $155 million. In the event that the Payout Event does not occur and Class 5 votes to accept the Plan, the Combined Company Second Lien Term Loans distributable to the Holders of Allowed Prepetition LC Facility Claims shall be in the aggregate amount equal to $192,238,375.55.

57. "*Combined Company Unsecured Note*" means the unsecured note in aggregate principal amount of $15 million as contemplated by Section 2.06(e) of the Blackhawk APA and as set forth in Article IV.T.1 hereof.

58. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code on May 21, 2015, as may be constituted from time to time.

59. "*Committee Advisors*" means Morrison & Foerster LLP, as counsel to the Committee, Tavenner & Beran PLC, as local counsel to the Committee, and Jefferies LLC, as financial advisor to the Committee.

60. "*Committee Members*" means: (a) U.S. Bank National Association, as Trustee; (b) United Mine Workers of America; (c) United Mine Workers of America 1974 Pension Plan and Trust; (d) Raleigh Mine & Industrial; (e) Strata Mine Services, LLC; (f) Enviromine, Inc.; and (g) Crown Parts & Machine, Inc.; each solely in their capacity as members of the Committee.

61. "*Committee Settlement*" means the settlement agreement incorporated in Article IV.T hereof.

62. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

63. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

64. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, including any adjournments or continuations thereof.

65. "*Confirmation Objection Deadline*" means the deadline for Filing objections to the Plan, which pursuant to the Scheduling Order, is September 28, 2015, at 4:00 p.m., prevailing Eastern Time.

66. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

67. "*Consultation Parties*" means, collectively, (a) the Committee Advisors, (b) counsel to the Prepetition Agents, (c) counsel to the DIP Lenders, and (d) counsel to Blackhawk.

68. "*Consummation*" means the occurrence of the Effective Date.

69. "*Cortland*" means Cortland Capital Market Services LLC.

70. "*Cure Costs*" means all amounts required to cure any monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease).

71. "*D&O Liability Insurance Policies*" means all insurance policies for directors', managers', and officers' liability maintained by the Debtors as of the Effective Date.

6

72.   "*Debtor Release*" means the release given by the Debtors to the Debtor Released Parties as set forth in Article VIII.C hereof.

73.   "*Debtor Released Parties*" means, collectively, the Debtor Releasees and the Third Party Releasees; provided, however, that, for the avoidance of doubt, in no circumstance shall Peabody, Arch, or Alcoa be Debtor Released Parties.

74.   "*Debtor Releasees*" means, collectively, each Debtor and the Debtors' current and former Affiliates, partners, members, subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, and their respective successors and assigns, each in their capacity as such, and only if serving in such capacity; provided, however, that in no circumstance shall Peabody, Arch, or Alcoa be Debtor Releasees.

75.   "*Debtors*" means, collectively:  Patriot Coal Corporation; Apogee Coal Company, LLC; Appalachia Mine Services, LLC; Black Stallion Coal Company, LLC; Brody Mining, LLC; Catenary Coal Company, LLC; Central States Coal Reserves of KY, LLC; Colony Bay Coal Company; Corydon Resources LLC; Coyote Coal Company LLC; Dodge Hill Mining Company, LLC; Eastern Associated Coal, LLC; Eastern Royalty, LLC; Emerald Processing, L.L.C.; Gateway Eagle Coal Company, LLC; Grand Eagle Mining, LLC; Heritage Coal Company LLC; Highland Mining Company, LLC; Hillside Mining Company; Hobet Mining, LLC; Jupiter Holdings LLC; Kanawha Eagle Coal, LLC; Kanawha River Ventures III, LLC; Little Creek LLC; Midland Trail Energy LLC; Midwest Coal Resources II, LLC; Mountain View Coal Company, LLC; Panther LLC; Patriot Coal Company, L.P.; Patriot Coal Holdings I LLC; Patriot Coal Holdings II LLC; Patriot Coal Sales LLC; Patriot Coal Services LLC; Patriot Leasing Company LLC; Patriot Midwest Holdings, LLC; Patriot Reserve Holdings, LLC; Patriot Ventures LLC; Pine Ridge Coal Company, LLC; Remington LLC; Rhino Eastern JV Holding Company LLC; Rivers Edge Mining, Inc.; Robin Land Company, LLC; Speed Mining LLC; Thunderhill Coal LLC; Wildcat Energy LLC; Wildcat, LLC; Will Scarlet Properties LLC; and WWMV JV Holding Company LLC.

76.   "*DIP Agent*" means Cantor Fitzgerald Securities solely in its capacity as administrative agent under the DIP Loan Agreement, or any successor agent appointed in accordance with such agreement.

77.   "*DIP Claims*" means any and all Claims of the DIP Agent and DIP Lenders arising under or related to the DIP Facility and the DIP Orders, including all "DIP Obligations" and the "DIP Superpriority Claims" (as those terms are defined in the DIP Orders).

78.   "*DIP Facility*" means that certain debtor-in-possession financing facility entered into pursuant to the DIP Loan Agreement and as approved by the DIP Orders, including any amendments, supplements, and modifications thereto.

79.   "*DIP Lenders*" means the lenders from time to time party to the DIP Loan Agreement, each solely in their capacities as such.

80.   "*DIP Lender Distribution*" means the distribution to each Holder of an Allowed DIP Claim of such Holder's Pro Rata share (based upon such Holder's commitments to the DIP Facility on the date of entry of the Final DIP Order) of up to an aggregate of $114,800,000 of, at Blackhawk's option, the Combined Company First Lien Tranche B-1 Term Loans or the Combined Company First Lien Single Tranche Term Loans.

81.   "*DIP Loan Agreement*" means, collectively, (a) that certain superpriority secured debtor-in-possession credit agreement, dated as of May 13, 2015, by and among Patriot Coal Corporation, as borrower, and the DIP Agent, the DIP Lenders named therein, and the other parties thereto and (b) all other instruments, agreements and other documents executed in connection therewith, as each of the foregoing may have been or may be amended, supplemented or otherwise modified from time to time in accordance with the terms thereof and the terms of the DIP Orders.

82.   "*DIP Orders*" means the Interim DIP Order and the Final DIP Order.

83.    "*Disbursing Agent*" means, on the Effective Date, the Debtors or their agent and, after the Effective Date, the Liquidating Trustee or any other Entity or Entities designated the Liquidating Trustee after consultation with the DIP Lenders and acceptance by such Entity or Entities to make or facilitate distributions that are to be made after the Effective Date pursuant to the Plan.

84.    "*Disclosure Statement*" means the *Disclosure Statement for the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated July 13, 2015, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

85.    "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

86.    "*Disputed Claims Reserve*" means a reserve of Cash or such other consideration the Debtors determine appropriate after consultation with the Consultation Parties that may be funded on or after the Effective Date with a portion of the Payout Event Cash, Cash provided in connection with the Combined Company 1.5 Lien Term Loan, such other consideration the Debtors determine appropriate after consultation with the Consultation Parties, or such consideration as ordered by the Bankruptcy Court, as applicable, for distributions to Holders of Allowed Claims and Disputed Claims if and to the extent that such Disputed Claims become Allowed Claims.

87.    "*Effective Date*" means the date selected by the Debtors that is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in Article IX.A hereof have been satisfied or waived (in accordance with Article IX.B hereof).

88.    "*Eligible Holder*" means a Holder that certifies its status as (a) a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act, or an entity in which all of the equity owners are such "qualified institutional buyers," or (b) an "accredited investor" within the meaning of Rule 501(a)(1), (2), (3), (5), (6) or (7) under the Securities Act, or an entity in which all of the equity owners are such "accredited investors."

89.    "*Encumbrance*" shall have the meaning set forth in the Blackhawk APA.

90.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

91.    "*Environmental Claim*" means any Claim asserted by any Government Environmental Entity and any non-governmental entity against any of the Debtors arising from any Environmental Law.

92.    "*Environmental Law*" means all federal, state, local, or tribal statutes, regulations, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders, agreements and determinations and all common law concerning pollution or protection of the environment, or environmental impacts on human health and safety, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act; the Clean Water Act; the Clean Air Act; the Emergency Planning and Community Right-to-Know Act; the Federal Insecticide, Fungicide, and Rodenticide Act; the Resource Conservation and Recovery Act; the Safe Drinking Water Act; the Surface Mining Control and Reclamation Act of 1977; the Toxic Substances Control Act; and any state, local, or tribal analogues or equivalents, including, without limitation, the West Virginia Surface Coal Mining and Reclamation Act.

93.    "*Environmental Parties*" means, collectively, the Sierra Club, the Ohio Valley Environmental Coalition, the West Virginia Highlands Conservancy, and the Government Environmental Entities who Filed objections to the Plan prior to the Confirmation Objection Deadline.

94.    "*Equity Interest*" means the common stock, limited liability company interests and any other equity, ownership or profits interests of any Debtor and options, warrants, rights or other securities or agreements to acquire the common stock, limited liability company interests or other equity, ownership or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any claim against

8

the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

95.     "*Estate*" means, as to each Debtor, the estate created for the Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code.

96.     "*Excess Cash Distribution Mechanism*" means, if the Payout Event does not occur, the provision governing the distribution of any Cash remaining after facilitating all distributions pursuant to the Plan or any other order of the Bankruptcy Court, as set forth in Article IV.U hereof.

97.     "*Exculpated Parties*" means, collectively: (a) the Debtors; (b) Blackhawk; (c) VCLF; (d) the Debtor Releasees; (e) the Third Party Releasees; (f) the DIP Agent; (g) the DIP Lenders; (h) the Combined Company 1.5 Lien Term Loan Agent; (i) the Combined Company 1.5 Lien Term Loan Lenders; (j) the Committee and the Committee Members, each in their capacity as such; (k) the Retiree Committee and the Retiree Committee Members, each in their capacity as such; and (l) all of the current and former Affiliates, attorneys, financial advisors, consultants, representatives, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, members (including ex officio members), officers, directors, employees, partners, subsidiaries, principals, agents, managed funds and representatives and successors and assigns of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such); provided, however, in no circumstance shall Peabody, Arch, or Alcoa be Exculpated Parties.

98.     "*Exculpation*" means the exculpation provision set forth in Article VIII.E hereof.

99.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

100.     "*Federal Mine Profit Interest*" means a profit interest/royalty of at least 20% in the Federal mine complex in perpetuity.

101.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

102.     "*Final DIP Order*" means the *Final Order (A) Authorizing The Debtors To Obtain Postpetition Financing, (B) Authorizing Use Of Cash Collateral, (C) Granting Liens And Superpriority Claims, (D) Granting Adequate Protection, (E) Modifying The Automatic Stay, (F) Scheduling A Final Hearing, And (G) Granting Related Relief*, entered June 4, 2015 [Docket No. 230], and as may be amended, modified or supplemented by the Bankruptcy Court from time to time. For the avoidance of doubt, the Final DIP Order is a "Final Order."

103.     "*Final Order*" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Bankruptcy Cases (or the docket of such other court), which is and remains in full force and effect, has not been modified, amended, reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, re-argument or rehearing shall then be pending or (b) if an appeal, writ of certiorari new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided, that, the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be Filed relating to such order, shall not cause an order not to be a Final Order.

104.     "*First-Lien Intercreditor Agreement*" means that certain first-lien intercreditor agreement dated as of December 18, 2013 (as amended, modified, supplemented, or restated from time to time), by and among the

Debtors, the Prepetition ABL Agent, the Prepetition LC Agent, the Prepetition Term Agent, and the Prepetition LC/Term Collateral Agent.

105.    "*General Unsecured Claim*" means any Unsecured Claim that is not:  (a) an Administrative Claim (including, for the avoidance of doubt, any Professional Fee Claim); (b) a DIP Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) an Intercompany Claim; (f) a Prepetition Term Loan Facility Claim; or (g) a Prepetition Notes Claim.

106.    "*General Unsecured Claims Distribution*" means the distribution to each Holder of an Allowed General Unsecured Claim of such Holder's Pro Rata share (based upon such Holder's face amount Allowed Claim relative to the total face amount of all Allowed Prepetition Term Loan Facility Claims, Allowed Prepetition Notes Claims, and Allowed General Unsecured Claims) of the GUC Distribution Pool.

107.    "*Government Environmental Entity*" means federal, state, local or tribal Governmental Units asserting claims or having regulatory authority or responsibilities with respect to Environmental Law.

108.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

109.    "*GUC Distribution Pool*" means (a) if the VCLF Transaction is consummated, the VCLF Equity Grant, as applicable, in accordance with the terms set forth in Section 7.12 of the VCLF APA or (b) if the VCLF Transaction is not consummated, the Liquidating Trust Units, subject to the Liquidating Trust Funding Mechanism.

110.    "*GUC Trade Creditor Claim*" means any General Unsecured Claim of a trade vendor and/or service provider arising from or related to the Debtors' business operations.

111.    "*GUC Trade Creditor Distribution Pool*" means Cash in an amount equal to $1 million to be distributed to Holders of Allowed GUC Trade Creditor Claims in accordance with the terms of the Committee Settlement and this Plan.

112.    "*Holder*" means any Entity holding a Claim or an Interest.

113.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired and, with respect to a Claim or Interest, a Claim or Interest that is not Unimpaired.

114.    "*Indemnification Provision*" means each of the Debtors' indemnification obligations currently in place whether in the bylaws, certificates of incorporation, other formation documents, board resolutions, DIP Loan Agreement, or employment contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, DIP Lenders, DIP Agent and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates; provided, however, that in no circumstance (a) shall the Debtors indemnify Peabody, Arch, or Alcoa or (b) shall any indemnification obligation with respect to Peabody, Arch, or Alcoa be an Indemnification Provision.

115.    "*Intercompany Claim*" means any Claim held by one Debtor against another Debtor.

116.    "*Intercompany Interest*" means an Equity Interest in a Debtor held by another Debtor.  For the avoidance of doubt, Intercompany Interests excludes Equity Interests in any Debtor held by non-Debtors.

117.    "*Intercreditor Agreements*" means, collectively, the First-Lien Intercreditor Agreement, the Term Loan Subordination Agreement, and the Junior-Lien Intercreditor Agreement.

118.    "*Interests*" means, collectively, Equity Interests and Intercompany Interests.

119.    "*Interim Compensation Order*" means the *Order (I) Establishing Interim Compensation Procedures and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket

No. 276], entered on June 10, 2015, as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

120.    "*Interim DIP Order*" means the *Interim Order (A) Authorizing The Debtors To Obtain Postpetition Financing, (B) Authorizing Use Of Cash Collateral, (C) Granting Liens And Superpriority Claims, (D) Granting Adequate Protection, (E) Modifying The Automatic Stay, (F) Scheduling A Final Hearing, And (G) Granting Related Relief*, entered May 13, 2015 [Docket No. 67], and as may be amended, modified, or supplemented by the Bankruptcy Court from time to time.

121.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as may be amended, modified, or supplemented.

122.    "*Junior-Lien Intercreditor Agreement*" means that certain junior-lien intercreditor agreement dated as of December 18, 2013 (as amended, modified, supplemented, or restated from time to time), by and among the Debtors, the Prepetition ABL Agent, the Prepetition LC Agent, the Prepetition Term Agent, the Prepetition LC/Term Collateral Agent, and the Prepetition Notes Trustee.

123.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

124.    "*Liquidating Trust*" means that certain trust to be created on the Effective Date, as described in Article IV.Q.

125.    "*Liquidating Trust Agreement*" means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to this Plan, substantially in the form Filed with the Plan Supplement.

126.    "*Liquidating Trust Assets*" means all of the assets of the Debtors' Estates that have not been sold, abandoned, or otherwise transferred pursuant to a Final Order of the Bankruptcy Court and/or Equity Interests in one or more of the Debtors.  For the avoidance of doubt, the Blackhawk Purchased Assets and the VCLF Purchased Assets shall not be Liquidating Trust Assets.

127.    "*Liquidating Trust Funding Mechanism*" means Cash, in an amount necessary to fund (a) the working capital needs of the Liquidating Trust and (b) the reasonable, documented fees and expenses of the Liquidating Trust and the Liquidating Trustee Professionals, which cash flow shall be generated by operating the Liquidating Trust Assets.

