IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

THE COUNTY COMMISSION OF
FAYETTE COUNTY, WEST VIRGINIA, et al.,

                Plaintiffs,

v.                                          CIVIL ACTION NO. 2:21-cv-00307

NATIONAL GRID NE HOLDINGS 2 LLC, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a partial motion to dismiss filed by Defendants Quercus West Virginia, LLC ("Quercus") and Pardee and Curtain Realty ("Pardee") (collectively, "Surface Defendants"). (ECF No. 48.) For the reasons discussed herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

*I.    BACKGROUND*

The County Commission of Fayette County, West Virginia (the "County") initiated this action On May 18, 2021. (ECF No. 1.) The County then properly filed an Amended Complaint on July 16, 2021, (ECF No. 31), and a Second Amended Complaint on June 15, 2022, (ECF No. 499).

This matter arises out of the alleged contamination of the Johnson Fork of Loop Creek Watershed, which is located entirely within Fayette County, West Virginia. (*See* ECF No. 499 at 33, ¶ 18.) According to the Second Amended Complaint, from "no later than the late 1920s . . .

1

until at least the mid-1950s," Eastern Gas and Fuel Associates ("EGFA")[1] conducted "extensive coal mining operations throughout the Subject Watershed." (*Id.* at 36-37, ¶ 30.) During these operations, EGFA allegedly created, operated, and maintained "at least five (5) separate, associated piles of coal mining waste," ("CMW") within the Subject Watershed. (*Id.* at 37, ¶ 30.) The County claims that these five piles of CMW were "constructed and maintained without a Liner[2] and without any associated Leachate[3] collection, control or monitoring system[.]" (*Id.* (emphasis omitted).)

Then, from the 1960s until 2003, EGFA's subsidiary, Eastern Associated Coal Corporation ("EACC"),[4] owned and operated the same mining operations. (*See id.* at 41, ¶ 54; 44, ¶¶ 66-69.) Then, from 2003 until 2013, Pardee owned and managed the surface estate within the Subject Watershed, upon which four of the five piles of CMW are located, and "failed or refused to take any action to abate" the five piles of CMW. (*See id.* at 45-46, ¶¶ 70-74.) In 2013, Pardee conveyed its interest in the surface estate to Quercus, (*id.* at 45-46, ¶ 71), which also "failed or refused to take any action to abate" the five piles of CMW, (*id.* at 47, ¶ 75-77.)

---

[1] The Second Amended Complaint details how EGFA eventually became Defendant National Grid Holdings 2 LL. EGFA formally changed its name to Eastern Enterprises on April 28, 1989, (ECF No. 499 at 40, ¶ 45.) In 2000, KeySpan Corporation ("KeySpan") "acquired Eastern Enterprises by way of a stock purchase agreement." (*Id.* at ¶ 48.) In 2002, KeySpan merged Eastern Enterprises "into a wholly owned subsidiary of one of its subsidiaries, KeySpan New England, LLC[.]" (*Id.* at ¶ 49.) Then, in 2007, "KeySpan, including KeySpan New England, LLC, merged with, and into, National Grid 8 Inc., a wholly owned subsidiary of National Grid plc." (*Id.* at ¶ 50.) Finally, on April 14, 2008, KeySpan New England, LLC formally changed its name to National Grid NE Holdings 2 LLC," ("National Grid"). (*Id.* at ¶ 51.)

[2] "Consistent with its definition in the West Virginia Solid Waste Management Rule, W. Va. C.S.R. § 33-1-2.68, the term 'Liner' means a continuous layer of natural or manmade materials beneath or on the sides of a surface impoundment, landfill or landfill cell, which restricts the downward or lateral escape of solid waste, any constituents of such waste or leachate and which complies with the W. Va. Solid Waste Management Rule." (ECF No. 499 at 28, ¶ 17(p).)

[3] "Consistent with its definition in federal RCRA Subtitle D regulations, 40 C.F.R. § 257.2, and in the West Virginia Solid Waste Management Rule, W. Va. C.S.R. § 33-1-2.66, the term 'Leachate' means any liquid that has come into contact with, passed through or emerged from Solid Waste and contains soluble, suspended, or miscible materials removed from such waste[.]" (ECF No. 499 at 28, ¶ 17(o).)