128.    "*Liquidating Trust Units*" means the ownership interests in the Liquidating Trust as more fully set forth in the Liquidating Trust Agreement.

129.    "*Liquidating Trustee*" means the Person appointed by the Debtors, after consultation with the Consultation Parties, pursuant to Article IV.R hereof to act as trustee of and administer the Liquidating Trust, which person shall be identified to the extent known prior to the Confirmation Hearing.

130.    "*Liquidating Trustee Professionals*" means the agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Liquidating Trustee.

131.    "*Mine Act*" means the Federal Mine Safety and Health Act of 1977, as amended by the Miner Act of 2006, and as may be further amended, modified or supplemented.

132.    "*Note Incentive Programs*" means, collectively, the Performance-Based Note Incentive Program and Time-Based Note Incentive Program.

133.    "*Non-Released Parties*" means those Entities to be identified in the Plan Supplement as Non-Released Parties; provided, that, Non-Released Parties shall not include the following: (a) each Debtor Releasee; (b) the Liquidating Trust; (c) the Liquidating Trustee; (d) Blackhawk; (e) the Combined Company; (f) the Prepetition Agents and Barclays Bank PLC, as predecessor Term Administrative Agent (under and as defined in the

Prepetition LC/Term Loan Agreement) and any of their respective sub-agents; (g) the Prepetition Term Lenders; (h) the Prepetition LC Secured Parties; (i) the Prepetition ABL Secured Parties; (j) the Prepetition Noteholders; (k) the DIP Agent; (l) the DIP Lenders; (m) the Combined Company 1.5 Lien Term Loan Agent; (n) the Combined Company 1.5 Lien Term Loan Lenders; (o) the Committee, including the Committee Members (solely in their official capacity); and (p) the Retiree Committee, including the Retiree Committee Members (solely in their official capacity); provided, further, that, if the Payout Event does not occur and Class 5 votes to reject the Plan, then the Prepetition LC Secured Parties shall be Non-Released Parties.

134.    "*Notice and Claims Agent*" means Prime Clerk LLC, in its capacity as notice and claims agent for the Debtors.

135.    "*OCP Order*" means the *Order (I) Authorizing the Retention and Compensation of Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief*, entered June 10, 2015 [Docket No. 111].

136.    "*Other Priority Claim*" means any Claim against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; (b) a DIP Claim; or (c) a Priority Tax Claim.

137.    "*Other Secured Claim*" means any Secured Claim against any Debtor that is not:  (a) a DIP Claim; (b) a Prepetition ABL Facility Claim; (c) a Prepetition LC Facility Claim; (d) a Prepetition Term Loan Facility Claim; (e) a Prepetition Notes Claim; (f) an Administrative Claim; or (g) a Secured Tax Claim.  For the avoidance of doubt, a properly perfected mechanic's lien constitutes an Other Secured Claim under this definition.

138.    "*Payout Event*" means the implementation of a Winning Bid by the Debtors for some or all of the Blackhawk Purchased Assets by a Winning Bidder other than Blackhawk in accordance with the Bidding Procedures Order.

139.    "*Payout Event Cash*" means the Cash resulting from the Payout Event.

140.    "*Payout Event Cash Pool*" means the amount of Payout Event Cash available after payment or funding (as applicable) of the Carve Out Reserve and Professional Fee Escrow Account, all Allowed Prepetition ABL Facility Claims, and DIP Claims, subject in all cases to the priorities set forth in Article IV.S.

141.    "*Payout Event Class 5 Distribution*" means the distribution to each Holder of an Allowed Prepetition LC Facility Claim of such Holder's Pro Rata share (based upon such Holder's face amount ownership of the Prepetition LC Facility relative to the total face amount of the Prepetition LC Facility as of the Petition Date) of an amount of the Payout Event Cash Pool available, if any, up to the total face amount of Allowed Prepetition LC Facility Claims.

142.    "*Payout Event Class 6 Distribution*" means the distribution to each Holder of an Allowed Prepetition Term Loan Facility Claim of such Holder's Pro Rata share (based upon such Holder's loans under the Prepetition Term Loan Facility as of the Petition Date) of an amount of the Payout Event Cash Pool available after payment of the Payout Event Class 5 Distribution, if any, up to the total face amount of the Allowed Prepetition Term Loan Facility Claims.

143.    "*Payout Event Class 7 Distribution*" means the distribution to each Holder of an Allowed Prepetition Notes Claim of such Holder's Pro Rata share (based upon the principal amount of Prepetition Notes held by such Holder as of the Petition Date) of an amount of the Payout Event Cash Pool available after payment of the Payout Event Class 5 Distribution and the Payout Event Class 6 Distribution, if any, up to the total face amount of the Allowed Prepetition Notes Claims, subject to the right of the Prepetition Notes Trustee to assert its Prepetition Notes Trustee Charging Lien against such distribution.

144.    "*Payout Event Class 8 Distribution*" means the distribution to each Holder of an Allowed General Unsecured Claim of such Holder's Pro Rata share (based upon such Holder's face amount General Unsecured Claim

KE 38073257

relative to the total face amount of all General Unsecured Claims) of the Payout Event Cash Pool available after payment of the Payout Event Class 5 Distribution, the Payout Event Class 6 Distribution, and the Payout Event Class 7 Distribution, if any.

145.    "*Peabody*" means, collectively, Peabody Energy Corporation, Peabody Holding Company, LLC, and their subsidiaries as well as their current and former Affiliates, partners, members, subsidiaries, officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, and their respective successors and assigns, each in their capacity as such, and only if serving in such capacity.

146.    "*Performance-Based Note Incentive Program*" means the Debtors' financial performance-based incentive program for certain eligible employees as set forth more fully in the Disclosure Statement.

147.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

148.    "*Petition Date*" means May 12, 2015, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

149.    "*Plan*" means this *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time, including the Plan Supplement, which is incorporated herein by reference and made part of this Plan as if set forth herein.

150.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed on or prior to September 25, 2015, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including:  the Blackhawk LLC Agreement, VCLF Transaction Documents (excluding the VCLF APA), term sheets identifying the material terms of the Combined Company Debt Documents (excluding the Combined Company Unsecured Note), the Liquidating Trust Agreement, and the Schedule of Assumed Executory Contracts and Unexpired Leases.

151.    "*Prepetition ABL Agent*" means Deutsche Bank AG New York Branch, in its capacity as administrative agent for the Prepetition ABL Lenders and its capacity as collateral agent with respect to the Prepetition ABL Facility, and together with any of its successors in such capacities.

152.    "*Prepetition ABL Agreement*" means that certain credit agreement dated as of December 18, 2013 (as amended, modified, supplemented, or restated from time to time), by and among Patriot Coal Corporation and other Debtors, the Prepetition ABL Agent, and the Prepetition ABL Secured Parties from time to time party thereto.

153.    "*Prepetition ABL Drawn LCs*" means, collectively, and as of any date of determination, the outstanding indebtedness equal to the drawn amounts as of such date of determination of any letters of credit issued under the Prepetition ABL Facility.  The aggregate amount of the Prepetition ABL Drawn LCs shall be no greater than $44,263,955 (plus any unpaid accrued interest, letter of credit fees, and unpaid reasonable fees and expenses as of the Effective Date, to the extent not paid pursuant to the Final DIP Order or the DIP Facility).

154.    "*Prepetition ABL Facility*" means the revolving loan and letter of credit facility under the Prepetition ABL Agreement, pursuant to which the Prepetition ABL LC Issuers issued letters of credit for the account of Patriot Coal Corporation and other Debtors and the Prepetition ABL Lenders otherwise extended credit to the Debtors, in an aggregate principal amount not to exceed $65,000,000.

155.    "*Prepetition ABL Facility Claims*" means any and all Claims arising under or related to the Prepetition ABL Facility, the Prepetition ABL Financing Documents and the DIP Orders, including all "Prepetition Obligations," but excluding all "ABL Adequate Protection Obligations," as each such term is defined in the Final DIP Order and shall include, without limitation, any amount by which letters of credit issued under the Prepetition ABL Agreement increase after the Petition Date by their terms.

13

156.     "*Prepetition ABL Facility Issuers*" means Deutsche Bank AG New York Branch and Barclays Bank PLC, each in its respective capacity as letter of credit issuers under the Prepetition ABL Facility.

157.     "*Prepetition ABL Financing Documents*" means the Prepetition ABL Agreement and all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Prepetition ABL Agent, any of the Prepetition ABL Lenders and/or any of the Prepetition ABL LC Issuers, including, without limitation, the Intercreditor Agreements, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, as all of the same have been supplemented, restated, modified, extended, renewed, restated, and/or replaced.

158.     "*Prepetition ABL LC Issuers*" means Deutsche Bank AG New York Branch and Barclays Bank PLC, each in its respective capacity as a letter of credit issuer under the Prepetition ABL Facility, together with any of their respective successors and permitted assigns in such capacity.

159.     "*Prepetition ABL Lenders*" means those banks, financial institutions, and other lender parties to the Prepetition ABL Agreement from time to time, each in their capacity as such.

160.     "*Prepetition ABL Obligations*" means all of the Debtors' obligations under the Prepetition ABL Financing Documents, including, without limitation, all reimbursement obligations for Prepetition ABL Drawn LCs and Prepetition ABL Undrawn LCs, and all interest, fees and expenses related thereto. The Prepetition ABL Obligations are Allowed Secured Claims.

161.     "*Prepetition ABL Secured Parties*" means, collectively, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition ABL LC Issuers, and all other Secured Parties (as defined in the Prepetition ABL Agreement).

162.     "*Prepetition ABL Undrawn LCs*" means, collectively, and as of any date of determination, the undrawn portion as of such date of determination of any outstanding letters of credit issued under the Prepetition ABL Facility (which undrawn portion includes any automatic increases in the stated amount of such letters of credit, whether or not such increase in the stated amount is in effect at such time). The aggregate undrawn stated amount of the Prepetition ABL Undrawn LCs is equal to $44,263,955, less any amounts drawn on or prior to the Effective Date under outstanding letters of credit issued under the Prepetition ABL Facility, and less any amounts of outstanding letters of credit issued under the Prepetition ABL Facility that are released on or prior to the Effective Date.

163.     "*Prepetition Agents*" means, collectively, the Prepetition Notes Trustee, the Prepetition ABL Agent, the Prepetition LC Agent, the Prepetition Term Agent and the Prepetition LC/Term Collateral Agent.

164.     "*Prepetition Facilities*" means, collectively, the Prepetition Notes, the Prepetition LC Facility, the Prepetition Term Loan Facility, and the Prepetition ABL Facility.

165.     "*Prepetition Financing Documents*" means collectively, the Prepetition Notes Documents, the Prepetition LC/Term Loan Financing Documents, and the Prepetition ABL Financing Documents.

166.     "*Prepetition Indenture*" means that certain indenture dated as of December 18, 2013, with respect to Patriot Coal Corporation's 15.0% Senior Secured Second Lien PIK Toggle Notes due 2023 (as amended, modified, supplemented, or restated from time to time), by and among Patriot Coal Corporation, certain of the Debtor's subsidiaries from time to time party thereto, as guarantors, and U.S. Bank National Association as the Prepetition Notes Trustee.

167.     "*Prepetition LC/Term Collateral Agent*" means Wilmington Trust, National Association in its capacity as collateral agent for itself, the Prepetition LC Lenders, the Prepetition Term Lenders, the Prepetition LC Facility Issuers, the Prepetition LC Agent, the Prepetition Term Agent and the other Prepetition LC Secured Parties and Prepetition Term Secured Parties, together with any of its successors and permitted assigns in such capacity.

14

168.    "*Prepetition LC/Term Loan Agent Expenses Priority*" shall have the same meaning as the term LC/Term Loan Agent Expenses Priority set forth in the Final DIP Order.

169.    "*Prepetition LC/Term Loan Agreement*" means that certain credit agreement (L/C Facility and Term Facility) dated as of December 18, 2013 (as amended, modified, supplemented, or restated from time to time), by and among Patriot Coal Corporation, as the borrower, the other Debtors, as guarantors, the Prepetition LC Agent, the Prepetition Term Agent, the Prepetition LC Facility Issuers, the Prepetition LC/Term Collateral Agent, the Prepetition LC Lenders from time to time party thereto and the Prepetition Term Lenders from time to time party thereto.

170.    "*Prepetition LC/Term Loan Financing Documents*" means the Prepetition LC/Term Loan Agreement and all other agreements, documents, and instruments executed and/or delivered with, to or in favor of any of the Prepetition LC Secured Parties or Prepetition Term Secured Parties, including, without limitation, the Intercreditor Agreements, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, as all of the same have been or may be supplemented, modified, extended, renewed, restated and/or replaced.

171.    "*Prepetition LC Agent*" means Barclays Bank PLC in its capacity as administrative agent for the Prepetition LC Lenders and Prepetition LC Facility Issuers, together with any of its successors and permitted assigns in such capacity.

172.    "*Prepetition LC Facility*" means, collectively, the certain letters of credit in the aggregate original undrawn available amount of $200,147,031.55 provided under the Prepetition LC/Term Loan Agreement and other extensions of credit to the Debtors related thereto (including in the form of extensions of such letters of credit and advances in connection with drawings thereunder), together with all Prepetition LC/Term Loan Financing Documents related thereto.

173.    "*Prepetition LC Facility Claims*" means any and all Claims arising under or related to the Prepetition LC Facility (whether under or pursuant to any Prepetition LC/Term Loan Financing Document, any DIP Order or otherwise), including all "Prepetition LC Obligations," but excluding all "LC Adequate Protection Obligations," as each such term is defined in the Final DIP Order and shall include, without limitation, any amount by which letters of credit issued under the Prepetition LC Facility increase after the Petition Date by their terms.

174.    "*Prepetition LC Facility Distribution*" means the distribution on the Effective Date to each Holder of an Allowed Prepetition LC Facility Claim or the Undrawn LC Facility Claims Reserve Agent, as applicable, of (a) such Holder's Pro Rata share of $192,238,375.55 of the Combined Company Second Lien Term Loans; (b) if VCLF or the Liquidating Trust (as applicable) closes on its respective proposed transaction on financing terms other than as set forth in the VCLF Commitment Letter and such financing terms are acceptable to the Debtors and VCLF or the Liquidating Trust (as applicable), such Holder's Pro Rata share of the Federal Mine Profit Interest; (c) its Prepetition LC Facility Rights; and (d) its Prepetition LC Facility Distribution Release.  For the avoidance of doubt, Holders of Prepetition LC Facility Claims on account of either drawn and/or undrawn letters of credit provided under the Prepetition LC Facility shall receive Prepetition LC Facility Rights and be eligible to participate in the Rights Offering.

175.    "*Prepetition LC Facility Distribution Alternative*" means the distribution on the Effective Date to each Holder of an Allowed Prepetition LC Facility Claim or the Undrawn LC Facility Claims Reserve Agent, as applicable, of (a) such Holder's Pro Rata share of $155 million of the Combined Company Second Lien Term Loans and (b) its Prepetition LC Facility Rights.  For the avoidance of doubt, Holders of Prepetition LC Facility Claims on account of either drawn and/or undrawn letters of credit provided under the Prepetition LC Facility shall receive Prepetition LC Facility Rights and be eligible to participate in the Rights Offering.

176.    "*Prepetition LC Facility Distribution Release*" means the release provision set forth in Article VIII.D hereof as applicable to the Prepetition LC Secured Parties if the Payout Event does not occur and Class 5 votes to accept the Plan.

15

177.    "*Prepetition LC Facility Final Distribution Date*" means a day (a) selected by the Undrawn LC Facility Claims Reserve Agent that is twenty calendar days after the date on which all Undrawn LC Facility Claims have become either Allowed Claims or disallowed Claims or (b) otherwise established by the Bankruptcy Court.