4 Eastern Associated Coal, LLC, a now-dissolved West Virginia Limited Liability Company (formally known as EACC), was a wholly owned subsidiary of EGFA. (ECF No. 499 at 13-14, ¶ 1.)

According to the County, "[c]ontinuously since their original creation," each of the five piles of CMW have discharged[5] and released[6] hazardous substances, hazardous wastes, solid waste, pollutants and contaminants, and leachate into the environment. (*Id.* at 39, ¶ 43.) The County alleges that this has caused and continues to cause endangerments to health and the environment. (*Id.* at 85-86, ¶ 176.) The County seeks to hold past and present landowners responsible, including National Grid NE Holdings 2 LLC ("National Grid), as a successor to EGFA, and the Surface Defendants. (*See generally id.*) The Second Amended Complaint asserts claims under the Resource Conservation and Recovery Act ("RCRA"); West Virginia Solid Waste Management Act ("WVSWMA"); the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"); Fayette County Comprehensive Public Nuisance Abatement Ordinance ("2018 Ordinance"); and West Virginia common law. (*See id.* at 3–4.)

The Surface Defendants filed the pending partial motion to dismiss on August 6, 2021. (ECF No. 48.) The County responded, (ECF No. 63), the Surface Defendants replied, (ECF No. 65), and the County filed a surreply, (ECF No. 258). As such, this motion is fully briefed and ripe for adjudication.[7]

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the

---

[5] "The term 'Discharge' means the accidental or intentional spilling, leaking, pumping, pouring, emitting, emptying, or dumping of a Hazardous Waste, Solid Waste, Hazardous Substance, or Leachate into or on any land or water[.]" (ECF No. 499 at 23, ¶ 17(b).)

[6] As used in the Second Amended Complaint, "release[s]" and "disposal[s]" are included in "discharge[s]." (ECF No. 499 at 23, 30, ¶¶17(c)(w).

[7] The Second Amended Complaint, (ECF No. 499), was filed after the pending partial motion to dismiss, (ECF No. 48), was filed and fully briefed. However, the allegations in the Second Amended Complaint do not materially change the claims which are the subject of the pending partial motion to dismiss, exept that Count Ten in the prior complaint, (*see* ECF No. 31), is numbered as Count Eleven in the Second Amended Complaint, (*see* ECF No. 499). The parties have stipulated that the Court can rule on the pending partial motion to dismiss based on the existing motion and memoranda filed by the parties. (ECF No. 559.)

3

legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

In the pending partial motion to dismiss, the Surface Defendants argue that Counts One Two, Six, Seven, and Eleven should be dismissed. (ECF No. 49.) Specifically, the Surface Defendants argue that (1) Counts One and Two should be dismissed because the County has failed to state a claim under the RCRA; (2) Counts Six and Seven should be dismissed because

4

the 2018 Ordinance is preempted; and (3) Count Eleven should be dismissed because the County has failed to state a claim for unjust enrichment. (*See id.*) Counts One, Two, and Six are discussed below.[8]

A. *Counts One and Two*

The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 504 (4th Cir. 2015) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996)). The primary purpose of RCRA is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, so as to minimize the present and future threat to human health and the environment." *Meghrig*, 516 U.S. at 483 (internal quotation marks omitted) (quoting 42 U.S.C. § 6902(b)).

Like many other environmental acts, the RCRA includes a citizen suit provision under which a private party, within certain limitations, may bring civil suit against any person or the Administrator of the Environmental Protection Agency to compel compliance with or enforcement of the Act. *See* 42 U.S.C.A. § 6972. This section contains a "set of twin citizen suit mechanisms." *Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:18-CV-01230, 2022 WL 2400038, at *39 (S.D.W. Va. July 1, 2022) (Copenhaver, J.) (quoting *Lovejoy v. Jackson Resources Company*, 2:20-cv-00537, 2021 WL 3025454, *5 (S.D.W. Va. July 16, 2021)). First, the RCRA permits "any person" to commence a civil action "against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to [the RCRA]." 42 U.S.C. § 6972(a)(1)(A).

---

[8] The Court dismissed Counts Seven and Eleven in a previous Memorandum Opinion and Order. (ECF No. 572.) Thus, the Surface Defendants' motion is **DENIED AS MOOT** as it relates to those counts.