178.    "*Prepetition LC Facility Issuers*" means Bank of America, N.A., PNC Bank, National Association, and Fifth Third Bank, each in its respective capacity as a letter of credit issuer under the Prepetition LC Facility, together with any of their respective successors and permitted assigns in such capacity.

179.    "*Prepetition LC Facility Rights*" means, collectively, the rights of all Holders of Prepetition LC Facility Claims to participate in the Rights Offering that shall be distributed on a Pro Rata basis (based upon such Holder's face amount ownership of the Prepetition LC Facility relative to the total face amount of the Prepetition LC Facility as of the Petition Date).

180.    "*Prepetition LC Lenders*" means those banks, financial institutions, and other lender parties to the Prepetition LC/Term Loan Agreement from time to time to the extent owed Prepetition LC Obligations and/or LC Adequate Protection Obligations from time to time, each in their capacity as such, together with any of their respective successors and permitted assigns in such capacity.

181.    "*Prepetition LC Obligations*" means all of the Debtors' obligations under the Prepetition LC/Term Loan Financing Documents, in each case to the extent relating to the Prepetition LC Facility, including, without limitation, all reimbursement obligations for drawn and undrawn letters of credit issued under the Prepetition LC Facility, all interest, fees and expenses related thereto and all other "Secured L/C Facility Obligations" as defined in the Prepetition LC/Term Loan Agreement. The Prepetition LC Obligations are Allowed Secured Claims.

182.    "*Prepetition LC Secured Parties*" means the Prepetition LC Agent, the Prepetition LC Lenders, the Prepetition LC Facility Issuers, the Prepetition LC/Term Collateral Agent (to the extent of any Prepetition LC Obligations and/or LC Adequate Protection Obligations owing to the Prepetition LC/Term Collateral Agent or granted to or held by the Prepetition LC/Term Collateral Agent for the benefit or on behalf of any other Prepetition LC Secured Party), and all other L/C Secured Parties (as defined in the Prepetition LC/Term Loan Agreement).

183.    "*Prepetition Noteholders*" means the holders of the Prepetition Notes.

184.    "*Prepetition Notes*" means Patriot Coal Corporation's 15.0% Senior Secured Second Lien PIK Toggle Notes due 2023 in an initial aggregate principal amount of $262,499,992 (together with any additional notes issued or increases to the principal amount of existing notes as of the Petition Date, in each case representing interest "paid in kind").

185.    "*Prepetition Notes Claims*" means any and all Claims arising under or related to the Prepetition Notes, Prepetition Notes Documents and DIP Orders, including all "Prepetition Obligations," but excluding all "Note Adequate Protection Obligations," as each such term is defined in the Final DIP Order.

186.    "*Prepetition Notes Distribution*" means the distribution to each Holder of an Allowed Prepetition Notes Claim (subject to the Prepetition Notes Trustee Charging Lien in favor of the Prepetition Notes Trustee) of such Holder's Pro Rata share (based upon such Holder's face amount Allowed Claim relative to the total face amount of all Allowed Prepetition Term Loan Facility Claims, Allowed Prepetition Notes Claims, and Allowed General Unsecured Claims) of the GUC Distribution Pool.

187.    "*Prepetition Notes Documents*" means the Prepetition Indenture, the Prepetition Notes, and all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Prepetition Notes Trustee and/or the Prepetition Noteholders, including, without limitation, the Intercreditor Agreements, all security agreements, collateral trust agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, as all of the same have been supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date.

KE 38073257

188.  "*Prepetition Notes Liens*" means a Lien granted to the Prepetition Notes Trustee for its benefit and the benefit of the Prepetition Noteholders, to secure the Prepetition Notes Obligations.

189.  "*Prepetition Notes Obligations*" means any of the Debtors' obligations under the Prepetition Notes Documents.

190.  "*Prepetition Notes Secured Parties*" means the Prepetition Notes Trustee, Prepetition Notes Agent and Prepetition Noteholders and "Secured Parties" (as defined in the Prepetition Indenture).

191.  "*Prepetition Notes Trustee*" means U.S. Bank National Association in its capacities as trustee and collateral trustee for the Prepetition Noteholders with respect to the Prepetition Notes, and together with any of its successors in such capacities.

192.  "*Prepetition Notes Trustee Charging Lien*" means the lien of the Prepetition Notes Trustee arising under the Prepetition Notes Indenture, upon any distributions relating to or on account of the Prepetition Notes, securing the payment of, including without limitation, the fees and expenses of the Prepetition Notes Trustee, including fees and expenses of counsel and other professionals engaged by, on behalf of, or for the benefit of the Prepetition Notes Trustee, whether incurred prepetition, postpetition, or before or after the Effective Date.

193.  "*Prepetition Secured Parties*" means, collectively, the Prepetition ABL Secured Parties, the Prepetition LC Secured Parties, the Prepetition Term Secured Parties, and the Prepetition Notes Secured Parties.

194.  "*Prepetition Term Agent*" means Cortland in its capacity as successor term administrative agent under the Prepetition LC/Term Loan Agreement, together with any of its successors and permitted assigns in such capacities.

195.  "*Prepetition Term Lenders*" means those banks, financial institutions, and other lender parties to the Prepetition LC/Term Loan Agreement to the extent owed Prepetition Term Loan Obligations from time to time, each in their capacity as such, together with any of their respective successors and permitted assigns in such capacity.

196.  "*Prepetition Term Loan Facility*" means the term loans in an aggregate initial principal amount of up to $250,000,000 provided under the Prepetition LC/Term Loan Agreement, together with all Prepetition LC/Term Loan Financing Documents related thereto.

197.  "*Prepetition Term Loan Facility Claims*" means any and all Claims, insofar as such Claims relate to the Prepetition Term Loan Facility, arising under or related to the Prepetition Term Loan Facility, the Prepetition LC/Term Loan Agreement and the DIP Orders, including all "Prepetition Term Loan Obligations," but excluding all "Term Adequate Protection Obligations," as each such term is defined in the Final DIP Order.

198.  "*Prepetition Term Loan Facility Distribution*" means the distribution to each Holder of an Allowed Prepetition Term Loan Facility Claim of (a) such Holder's Pro Rata share (based upon such Holder's face amount Allowed Claim relative to the total face amount of all Allowed Prepetition Term Loan Facility Claims, Allowed Prepetition Notes Claims, and Allowed General Unsecured Claims) of the GUC Distribution Pool and (b) its Prepetition Term Loan Rights.

199.  "*Prepetition Term Loan Obligations*" means all of the Debtors' obligations under the Prepetition LC/Term Loan Financing Documents insofar as such obligations relate to the Prepetition Term Loan Facility.

200.  "*Prepetition Term Loan Rights*" means, collectively, the rights of all Holders of Prepetition Term Loan Facility Claims to participate in the Rights Offering on a Pro Rata basis (based upon such Holder's loans under the Prepetition Term Loan Facility as of the Petition Date).

201.  "*Prepetition Term Secured Parties*" means the Prepetition Term Agent, the Prepetition Term Lenders, the Prepetition LC/Term Collateral Agent (to the extent of any Prepetition Term Loan Obligations and/or

17

Term Adequate Protection Obligations owing to the Prepetition LC/Term Collateral Agent or granted to or held by the Prepetition LC/Term Collateral Agent for the benefit or on behalf of any other Prepetition Term Secured Party), and all other Term Secured Parties (as defined in the Prepetition LC/Term Loan Agreement)

202.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

203.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

204.    "*Professional*" means any Entity:  (a) retained in the Chapter 11 Cases pursuant to and in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; and (c) that is a Liquidating Trustee Professional.

205.    "*Professional Fee Claims*" means all Claims for accrued fees and expenses (including success fees) for services rendered and expenses incurred by a Professional from the Petition Date through and including the Effective Date, which Claims are evidenced by applications for compensation Filed with the Bankruptcy Court, to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

206.    "*Professional Fee Escrow Account*" means an interest bearing escrow account to be funded on the Effective Date with unused proceeds from the DIP Facility, the Professional Fee Account (as defined in the Final DIP Order), or Cash on hand in an amount equal to all Professional Fee Claims, plus an amount equal to the estimated, unbilled Professional Fees incurred through the Effective Date but not evidenced by applications for compensation Filed with the Bankruptcy Court (calculated in accordance with reasonable estimates from each Professional); provided, that, the Professional Fee Escrow shall be increased to the extent that the aggregate amount of fee applications Filed after the Effective Date exceeds the available balance in the Professional Fee Escrow Account.  For the avoidance of doubt, the Professional Fee Escrow Account shall include the funding of the Carve Out Reserve as provided for in the Final DIP Order.

207.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

208.    "*Proof of Interest*" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

209.    "*Released Parties*" means, collectively, the Debtor Releasees and the Third Party Releasees; provided, however, that, for the avoidance of doubt, in no circumstance shall Peabody, Arch, or Alcoa be Released Parties.

210.    "*Releasing Parties*" means, collectively: (a) the Prepetition Agents; (b) the Prepetition Term Lenders; (c) the Prepetition LC Lenders and the Prepetition LC Facility Issuers; (d) the Prepetition ABL Lenders and the Prepetition ABL LC Issuers; (e) the Prepetition Noteholders; (f) the DIP Agent; (g) the DIP Lenders; (h) the Combined Company 1.5 Lien Term Loan Agent; (i) the Combined Company 1.5 Lien Term Loan Lenders; (j) the Committee; (k) the Retiree Committee; and (l) all other Holders of Claims or Equity Interests, except Holders of any Claims or Equity Interests (i) who vote to reject the Plan, (ii) who do not vote to accept or reject the Plan but who timely submit a Ballot indicating their decision to not participate in the Third Party Release set forth in Article VIII.D hereof, or (iii) who are in a Class that is deemed to reject the Plan.

211.    "*Restructuring Documents*" means this Plan, the Disclosure Statement, the Plan Supplement, the Blackhawk Transaction Documents, VCLF Transaction Documents, and the various agreements and other documentation formalizing the Plan, each of which shall be in form and substance reasonably satisfactory to the

Debtors, the DIP Lenders, and satisfactory to Blackhawk as specified in the Blackhawk APA and to VCLF as specified in the VCLF APA.

212.    "*Restructuring Transactions*" means one or more transactions to occur on the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, sale, consolidation, equity issuance, certificates of incorporation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan or the Blackhawk Transaction and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of sale, equity issuance, transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents; and (c) all other actions that the Debtors, after consultation with the Consultation Parties, or Liquidating Trustee, as applicable, determine are necessary or appropriate to implement the Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents. For the avoidance of doubt, this definition includes the entry into the Combined Company Debt Facilities (including the Combined Company 1.5 Lien Term Loan).

213.    "*Retiree Committee*" means the official committee of non-union retirees appointed in the Chapter 11 Cases pursuant to section 1114(d) of the Bankruptcy Code on July 7, 2015, as may be constituted from time to time, in accordance with the agreed order entered by the Bankruptcy Court on June 25, 2015.

214.    "*Retiree Committee Advisors*", means, collectively, Schnader Harrison Segal & Lewis LLP and Stahl Cowen Crowley Addis LLC, as legal advisors to the Retiree Committee, and Zolfo Cooper, LLC, as bankruptcy consultants and financial advisors to the Retiree Committee.

215.    "*Retiree Committee Members*" means:  (a) James R. Gillenwater; (b) Elizabeth Wills; (c) Harold D. Green; (d) Carl Egnor, UMWA Representative; and (e) David L. McDonald; each solely in their capacity as members of the Retiree Committee.

216.    "*Rights*" means the subscription rights to purchase Combined Company First Lien Tranche B-2 Term Loans or Combined Company Single Tranche Term Loans, as applicable, and Combined Company Second Lien Term Loans contemplated by the Rights Offering.

217.    "*Rights Offering*" means the rights of Holders of Prepetition LC Facility Claims and Holders of Prepetition Term Loan Facility Claims to purchase, for an aggregate of $13,500,000 in Cash, (a) up to $16,875,000 in aggregate initial principal amount of, at Blackhawk's option, Combined Company First Lien Tranche B-2 Term Loans or Combined Company First Lien Single Tranche Term Loans and (b) up to $9,250,000 in aggregate initial principal amount of Combined Company Second Lien Term Loans, all subject to Sections 2.06(b)(i)(B) and 2.06(d)(ii) of the Blackhawk APA. The Rights shall be issued to Holders of Prepetition LC Facility Claims and to Holders of Prepetition Term Loan Facility Claims. If the Rights are oversubscribed, Rights will be issued (i) first, to the Holders of Prepetition LC Facility Claims and (ii) second, to Holders of Prepetition Term Loan Facility Claims, and any oversubscription within a Class shall be cut back Pro Rata within such Class.

218.    "*Rights Offering Participant*" means (a) a Holder of an Allowed Prepetition LC Facility Claim, (b) a Holder of an Allowed Prepetition Term Loan Facility Claim, or (c) an Eligible Holder to whom the Rights of a Holder of an Allowed Prepetition LC Facility Claim or a Holder of an Allowed Prepetition Term Loan Facility Claim were transferred.

219.    "*Rights Offering Procedures*" means the procedures governing the Rights Offering, which procedures are attached to the Disclosure Statement as <u>Exhibit D</u> and shall be Filed with the Plan Supplement.

220.    "*Rights Offering Record Date*" means September 18, 2015.

221.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors and assigned to Blackhawk, VCLF or the

19

Liquidating Trust, as applicable, pursuant to the Plan in the form to be Filed with the Bankruptcy Court as an exhibit to the Plan Supplement, as the same may be amended, modified or supplemented from time to time.  Such schedule may include a description of the Unexpired Leases to be assumed by the Debtors and assigned to Blackhawk, VCLF, or the Liquidating Trust, as applicable.

222.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors on June 26, 2015 pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

223.    "*Scheduling Order*" means the *Order Approving Debtors' Motion for Entry of An Order (I) Scheduling Combined Hearing on Approval of A Revised Disclosure Statement and Confirmation of A Revised Plan, (II) Approving the Form and Manner of Notice of the Combined Hearing, (III)  Shortening the Notice of the Combined Hearing and the Deadline for Filing Objections; (IV) Maintaining the Voting Record Date; (V) Approving the Submission Of Votes to Accept or Reject the Plan through An "E-Ballot" Platform; (VI) Establishing the Voting Deadline; (VII) Establishing the Objection Deadline; and (VIII) Granting Related Relief*, entered on September 17, 2015 [Docket No. 1320].

224.    "*Section 510(b) Claims*" means any Claim against any Debtor arising from rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

225.    "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.  For the avoidance of doubt, Secured Claims do not include the DIP Claims.

226.    "*Secured Tax Claims*" means any Secured Claim against any Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

227.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as may be amended, modified, or supplemented, or any similar federal, state, or local law.

228.    "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as amended, and as may be further amended, modified, or supplemented.

229.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

230.    "*Subscription Accounts*" means one or more trust accounts, escrow accounts, treasury accounts, or similar segregated accounts established by the Subscription Agent to receive and hold payments of the Subscription Purchase Price.

231.    "*Subscription Agent*" means Prime Clerk, LLC.

232.    "*Subscription Deadline*" means October 2, 2015 at 4:00 p.m. (prevailing Eastern Time) or such later time as determined by the Debtors in their sole discretion.

233.    "*Subscription Form*" means the subscription form(s) and applicable instructions sent to each Rights Offering Participant on which such Rights Offering Participant may exercise their Rights, in substantially the forms attached to the Rights Offering Procedures as Annex A and Annex B.

234.    "*Subscription Purchase Price*" means the purchase price for the Combined Company First Lien Tranche B-2 Term Loans or Combined Company First Lien Single Tranche Term Loans (as applicable) and Combined Company Second Lien Term Loans acquired by a Rights Offering Participant pursuant to the Rights Offering and as calculated in accordance with such Rights Offering Participant's Subscription Form.