Second, the RCRA permits any person to commence a civil action "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

In this case, the County asserts two claims under the RCRA. Count One asserts a claim against Quercus for "on-going violations of the Open Dumping prohibition" under § 6972(a)(1)(A) of the RCRA, and an analogous provision of the WVSWMA,[9] W. Va. Code § 22-15-10(a). (ECF No. 499 at 106–21; *see also* ECF No. 63 at 3.) Count Two asserts a claim against all Remedial Defendants,[10] including the Surface Defendants, under § 6972(a)(1)(B) of the RCRA, for allegedly contributing to an imminent and substantial endangerment to human health and/or the environment. (ECF No. 31 at 102-12; *see also* ECF No. 63 at 3.)

In the pending partial motion to dismiss, the Surface Defendants argue that Counts I and II should be dismissed because the County failed to state a claim against them under the RCRA.[11] (ECF No. 49 at 6.) However, as outlined below, the County has stated plausible

---

[9] The RCRA also grants states the authority to establish their own hazardous waste management programs, subject to the review and approval of the United States Environmental Protection Agency ("USEPA"). *See* 42 U.S.C. § 6926(b); *see also* 40 CFR §§ 271.1 to 271.27 (detailing requirements for state programs). Where a state has an approved program, it is authorized to carry out its program in lieu of the federal program. 42 U.S.C. § 6926(b); *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 863 (4th Cir. 2001); s*ee also Sierra Club v. Virginia Elec. & Power Co.*, 903 F.3d 403, 407 (4th Cir. 2018) ("When a State elects to establish its own program, the EPA suspends its federal permit program and defers to the State's, allowing the state discharge permit to authorize effluent discharges under both state and federal law."). The USEPA approved West Virginia's hazardous waste program on May 15, 1986, and granted the State the "primary enforcement responsibility" for permitting treatment, storage, and disposal facilities within its borders and carrying out the other aspects of the RCRA program. *See* West Virginia: Final Authorization of State Hazardous Waste Management Program, 51 Fed. Reg. 17739-01 (May 15, 1986); *see also* West Virginia: Final Authorization of State Hazardous Waste Management Program Revision, 65 Fed. Reg. 29973-01 (May 10, 2000); West Virginia: Final Authorization of State Hazardous Waste Management Program Revisions, 78 Fed. Reg. 70225-01 (Nov. 25, 2013). West Virginia implemented its hazardous waste program through the WVHWMA, W. Va. Code § 22-18-1 *et seq*. *See* W. Va. Code § 22-18-2(b)(4).

[10] The Amended Complaint identifies the "Remedial Defendants" as (1) National Grid NE Holdings 2 LLC; (2) EACC; (3) Pardee and Curtin Realty LLC; and (4) Quercus West Virginia, LLC. (ECF No. 31 at 24, ¶ 16(w).)

[11] The Surface Defendants originally argued that the County failed to state a claim under the RCRA under either Count One or Two because they did not "contribute" to any alleged contamination of the property. (ECF No. 49 at

claims against the Surface Defendants under Count One and Two. First, Count One states a plausible claim under subsection (a)(1)(A) based on Quercus's alleged ongoing violations. Second, Count Two states a plausible claim that the Surface Defendants "contributed" to the alleged environmental contamination under subsection (a)(1)(B).

1. Count One

In support of their partial motion to dismiss, the Surface Defendants first note that subsection (a)(1)(A) does not impose retroactive liability for violations occurring before the effective date of the RCRA. (ECF No. 65 at 2; *see also* ECF No. 63 at 5). The Surface Defendants then claim that the Second Amended Complaint alleges that "the last unlawful disposal activities occurred over a decade prior to the effective date of the RCRA." (ECF No. 65 at 2.) However, according to the County, Count One "expressly seeks relief in connection with, inter alia, [Quercus]'s affirmative, **on-going** violation of its statutory duties," under the RCRA and WVSWMP, "both of which prohibit the maintenance and **the very existence of Open Dumps**[.]" (ECF No. 63 at 4 (emphasis in original).)