235.    "*Term Loan Subordination Agreement*" means, collectively, the certain subordination agreements under the Prepetition LC/Term Loan Financing Documents with respect to the relative rights and priorities of the Prepetition Term Loan Obligations and the Prepetition Term Secured Parties, compared to the Prepetition LC Obligations and the Prepetition LC Secured Parties (including, without limitation, Sections 9.04, 10.15, 10.17, and 12.06(j) of the Prepetition LC/Term Loan Agreement and the related provisions set forth in any Affiliate Assignment Agreement (as defined in the Prepetition LC/Term Loan Agreement)), which provide, among other things, that the Prepetition LC Obligations are "first out" in payment priority versus the Prepetition Term Loan Obligations, subject to the Prepetition LC/Term Loan Agent Expenses Priority.

236.    "*Third Party Release*" means the release provision set forth in Article VIII.D hereof.

237.    "*Third Party Releasees*" means, collectively, (a) each Debtor Releasee; (b) the Liquidating Trust; (c) the Liquidating Trustee; (d) Blackhawk; (e) VCLF; (f) the Combined Company; (g) the Prepetition Agents and Barclays Bank PLC, as predecessor Term Administrative Agent (under and as defined in the Prepetition LC/Term Loan Agreement) and any of their respective sub-agents; (h) the Prepetition LC Secured Parties; (i) the Prepetition Term Lenders; (j) the Prepetition ABL Secured Parties; (k) the Prepetition Noteholders; (l) the DIP Agent; (m) the DIP Lenders; (n) the Combined Company 1.5 Lien Term Loan Agent; (o) the Combined Company 1.5 Lien Term Loan Lenders; (p) the Committee; (q) the Retiree Committee; and (r) with respect to each of the foregoing Entities in clauses (a) through (q) (other than with respect to a final fee application of a Professional), all such Entities' respective current and former affiliates and all such Entities' and such affiliates' respective current and former attorneys, financial advisors, consultants, representatives, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, members (including ex officio members), officers, directors, employees, partners, subsidiaries, principals, agents, managers, administrators, trustees, managed funds, special purpose vehicles, accounts, fund managers and representatives, and successors and assigns of each of the foregoing in their respective capacities as such; provided, that, in no circumstance shall Peabody, Arch, or Alcoa be Third Party Releasees; provided, further, that, if the Payout Event does not occur and Class 5 votes to reject the Plan, then the Prepetition LC Secured Parties shall not be Third Party Releasees; provided, further, that, any Holder of a Claim (other than a Committee Member or a Retiree Committee Member) who votes to reject the Plan or who does not vote to accept or reject the Plan but who submits a Ballot opting out of the Third Party Release shall not be a Third Party Releasee.

238.    "*Time-Based Note Incentive Program*" means the Debtors' time-based incentive program for certain eligible employees as set forth more fully in the Disclosure Statement.

239.    "*U.S. Trustee*" means the United States Trustee for the Eastern District of Virginia.

240.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

241.    "*UMWA*" means the United Mine Workers of America.

242.    "*Undrawn LC Facility Claims*" means the Prepetition LC Facility Claims on account of the letters of credit provided under the Prepetition LC Facility that are undrawn as of the Effective Date. The Undrawn LC Facility Claims are contingent and undisputed.

243.    "*Undrawn LC Facility Claims Reserve*" has the meaning set forth in Article VI.B hereof.

21

244.    "*Undrawn LC Facility Claims Reserve Agent*" means the Prepetition LC Agent or any other Entity or Entities designated by the Prepetition LC Agent after acceptance by such Entity or Entities to make or facilitate distributions that are to be made in connection with the Undrawn LC Facility Claims Reserve pursuant to the Plan.

245.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

246.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code and, with respect to Claim or Interest, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

247.    "*Unsecured*" means not Secured.

248.    "*VCLF*" means Virginia Conservation Legacy Fund, Inc. and ERP Compliant Fuels, LLC.

249.    "*VCLF APA*" means that certain Asset Purchase Agreement dated as of August 16, 2015, as amended, modified, or supplemented from time to time, among VCLF and certain of the Debtors, including all schedules and exhibits thereto, which is attached to the Disclosure Statement as <u>Exhibit K</u> and shall be Filed with the Plan Supplement.

250.    "*VCLF Assumed Liabilities*" shall have the same meaning as the term Assumed Liabilities set forth in Section 2.03 of the VCLF APA.

251.    "*VCLF Commitment Letter*" means the commitment letter dated September 21, 2015 between VCLF and Black Diamond Commercial Finance, LLC that was included as <u>Exhibit L</u> to the Plan Supplement [Docket No. 1406].

252.    "*VCLF Equity Grant*" means the grant of equity securities set forth in Section 7.12 of the VCLF APA.

253.    "*VCLF Excluded Assets*" shall have the same meaning as the term Excluded Assets set forth in Section 2.02 of the VCLF APA.

254.    "*VCLF Excluded Liabilities*" shall have the same meaning as the term Excluded Liabilities set forth in Section 2.04 of the VCLF APA.

255.    "*VCLF Purchased Assets*" shall have the same meaning as the term Purchased Assets set forth in Section 2.01 of the VCLF APA.

256.    "*VCLF Transaction*" means the purchase and sale transaction contemplated by the VCLF APA.

257.    "*VCLF Transaction Documents*" means the VCLF APA and each other document contemplated by the VCLF APA or entered into in connection with the VCLF Transaction.

258.    "*Voting Deadline*" means October 2, 2015, at 4:00 p.m., prevailing Eastern Time.

259.    "*Voting Record Date*" means the close of business on August 18, 2015.

260.    "*Wind Down*" means the wind down, dissolution, and liquidation of the Liquidating Trust Assets following the Effective Date as set forth in Article IV.P hereof.

261.    "*Winning Bid*" shall have the same meaning as the term Winning Bid as set forth in the Bidding Procedures Order.

262.   "*Winning Bidder*" shall have the same meaning as the term Winning Bidder as set forth in the Bidding Procedures Order.

263.   "*WVDEP*" means the West Virginia Department of Environmental Protection.

264.   "*WVDEP Settlement*" means the written settlement agreement by and among the WVDEP, the Debtors, Blackhawk, VCLF, and the DIP Lenders as contemplated by the WVDEP Settlement Term Sheet.

265.   "*WVDEP Settlement Term Sheet*" means the term sheet reflecting the settlement agreement by and among the WVDEP, the Debtors, Blackhawk, and VCLF that is included in the Plan Supplement.

## B.   Rules of Interpretation

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented upon prior notice to the Committee, Blackhawk, Prepetition Agents, and DIP Agent, without prejudice to any party's rights; (4) any reference to an Entity as a Holder of a Claim includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended, supplemented or otherwise modified from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; and (14) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  References in the Plan to the Debtors shall mean the Debtors after the 2012-13 Restructuring and prior to and on the Effective Date, and the Liquidating Trust after the Effective Date.

## C.   Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## D.   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws that would dictate the application of another jurisdiction's law, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements,

23

documents, instruments or contracts, in which case the governing law set forth in such agreement shall control with respect thereto).

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan Supplement shall control unless stated otherwise in such Plan Supplement document.   Notwithstanding anything to the contrary herein, in the event of an inconsistency between the Plan and the Disclosure Statement, on the one hand, and the Blackhawk APA, on the other hand, the Blackhawk APA shall control.

# ARTICLE II.
# DIP CLAIMS, ADEQUATE PROTECTION CLAIMS, ADMINISTRATIVE CLAIMS, AND PRIORITY TAX CLAIMS

A.      *Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim will receive, in full and final satisfaction of its Allowed Administrative Claim, Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim either:  (1) if such Administrative Claim is Allowed as of the Effective Date, on the Effective Date; (2) if the Administrative Claim is not Allowed as of the Effective Date, the date on which an order of the Bankruptcy Court Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors' Estates in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the OCP Order and the DIP Orders) or as provided by Article II.B hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date.

B.      *Professional Compensation*

1.      <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims must be Filed with the Bankruptcy Court and served on the Debtors (or the Liquidating Trustee) no later than the first Business Day that is sixty days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

2.      Professional Fee Escrow Account

On the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow.  Funds held in the Professional Fee Escrow shall not be considered property of the Debtors' Estates or property of the Liquidating Trust, but shall revert to the Liquidating Trust after all Professional Fee Claims allowed by the Bankruptcy Court have been irrevocably paid in full.  The Professional Fee Escrow shall be held in trust for the Professionals and for no other parties until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full. Professional Fees Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow in any way, including with respect to any Liens, claims, or encumbrances securing the DIP Facility.  Excess funds remaining in the Professional Fee Escrow Account after all Allowed Professional Fees have been paid shall be transferred to the Liquidating Trust.

3.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors, the Committee and the Retiree Committee as set forth in Article XII.D hereof, or the Liquidating Trust, as applicable.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention for services rendered after such date shall terminate, and the Debtors may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *DIP Claims*

Pursuant to the DIP Orders, all DIP Claims constitute Allowed Claims. Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, on the Effective Date each Holder of an Allowed DIP Claim shall receive its DIP Lender Distribution.

After the Effective Date, the Liquidating Trust shall continue to reimburse the DIP Agents, DIP Lenders, and Prepetition Agents for the reasonable fees and expenses (including reasonable and documented legal fees and expenses) incurred by the DIP Agents, DIP Lenders, and Prepetition Agents in accordance with the DIP Loan Documents and the DIP Orders.  On the Effective Date, the Debtor shall fund, in cash, a deposit (the "Deposit") to cover any costs, fees, expenses and the like (collectively, the "Costs and Expenses") anticipated to be incurred by the DIP Agents, DIP Lenders, and Prepetition Agents in connection with the DIP Loan Documents (and the other costs and expenses provided in the last sentence of this section), including in connection with the release of collateral securing the DIP Claims; provided, however, that if the Deposit is insufficient to cover the amount of the Costs and Expenses, the Liquidating Trust shall pay the DIP Agents, DIP Lenders, and Prepetition Agents the amount of such shortfall upon a demand therefor accompanied by evidence of the incurrence of the Costs and Expenses; provided, further, however, that if the Deposit exceeds the ultimate amount of the Costs and Expenses actually incurred by the DIP Agents, DIP Lenders, and Prepetition Agents, the excess shall be promptly remitted to the Liquidating Trust.  Any remaining amount of the Deposit shall be remitted to the Liquidating Trust within ninety days of the Effective Date.  With respect to any professional fees included as part of the Costs and Expenses, such professional fees may be paid by the DIP Agents, DIP Lenders, and Prepetition Agents, as applicable, without advance notice to any other party; provided, however, that the DIP Agents, DIP Lenders, and Prepetition Agents, as applicable, shall provide evidence of the incurrence of such professional fees to the Liquidating Trustee.  To the extent that any provisions of the DIP Loan Documents are of a type that survive repayment of the subject indebtedness (*e.g.*, confidentiality provisions, a duty to release collateral, indemnity provisions), such provisions shall remain in effect notwithstanding repayment of the DIP Claims.

25

D.    *Adequate Protection Claims*

Unless otherwise agreed to by the Holder of an Allowed Adequate Protection Claim and the Debtors to the extent an Allowed Adequate Protection Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Adequate Protection Claim will receive, in full and final satisfaction of its Allowed Adequate Protection Claim, Cash equal to the amount of the unpaid portion of such Allowed Adequate Protection Claim either: (1) if such Adequate Protection Claim is Allowed as of the Effective Date, on the Effective Date or (2) if the Adequate Protection Claim is not Allowed as of the Effective Date, the date on which an order of the Bankruptcy Court Allowing such Adequate Protection Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

E.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

F.    *U.S. Trustee Statutory Fees*

For the avoidance of doubt, all fees payable pursuant to section 1930 of title 28 of the United States Code due and payable through the Effective Date, and any interest accruing thereto, shall be paid by the Debtors on or before the Effective Date, and amounts due thereafter shall be paid by the Liquidating Trustee in the ordinary course until the entry of a final decree closing the respective Debtor's Chapter 11 Case. Any deadline for filing claims in these Chapter 11 Cases shall not apply to fees payable by the Debtors pursuant to section 1930 of title 28 of the United States Code or any interest accruing thereto.

## ARTICLE III.
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Adequate Protection Claims, Administrative Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

A.    *Summary of Classification*

All Claims and Interests, other than DIP Claims, Administrative Claims, Adequate Protection Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.    <u>Class Identification</u>

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes.

26

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 (all Debtors) | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 (all Debtors) | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 (all Debtors) | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 (all Debtors) | Prepetition ABL Facility Claims | Impaired | Entitled to Vote |
| Class 5 (all Debtors) | Prepetition LC Facility Claims | Impaired | Entitled to Vote |
| Class 6 (all Debtors) | Prepetition Term Loan Facility Claims | Impaired | Entitled to Vote |
| Class 7 (all Debtors) | Prepetition Notes Claims | Impaired | Entitled to Vote |
| Class 8 (all Debtors) | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 9 (all Debtors) | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 (all Debtors) | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 11 (all Debtors) | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.     *Treatment of Claims and Interests*

The treatment and voting rights provided to each Class for distribution purposes is specified below:

1.     <u>Class 1 - Other Priority Claims</u>

(a)     *Classification*:  Class 1 consists of all Other Priority Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall, at the sole option of the Debtors or the Liquidating Trustee, as applicable:

27

(i)    be paid in full in Cash in an amount equal to such Allowed Other Priority Claim by the Debtors on the Effective Date or by the Liquidating Trustee after the Effective Date; or

(ii)    otherwise be treated in any other manner such that the Allowed Other Priority Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or as soon as reasonably practicable thereafter.

(c)    *Voting*:  Class 1 is Unimpaired, and Holders of Class 1 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 - Secured Tax Claims

(a)    *Classification*:  Class 2 consists of all Secured Tax Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment for such Holder, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Secured Tax Claim, each Holder of such Claim shall, at the sole option of the Debtors or the Liquidating Trustee, as applicable:

(i)    be paid in full in Cash by the Debtors on the Effective Date in an amount equal to such Allowed Secured Tax Claim; or

(ii)    be paid by the Debtors or the Liquidating Trustee (as applicable), commencing on the Effective Date and continuing over a period not exceeding 5 years from the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default contract rate under non-bankruptcy law, subject to the sole option of the Liquidating Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period; or

(iii)    be paid regular Cash payments by the Debtors (on the Effective Date) or the Liquidating Trustee (after the Effective Date), in a manner not less favorable than the most favored non-priority unsecured Claim provided for by the Plan.

(c)    *Voting*:  Class 2 is Unimpaired, and Holders of Class 2 Secured Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3 - Other Secured Claims

(a)    *Classification*:  Class 3 consists of all Other Secured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment for such Holder, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Other Secured Claim, each Holder of such Claim shall, at the sole option of the Debtors or the Liquidating Trustee, as applicable:

28

(i)     be paid in full in Cash in an amount equal to such Allowed Other Secured Claim by the Debtors on the Effective Date; or

(ii)    receive the collateral securing any such Allowed Other Secured Claim and be paid any interest required to be paid under section 506(b) of the Bankruptcy Code; or

(iii)   otherwise be treated in any other manner such that the Allowed Other Secured Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Other Secured Claim becomes an Allowed Other Secured Claim or as soon as reasonably practicable thereafter.

(c)     *Voting*:  Class 3 is Unimpaired, and Holders of Class 3 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 3 Other Secured Claims are not entitled to vote to accept or reject the Plan.

4.      <u>Class 4 - Prepetition ABL Facility Claims</u>

(a)     *Classification*:  Class 4 consists of all Prepetition ABL Facility Claims.

(b)     *Allowance*:  The Prepetition ABL Facility Claims shall be Allowed as Secured Claims in an aggregate amount with respect to drawn amounts under the Prepetition ABL Drawn LCs and undrawn amounts under the Prepetition ABL Undrawn LCs, respectively, not to exceed $44,263,955 (plus any unpaid accrued interest, letter of credit fees, and unpaid reasonable fees and expenses as of the Effective Date, to the extent not paid pursuant to the Final DIP Order).