As discussed above, subsection (a)(1)(A) permits a plaintiff to commence a civil action against any person who is alleged to be in violation of, *inter alia*, any prohibition or regulation under the RCRA. *See* 42 U.S.C. § 6972(a)(1)(A). The RCRA specifically prohibits the open dumping of solid and hazardous wastes.[12] 42 U.S.C. § 6945(a) ("[A]ny solid waste management

---

6.) However, in response, the County noted that Count I asserts a claim under subsection (a)(1)(A)—not subsection (a)(1)(B). (*See* ECF No. 63 at 4.) In reply, the Surface Defendants advanced arguments only as to subsection (a)(1)(A), (*see* ECF No. 65), which will be addressed below.

[12] Similarly, the WVSWMP states that "[o]pen dumps are prohibited and it is unlawful for any person to create, contribute to, or operate an open dump or for any landowner to allow an open dump to exist on the landowner's property unless . . . under a compliance schedule approved by the director." W. Va. Code § 22-15-10(a). The WVSWMA defines open dump as "any solid waste disposal which does not have a permit under this article, or is in violation of state law, or where solid waste is disposed in a manner that does not protect the environment." W. Va. Code § 22-15-2. Here, the Amended Complaint alleges "[s]olid [w]astes and [l]eachate has leaked and been

7

practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited."). Importantly, though, section 6945(a) specifies that "[t]he prohibition contained in the preceding sentence shall be enforceable under section 6972 of this title against persons *engaged in the act of open dumping*." *Id.* (emphasis added). Thus, Count I can survive, based on a violation of § 6945(a), only if Quercus was "engaged in the act of open dumping" at the time of filing.

An "open dump" is defined among RCRA's statutory definitions as "any facility or site where solid waste is disposed[13] of which is not a sanitary landfill which meets the criteria promulgated under section 6944" of the RCRA. 42 U.S.C. § 6903(14). Both this statutory definition and the prohibition on open dumps and dumping under § 6945(a)) define "open dump" by reference to the Environmental Protection Agency's ("EPA") promulgation of "regulations containing criteria for determining which facilities . . . shall be classified as open dumps."[14] *See* 40 CFR § 257.1 *et seq.* These guidelines assert that "[p]ractices failing to satisfy any of the criteria in §§ 257.1 through 257.4 or §§ 257.5 through 257.30 or §§ 257.50 through 257.107

---

discharged from each of the five (5) surface piles of coal mining waste located on the Subject Property into Waters of the State . . . none of which leaking or discharge is now or ever has been permitted by the [West Virginia Department of Environmental Protection]." (ECF No. 31 at 99, ¶ 187.) The County specifically claims that "there is now and has continuously since the creation and use of each of the five (5) unlined surface piles of coal mining waste at the Subject Property," inter alia, "an on-going" discharge of solid wastes, hazardous wastes, and toxic wastes. (*Id.* at 100, ¶ 190.)

[13] The RCRA defines "disposal" as "the discharge, deposit, injection, dumping, *spilling*, *leaking*, or *placing* of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3) (emphasis added). Thus, the plain language of the statute "unambiguously refers to the act of discharging, depositing, injecting, dumping, leaking or placing" and does not require "the decision to undertake one of these actions." *United States v. Humphries*, 728 F.3d 1028, 1032 (9th Cir. 2013), *cert. denied* 572 U.S. 1051 (2014).

[14] Both the statutory prohibition on open dumps and dumping (§ 6945(a)) and the statutory definition (§ 6903(14)) define "open dump" by reference to regulatory criteria promulgated by the EPA. The RCRA itself states that "[a]t a minimum, . . . a facility may be classified as a sanitary landfill and not an open dump *only* if there is no reasonable probability of adverse effects on health or the environment from disposal of solid waste at such facility." 42 U.S.C. § 6944(a).

8

constitute open dumping, which is prohibited under [subsection 6972(a)(1)(A)] of the [RCRA]." *Id.* § 257.1(a)(1)-(2).

Importantly, one of these criteria is that "[a] facility or practice shall not contaminate an underground drinking water source beyond the solid waste boundary or beyond an alternative boundary specified in accordance with paragraph (b) of this section." *Id.* § 257.3-4(a). "Ground water means water below the land surface in the zone of saturation." *Id.* § 257.3-4(c)(3). An "underground drinking water source" is defined as an (1) "aquifer supplying drinking water for human consumption," or (2) "aquifer in which the ground water contains less than 10,000 mg/l total dissolved solids." *Id.* § 257.3-4(c)(4). "Contaminate" means to introduce a substance that would cause "the concentration of that substance in the ground water to exceed the maximum contaminant level specified in appendix I," or "[a]n increase in the concentration of that substance in the ground water where the existing concentration of that substance exceeds the maximum contaminant level specified in appendix I." *Id.* § 257.3-4(c)(2).