(c)     *Treatment*:  Except to the extent that a Holder of a Prepetition ABL Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Prepetition ABL Facility Claim:

(i)     **if the Payout Event occurs**, the Allowed Prepetition ABL Facility Claims shall be paid in full and in Cash from the Payout Event Cash, including by cash collateralizing any Prepetition ABL Undrawn LCs on terms and amounts acceptable to the issuers thereof and the Prepetition ABL Agent; or

(ii)    **if the Payout Event does not occur**,

(A)     with respect to all indebtedness related to the Prepetition ABL Drawn LCs and all other unpaid Prepetition ABL Obligations (other than as contemplated by the following clause (B)), shall be assumed and converted into loans drawn under the Combined Company New ABL on a dollar-for-dollar basis (so long as such Combined Company New ABL is in form and substance reasonably acceptable to the Prepetition ABL Agent); and

(B)     with respect to each Prepetition ABL Undrawn LC:

(I)     shall be replaced with letter(s) of credit issued (or deemed issued) under the Combined Company New ABL; <u>provided</u>, <u>that</u>, as a condition to such replacement being effective for purposes of this clause (I), each Prepetition ABL Undrawn LC to be considered so replaced shall have been returned to the issuer thereof undrawn or otherwise cancelled in a manner

29

<table>
<tr><td></td><td></td><td>reasonably acceptable to the issuer of such Prepetition ABL Undrawn LC; and/or</td></tr>
</table>

(II)    shall be deemed a letter of credit issued under the Combined Company New ABL in an equal stated face amount (so long as such Combined Company New ABL is in form and substance reasonably satisfactory to the Prepetition ABL Agent).

To the extent that any provisions of the Prepetition ABL Financing Documents are of a type that survive repayment of the subject indebtedness (*e.g.*, confidentiality provisions, a duty to release collateral, indemnity provisions), such provisions shall remain in effect notwithstanding repayment of the Prepetition ABL Facility; <u>provided</u>, <u>however</u>, that such surviving provisions shall not be an obligation of, nor shall they be binding upon, Blackhawk or the Combined Company.

The consideration provided to the Holders of Allowed Prepetition ABL Facility Claims pursuant to this Article III.B.4, including any Cash and loans or letters of credit issued under the Combined Company New ABL, shall not be deemed proceeds of any collateral other than the ABL Priority Collateral (as defined in the First-Lien Intercreditor Agreement), and such consideration shall be provided to such Holders in exchange for, among other things, the release of their liens on the ABL Priority Collateral as contemplated by the Plan (including under Article IV.G and Article IV.R hereof).

(d)    *Voting*: Class 4 is Impaired under the Plan. Holders of Prepetition ABL Facility Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5 - Prepetition LC Facility Claims</u>

(a)    *Classification*: Class 5 consists of all Prepetition LC Facility Claims.

(b)    *Allowance*: The Prepetition LC Facility Claims shall be Allowed as Secured Claims in an aggregate amount of $192,238,375.55.[1]

(c)    *Treatment*: Except to the extent that a Holder of a Prepetition LC Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Prepetition LC Facility Claim, each such Holder thereof shall receive:

(i)    **if the Payout Event occurs**, its Payout Event Class 5 Distribution; or

(ii)    **if the Payout Event does not occur**, and

(A)    **<u>if class 5 votes to accept the Plan</u>**, its Prepetition LC Facility Distribution; or

---

[1]   This amount includes contingent claims on account of undrawn letters of credit provided under the Prepetition LC Facility, <u>provided</u>, <u>however</u>, that upon the Effective Date, the Undrawn LC Facility Claims shall be deemed undisputed. If the Payout Event does not occur, such Undrawn LC Facility Claims shall be Allowed, without any further action, to the extent that undrawn letters of credit provided under the Prepetition LC Facility are subsequently drawn, and such Allowed Undrawn LC Facility Claims, if any, shall be satisfied from the Undrawn LC Facility Claims Reserve.

30

(B)     **if Class 5 votes to reject the Plan**, its prepetition LC Facility Distribution Alternative.

To the extent that any provisions of the Prepetition LC/Term Loan Financing Documents relating to the Prepetition LC Facility are of a type that survive repayment of the subject indebtedness (*e.g.*, confidentiality provisions, a duty to release collateral, indemnity provisions), such provisions shall remain in effect notwithstanding repayment of the Prepetition LC Facility Claims; provided, however, that such surviving provisions shall not be an obligation of, nor shall they be binding upon, Blackhawk or the Combined Company.

(d)     *Voting*:  Class 5 is Impaired under the Plan.  Holders of Prepetition LC Facility Claims are entitled to vote to accept or reject the Plan.

6.     Class 6 - Prepetition Term Loan Facility Claims

(a)     *Classification*:  Class 6 consists of all Prepetition Term Loan Facility Claims.

(b)     *Allowance*:  The Prepetition Term Loan Facility Claims shall be Allowed in an aggregate amount not to exceed $250,000,000.

(c)     *Treatment*:  Except to the extent that a Holder of a Prepetition Term Loan Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Prepetition Term Loan Facility Claim, each such Holder thereof shall receive:

(i)     **if the Payout Event occurs**, its Payout Event Class 6 Distribution; or

(ii)     **if the Payout Event does not occur**, its Prepetition Term Loan Facility Distribution.

To the extent that any provisions of the Prepetition Term Loan Facility are of a type that survive repayment of the subject indebtedness (*e.g.*, confidentiality provisions, a duty to release collateral, indemnity provisions), such provisions shall remain in effect notwithstanding repayment of the Prepetition Term Loan Facility; provided, however, that such surviving provisions shall not be an obligation of, nor shall they be binding upon, Blackhawk or the Combined Company.

(d)     *Voting*:  Class 6 is Impaired under the Plan.  Holders of Prepetition Term Loan Facility Claims are entitled to vote to accept or reject the Plan.

(e)     *Waiver of Adequate Protection Claims*:  Each of the funds and/or accounts managed or advised by Knighthead Capital Management, LLC, Caspian Capital LP on behalf of its advisees, Davidson Kempner Capital Management LP, on behalf of funds and accounts managed by it (including Midtown Acquisitions L.P.), and Hudson Bay Absolute Return Credit Opportunities Master Fund Ltd. waives and shall receive no distribution on account of its Claims, if any, arising under or related to the "Term Adequate Protection Obligations" as such term is defined in the Final DIP Order.

7.     Class 7 - Prepetition Notes Claims

(a)     *Classification*:  Class 7 consists of all Prepetition Notes Claims.

(b)     *Allowance*:  The Prepetition Notes Claims shall be Allowed in an aggregate amount not to exceed $305,504,339.

31

(c)     *Treatment*: Except to the extent that a Holder of a Prepetition Notes Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Prepetition Notes Claim, each such Holder thereof shall receive:

(i)     **if the Payout Event occurs**, its Payout Event Class 7 Distribution; or

(ii)     **if the Payout Event does not occur**, its Prepetition Notes Distribution.

(d)     *Voting*: Class 7 is Impaired under the Plan. Holders of Prepetition Notes Claims are entitled to vote to accept or reject the Plan.

(e)     *Waiver of Adequate Protection Claims*: Each of the funds and/or accounts managed or advised by Knighthead Capital Management, LLC, Caspian Capital LP on behalf of its advisees, Davidson Kempner Capital Management LP, on behalf of funds and accounts managed by it (including Midtown Acquisitions L.P.), and Hudson Bay Absolute Return Credit Opportunities Master Fund Ltd. waives and shall receive no distribution on account of its Claims, if any, arising arising under or related to the "Note Adequate Protection Obligations" as such term is defined in the Final DIP Order.

8.     <u>Class 8 - General Unsecured Claims</u>

(a)     *Classification*: Class 8 consists of all General Unsecured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed General Unsecured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each Holder thereof shall receive:

(i)     **if the Payout Event occurs**, its Payout Event Class 8 Distribution; or

(ii)     **if the Payout Event does not occur**, its General Unsecured Claims Distribution.[2]

(c)     *Voting*: Class 8 is Impaired under the Plan. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

9.     <u>Class 9 - Intercompany Claims</u>

(a)     *Classification*: Class 9 consists of all Intercompany Claims.

(b)     *Treatment*: Intercompany Claims shall be cancelled without any distribution on account of such Interests.

(c)     *Voting*: Class 9 is Impaired under the Plan. Holders of Intercompany Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

---

[2]     For the avoidance of doubt, Holders of Allowed General Unsecured Claims (including the Holders of Allowed Prepetition Notes Claims and Allowed Prepetition Term Loan Facility Claims to the extent such Claims are deemed unsecured and such Claims have not been waived under this Plan) will also receive distributions consistent with the Committee Settlement as set forth in Article IV.T hereof and distributions, if any, in accordance with the Excess Cash Distribution Mechanism as set forth in Article IV.U hereof.

10.    Class 10 - Intercompany Interests

    (a)    *Classification*:  Class 10 consists of all Intercompany Interests.

    (b)    *Treatment*:  Intercompany Interests shall be cancelled without any distribution on account of such Interests.

    (c)    *Voting*:  Class 10 is Impaired under the Plan.  Holders of Intercompany Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

11.    Class 11 - Equity Interests

    (a)    *Classification*:  Class 11 consists of all Equity Interests.

    (b)    *Treatment*:  On the Effective Date, all Equity Interests shall be cancelled without any distribution on account of such Interests.

    (c)    *Voting*:  Class 11 is Impaired under the Plan.  Holders of Equity Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Class Acceptance Requirement*

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Claims in such Class and more than one-half (1/2) in number of Holders of such Claims that have voted on the Plan.

E.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

G.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date; provided, *that*, nothing shall affect or limit the Debtors', Blackhawk's, the Combined

33

Company's, the DIP Lenders', the Prepetition LC Secured Parties', the Prepetition Term Secured Parties', the Prepetition Notes Trustee's, the Prepetition Noteholders', or the Combined Company 1.5 Lien Term Loan Lenders' applicable rights and defenses (whether legal or equitable) in respect of any such Claims, Interests, or Class of Claims or Interests.

# ARTICLE IV.
# MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Sources of Consideration for Plan Distributions*

The Confirmation Order shall be deemed to authorize, among other things, the Restructuring Transactions. All amounts and securities necessary for the Debtors (on the Effective Date), the Combined Company, VCLF, or Liquidating Trust (after the Effective Date), as applicable, to make payments or distributions pursuant to this Plan shall be obtained from, among other things, the liabilities assumed, consideration paid by Blackhawk, and Cash raised or held by the Debtors.

B.      *Blackhawk Transaction*

Subject to the terms of the Blackhawk Transaction Documents, on the Effective Date, the Debtors shall consummate the Blackhawk Transaction and, among other things, the Blackhawk Purchased Assets shall be transferred to and vest in the Combined Company free and clear of all Liens, Claims, charges, or Encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code, the Confirmation Order, the Blackhawk APA and the other Blackhawk Transaction Documents.  On the Effective Date, the Debtors shall consummate the transactions contemplated by the Blackhawk Transaction Documents pursuant to the terms thereof; provided, that, the conditions precedent set forth in the Blackhawk Transaction Documents have been satisfied or waived in accordance with the terms thereof.  Upon entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Blackhawk APA and the other Blackhawk Transaction Documents will be deemed authorized and approved without any requirement of further act or action by the Debtors' shareholders or the Debtors' boards of directors.  The Debtors are authorized to execute and deliver, and to consummate the transactions contemplated by, the Blackhawk Transaction Documents, as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

On and after the Effective Date, the Combined Company may use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Neither Blackhawk, the Combined Company, nor any of their Affiliates shall be deemed, as a result of any action taken in connection with the Blackhawk Transaction Documents, the consummation of the Blackhawk Transaction and any other transaction contemplated by the Blackhawk Transaction Documents, or the transfer or operation of the Blackhawk Purchased Assets (1) to be a legal successor, or otherwise be deemed a successor to all or any of the Debtors; (2) to have, de facto or otherwise, merged with or into all or any of the Debtors; (3) to be an alter ego or a continuation of all or any of the Debtors; or (4) to have any responsibility for any obligations of all or any of the Debtors based on any theory of successor or similar theories of liability, including, without limitation, pursuant to the Black Lung Act, the Coal Act, or the UMWA 1974 Pension Plan.

Without limiting the generality of the foregoing, except as otherwise expressly provided in the Blackhawk Transaction Documents, Blackhawk, the Combined Company and all of their Affiliates shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and neither Blackhawk, the Combined Company nor any of their affiliates shall have successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor, employment or benefits law, de facto merger or substantial continuity, whether known or unknown as of the closing, then existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or their affiliates or any obligations of the Debtors or their affiliates arising prior to the closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Blackhawk Purchased Assets prior to the closing.

The transactions contemplated by the Blackhawk Transaction Documents are undertaken by the Debtors and Blackhawk without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the sale contemplated thereunder shall not affect the validity of such sale (including the assumption, assignment and/or transfer of any Executory Contract or Unexpired Lease), unless such authorization and consummation of such sale are duly stayed pending such appeal.  Blackhawk is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code as applicable.

On the Effective Date, (1) the Combined Company, solely in accordance with its operating documents, is authorized to enter into each of the Combined Company Debt Facilities as well as any notes, documents or agreements delivered in connection therewith, including, without limitation, any documents required in connection with the creation or perfection of liens in connection therewith and an intercreditor agreement governing the respective priorities and rights among the Combined Company Debt Facilities; (2) upon the granting of such liens in accordance with the Combined Company Debt Documents and the consummation of the Combined Company Debt Facilities, the lenders under the Combined Company Debt Facilities, including the Prepetition ABL Secured Parties and the Prepetition LC Secured Parties to the extent lenders under the Combined Company Debt Facilities as contemplated by the Plan, shall have valid, binding and enforceable liens on the collateral specified in the documents and agreements governing the Combined Company Debt Facilities; and (3) upon the granting of such guarantees, mortgages, pledges liens and other security interests in accordance with the Combined Company Debt Documents and the consummation of the Combined Company Debt Facilities, the guarantees, mortgages, pledges, liens and other security interests granted to secure the obligations arising under the Combined Company Debt Facilities shall be granted in good faith as an inducement to the respective lenders under the Combined Company Debt Facilities to extend credit thereunder and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such liens and security interests shall be as set forth in the documents and agreements governing the Combined Company Debt Facilities, including any applicable intercreditor agreements.

Notwithstanding anything in the Plan to the contrary, the Blackhawk Transaction Documents are the only documents that govern the Blackhawk Transaction and, for the avoidance of doubt, the VCLF Transaction Documents shall have no effect on the Blackhawk Transaction, Blackhawk, or the Combined Company.  A copy of the Blackhawk APA and a summary of the Blackhawk Transaction shall be Filed with the Plan Supplement.

For the avoidance of doubt, the Debtors may implement an Alternative Transaction (as defined in the Bidding Procedures Order) and implement the Payout Event as set forth herein and in accordance with the Bidding Procedures Order.

C.      *Rights Offering*

The Rights Offering shall consist of a distribution of the Rights in respect of, at Blackhawk's option, Combined Company First Lien Tranche B-2 Term Loans or Combined Company First Lien Single Tranche Term Loans (as applicable) and Combined Company Second Lien Term Loans.  The Rights Offering will be conducted in accordance with the Rights Offering Procedures and shall be open to Persons that are the Rights Offering Participants as of the Rights Offering Record Date.

Any participation in the Rights Offering shall be Pro Rata for each Holder of Prepetition LC Facility Claims or Allowed Prepetition Term Loan Facility Claims, as applicable, based on such Holder's face amount ownership of the Prepetition LC Facility Claims or Prepetition Term Loan Facility, as applicable, relative to the total face amount of the Prepetition LC Facility Claims or Prepetition Term Loan Facility, as applicable.  The Rights shall be issued to Holders of Prepetition LC Facility Claims on a Pro Rata basis and to Holders of Prepetition Term Loan Facility Claims.  For the avoidance of doubt, if the Rights are oversubscribed, Rights will be issued (1) first, to the Holders of Prepetition LC Facility Claims and (2) second, to Holders of Prepetition Term Loan Facility Claims, and any oversubscription within a Class shall be cut back Pro Rata within such Class.