In this case, the County alleges that, since Quercus's acquisition of the surface rights of the subject real estate on July 27, 2013, Quercus "has failed, and continues to fail," to "satisfy the criteria set forth in 40 C.F.R. § 257.3-4(a)." (ECF No. 499 at 114-15, ¶ 221.) The Amended Complaint asserts that "[t]he aquifer at the Subject Property meets the definition of an 'underground drinking water supply,'" because the ground water "contains less than 10,000 mg/l total dissolved solids[.]" (*Id.* at 115, ¶ 121.) The County also claims that "[e]ach of the unlined surface piles of coal mining waste" contaminated the aquifer by introducing "at least cadmium to

9

groundwater," which caused an increase in the concentration of cadmium that exceeded the maximum contaminant level in appendix I.[15] (*See id.*)

Viewing these well-pleaded factual allegations in the Amended Complaint as true and in the light most favorable to the County, *see Iqbal*, 556 U.S. at 678, the County has stated a plausible claim that Quercus violated 40 C.F.R. § 257.3-4(a). This alleged failure to meet the criteria listed in 40 C.F.R. § 257.3-4(a) would automatically render Quercus's facility an open dump in violation of § 6972(a)(1)(A). Thus, the Surface Defendants are not entitled to dismissal of Count One under Rule 12(b)(6).

Accordingly, the Surface Defendants' Partial Motion to Dismiss is **DENIED** as to Count One.

2. Count Two

Count Two seeks relief under § 6972(a)(1)(B) of the RCRA against all Remedial Defendants, including the Surface Defendants, (ECF No. 499 at 121–32; *see also* ECF No. 63 at 3.) Specifically, the Second Amended Complaint asserts that the Surface Defendants "allow[ed] and "maintain[ed]" the piles of CMW, which contaminated the groundwater. (*See* ECF No. 499 at 121-32.) The Amended Complaint also states that the Surface Defendants failed to abate the piles of CMW. (*See id.*)

As discussed above, the RCRA permits any person to commence a civil action "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Unlike a claim under subsection (a)(1)(A), which "requires a violation of some

---

[15] Appendix I sets the maximum level of cadmium at 0.01. 40 C.F.R. § Pt. 257, App. I.

obligation under RCRA, without regard to its effects or severity," a claim under subsection (a)(1)(B) "need not be predicated on any violation." *Courtland*, 2022 WL 2400038, at *39 (internal quotations and citations omitted). Instead, a plaintiff must prove the following elements to prevail on a claim pursuant to subsection (a)(1)(B):

> (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment.

*Id.* at *44 (internal quotations and citations omitted); *accord Cox v. City of Dallas, Tex.*, 256 F.3d 281, 292 (5th Cir. 2001) (citing *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1382 n. 9 (8th Cir.1989)); *Parker v. Scrap Metal Processors*, Inc., 386 F. 3d 993, 1014 (11th Cir. 2004).

In the pending motion to dismiss, the Surface Defendants argue that the County has failed to state a claim under subsection (a)(1)(B) because the Second Amended Complaint does not assert that the Surface Defendants "contributed" to any alleged contamination on the property and, instead, states that they merely "maintained" the surface property and "allowed" the conditions to remain. (ECF No. 49 at 6-7.) In support, the Surface Defendants cite to the Fourth Circuit's holding in *Goldfarb* that the term "contribute" in subsection (a)(1)(B) "requires a defendant's active conduct on—rather than passive connection to—the property in order to be deemed a contributor[.]" 791 F.3d at 516; *accord Sycamore Idus. Park Assoc. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008), *cert. denied*, 556 U.S. 1183 (2009) (holding that the "has contributed or is contributing" language of § 6972(a)(1)(B) requires active involvement in

11

handling or storage of materials for liability). In response, the County asserts that none of the cases cited by the Surface Defendants "address[] the liability of an owner that, like these Defendants, had an affirmative statutory duty . . . not to allow as an owner an 'Open Dump' to exist on the . . . property and to mitigate conditions thereon." (ECF No. 63 at 5.) Specifically, the County argues that the Fourth Circuit's holding in *Goldfarb* is "unhelpful" because the court did not address "whether an owner that had ignored an affirmative, statutory duty to act . . . could be a contributor under the RCRA. (*Id.* at 5-6 n.4.) Yet, *Goldfarb* is helpful, as outlined below.