To exercise Rights, a Rights Offering Participant must timely deliver a duly completed and executed Subscription Form and the other documents referenced therein and the Subscription Purchase Price (as calculated

35

pursuant to the Subscription Form) by wire transfer or bank or cashier's check, as set forth in the Subscription Form, in accordance with the Rights Offering Procedures.

A Holder of Claims eligible to participate in the Rights Offering shall be deemed to have relinquished and waived all rights to participate in the Rights Offering to the extent the Subscription Agent for any reason does not receive from such Holder, on or before the Subscription Deadline, a duly completed and executed Subscription Form and the other documents referenced therein and the Subscription Purchase Price (as calculated pursuant to the Subscription Form) by wire transfer or bank or cashier's check, as set forth in the Subscription Form, with respect to such Holder's Rights. The funds contained in the Subscription Accounts shall be refunded to the Rights Offering Participants in accordance with the Rights Offering Procedures.

The Combined Company First Lien Tranche B-2 Term Loans or the Combined Company First Lien Single Tranche Term Loans (as applicable) and the Combined Company Second Lien Term Loans to be issued in connection with the Rights Offering are being issued without registration under the Securities Act or any other state or foreign securities law.

D.    *VCLF Transaction*

Subject to the terms of the VCLF Transaction Documents, on the Effective Date, the Debtors shall consummate the VCLF Transaction and, among other things, the VCLF Purchased Assets shall be transferred to and vest in VCLF free and clear of all Liens, Claims, charges, or Encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code, the Confirmation Order, the VCLF APA and the other VCLF Transaction Documents. On the Effective Date, the Debtors shall consummate the transactions contemplated by the VCLF Transaction Documents pursuant to the terms thereof; provided, that, the conditions precedent set forth in the VCLF Transaction Documents have been satisfied or waived in accordance with the terms thereof. Upon entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the VCLF APA and the other VCLF Transaction Documents will be deemed authorized and approved without any requirement of further act or action by the Debtors' shareholders or the Debtors' boards of directors. The Debtors are authorized to execute and deliver, and to consummate the transactions contemplated by the VCLF Transaction Documents, as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

The transactions contemplated by the VCLF Transaction Documents are undertaken by the Debtors and VCLF without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the sale contemplated thereunder shall not affect the validity of such sale (including the assumption, assignment and/or transfer of any Executory Contract or Unexpired Lease), unless such authorization and consummation of such sale are duly stayed pending such appeal. VCLF is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code as applicable. VCLF may make distributions to stakeholders in accordance with the VCLF Equity Grant.

E.    *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

F.    *Listing of Securities*

None of the securities issued in connection with the Blackhawk Transaction (including the Combined Company 1.5 Lien Class B Units) will be listed on a national securities exchange and the Combined Company will not be a reporting company under the Securities Exchange Act upon the Effective Date.

The offering, issuance, and distribution of any securities in connection with the VCLF Transaction shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery prior to the offering, issuance, distribution, or sale of securities to the fullest extent permitted by law pursuant to section 1145 of the Bankruptcy Code.  In addition, under section 1145 of the Bankruptcy Code, any securities issued in connection with the VCLF Transaction and any and all agreements associated therewith, shall be subject to:  (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (3) the restrictions, if any, on the transferability of such securities and instruments, including those set forth in the VCLF Transaction Documents; and (4) applicable regulatory approval, if any.

G.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, the Blackhawk APA, the VCLF APA, as applicable, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised.

Except as otherwise provided in the Blackhawk APA, on the Effective Date all Blackhawk Purchased Assets shall be transferred to the Combined Company free and clear of all Claims, Liens, Encumbrances or Interests pursuant to Sections 363, 365, 1123 and the other applicable sections of the Bankruptcy Code.

Except as otherwise provided in the VCLF APA, on the Effective Date all VCLF Purchased Assets shall be transferred to VCLF free and clear of all Claims, Liens, Encumbrances or Interests pursuant to Sections 363, 365, 1123 and the other applicable sections of the Bankruptcy Code.

H.    *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the Prepetition Notes Documents, and any other certificate, share, note, bond, indenture, purchase right, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity or profits interest in the Debtors or any warrants, options or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership or profits interests in the Debtors giving rise to any Claim or Interest, shall be cancelled as to the Debtors, and the Liquidating Trust shall not have any continuing obligations thereunder; (2) the obligations of the Debtors under the DIP Facility, the Prepetition ABL Facility, the Prepetition LC Facility, the Prepetition Notes Documents and the Prepetition Term Loan Facility shall be fully released, settled, and compromised as to the Debtors, and the Liquidating Trust shall not have any continuing obligations thereunder (and the commitments and obligations (if any) of any of the Prepetition ABL Secured Parties, the Prepetition LC Secured Parties, and/or any of Prepetition Term Secured Parties to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries or any of their respective successors or assigns under the Prepetition ABL Financing Documents or the Prepetition LC/Term Loan Financing Documents, as applicable, shall fully terminate and be of no further force or effect); and (3) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised; <u>provided</u>, <u>that</u>, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of allowing such Holders to receive distributions under the Plan as provided herein.  None of the terms and conditions hereof, Confirmation or the occurrence of the Effective Date shall (a) constitute a release, waiver, discharge or other modification of any obligations under any of the Intercreditor Agreements owed by any Prepetition Secured Party to any other Prepetition Secured Party pursuant to the terms thereof; (b) prejudice the relative rights, remedies, powers and privileges of any of the Prepetition Secured Parties pursuant to any of the Intercreditor Agreements, including, without limitation, any such rights to enforce the terms and conditions of any Intercreditor Agreement that a

37

Prepetition Secured Party is party to or bound by against any other Prepetition Secured Party party thereto or bound thereby, subject to the Prepetition LC/Term Loan Agent Expenses Priority; or (c) impair the right of the Prepetition Notes Trustee to enforce the Prepetition Notes Trustee Charging Lien against any distribution to the Prepetition Noteholders pursuant to this Plan.

I.      *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, with the consent of the DIP Lenders, Blackhawk, VCLF, the Combined Company, and the Liquidating Trustee, each as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, and the Liquidating Trust Agreement, each as applicable.

J.      *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, and the Liquidating Trust Agreement, as applicable, shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers or officers of the Debtors, or the Liquidating Trust, or any other Entity or Person, including: (1) execution of, entry into and performance under the Blackhawk Transaction Documents; (2) execution of, entry into and performance under the VCLF Transaction Documents; (3) adoption or assumption, as applicable, and assignment to the Combined Company, VCLF, or the Liquidating Trust, as applicable, of Executory Contracts and Unexpired Leases; (4) selection of the managers and officers for the Combined Company; (5) the issuance and distribution of the Combined Company 1.5 Lien Class B Units as provided herein; and (6) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by, the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, and the Liquidating Trust Agreement, as applicable, and each of the foregoing documents or agreements (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, or the Liquidating Trust Agreement involving the company structure of the Debtors, the Combined Company, or VCLF, as applicable, and any company action required by the Debtors, the Liquidating Trust, Blackhawk, or VCLF in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, authorized persons or officers of the Debtors, Blackhawk, or VCLF, as applicable.

On or (as applicable) prior to the Effective Date, the appropriate officers, managers or authorized persons of the Debtors or the Liquidating Trust (including, any vice-president, president, chief executive officer, treasurer or chief financial officer thereof), as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, and the Liquidating Trust Agreement, as applicable, (or necessary or desirable to effect the transactions contemplated by the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, and the Liquidating Trust Agreement, as applicable) in the name of and on behalf of the Debtors or the Liquidating Trust, as applicable, including any and all agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.

K.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, the Liquidating Trust Agreement, as applicable, and the securities issued pursuant to the Plan, the Blackhawk Transaction Documents, and the VCLF Transaction Documents without the need for any approvals, authorization, or consents except for those

38

expressly required pursuant to the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, and the Liquidating Trust Agreement, as applicable.

L.    *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with this Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the Blackhawk Transaction; (2) the VCLF Transaction; (3) the creation of any mortgage, deed of trust, Lien or other security interest; (4) the making or assignment of any lease or sublease; (5) any Restructuring Transaction; (6) the issuance, distribution and/or sale of any of the Combined Company 1.5 Lien Class B Units and any other securities of the Debtors or the Combined Company; or (7) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents.

M.    *D&O Liability Insurance Policies*

Notwithstanding anything herein to the contrary, as of the Effective Date, all of the D&O Liability Insurance Policies shall be assumed by the Liquidating Trust pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Liquidating Trust under the Plan as to which no Proof of Claim need be Filed.

N.    *Indemnification Provisions*

Notwithstanding anything herein to the contrary or pursuant to the termination, dissolution, or wind down of any or all of the Debtors, the Debtors (if necessary to continue all Indemnification Provisions in full force), as of the Effective Date, shall be deemed to have assumed all Indemnification Provisions and assigned such provisions to the Liquidating Trust as though such Indemnification Provisions were to have full force and effect; provided, that, the assumption by the Debtors of the Indemnification Provisions and the assignment thereof to the Liquidating Trust shall not be deemed to be an assumption or assignment of the contract, agreement, resolution, instrument or document in which such Indemnification Provisions are contained, memorialized, agreed to, embodied or created (or any of the other terms or provisions thereof) unless, and only to the extent that, such contract, agreement, resolution, instrument or document is a Blackhawk Purchased Asset. All Indemnification Provisions in place on and prior to the Effective Date for current and former officers, directors, managers and employees of the Debtors and their subsidiaries and such current and former officers', directors', managers', and employees' respective Affiliates shall survive the Effective Date for all Claims related to or in connection with, without limitation, any actions, omissions or transactions occurring prior to the Effective Date; provided, that, notwithstanding anything herein to the contrary, the Debtors shall not indemnify or assume any Indemnification Provision as to any of the Non-Released Parties for any matter; provided, further, that, for the avoidance of doubt, in no circumstance shall the Debtors indemnify or assume any indemnification obligation with respect to Peabody, Arch, or Alcoa. For the avoidance of doubt, nothing herein shall limit the rights of Blackhawk or the Combined Company against, or the obligations of, any Person or Entity that is a party to any Blackhawk Transaction Documents or any other contract with Blackhawk or the Combined Company, including any contract that is a Blackhawk Purchased Asset.

39

O.        *Preservation of Rights of Action*

        In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly waived, released, sold or otherwise transferred (including, for the avoidance of doubt, pursuant to Blackhawk Transaction Documents, the VCLF Transaction Documents, the Committee Settlement, and the DIP Orders), the Liquidating Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Liquidating Trustee's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Blackhawk Transaction Documents, the VCLF Transaction Documents, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, Blackhawk, VCLF, or the Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtors have released, sold or otherwise transferred to, any Person or Entity on or prior to the Effective Date (pursuant to the Debtor Release, the Blackhawk Transaction Documents, the VCLF Transaction Documents, or otherwise), the Debtors or the Liquidating Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, sold or otherwise transferred, compromised, or settled in the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, or a Bankruptcy Court order, the Liquidating Trustee expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

P.        *Wind Down and Dissolution of the Debtors*

        On and after the Effective Date, the Wind Down and dissolution of the Debtors shall occur pursuant to the Liquidating Trust Agreement, any other provision of the Plan, and any applicable orders of the Bankruptcy Court.

Q.        *Liquidating Trust*

        On the Effective Date, immediately after the consummation of the Blackhawk Transaction and the VCLF Transaction, the Liquidating Trust will be formed to receive the Liquidating Trust Assets and implement the Wind Down. The Liquidating Trust will be established for the primary purpose of liquidating the Liquidating Trust Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets as more fully set forth in the Liquidating Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidating Trust Assets. For all federal income tax purposes, the beneficiaries of the Liquidating Trust will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations. Accordingly, for federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust be treated as if they had received an interest in the Liquidating Trust's assets and then contributed such interests to the Liquidating Trust. The Liquidating Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trusts Assets, make timely distributions to the beneficiaries of the Liquidating Trust pursuant to the Plan and the Confirmation Order, and not unduly prolong its duration. The Liquidating Trust will not be deemed a successor in interest to the Debtors. Upon the termination of the Liquidating Trust, any excess funds shall be paid to Holders of Allowed Prepetition Term Loan Facility Claims, Allowed Prepetition Notes Claims, and Allowed General Unsecured Claims on a Pro Rata basis (based upon such Holder's face amount Allowed Claim relative to the total face amount of all Allowed Prepetition Term Loan Facility Claims, Allowed Prepetition Notes Claims, and Allowed General Unsecured Claims) as set forth in the Liquidating Trust Agreement.

R.        *Liquidating Trustee*

        The Liquidating Trustee shall be identified by the Debtors, after consultation with the Consultation Parties, to the extent known prior to the commencement of the Confirmation Hearing. If the VCLF Transaction is not

consummated, the Liquidating Trustee shall purchase the Liquidating Trust Assets and conduct the Wind Down and shall succeed to such powers as would have been applicable to the Debtors' officers, directors, and shareholders, and the Debtors shall be authorized to be (and, upon the conclusion of the Wind Down, shall be) dissolved by the Liquidating Trustee, all in accordance with the Liquidating Trust Agreement. All property of the Estates not distributed to the Holders of Claims or Interests on the Effective Date, or transferred pursuant to the Blackhawk Transaction Documents or the VCLF Transaction, shall be transferred to the Liquidating Trust and managed and distributed by the Liquidating Trustee pursuant to the terms of the Liquidating Trust Agreement and shall be held in the name of the Debtors free and clear of all Claims and Interests except for rights to such distributions provided to Holders of Allowed Claims and Allowed Interests as provided in the Plan. As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. Any and all reasonable and documented costs and expenses incurred by the Liquidating Trustee in connection with the Wind Down shall be paid from the funds of the Liquidating Trust, subject to the terms and conditions of the Liquidating Trust Agreement. The Liquidating Trustee shall only file tax returns for Debtors in jurisdictions where such Debtor previously filed tax returns, unless the Liquidating Trustee determines that a tax return is required to be filed due to a change in law, fact, or circumstance on or after the Effective Date. Following the Effective Date and in the event of the resignation or removal, liquidation, dissolution, death, or incapacity of the Liquidating Trustee, the Liquidating Trust Agreement shall provide for the appointment of the successor Liquidating Trustee and, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Liquidating Trustee.

The Person chosen to be the successor Liquidating Trustee shall have such qualifications and experience to enable the Liquidating Trustee to perform his or her obligations under the Plan and under the Liquidating Trust Agreement. The Liquidating Trustee shall be compensated and reimbursed for reasonable costs and expenses as set forth in, and in accordance with, the Liquidating Trust Agreement.

*S.*     *Distribution of Payout Event Cash*

If the Payout Event occurs, the Payout Event Cash shall be distributed in the following order of priority:

*First*, to fund in full in Cash the Carve Out Reserve and, thereafter, the Professional Fee Escrow Account;

*Second*, after funding of the Carve Out Reserve and Professional Fee Escrow Account as contemplated by the previous paragraph, to pay in full and in Cash, the Allowed Prepetition ABL Facility Claims, including by cash collateralizing the Prepetition ABL Undrawn LCs on terms and amounts acceptable to the issuers thereof and the Prepetition ABL Agent; and

*Third*, after funding of the Carve Out Reserve and the Professional Fee Escrow Account and satisfaction of the Allowed Prepetition ABL Facility Claims as contemplated by the previous paragraphs, to pay in full in Cash the DIP Claims.

*T.*     *Committee Settlement*

The Plan implements the Committee Settlement and incorporates the terms of the Committee Settlement by reference as though fully stated herein. Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code and consistent with section 1129 of the Bankruptcy Code, the Plan shall constitute a motion for approval of, and the Confirmation Order shall constitute Bankruptcy Court approval of, the Committee Settlement.

The Committee Settlement shall be effectuated in accordance with the following terms if the Committee Settlement is approved by the Bankruptcy Court:

1.     Combined Company Unsecured Notes

On the Effective Date, the Combined Company shall issue the Combined Company Unsecured Note and each Holder of an Allowed General Unsecured Claim other than a GUC Trade Creditor Claim shall receive a distribution of such Holder's Pro Rata share (based upon such Holder's total face amount Claim relative to the total

41

face amount of the Allowed General Unsecured Claims other than GUC Trade Creditor Claims) of the Combined Company Unsecured Notes.