In *Goldfarb*, the City of Baltimore and CBAC Gaming, LLC entered into an agreement to develop a tract of land in Baltimore for use as a casino and ancillary facilities (the "Casino Site"). 791 F.3d at 503. The Casino site had previously been used by Maryland Chemical Co., Inc. ("Maryland Chemical"), where it conducted "chemical manufacturing and/or bulk chemical storage, repackaging and distribution" for approximately fifty years. *Id.* The plaintiffs filed suit against the City of Baltimore, CBAC Gaming, LLC, and Maryland Chemical for violations of the RCRA, alleging that hazardous waste contaminates were migrating from Casino Site onto a piece of land used for various recreational activities. *Id.* Of relevance, the plaintiffs asserted a claim under § 6972(a)(1)(B) against Maryland Chemical, alleging that its past operations

> contributed to the imminent and substantial endangerment to human health and the environment which is present at the Casino Site and the Waterfront Parcels by *unlawfully spilling, releasing, and/or disposing of hazardous wastes* and/or hazardous substances in the soils and groundwater at the Casino Site (including, but not limited to [hazardous chemical compounds]) *and by failing to address and/or remediate the contamination thereafter*.

*Id.* at 516 (alteration in original) (emphasis added).

Among others, the district court dismissed the only claim against Maryland Chemical brought under subsection (a)(1)(B) for failure to state a claim. *Id.* at 515. The court reasoned

12

that, because the RCRA "requires that a defendant 'contribute' to the solid or hazardous waste at issue, the complaint must allege the defendant affirmatively acted to create or cause the contamination in order to survive a motion to dismiss." *Id.* The court determined that Maryland Chemical did not meet this standard because the alleged "'spilling, releasing, and/or disposing of hazardous wastes' . . . could occur 'without any active human participation.'" *Id.*

On appeal, the Fourth Circuit held that the district court erred in dismissing the claim against Maryland Chemical for failure to allege "contribution" under subsection (a)(1)(B). *Id.* at 516. The Fourth Circuit first provided the following interpretation of subsection (a)(1)(B)'s "contribution" requirement:

> Although we have not previously opined as to the meaning of § 6972(a)(1)(B)'s "contribution" requirement, we are bound to interpret undefined statutory terms according to their "ordinary meaning." Consistent with that guidance, other federal circuit courts have looked to the dictionary definition of "contribute" to conclude that term for RCRA purposes means that a defendant must "be actively involved in or have some degree of control over," [or] "have a share in any act or effect," or "act as a determining factor." We adopt this interpretation, which therefore requires a defendant's active conduct on—rather than passive connection to—the property in order to be deemed a contributor for § 6972(a)(1)(B) purposes.

*Id.* at 516 (internal citations omitted).

Based on this interpretation, the Fourth Circuit found that the plaintiff's complaint "adequately alleged such conduct" when it claimed that "Maryland Chemical engaged in 'chemical manufacturing and/or bulk chemical storage, repackaging and distribution purposes'" and that its operations "resulted in spills and releases of hazardous substances and/or hazardous wastes . . . ." *Id.*

However, of importance, the Fourth Circuit also specifically noted that the district court erred in relying, in part, on a case discussing "disposal" rather than "contribution," even though

13

those terms "have different meanings." *Id.* n. 10. The Court explained that once the active component of "contribution" has been established, courts must engage in a different analysis to determine if the "disposal" component has been satisfied. *See id.* The Fourth Circuit further explained that portions of the definition of disposal "readily admit to a passive component: hazardous waste may *leak* or *spill* without any active human participation," and it would "arbitrarily deprive[] these words of their passive element to impose a requirement of active participation . . . ." *Id.* (quoting *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837 (4th Cir.1992) (emphasis added).) Thus, for clarity, the Fourth Circuit found that the plaintiff's complaint plausibly alleged "the 'disposal' component" of a § 6972(a)(1)(B) claim by alleging that Maryland Chemical's operations "unlawfully spill[ed], release[ed], and/or dispos[ed]" of hazardous wastes into the groundwater, and "fail[ed] to address and/or remediate the contamination thereafter." *See id.*

Thus, there are two key takeaways from *Goldfarb*. First, the "contribution" requirement under subsection (a)(1)(B) requires "a defendant's active conduct on—rather than passive connection to—the property in order to be deemed a contributor[.]" *Id.* at 516. Second, the separate "disposal" requirement includes passive conduct without human participation. *Id.* n. 10.