The Combined Company Unsecured Notes shall accrue interest at 2% payment-in-kind. The maturity date of the Combined Company Unsecured Notes shall be six years after the Effective Date, and the Combined Company Unsecured Notes shall be subject to other customary conditions and covenants. The terms of the Combined Company Unsecured Note shall provide that the Combined Company Unsecured Note shall be prepayable without any premiums or fees.

2.    GUC Trade Creditor Distribution Pool

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed GUC Trade Creditor Claim shall receive its Pro Rata share (based upon such Holder's total face amount Claim relative to the total face amount of the Allowed GUC Trade Creditor Claims) of the GUC Trade Creditor Distribution Pool.

3.    Preference Waiver

On the Effective Date, the Debtors shall forever waive, relinquish, and release any and all Causes of Action the Debtors and their Estates had, have, or may have had that arise under section 547 of the Bankruptcy Code against any Person with whom the Debtors conducted business prior to the Effective Date.

4.    Deficiency Claims Waiver

Solely for the purposes of this Plan, each of the funds and/or accounts managed or advised by Knighthead Capital Management, LLC, Caspian Capital LP on behalf of its advisees, Davidson Kempner Capital Management LP, on behalf of funds and accounts managed by it (including Midtown Acquisitions L.P.), and Hudson Bay Absolute Return Credit Opportunities Master Fund Ltd. agrees to waive and shall receive no distribution on account of its (a) Prepetition Term Loan Facility Claims, if any, other than its Prepetition Term Loan Rights and (b) Prepetition Notes Claims, if any.

U.    *Excess Cash Distribution Mechanism*

If the Payout Event does not occur, any Cash remaining after facilitating all distributions pursuant to the Plan or any other order of the Bankruptcy Court (including, for the avoidance of doubt, amounts distributed on account of the Carve Out Reserve, the Professional Fee Escrow Account, any amounts reserved for the Wind Down, payment of Adequate Protection Claims, Administrative Claims, Cure Claims, Other Priority Claims, settlement payments allowed pursuant to any order of the Bankruptcy Court, or any other payments authorized by order of the Bankruptcy Court) shall be distributed in the following order of priority:

*First*, Pro Rata to Holders of Allowed Prepetition LC Facility Claims in an aggregate amount not to exceed $5,000,000 (the "first $5,000,000");

*Second*, after distribution of the first $5,000,000 as contemplated by the previous paragraph, Pro Rata to Holders of Allowed Prepetition Term Loan Facility Claims in an aggregate amount not to exceed $5,000,000 (the "second $5,000,000"); and

*Third*, after distribution of the first $5,000,000 and the second $5,000,000 as contemplated by the previous paragraphs, to the extent any Cash remains to be distributed, to the 1974 Pension Plan and Holders of Allowed General Unsecured Claims of such Entity's Pro Rata share (based upon the total face amount of such Entity's Allowed Claim relative to the total face amount of Allowed General Unsecured Claims plus the 1974 Pension Plan Allowed Administrative Claim to the extent not paid in full).

In consideration for their rights to receive any excess Cash distributions, Holders of Allowed Prepetition LC Facility Claims, Allowed Prepetition Term Loan Facility Claims, Allowed or Disputed General Unsecured Claims, and the 1974 Pension Plan shall be deemed to have stipulated that the Debtors shall have sole discretion to

42

determine, fund, and/or pay all emergence costs set forth in this Article IV.U so long as the Debtors (or their agents) exercise such determination in a manner consistent with their fiduciary duties; provided, that, the Debtors (or their agents) shall be entitled to rely upon the advice of counsel concerning their (or their agents') duties pursuant to, or in connection with, the determination, funding, and/or payment of the emergence costs set forth in this Article IV.U.

For the avoidance of doubt, the excess Cash described in the first paragraph of this Article IV.U shall not include any of the $32.5 million in Cash provided to the Debtors in connection with the Combined Company 1.5 Lien Term Loan, which $32.5 million will be used solely in accordance with Section 2.06(c) of the Blackhawk APA.

V.       WVDEP Settlement

The Plan implements the terms of the WVDEP Settlement in accordance with the WVDEP Settlement Term Sheet.  Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code and consistent with section 1129 of the Bankruptcy Code, the Plan shall constitute a motion for approval of, and the Confirmation Order shall constitute Bankruptcy Court approval of, the WVDEP Settlement. An executed copy of the WVDEP Settlement shall be Filed with the Bankruptcy Court prior to the Effective Date.

W.       Coal Act Settlement

The Plan gives effect to the Coal Act Stipulation, and consummation of the Blackhawk Transaction and the VCLF Transaction shall qualify as a sale of substantially all of the Debtors' operating assets as contemplated by the Coal Act Stipulation.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.       *Assumption and Assignment of Executory Contracts and Unexpired Leases*

On the Effective Date, the Debtors shall assume and assign the Assumed Contracts and Assumed Leases (each as defined in the Blackhawk APA) to the Combined Company.  In addition, on the Effective Date, the Debtors shall assume such Executory Contracts to be assumed and assigned to VCLF or the Liquidating Trust, as applicable.

The Plan Supplement shall contain the Schedule of Assumed Executory Contracts and Unexpired Leases. The Debtors may, at any time on or prior to the Effective Date, amend the Schedule of Assumed Executory Contracts and Unexpired Leases in compliance with and in the manner set forth in the Blackhawk Transaction Documents, the VCLF Transaction Documents, or the Liquidating Trust Agreement, as applicable.  Notwithstanding anything to the contrary in the Plan, unless otherwise approved in writing in advance by Blackhawk or VCLF, as applicable, the Debtors shall not assume and assign to the Combined Company or VCLF any employment agreement and employee benefit plan except for those employment agreements and employee benefit plans specifically set forth in the Blackhawk Transaction Documents or the VCLF Transaction Documents and, with respect to such employment agreements, only if the employee counterparty thereto executes and delivers to the Debtors and the Combined Company of VCLF, as applicable, an amendment, consent and acknowledgment agreement described in the Blackhawk Transaction Documents in form and substance acceptable to Blackhawk or VCLF, as applicable.

The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions and assignments or rejections described above as of the Effective Date.  Unless otherwise indicated, all assumptions and assignments or rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date.  Each Executory Contract and Unexpired Lease assumed and assigned pursuant to the Plan or by Bankruptcy Court order, shall vest in and be fully enforceable by the applicable assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.

Notwithstanding the foregoing paragraph or anything contrary herein, but subject to the terms of the Blackhawk Transaction Documents or the VCLF Transaction Documents, as applicable, the Debtors, Blackhawk, and VCLF reserve their respective rights to alter, amend, modify or supplement the Executory Contracts and Unexpired Leases identified in the Plan Supplement prior to the Confirmation Date.

To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to this Plan (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (1) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (2) any Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease, or (3) the Confirmation or consummation of this Plan, then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

For the avoidance of doubt, any Executory Contract or Unexpired Lease not expressly assumed or assumed and assigned pursuant to this Plan (including the Plan Supplement) shall be deemed rejected as of the Effective Date.

B.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Executory Contracts or Unexpired Leases to be assumed and assigned pursuant to the Plan, the Blackhawk Transaction Documents, and the VCLF Transaction Documents that are, or may be, alleged to be in default, shall be satisfied solely by payment of the Cure Cost or by an agreed-upon waiver of the Cure Cost on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the Combined Company or VCLF, as applicable, and the counterparties to each such Executory Contract or Unexpired Lease may otherwise agree.

The Debtors caused notices of proposed assumptions and assignments to the Combined Company and proposed Cure Costs and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court to be served on applicable counterparties.  The Debtors will cause notices of proposed assumptions assignments to VCLF and proposed Cure Costs and for procedures thereto and resolution of disputes by the Bankruptcy Court to be served on applicable counterparties.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Cost must be Filed, served and actually received by the Debtors by the Confirmation Objection Deadline.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or Cure Cost will be deemed to have assented to such matters.

In the event of a dispute regarding: (1) the amount of any Cure Cost; (2) the ability of the Combined Company or VCLF to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption and/or assignment, then such Cure Costs shall be paid following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon the Debtors, the Combined Company, or VCLF, as applicable, and the counterparty to such Executory Contract or Unexpired Lease; provided, that, the party who is liable for such cure cost shall have the authority to settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Subject to any cure claims Filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to this Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned by Final Order

44

shall be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

C.      Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Notice and Claims Agent no later than thirty days after the effective date of rejection of such Executory Contract or Unexpired Lease.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, the Combined Company, VCLF, or their property, without the need for any objection by the Debtors or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.F hereof. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B hereof.

Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to, action, order, or approval of the Bankruptcy Court.

D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Combined Company and VCLF each expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors, the Combined Company, or VCLF, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, the Blackhawk Transaction Documents, and the VCLF Transaction Documents, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents.  Nothing in the immediately preceding sentence shall be deemed to limit, supersede or change the provisions set forth in Article V.G.

F.      Insurance Policies

Except with respect to those insurance policies and any agreements, documents or instruments relating thereto that are listed on the Schedule of Assumed Executory Contracts and Unexpired Leases or acquired by Blackhawk pursuant to the Blackhawk APA or VCLF pursuant to the VCLF APA, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto shall be treated as Executory Contracts of the applicable Debtor under the Plan and the Bankruptcy Code and shall be assumed by the applicable Debtor and assigned to the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan. For the avoidance of doubt, any insurance policies, the rights to the proceeds with respect to which are acquired by Blackhawk pursuant to the Blackhawk APA, shall be subject in all respects to section 2.01(l) of the Blackhawk

APA.  For the avoidance of doubt, any insurance policies, the rights to the proceeds with respect to which are acquired by VCLF pursuant to the VCLF APA, shall be subject in all respects to section 2.01(l) of the VCLF APA.

G.      *Compensation and Benefit Programs*

All employment and severance policies, and all compensation and benefit plans, policies and programs of the Debtors applicable to their respective employees, retirees and directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life, accidental death and dismemberment insurance plans are treated as Executory Contracts under the Plan and on the Effective Date will be listed on the Schedule of Assumed Executory Contracts and Unexpired Leases and will be rejected unless any of the foregoing is a Blackhawk Purchased Asset or a VCLF Purchased Asset, as applicable, in accordance with the Blackhawk Transaction Documents or the VCLF Transaction Documents, as applicable, in which case the same shall be assumed and assigned to Combined Company or VCLF, as applicable, pursuant to the terms of the Plan and Blackhawk Transaction Documents or VCLF Transaction Documents, as applicable.

H.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Combined Company or VCLF, as applicable, has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, the Combined Company, or VCLF, as applicable, shall have ninety days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed or Paid*

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions and payments that the Plan provides for Allowed Claims in the applicable Class from the Debtors or Liquidating Trustee, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided herein, and other than with respect to Claims satisfied through the issuance of Combined Company Debt Facilities, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, but subject to the Intercreditor Agreements, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any postpetition interest on such Claim payable in accordance with the Plan.  For the avoidance of doubt, nothing herein shall modify the treatment of Claims and Interests set forth in Article III.B of the Plan.

B.      *Undrawn LC Facility Claims Reserve*

Amounts to be paid with respect to, or on account of, the Prepetition LC Facility Distribution shall be subject to the Undrawn LC Facility Claims Reserve as set forth herein.  A portion of the Prepetition LC Facility Distribution (but excluding the Prepetition LC Facility Rights) shall be held in reserve (the "Undrawn LC Facility Claims Reserve") together with all earnings thereon, if any (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve), to be distributed on the Prepetition LC Facility Final Distribution Date, as required by this Plan.  The Undrawn LC Facility Claims Reserve Agent shall hold in the Undrawn LC Facility Claims Reserve all dividends, payments, and other distributions made on account of, as well as any obligations arising from, the property held in the Undrawn LC Facility Claims Reserve, to the extent that such property continues to be so held at the time such distributions are made or such obligations arise.

The Undrawn LC Facility Claims Reserve Agent shall reserve the Pro Rata share (based upon the total amount of Undrawn LC Facility Claims as of the Effective Date relative to the total amount of Prepetition LC Facility Claims) of the Prepetition LC Facility Distribution (but excluding the Prepetition LC Facility Rights) for potential distribution on account of the Undrawn LC Facility Claims.  After all Undrawn LC Facility Claims have become either Allowed Claims or disallowed Claims, the Undrawn LC Facility Claims Reserve Agent shall effect a final distribution to all Holders of Allowed Undrawn LC Facility Claims.  The Undrawn LC Facility Claims Reserve shall be closed and extinguished by the Undrawn LC Facility Claims Reserve Agent when all distributions required to be made hereunder shall have been made in accordance with the terms of this Plan.  Upon closure of the Undrawn LC Facility Claims Reserve, the Undrawn LC Facility Claims Reserve Agent shall distribute to the Holders of Allowed Prepetition LC Facility Claims (including, without limitation, Allowed Undrawn LC Facility Claims) each Holder's Pro Rata share (based upon the face amount of such Holder's Allowed Prepetition LC Facility Claim relative to the total face amount of all Allowed Prepetition LC Facility Claims) of the remaining amount, if any, of the Prepetition LC Facility Distribution held in the Undrawn LC Facility Claims Reserve; provided, that, to the extent a Combined Company Second Lien Term Loan that is part of the Prepetition LC Facility Distribution has not been actually distributed to a Holder of an Allowed Prepetition LC Facility Claim in accordance with the Plan, such Combined Company Second Lien Term Loan shall be deemed to vote under the definitive documentation for the Combined Company Second Lien Term Loan in the same proportion as all other Combined Company Second Lien Term Loans (for the avoidance of doubt, distribution of a Combined Company Second Lien Term Loan to the Undrawn LC Facility Claims Reserve Agent shall not constitute a distribution to a Holder of an Allowed Prepetition LC Facility Claim unless and until the Undrawn LC Facility Claims Reserve Agent actually distributes such Combined Company Second Lien Term Loan to such Holder of an Allowed Prepetition LC Facility Claim).  For the avoidance of doubt, this Article VI.B is subject to Article VI.E hereof.

C.      *Distributions and Payments Generally*

All distributions and payments under the Plan that are to be made on the Effective Date, if any, shall be made by the Debtors, or to the extent applicable, by the Combined Company or the respective administrative agent in respect of any Combined Company Debt Facilities issued in satisfaction of any Claims. Distributions and payments made after the Effective Date shall be made by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

D.      *Distributions and Payments of the Purchase Price Paid Pursuant to the Blackhawk APA*

Notwithstanding anything to the contrary contained herein, the Purchase Price (as such term is defined in the Blackhawk Transaction Documents) that is delivered to the Debtors shall be used solely to make distributions and payments under the Plan, whether or not such distributions and payments are made on the Effective Date or thereafter; provided, that, for the avoidance of doubt, the Purchase Price (as such term is defined in the Blackhawk Transaction Documents) that is delivered to the Debtors shall be payable on the closing date of the transactions contemplated by the Blackhawk Transaction Documents.

E.      *Undeliverable Distributions and Unclaimed Property*

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at

47

which time such distribution shall be made to such Holder without interest; provided, that, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall be cancelled or be transferred in accordance with the Liquidating Trust Agreement automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred. For the avoidance of doubt, unclaimed property or interests associated with the Blackhawk Transaction shall be canceled.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    *Resolution of Disputed Claims*

　　1.    Allowance of Claims

On or after the Effective Date, the Liquidating Trustee, the Combined Company, or VCLF, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date. Except as expressly provided in the Plan, in the Blackhawk Transaction Documents, the VCLF Transaction Documents, or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order or the DIP Orders, in the Chapter 11 Cases allowing such Claim.