Applying *Goldfarb* to the present case, the County has not pled sufficient facts to make a plausible showing that the Surface Defendants are contributors under subsection (a)(1)(B). Unlike Maryland Chemical in *Goldfarb*, the Surface Defendants did not create the alleged contamination and then refuse to fix it. Instead, the County claims the Surface Defendants owned the land, (ECF No. 499 at 152–53, ¶ 318-19), upon which the piles of CMW are located, which have purportedly leaked solid waste into and on land and water since their creation to the

present, (*id.* at 151, ¶ 312).[16] Thus, unlike Maryland Chemical, no "active conduct" can be attributed to the Surface Defendants. Rather, the Surface Defendants only have a "passive connection" to the property, which the Fourth Circuit explicitly said was insufficient to satisfy the "contribution" requirement under § 6972(a)(1)(B). *See Goldfarb*, 791 F.3d at 516.

To accept the County's theory that the Surface Defendants are "contributors" under § 6972(a)(1)(B) simply because they owned the land and did not take steps to abate the alleged contamination would extend *Goldfarb* beyond what the Fourth Circuit intended.[17] The Court is also hesitant to interpret "contribute" in such a way because it would impose liability on any property owner regardless of whether they actively contributed to the disposal of solid or hazardous waste. Under such an interpretation, when would a property owner not be liable?

Accordingly, the Surface Defendants' Partial Motion to Dismiss is **GRANTED** as to Count Two.

*B. Count Six*

In this case, the Surface Defendants claim that Counts Six should be dismissed because the 2018 Ordinance is preempted by state law. (*See* ECF No. 49 at 12-15.) According to the Surface Defendants, the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMA") comprehensively regulates the coal mining industry, and the West Virginia Groundwater Protection Act ("WVGPA") and the West Virginia Water Pollution Control Act ("WVWPCA") comprehensively regulates water quality standards. (*Id.* at 10.) Thus, the

---

[16] While the Surface Defendants' alleged passive conduct of allowing the piles of CMW to exist may be sufficient to satisfy the "disposal" component, it is not sufficient to plausibly show that the Surface Defendants "contributed" to the disposal.

[17] The County's argument regarding the Surface Defendants' alleged violation of statutory and regulatory duties is irrelevant because a duty can be breached by either active or passive conduct, whereas the "contribution" requirement under § 6972(a)(1)(B) requires active conduct.

Surface Defendants argue that the 2018 Ordinance is preempted because it establishes water quality standards. (*Id.* at 13–14.)

However, as discussed in a previous Memorandum Opinion and Order, the 2018 Ordinance contains a severance clause. (2018 Ordinance at 85, § XXIII.) Thus, while certain provisions may be severed if they are preempted, such severance does not preempt the entire 2018 Ordinance and, thus, would not necessarily justify dismissal of an entire cause of action. Consequently, the Court will consider the Surface Defendants' preemption arguments with regard to sections of the 2018 Ordinance at issue in Count Six.

To that extent, the only sections of the 2018 Ordinance that the Surface Defendants attack are Sections V(a)(10)(6)(iii) and V(a)(10)(6)(vi) of the 2018 Ordinance, which provide that the release of wastes, contaminants, or pollutants that result in certain levels of iron and manganese in groundwater constitute a public nuisance. (*See id.* at 14.) Yet, those provisions were already severed in this Court's previous Memorandum Opinion and Order. (*See* ECF No. 572.) Because the Surface Defendants do not identify any other portion of the 2018 Ordinance that may be preempted, their Partial Motion to Dismiss is **DENIED** as it relates to Count Six.

### i. CONCLUSION

For these reasons, the Surface Defendants' Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 48.) The Court **DENIES** the motion as to Counts One and Six. The Court **GRANTS** the motion and **DISMISSES** Count Two as to the Surface Defendants.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:    September 21, 2022

_____
THOMAS E. JOHNSTON, CHIEF JUDGE