　　2.    Prosecution of Objections to Claims

The Debtors prior to and on the Effective Date or the Liquidating Trustee after the Effective Date shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

　　3.    Claims Estimation

Prior to and on the Effective Date, the Debtors, and after the Effective Date, the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate (1) any Disputed Claim pursuant to applicable law and (2) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtors or the Liquidating Trustee may elect to pursue additional objections to the ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a

48

motion requesting the right to seek such reconsideration on or before twenty-one days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

4.     <u>Disputed Claims Reserve</u>

On or prior to the Effective Date, the Disbursing Agent shall be authorized, but not directed, to establish one or more Disputed Claims Reserves, which Disputed Claims Reserve shall be administered by the Disbursing Agent. The Disbursing Agent may, in its sole discretion, hold Cash or such other consideration the Debtors determines appropriate after consultation with the Consultation Parties in the Disputed Claims Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed after the Effective Date. The Disbursing Agent shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Disputed Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Disputed Claims as such amounts would have been distributable had such Disputed Claims been Allowed Claims as of the Effective Date.

When all Disputed Claims are resolved and either become Allowed or are disallowed by Final Order, to the extent Cash or such other consideration the Debtors determines appropriate after consultation with the Consultation Parties remains in the Disputed Claims Reserve after all Holders of Disputed Claims that have become Allowed and have been paid the full amount they are entitled to pursuant to the treatment set forth for the appropriate Class under the Plan, then such excess Cash or such other consideration shall be distributed (a) if the Payout Event occurs, as part of the Payout Event Cash Pool in accordance with Article III hereof or (b) if the Payout Event does not occur, to the Combined Company to the extent such excess Cash was provided in connection with the Combined Company 1.5 Lien Term Loan. For the avoidance of doubt, the Disputed Claims Reserve may be funded with Cash or such other consideration the Debtors determine is appropriate after consultation with the Consultation Parties to address disputes regarding the nature, extent, and value of certain assets the Committee submits to be unencumbered assets.

The preceding two paragraphs shall be subject to Section 2.06(c) of the Blackhawk APA.

5.     <u>Expungement or Adjustment to Claims Without Objection</u>

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Debtors or the Liquidating Trustee and any Claim that has been amended may be adjusted thereon by the Debtors or the Liquidating Trustee in both cases without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

6.     <u>Deadline to File Objections to Claims</u>

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

B.     *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtors or the Liquidating Trustee under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Liquidating Trustee allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtors or the Liquidating Trustee on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

Notwithstanding anything to the contrary herein, the Debtors or the Liquidating Trustee, as applicable, shall not allow, disallow, estimate, dispute, prosecute an objection or take any other action with respect to a Claim that is

49

an Assumed Liability, unless expressly provided for in the Blackhawk APA or otherwise consented to by Blackhawk.

**EXCEPT AS OTHERWISE AGREED BY THE DEBTORS ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

C.      *Amendments to Claims*

On or after the Effective Date, except as provided in Article II.A hereof, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee and any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.      *Discharge of Claims and Termination of Interests*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against the Debtors and their Estates and Causes of Action against other Entities (other than such Claims or Causes of Action that are Purchased Assets).

**B.    Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged.

**C.    Debtor Release**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to this Plan, for good and valuable consideration, on and after the Effective Date, the Debtors and their Estates shall release each Debtor Released Party, and each Debtor Released Party shall be deemed released and discharged by the Debtors and their Estates, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the DIP Facility, the Blackhawk Transaction, the Prepetition Facilities, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Debtor Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Debtor Released Party that constitutes willful misconduct, bad faith, or gross negligence, each solely to the extent determined by a Final Order.  For the avoidance of doubt, in no circumstance shall Peabody, Arch, or Alcoa be Debtor Released Parties.  Notwithstanding anything to the contrary in the foregoing, the Debtor Release shall not release any obligations of any Debtor Released Party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Debtor Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**D.    Third Party Release**

As of the Effective Date, except as otherwise provided in the Plan, including, without limitation, Article IV.H of the Plan, or in any contract, instrument or other agreement or document created pursuant to this Plan, the Releasing Parties, shall release the Debtors, their Estates, and the Released Parties, and each of the Debtors, their Estates, and the Released Parties shall be deemed released, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the DIP Facility, the Blackhawk Transaction, the Blackhawk Transaction Documents, the VCLF Transaction, the VCLF Transaction Documents, the Prepetition Facilities, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released

51

Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Debtor Releasee that constitutes willful misconduct, bad faith, or gross negligence.  For the avoidance of doubt, in no circumstance shall Peabody, Arch, or Alcoa be Released Parties.  Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any Released Party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Third Party Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third Party Release.

E.      *Exculpation*

Except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to this Plan, no Exculpated Party shall have or incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, consummating the Plan, the Disclosure Statement, the Blackhawk Transaction Documents, the VCLF Transaction Documents, the Restructuring Transactions, the DIP Facility, the Prepetition Facilities, the issuance, distribution, and/or sale of the Combined Company 1.5 Lien Class B Units or any other security offered, issued, or distributed in connection with the Plan, the Chapter 11 Cases or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; *provided*, *that*, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; *provided*, *further*, *that*, the foregoing Exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct. For the avoidance of doubt, in no circumstance shall Peabody, Arch, or Alcoa be Exculpated Parties.

F.      *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan (including any obligations under the Prepetition Facilities, the Combined Company 1.5 Lien Class B Units, and documents and instruments related thereto), or Confirmation Order, all Entities who have held, hold, or may hold claims, interests, or Liens that have been discharged pursuant to Article VIII.A, released pursuant to Article VIII.B, Article VIII.C, or Article VIII.D, or are subject to exculpation pursuant to Article VIII.E are, to the fullest extent provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Trust, the Combined Company, the Debtor Released Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any

such claims or interests unless such Entity has timely asserted such setoff right prior to the Effective Date in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

G.    *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or the Combined Company, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, the Combined Company, or another Entity with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.    *Setoffs*

Except as otherwise expressly provided for in the Plan or in any court order, each Debtor or the Combined Company (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may (but shall not be required to) set off against any Allowed Claim (other than the DIP Claims, Prepetition ABL Facility Claims, Prepetition LC Facility Claims, Prepetition Term Loan Claims, and Prepetition Notes Claims) and the distributions to be made pursuant to the Plan on account of such Allowed Claim (other than the DIP Claims, Prepetition ABL Facility Claims, Prepetition LC Facility Claims, Prepetition Term Loan Claims, and Prepetition Notes Claims) (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or the Combined Company (as applicable) may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, that, neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or the Combined Company of any such claims, rights, and Causes of Action that such Debtor or the Combined Company  may possess against such Holder.  In no event shall any Holder of Claims be entitled to setoff any Claim against any claim, right, or Cause of Action of any of the Debtors or the Combined Company unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff right, unless such Holder is otherwise not required to File a Proof of Claim pursuant to a Final Order.

I.    *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup any Claim against any claim, right, or Cause of Action of any of the Debtors or the Combined Company unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.    *Document Retention*

On and after the Effective Date, the Debtors (or the Liquidating Trustee, as the case may be) shall maintain documents in accordance with the Blackhawk Transaction Documents and the VCLF Transaction Documents and otherwise may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors (or the Liquidating Trust, as the case may be).

K.    *Reimbursement or Contribution*

      If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date*

      It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

      1.     The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors and the DIP Lenders, in consultation with the Consultation Parties, and satisfactory to Blackhawk and VCLF in accordance with the Blackhawk APA and VCLF APA, respectively, and such Confirmation Order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

      2.     The Plan and Plan Supplement, including any amendments, modifications, or supplements thereto shall be in form and substance acceptable to the Debtors and the DIP Lenders, in consultation with the Consultation Parties, and satisfactory to Blackhawk and VCLF in accordance with the Blackhawk APA and VCLF APA, respectively;

      3.     The Blackhawk APA shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of the Blackhawk APA shall have been waived or satisfied in accordance with the terms thereof and the closing of the Blackhawk Transaction shall have occurred or shall occur concurrently with the Effective Date;

      4.     The VCLF APA shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of the VCLF APA shall have been waived or satisfied in accordance with the terms thereof and the closing of the VCLF Transaction shall have occurred or shall occur concurrently with the Effective Date; provided, however, that this condition to the Effective Date may be waived only (a) by consent of the Debtors, the DIP Lenders, Blackhawk, VCLF, and the Environmental Parties in consultation with the Consultation Parties or (b) pursuant to a Final Order entered by the Bankruptcy Court;

      5.     All governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

      6.     All documents and agreements necessary to implement this Plan, the Blackhawk Transaction, including the Combined Company Debt Documents and the Blackhawk LLC Agreement, and the VCLF Transaction shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements or shall occur concurrently with the Effective Date;

      7.     The WVDEP Settlement, in a final form acceptable to the DIP Lenders in their sole and absolute discretion, shall have been executed, consummated, and become effective in accordance with its terms; provided,

however, that, for the avoidance of doubt, this condition to the Effective Date may not be waived pursuant to Article IX.B hereof; and

8.    The DIP Lenders agree to the refinancing or the roll over of the DIP Facility and satisfaction of all DIP Claims pursuant to the terms of the Blackhawk Transaction Documents (in form and substance satisfactory to the DIP Lenders in their sole and absolute discretion).

B.    *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article IX may be waived only by consent of the Debtors, the DIP Lenders, Blackhawk (solely as applicable with respect to Article IX.A), and VCLF (solely as applicable with respect to Article IX.A) in consultation with the Consultation Parties; provided, however, that the condition to the Effective Date set forth in Article IX.A.7 may not be waived pursuant to this Article IX.B; provided, further, that, the condition to the Effective Date set forth in Article IX.A.4 may be waived only as set forth therein.

C.    *Effective Date*

The Effective Date shall be the first Business Day upon which all of the conditions specified in Article IX.A hereof have been satisfied or waived.  "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.    *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the DIP Lenders, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

# ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Subject to the limitations contained herein, section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019, the Debtors reserve the right to modify, with the consent of the DIP Lenders and the Consultation Parties, the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan; provided, that, any material amendment or modifications to the form or substance of the Combined Company New ABL from the version Filed as part of the Plan Supplement, and any amendment or modifications to this proviso, shall require the approval of the Prepetition ABL Agent to the extent the Prepetition New ABL Secured Parties are provided the treatment contemplated in Article III.B.4(c)(i) or Article III.B.4(c)(ii)(B).  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X hereof.

B.    *Payout Event*

The Plan contemplates the possibility of the Debtors implementing the Payout Event.  If the Payout Event occurs, the Debtors may File a modified Plan evidencing the Payout Event and shall not be required to make

additional disclosures or re-solicit votes for such modified Plan pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 so long as (1) the Payout Event Cash is sufficient to pay all Allowed Prepetition ABL Facility Claims in full in Cash (including by cash collateralizing any Prepetition ABL Undrawn LCs on terms and amounts acceptable to the issuers thereof and the Prepetition ABL Agent) and (2) such modified Plan provides for such payment in full and in Cash of the Allowed Prepetition ABL Facility Claims; (3) such Payout Event Cash is sufficient to pay all DIP Claims in full in Cash; and (4) such modified Plan provides for such payment in full in Cash of the DIP Claims.[3] Pursuant to this Article X.B of the Plan, the Prepetition LC Agent reserves its right to challenge the implementation of the Payout Event, including the proposed distribution to Holders of Claims contemplated therefrom.

### C.  Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the DIP Lenders, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including without limitation jurisdiction to:

1.       allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.       decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.       resolve any matters related to: (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.       ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

---

[3]   For the avoidance of doubt, if the Payout Event occurs, the Blackhawk APA Break-Up Fee and Expense Reimbursement shall be payable in accordance with the terms of the Blackhawk APA and the Bidding Procedures Order.

KE 38073257

5.       adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.       adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.       enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.       enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including the Confirmation Order and approval of, and the findings regarding, the Blackhawk Transaction and the VCLF Transaction;

9.       resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, the Blackhawk Transaction Documents, the VCLF Transaction Documents, or any actions or courses of dealing related thereto that occurred on or prior to the Effective Date;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

14.      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated herein;

15.      adjudicate any and all disputes arising from or relating to the Liquidating Trust;

16.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.      hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any

57

employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

       21.      enforce all orders previously entered by the Bankruptcy Court;

       22.      to resolve any disputes arising under, or enforce the terms and conditions of, the Blackhawk Transaction Documents, the VCLF Transaction Documents, or Liquidating Trust Agreement, as applicable;

       23.      hear any other matter not inconsistent with the Bankruptcy Code, including, without limitation, any matters that may arise in connection with, or related to, the Blackhawk Transaction Documents or the VCLF Transaction Documents;

       24.      enter an order concluding or closing the Chapter 11 Cases; and

       25.      enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof.

Notwithstanding anything in this Article XI to the contrary, any disputes arising under or in connection with the Combined Company Debt Documents or the Blackhawk LLC Agreement will be governed by the provisions contained in the applicable Combined Company Debt Documents or the Blackhawk LLC Agreement, as applicable.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors; the Liquidating Trust; Blackhawk; VCLF; any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan); all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents; each Entity acquiring property under the Plan or the Confirmation Order; and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, the Blackhawk Transaction Documents, and the VCLF Transaction Documents. The Debtors or the Liquidating Trust, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan, the Blackhawk Transaction Documents, and the VCLF Transaction Documents.

C.     *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors (prior to or on the Effective Date) or the Liquidating Trust (after the Effective Date) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.      *Dissolution of the Committee and the Retiree Committee*

On the Effective Date, the Committee and the Retiree Committee shall dissolve automatically; provided, however, that, following the Effective Date, the Committee and the Retiree Committee, as applicable, shall continue in existence and have standing and a right to be heard with respect to any of the following: (1) Claims and/or applications for allowance of Professional Fee Claims and requests for allowance of Administrative Claims including, but not limited to, filing Professional Fee Claims in accordance with Article II.B hereof; (2) any appeals of the Confirmation Order that remain pending as of the Effective Date and/or to which the Committee or the Retiree Committee, as applicable, is a party;  and (3) any adversary proceedings or contested matters pending as of the Effective Date to which the Committee or the Retiree Committee, as applicable, is a party.

E.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or the Liquidating Trust shall be served on:

> Patriot Coal Corporation
> 63 Corporate Centre Drive
> Scott Depot, West Virginia  25560
> Attn: Joseph W. Bean
>
> with copies to:
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attn: Stephen E. Hessler, Esq. and Patrick Evans, Esq.
>
> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois  60654
> Attn: Ross M. Kwasteniet, Esq. and Justin R. Bernbrock, Esq.
>
> Kutak Rock LLP
> Bank of America Center
> 1111 East Main Street, Suite 800
> Richmond, Virginia  23219-3500
> Attn:  Michael A. Condyles, Esq.

H.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.    *Entire Agreement*

Except as otherwise provided herein or therein, this Plan (including the Plan Supplement), the Blackhawk Transaction Documents, and the VCLF Transaction Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan (including the Plan Supplement), the Blackhawk Transaction Documents, and the VCLF Transaction Documents.

J.    *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

K.    *Request for Court Hearing and Right to Be Heard*

Notwithstanding whether or not a matter requires the consultation of Blackhawk, the DIP Lenders, the Consultation Parties, or the Combined Company under this Plan, the Debtors, the DIP Lenders, the Consultation Parties, and the Combined Company shall have the right to request a hearing, and be heard as a party in interest under section 1109(b) of the Bankruptcy Code, before the Bankruptcy Court on any and all matters arising under or in connection with or related to this Plan, the Blackhawk Transaction Documents, or the VCLF Transaction Documents.

L.    *Powers of Combined Company*

From and after the Effective Date and continuing through the date of entry of a final decree closing these Chapter 11 Cases, the Combined Company shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to these Chapter 11 Cases and, in connection therewith, shall (1) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (2) be entitled to notice and an opportunity for hearing on all such issues, (3) participate in all matters brought before the Bankruptcy Court, and (4) receive notice of all applications, motions, and other papers and pleadings Filed in the Bankruptcy Court.

60

Respectfully submitted, as of the date first set forth above,

Patriot Coal Corporation (for itself and all Debtors)

By:    */s/ Ray Dombrowski*
Name:   Ray Dombrowski
Title:    Chief Restructuring Officer

KE 38073257